IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **UNITED STATES OF AMERICA** )   ) | |
| v.  ) ) | **Case No. 3:19cr130** |
| **OKELLO T. CHATRIE,** ) | |
| **Defendant** ) | |

### DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED FROM SEARCH OF WILLIS STREET HOME

Okello Chatrie, through counsel, moves the Court to suppress evidence that law enforcement officers obtained pursuant to an overbroad, general warrant at a home on Willis Street. The officers illegally obtained a number of items, specifically all electronic devices, listed in the search warrant return that remains under seal as indicated below. The Court must suppress those items listed in the search warrant return.

**I.  Factual basis for the motion.**

A bank robbery happened at the Call Federal Credit Union in Midlothian, Virginia on May 20, 2019. Using a series of warrants, all of which stemmed from a state search warrant being challenged in this case, law enforcement officials identified Mr. Chatrie as a possible suspect in the robbery. The officers sought and obtained a warrant to search a house on Willis Street in Richmond, Virginia. The officers executing the warrant seized a number of items pursuant to the warrant, including two electronic devices.[1]  Because the search warrant, the search warrant

---

[1] The government has provided the defense with a redacted copy of this search warrant with no explanation as to why the redaction is necessary in this case. This search warrant remains sealed. *See In re Search of XXXX Willis Street*, 3:19sw244 (E.D. Va. Aug. 12, 2019). As the sealing order which the government provided to the defense does not allow for any disclosure (even to the defense) until further order, Mr. Chatrie does not attach it here. As the defense does not know what information is being redacted, the

1

application, and the return remain under seal at this time, the defense does not attach them here, but all of these documents are available to the Court in *In re Search of XXXX Willis Street*, 3:19sw244 (E.D. Va. Aug. 12, 2019). The warrant also authorized law enforcement officers to compel Mr. Chatrie to open any devices using his fingers, his fingerprint, his face, and his irises, which is patently unreasonable under the Fourth Amendment.

## II. The house warrant is fatally overbroad.

Warrants must not only be supported by probable cause, but must particularly describe the evidence for which probable cause exists. *See* U.S. CONST. Amend. IV. The purpose of the requirement that a warrant particularly describe the things to be seized is to prevent "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). That is, a properly narrowed warrant "makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Stanford v. Texas*, 379 U.S. 476, 485 (1965). Thus, the face of the warrant must "confine[] the executing officers' discretion by allowing them to seize only evidence of a particular crime." *United States v. Fawole*, 785 F.2d 1141, 1144 (4th Cir. 1986). "Indeed, blanket suppression is warranted where the officers engage in a 'fishing expedition' for the discovery of incriminating evidence." *United States v. Uzenski*, 434 F.3d 690, 709 (4th Cir. 2006).

The warrant authorized law enforcement officers to seize entire computers and "storage mediums" and electronic storage devices. *See* Warrant Attachment B at ¶¶2, 3, 6-9. The warrant also authorized broad seizures of information contained within the devices such as all internet activity, photographs, chat messages, and correspondence. This was not merely a fishing

---

defense reserves the option to provide additional bases for the challenge to this warrant once the defense can see an unredacted copy of the warrant application.

expedition—the warrant allowed the government to dredge the lake to look for fish. As a result, law enforcement officers as well as counsel have been able to examine the intimate personal details, shopping and browsing habits, personal (and innocent) photographs of Mr. Chatrie in this case.

In *Riley v. California*, 134 S. Ct. 2473 (2014), the Supreme Court described the intense privacy interest in the contents of cell phones.

> First, a cell phone collects in one place many distinct types of information-an address, a note, a prescription, a bank statement, a video-that reveal much more in combination than any isolated record. Second, a cell phone's capacity allows even just one type of information to convey far more than previously possible. The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions; the same cannot be said of a photograph or two of loved ones tucked into a wallet. Third, the data on a phone can date back to the purchase of the phone, or even earlier. A person might carry in his pocket a slip of paper reminding him to call Mr. Jones; he would not carry a record of all his communications with Mr. Jones for the past several months, as would routinely be kept on a phone.

*Id.* at 2489. In *Riley*, when the Supreme Court required warrants for cell phone searches, *see* 134 S. Ct. at 2485, it did not do so as a mere formality, to be automatically granted in any case where probable cause for a crime was established. The particularity requirement applies full force. The constitutional requirement that there must be probable cause—meaning a fair probability—that particular evidence of a particular crime will be found on the phone, applies full force. In *Illinois v. Gates*, the Supreme Court said that magistrates must determine based on the affidavit that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." 462 U.S. 213, 239 (1983).

In this case, the warrant application alleges that the suspect was seen using one cell phone before the robbery. Assuming probable cause that Mr. Chatrie committed the robbery, this provides probable cause to search for communications immediately surrounding the robbery, not

3

for personal photos or browsing history. The warrant's authorization for an expansive, indiscriminatory search—essentially, all electronic data—transformed it into a general warrant. Suppression is required.

### III. The search warrant lacked a sufficient nexus between the place to be searched and the alleged crime.

The affidavit in support of the warrant to search the electronic device (aside from mobile phones) contains no specific information about why law enforcement officers would find evidence of the alleged crime at this particular house. "In determining whether a search warrant is supported by probable cause, the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched." *Lalor*, 996 F.2d at 1582 (citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 & n.6 (1978)). The affidavit does not identify any witness who indicated that he or she saw or knew of Mr. Chatrie kept any evidence of a robbery at his house on Willis Street. The affidavit does not indicate that officers had witnessed the suspect traveling to Willis Street at any date close to May 20, 2019. There is no specific information in the affidavit to link this location to Mr. Chatrie's alleged robbery.

Numerous cases from this Circuit also demonstrate the importance of specific factual information that the items sought by warrants might be in the residences to be searched. For example, in *United States v. Wilhelm*, 80 F.3d 116, 117-18 (4th Cir. 1996), although the warrant was invalidated because the informant's reliability was not established, the informant had stated that s/he had seen marijuana being sold at the defendant's house by its residents and had seen unsold marijuana in the house within the previous forty-eight hours. In *United States v. Bynum*, 293 F.3d 192, 194 (4th Cir. 2002), the affidavit stated that the residence was the defendant's and that the confidential source had seen a large quantity of heroin in the residence within the past

seventy-two hours, had further seen the defendant packaging some of the heroin for delivery to others, and that even after those deliveries, a substantial amount of heroin remained in the house.

Similarly, in *United States v. Blackwood*, 913 F.2d 139, 140-41 (4th Cir. 1990), the affidavit specified that within the previous seventy-two hours, the affiant had received information from a confidential source that crack cocaine was being stored in and sold from the defendant's apartment, and the affidavit further stated that the affiant used the source to make an undercover purchase from the defendant at his apartment. Likewise, in *United States v. Clyburn*, 24 F.3d 613, 614-15 (4th Cir. 1994), the magistrate approved a warrant on the basis that a confidential source had seen crack cocaine in the defendant's home within the past seventy-two hours and that the police used the source to conduct an undercover buy from the defendant at his home the previous day.

In each of these cases—even in *Wilhelm*, in which the affidavit contained the least amount of information—the affidavits clearly established that there was a fair probability that drugs would be found in the respective residences. In contrast, in this case, the affidavit contained nothing but speculation and supposition that evidence relating to a robbery would be found in the Willis Street home.

In keeping with these decisions, in *United States v. Powers*, 1 F. Supp. 3d 470, 475 (M.D.N.C. 2014), the court invalidated a search warrant of a residence for evidence of crimes including robbery, finding that there were no facts connecting the residence to the robbery and no probable cause to search the residence for evidence of the robbery. The court noted that the "mere presence of a robbery suspect in a third party's residence more than four weeks after the robbery is insufficient to establish probable cause to search the residence for evidence about the robbery." *Id.* at 474. Relying on the *Lalor* decision to conclude that there was nothing to suggest that

evidence of the robbery would be found at the residence, the court stated that "[t]he affidavit does not suggest that [the defendant] lived there, that he had been seen in possession of firearms there, that he had been in the home immediately or even soon after the robbery, or that firearms similar to those used in the robbery had been seen in the home." *Id.* at 475.

An officer's generalized assertions of his training and experience cannot be used to shore up an insufficient nexus. For example, in *United States v. Schultz*, 14 F.3d 1093, 1097-98 (6th Cir. 1994), the court noted that, while an officer's training and experience can be considered in determining probable cause, "it cannot substitute for the lack of evidentiary nexus" between the place searched and the criminal activity. Moreover, although it ultimately upheld a search under the good faith doctrine, the court concluded that the officer "did not have anything more than a guess that contraband or evidence of a crime would be found in the boxes, and therefore the first warrant should not have been issued. To find otherwise would be to invite general warrants authorizing searches of any property owned, rented, or otherwise used by a criminal suspect—just the type of broad warrant the Fourth Amendment was designed to foreclose." *Id. See also Dougherty v. City of Covina*, 654 F.3d 892, 899 (9th Cir. 2011) ("Thus, while the 'totality of circumstances' could, in some instances, allow us to find probable cause to search for child pornography, Officer Bobkiewicz's conclusory statement tying this 'subject,' alleged to have molested two children and looked inappropriately at others, to 'having in his possession child pornography' is insufficient to create probable cause here."); *Rivera v. Murphy*, 979 F.2d 259, 264 (1st Cir. 1992) ("Were we to affirm the district court's ruling below, we would give license to police officers to make unwarranted arrests, and retain qualified immunity from civil suits so long as they asserted that they thought they had probable cause to make the arrest based on their

6

'observations, training and experience.' Creating such a talisman would effectively transform the police officer into a judge, and the court into a rubber stamp.").

### IV. There is no specific, fresh information in the warrant that indicated that evidence of a robbery would be found at the Willis Street house in mid-August 2019, nearly three months after the robbery.

The affidavit in support of the search warrant also does not contain any fresh evidence indicating that evidence of a robbery would be found at the Willis Street home nearly three months after the robbery happened. "[E]vidence seized pursuant to a warrant supported by 'stale' probable cause is not admissible in a criminal trial to establish the defendant's guilt." *United States v. McCall*, 740 F.2d 1331, 1336 (4th Cir. 1984). When determining whether the information in a search warrant affidavit is stale, courts are to look at "all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." *United States v. Richardson*, 607 F.3d 357, 370 (4th Cir. 2010). The freshness of the information is key to this analysis. For example, in *United States v. Wilhelm*, 80 F.3d 116, 117-18 (4th Cir. 1996), although the warrant was invalidated because the informant's reliability was not established, the informant had stated that s/he had seen marijuana being sold at the defendant's house by its residents and had seen unsold marijuana in the house within the previous forty-eight hours. In *United States v. Bynum*, 293 F.3d 192, 194 (4th Cir. 2002), the affidavit stated that the residence was the defendant's and that the confidential source had seen a large quantity of heroin in the residence within the past seventy-two hours, had further seen the defendant packaging some of the heroin for delivery to others, and that even after those deliveries, a substantial amount of heroin remained in the house.

Similarly, in *Blackwood*, 913 F.2d at 140-41, the affidavit specified that within the previous seventy-two hours, the affiant had received information from a confidential source that crack

7

cocaine was being stored in and sold from the defendant's apartment, and the affidavit further stated that the affiant used the source to make an undercover purchase from the defendant at his apartment. Likewise, in *United States v. Clyburn*, 24 F.3d 613, 614-15 (4th Cir. 1994), the magistrate approved a warrant on the basis that a confidential source had seen crack cocaine in the defendant's home within the past seventy-two hours and that the police used the source to conduct an undercover buy from the defendant at his home the previous day.

Nothing like those fresh allegations appears in the Willis Street warrant. Rather, the robbery happened on May 20, 2019. The officers did not seek to obtain a warrant for the Willis Street home until August 12, 2019. There was no specific information in the warrant indicating that evidence of a robbery would be found in the home nearly three months after the robbery happened.

## CONCLUSION

The Court must find that the warrant was overbroad and that the affidavit did not provide a sufficient nexus to show that evidence of the alleged crime would be found in the place and on the items to be searched. As such, the Court must suppress all evidence gained from search of the Willis Street home.

Respectfully submitted,
OKELLO T. CHATRIE

By: _____/s/_____
Laura Koenig
Va. Bar No. 86840
Counsel for Defendant
Office of the Federal Public Defender
701 E Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0881
Fax (804) 648-5033
laura_koenig@fd.org

8

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 22, 2019, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

                                                                          _____/s/_____
                                                           Laura Koenig
                                                           Va. Bar No. 86840
                                                           Counsel for Defendant
                                                           Office of the Federal Public Defender
                                                           701 E Broad Street, Suite 3600
                                                           Richmond, VA 23219-1884
                                                           Ph. (804) 565-0881
                                                           Fax (804) 648-5033
                                                           laura_koenig@fd.org