IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Richmond Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 3:19-CR-130-MHL |
| | ) | |
| OKELLO T. CHATRIE, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTIONS FOR SUPPRESSION OF EVIDENCE
RECOVERED AT XXXX MASON DALE DRIVE AND XXXX WILLIS
STREET**

The United States of America, by its undersigned attorneys, moves this Court to deny Defendant Okello T. Chatrie's motion to suppress evidence recovered at XXXX Willis Street, Richmond, Virginia, and XXXX Mason Dale Drive, Richmond, Virginia.  (ECF Nos. 18, 19).

The Defendant does not dispute that the search warrants at issue establish probable cause that he committed the May 20, 2019 armed robbery of the Call Federal Credit Union in Midlothian, Virginia, during which he stole $200,000.  Similarly, the defendant does not dispute his connection to both residences.  Nevertheless, he comes to this Court seeking blanket suppression of evidence of the armed robbery recovered at these residences pursuant to search warrants signed by Magistrate Judge Roderick C. Young on August 12, 2019.  *See* 3:19-SW-243, 3:19-SW-244.

Each of these conclusory motions should be flatly rejected by this Court.  Prevailing Fourth Circuit and Supreme Court precedent, including decisions cited by the defendant, demand such a rejection.  The search warrants secured in this case are constitutionally sound.

## I. BACKGROUND[1]

At approximately 4:50 p.m. eastern standard standard time, on May 20, 2019, a then-unknown male entered the Call Federal Credit Union in Midlothian, Virginia with a firearm. While the man stood in line, victim-teller J.B. asked another teller, J.W., to assist this customer when he reached the counter.  When he reached J.W.'s station, the man presented a handwritten note.  That note read, in part, "I got your family as hostage and I know where you live, If you or your coworker alert the cops or anyone your family and you are going to be hurt . . . I need at least 100k." After J.W. told him that she did not have access to that amount of money, the armed robber pulled out a silver and black handgun.  Waving the firearm around, he then directed J.W., other Call Federal Credit Union employees, and customers to move to the center of the lobby and get on the floor.   Once there, the armed robber led victims behind the teller counter and into a back room where the Credit Union's safe was located.

Once in the back room, he ordered everyone to their knees at gunpoint and demanded that the bank manager open the safe.  The Credit Union manager, fearing for his life, obliged by opening the safe and handing over $195,000 in United States currency.

After the armed robbery, victims dialed 911 to request assistance.  When law enforcement arrived, they reviewed surveillance video from the credit union and determined that the armed robber entered the credit union from an area behind a nearby church, held a cellular telephone to his ear when entering the credit union, and ran back towards the church after the robbery.  An employee of that church explained to law enforcement that he saw a suspicious individual in a

---

[1] The United States has provided defense counsel with full copies of all search warrant materials in this case.  Their contention that redactions are made without explanation is belied by their failure to request such information.  They are not entitled to the personal identifying information of others at this time.

newer model, blue Buick sedan prior to the time of the robbery.

With this information in hand, law enforcement sought and obtained a state search warrant on June 14, 2019, for information pertaining to anonymized accounts in the custody and control of Google, Inc., identifying Google IDs[2] that were within the vicinity of the Call Federal Credit Union and the nearby church just prior to, and right after, the armed robbery. This search warrant is commonly referred to as a "GeoFence" warrant.[3]

Based on returns of information for 19 anonymized accounts from Google on June 28, 2019, law enforcement identified several accounts of interest. The lead case agent recognized at the outset that one particular Google ID (hereinafter, the "Chatrie Account") was likely the device involved in the armed robbery because, among other things, the Chatrie Account: (1) was near the church prior to the robbery at the same time that the church witness recalled seeing the suspicious individual in the dark blue Buick sedan; (2) was inside the credit union at the time of the robbery; and (3) immediately left the area following the robbery from an area near the church.

Pursuant to the state GeoFence search warrant, on July 10, 2019, Google provided additional location information and history for nine of the original nineteen anonymized Google IDs to account for thirty minutes before and thirty minutes after the armed robbery.

Based on a review of this additional location information, law enforcement discovered that the Chatrie Account traveled to XXXX Mason Dale Drive following the armed robbery. Law

---

[2] The information gleaned from Google pursuant to this search warrant was entirely anonymized through all but one phase—the final phase—of the returns for the warrant. More specifically, Google merely provided information associated with a "Device ID" number. Google explains that "the Device ID is used only for distinguishing unique devices in a particular user's location history and cannot be mapped to an Android ID or an IMEI/MEID."

[3] The United States provides a fuller rundown of the GeoFence warrant in its response in opposition to the defendant's motion to suppress the evidence obtained from that warrant.

enforcement assessed XXXX Mason Dale Drive and found that a utilities inquiry showed the defendant listed as a subscriber for the Mason Dale address.   Further database searches revealed that Chatrie was born in Jamaica, had purchased a silver and black nine millimeter G2C Taurus semiautomatic firearm from Bob Moates Sports Shop less than one month before the armed robbery, and owned a blue, 2010 Buick Lacrosse.   Virginia Employment Commission records showed Chatrie's most recent employment as The Home Depot.  The Home Depot shared with law enforcement that Chatrie provided them with a home address of XXXX Mason Dale Drive, email address of okellochatrie55@gmail.com, and phone number of 804-475-8298 during the course of his employment with the home improvement store.

Pursuant to the GeoFence warrant, law enforcement then requested and obtained subscriber information for the Chatrie Account, and two additional anonymized accounts.  On July 11, 2019, Google provided subscriber information for just these three accounts.  The United States did not obtain any subscriber or other identifying information on the other 16 anonymized accounts.  The subscriber information for the Chatrie Account had the email of okellochatrie55@gmail.com, a name of "Jamaican media," and showed a last login date of May 20, 2019, the date of the robbery of Call Federal Credit Union.

Law enforcement later obtained a federal search warrant on July 17, 2019, for historical location information for the Google account of okellochatrie55@gmail.com and Google account ID: 365520819283.[4]  That location information demonstrated, among other things, that the account left XXXX Mason Dale Drive before the robbery and returned to XXXX Mason Dale Drive after

---

[4] Importantly, the historical information obtained for Chatrie's account is the same type of information gleaned from the GeoFence warrant.  That is, location information for Chatrie's Google account.

the robbery.

Law enforcement also sought and obtained a federal search warrant on July 17, 2019, for historical and prospective location information from Sprint Mobile for the cellular telephone number 804-475-8298.  It was later determined that the Sprint account for this phone number was deactivated on July 7, 2019.

On July 19, 2019, law enforcement sought and obtained federal search warrants, one for a cell site simulator to ascertain the defendant's new phone number[5] and another to place a tracking device on the defendant's 2010 blue Buick Lacrosse.  At the same time, law enforcement obtained and analyzed toll records from Sprint for the defendant's phone, his father's phone, and his sister's phone.   Analysis of the defendant's father's and sister's toll records revealed a telephone number in common that was later discovered to belong to the defendant, despite having someone else listed as the subscriber for the T-Mobile telephone.

Law enforcement also surveilled the defendant beginning in mid-July.  Surveillance of the defendant and his vehicle revealed that he spent the vast majority of his time at XXXX Willis Street and XXX Rosegill Road.

Further review of the historical location information obtained from the federal search warrant obtained on July 17, 2019, showed that the defendant spent much of his time at XXXX Mason Dale Drive during the week prior to the robbery, was near the Call Federal Credit Union at the time of the robbery, was near XXXX Mason Dale Drive before and after the robbery, and spent several hours at XXX Rosegill Road. During the week following the armed robbery, the defendant's phone was located at XXXX Mason Dale Drive and the Rosegill residence.   Law

---

[5] No evidence of value was obtained from the use of the cell site simulator.

enforcement surveillance between July 23, 2019, and August 12, 2019, revealed that the defendant spent most of his evenings at XXXX Willis Street.

On August 12, 2019, law enforcement sought and obtained a search warrant for the residences located at XXXX Mason Dale Drive, XXXX Willis Street, XXX Rosegill Road, and the Buick Lacrosse.  When executing these search warrants in the early morning of August 13, 2019, law enforcement recovered evidence of value from XXXX Mason Dale Drive and XXXX Willis Street.  At the XXXX Mason Dale Drive residence, law enforcement recovered two robbery-style demand notes from the bedroom belonging to the defendant.  At XXXX Willis Street, law enforcement recovered nearly $100,000 in United States Currency (including bills wrapped in bands signed by the victim-bank teller), a silver and black firearm that appeared to be identical to the firearm used in the robbery, a money counter, and a safe.[6]

The defendant was at XXXX Willis Street when the search warrant was executed.  After being placed under arrest and advised of his *Miranda* rights, the defendant admitted to the armed robbery of the Call Federal Credit Union on May 20, 2019.

On September 17, 2019, a Richmond grand jury returned a two-count indictment for Forced Accompaniment during an Armed Credit Union Robbery, in violation of 18 U.S.C. § 2113(e), and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  The defendant pleaded not guilty on October 1, 2019, and trial was scheduled for December 3, 2019, through December 5, 2019, at 9:00 a.m. before the Honorable M. Hannah Lauck.  At a status conference, on November 12, 2019, the Court granted the defendant's motion

---

[6] All electronics recovered—whether cellular telephones or computers—returned no evidence of value.  Moreover, the defendant and his girlfriend provided consent to search the cellular telephones and computers recovered from XXXX Willis Street.

to continue trial beyond the speedy trial date. (ECF No. 34)

On October 22, 2019, the defendant filed the Motions to Suppress that are subject of this response.

## II.    <u>ARGUMENT</u>

The defendant's motions to suppress evidence obtained from the residences are generally of the same nature. Accordingly, the United States addresses arguments that can be grouped together, together. Those that require separate analysis are considered separately.

The defendant contends that the evidence obtained under the authority of the search warrants for XXXX Willis Street and XXXX Mason Dale Drive must be suppressed because they are: (1) fatally overbroad and (2) supported by stale information. As to XXXX Willis Street, in particular, the defendant contends that there is an insufficient nexus between the residence and the defendant's armed robbery. He does not, however, contest his connection with that residence. Focusing solely on XXXX Mason Dale Drive, the defendant then argues that, aside from mobile telephones, there is an insufficient nexus between the alleged crime and the items to be searched, namely computers.

This Court should reject each of the defendant's arguments.

### A.    *The Willis Street and Mason Dale Warrants do not Lack Particularity*

The defendant calls for blanket suppression of the residential search warrants in this case on the basis that they are overbroad. *See* Def.'s Mot. to Suppress, ECF Nos. 18, 19 at 2-4. He contends that the warrants are overbroad because they authorize the search and seizure of information contained within his mobile telephones and computers, such as all internet activity, photographs, chat messages, and correspondence. *Id.* at 2-3. As such, he maintains, the United States has been able to examine the intimate personal details, shopping and browsing habits, and

personal photographs of the defendant.  *Id.* at 3.  Although set forth as a particularity argument, the defendant's argument also reads as an attack on probable cause to search the defendant's mobile telephone and computers at XXXX Willis Street and XXXX Mason Dale Drive.  *Id.* at 3 ("Assuming probable cause that Mr. Chatrie committed the robbery, this provides probable cause to search for communications immediately surrounding the robbery, not for personal photos or browsing history.").  On either front, the Court should reject the defendant's invitation to suppress evidence.

As an initial matter, the defendant and his girlfriend voluntarily consented to the search of their cellular telephones and computers on the date of the search.  Accordingly, the defendant's request for blanket suppression should be rejected out of hand.  *See United States v. Uzenski*, 434 F.3d 690, 707 (4th Cir. 2006) (recognizing that "blanket suppression certainly cannot stand on items properly seized pursuant to consent.").  Whether mobile telephone or computer, every electronic item seized from Willis Street was unlocked or searched pursuant to the defendant or his girlfriend's consent.  Moreover, the United States does not intend to use any evidence from mobile telephones, computers, or other storage mediums at trial in this matter.

To support his primary argument—that the warrants are overbroad because they lack particularity—the defendant fails to point to a single case supporting his theory.  In making his particularity argument, the defendant reads the paragraphs of the warrant in a vacuum, disregarding the context of the warrant in its entirety.  It is true that the particularity requirement applies to the warrant, as opposed to the application or supporting affidavit submitted by the applicant.  *See United States v. Hurwitz*, 459 F.3d 463, 470 (4th Cir. 2006) (citing *Groh v. Ramirez*, 540 U.S. 551, 557 (2004)).  This particularity requirement may, however, be satisfied by cross-reference in the warrant to separate documents that identify items to be seized in sufficient detail.  *See Groh*, 540

U.S. at 557–58.  "As a general rule, a supporting affidavit or document may be read together with (and considered part of) a warrant that otherwise lacks sufficient particularity 'if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant.'" *Hurwitz*, 459 F.3d at 470–71 (quoting *Groh*, 540 U.S. at 557–58).

In the Fourth Circuit, it is sufficient either for the warrant to incorporate the supporting document by reference or for the supporting document to be attached to the warrant itself.  *Id.* at 471.  The entire warrant should be reviewed as a whole.  *United States v. Washington*, 852 F.2d 803, 805 (4th Cir. 1988).   Accordingly, the warrants at issue here should be reviewed in their entirety, including the supporting affidavits and attachments. Furthermore, in reviewing warrants, courts are instructed to avoid reading their terms in a "hypertechnical manner," and should opt instead for a "commonsense and realistic approach . . . [so as] to avoid turning a search warrant into a constitutional straight jacket." *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010) (marks and citation omitted).

This commonsense approach extends to vetting the ensuing search.   In this case, the requirement for a commonsense reading makes the defendant's argument, that the warrants are constitutionally defective because innocent photos and browsing history are captured as part of the probable cause search of the defendant's cellular telephones and computers, misguided.

The faultiness of the premise of the defendant's argument is made clear in Fourth Circuit precedent.  For example, in *United States v. Fawole*, a case cited by the defendant, the Fourth Circuit acknowledged that innocent items may indeed, and constitutionally, be seized when they are contained within an item permissibly seized pursuant to a search warrant.  785 F.2d 1141, 1144 (4th Cir. 1986), *abrogation on other grounds recognized by Williams*, 592 F.3d at 523 n.3.  In that case, a briefcase that was within the scope of the warrant because it could have plausibly contained

9

the items to be searched for, namely "address books, diaries, business records, documents, receipts, and warranty books," contained innocuous documents with no hint of criminality. *Id.* The Fourth Circuit commonsensically explained that although seizure of certain documents in the briefcase exceeded the scope of the warrant, "the seizure and return of items within a single briefcase containing evidence of a crime does not amount to the sort of 'general, exploratory rummaging in a person's belongings' proscribed by the Fourth Amendment." *Id.* The Supreme Court has recognized the home as deserving of maximal Fourth Amendment protection. *See Florida v. Jardines*, 569 U.S. 1, 6 ("[W]hen it comes to the Fourth Amendment, the home is first among equals."). Nevertheless, a search of a home pursuant to a search warrant necessarily involves searching through items that are otherwise innocuous to find evidence of a crime. So to does the search of every person or vehicle. The defendant's cellphone and computers are no different. His argument defies logic and finds no support in Fourth Amendment jurisprudence. It should be rejected.

The defendant points to paragraphs two, three, and six through nine of the search warrants as demonstrative of their constitutional deficiency. Paragraph 2 of Attachment B provides that law enforcement is permitted to seize "[a]ll records relating to" the armed credit union robbery, forced accompaniment during such a robbery, and possessing a firearm during the commission of these crimes of violence, as well as any records going to the "planning, execution, and concealment of [these] crimes." *See* 3:19-SW-243, 3:19-SW-244. Paragraph 3 of Attachment B goes on to provide for the seizure of "[m]obile telephones that belong to [the defendant] or that may be unlocked using his biometrics." *Id.* Paragraph 6 of Attachment B similarly provides for seizure of "any computer or storage medium whose seizure is otherwise authorized by th[e] warrant which can be reasonably tied to [the defendant] . . ., and  any computer or storage medium that contains

or in which is stored records or information that is otherwise called for by th[e] warrant." *Id.*
Paragraphs 7 through 9 of Attachment B merely offer the technical definitions attributed to records,
information, computer, and storage medium. *Id.* The Application and Affidavit to these search
warrants plainly set forth that the search of both the residences and the items to be seized are
related to the armed robbery of the credit union, specifically to violations of 18 U.S.C. § 2113 and
18 U.S.C. § 924(c)(1)(A), respectively. Over fifteen pages of the affidavit detail the probable
cause that the defendant committed this crime and his connection to both residences. Then, the
affidavit makes clear that the residences, based on their connection the defendant and the crime,
likely have evidence, fruits, and instrumentalities of the crime.

Moreover, the defendant's argument also disregards the limiting factor of Paragraph 2 in
Attachment B, which provides an illustrative list of the records at issue. In addition to requiring
that the evidence seized be related to specific crimes, the warrants also identify an illustrative list
of the records to be collected in paragraph 2. Courts have held that a warrant meets the Fourth
Amendment particularity requirement where, as here, the warrant contains a description of the
items to be seized that is "delineated in part by an illustrative list of seizable items." *United
States v. Riley*, 906 F.2d 841, 844–45 (2d Cir. 1990). In reaching this conclusion, courts have
recognized that where, as here, a warrant contains an illustrative list of records, that list further
limits the discretion of the executing agents to construe the warrant in light of that directive and
to seize only records similar to those records listed in the warrant. *Id.*

Lastly, the affidavit sets forth probable cause to believe that a cellular telephone was not
only involved in the crime, but had been used to facilitate and conceal the crime. The notion that
assessing browsing habits and photographs for criminality are outside the reach of a search
warrant finding probable cause that the defendant committed an armed robbery wearing certain

clothing and wielding an identifiable firearm is simply outlandish.

Despite the clear particularity of the warrant and accompanying documents in this case, the defendant calls the Court's attention to case law that is wholly inapposite.  First, he cites *Coolidge v. New Hampshire*, 403 U.S. 443 (1971).  There, the Supreme Court analyzed the warrantless search and seizure of a defendant's car after concluding that the warrant issued for that automobile was not issued by  "neutral and detached magistrate."  *Id.* at 453.  In that context, the Supreme Court rejected the government's contention that the plain view doctrine nevertheless protected the search of the automobile by pointing to the underpinnings of the warrant requirement.  In doing so, the *Coolidge* Court pointed, in part, to the interest in having searches be "as limited as possible" to avoid subjection to an "exploratory rummaging" of [one's] "belongings."  *Id.* at 467.  That was the extent of the Supreme Court's particularity analysis in *Coolidge*.   One of the cases cited in *Coolidge* for the aforementioned proposition is also cited by the defendant.  Like *Coolidge*, *Stanford v. Texas* does nothing to redeem the defendant's argument.  379 U.S. 476 (1965).

In *Stanford*, the Supreme Court dealt with the interplay between the First and Fourth Amendment, reminding that the Fourth Amendment guards against more than writs of assistance permitting general searches whenever and wherever.  *Id.* at 482.  Rather, the *Stanford* Court noted, the protection of freedom of expression through literature and the like was sacrosanct to a robust Fourth Amendment protection.  *Id.*  ( "[T]hings to be seized" must "be accorded the most scrupulous exactitude when the things are books, and the basis for their seizure is the ideas which they contain.").  Indeed, the Supreme Court eschewed analogizing to seizure of "weapons, narcotics or cases of whiskey" because rather than contraband of any kind the warrant at issue in *Stanford* permitted seizure of "literary material" concerning the Community Party of Texas and operations of that party.   *Id.* at 486.  This "language," the Court opined, was "constitutionally

12

intolerable" as it swept too broadly. Stated simply, the defendant's reliance on these cases is misplaced because he takes their language out its context.

The two Fourth Circuit decisions cited by the defendant are similarly unavailing. In addition to *Fawole*, the defendant mentions *United States v. Uzenski*. 434 F.3d 690 (4th Cir. 2006).

In *Uzenski*, a panel assessed whether blanket suppression should result from law enforcement seizing items outside the scope of a residential search warrant during a search for evidence relating to a defendant's manufacture of home-made pipe bombs. In assessing that issue, the panel explained that blanket suppression is an "extraordinary remedy" reserved for extreme circumstances, and it is not a remedy "[e]ven where officers exceed the bounds of their authority pursuant to the warrant . . . [and] seize[] items [ ] not identified in the warrant." *Id.* at 706. The *Uzenski* panel made plain that blanket suppression is only warranted when "a fishing expedition for the discovery of incriminating evidence" occurs—for example, when a warrant authorizes a search for four weapons and marijuana but the searching agencies seize thirty-five items, including firearms, ammunition, and various drug paraphernalia or where officers seized 667 items not specified by the warrant. *Id.* In this case, the officers seized only those items that they were authorized to seize, rendering *Uzenski* wholly irrelevant.

The search warrants in this case are sufficiently particular and, accordingly, the defendant's motion to suppress should be denied.

### B. Probable Cause Supported the Search of Cellular Telephones and Computers tied to the Defendant at both XXXX Willis Street and XXXX Mason Dale Drive

As an initial matter, the defendant and his girlfriend consented to search of cellular telephones and computers found at XXXX Willis Street. Moreover, no evidence was obtained from any electronics searched and seized in this case.

Nevertheless, to the extent that the defendant contends that the warrants fail to establish probable cause to seize and search the defendant's cellular telephones and computers, he runs into an insurmountable task of demonstrating that there was not a substantial basis for the magistrate's determination of probable cause.

Probable cause is a "practical, nontechnical conception," and a magistrate judge's determination of this practical conception is "to be paid great deference by reviewing courts" so as to avoid the "after-the-fact scrutiny by courts of the sufficiency of an affidavit . . . tak[ing] the form of de novo review." *United States v. Graham*, 93 F. App'x 511, 514 (4th Cir. 2004) (unpublished) (per curiam). "[The] inquiry is thus limited to whether there was a substantial basis for determining the existence of probable cause." *See United States v. McNeal*, 818 F.3d 141, 154–55 (4th Cir. 2016).

In this case, the magistrate judge had a substantial basis for concluding that there was probable cause to search cellular telephones and computers recovered at both XXXX Willis Street and XXXX Mason Dale Drive, as long as they could reasonably be tied to the defendant, for evidence of the $195,000 armed robbery of the Call Federal Credit Union.

Paragraphs 50 and 51 of the XXXX Willis Street affidavit and Paragraphs 47 and 48 of the XXXX Mason Dale Drive affidavit reveal the connection of these items to the crimes under investigation.

There is probable cause to believe the defendant committed the armed robbery at the Call Federal Credit Union. As set forth in the affidavit, the armed robber walked into the credit union with a mobile telephone to his ear. *See* ¶ 13, 3:19-SW-244; ¶ 13, 3:19-SW-243. Subsequent investigation revealed that a Google account associated with the defendant fit the location information for the perpetrator of the armed robbery. *See* ¶¶ 19, 46, 3:19-SW-244; ¶ 19, 20, 44

14

3:19-SW-243.  In other words, there was probable cause to believe that the defendant utilized a mobile telephone to undertake the armed robbery of the Call Federal Credit Union—an instrumentality of the crime that also included evidence of the crime.   Indeed, location information for the defendant's Google accounts showed his account to be at or near the credit union at the time of the crime.   And, it is reasonable for the magistrate judge to infer that it was the defendant's use of the cellular telephone that placed his Google account at the scene of the crime.

No different with the authorization to search computers.  Here, the affidavit explains that data from cellular telephones and tablets are often stored via external media hard drives and other backups to computers.  *See* ¶ 67, 3:19-SW-244; ¶ 64, 3:19-SW-243.  Preceding this connection to the cellular telephone and tablets, the affidavits set forth how a computer may be connected to such a crime, noting that computers allow subjects to plan, coordinate, execute, and flee the scene of violent crimes.  *See* ¶ 50, 3:19-SW-244; ¶ 47, 3:19-SW-243.  Moreover, the affidavits explained, perpetrators of such violent crimes use computers to gather intelligence before and after the execution of a robbery or like offenses.  *See* ¶ 50, 3:19-SW-244; ¶ 47, 3:19-SW-243.  That the search of these computers necessarily involved a cursory review of innocuous items does not render the warrant constitutionally defective.  *See Williams*, 592 F.3d at 520–21 ("When a search requires review of a large collection of items, such as papers, 'it is certain that some innocuous documents will be examined, at least cursorily, in order to deter mine whether they are, in fact, among those papers authorized to be seized.'").

These facts adequately establish probable cause to search the defendant's cellular telephones and computers.  The district court opinion in *United States v. Gholston*, 993 F. Supp. 2d 704 (E.D. Mich. 2014) is insightful on this point.  In *Gholston*, the district court held that there was probable cause to search a cell phone seized from a defendant after his arrest for being one of

two individuals involved in a robbery of a gas station. *Id.* at 718. The district court made this decision because the affidavit explained that individuals involved in a robbery may use cellular telephones to preplan the robbery. *Id.*; *see also United States v. Pendergrass*, Crim. No. 1:17-CR-315-LMM-JKL, 2018 WL 7283631, at *18 (N.D. Ga. Sept. 11, 2018), *adopted by* 2019 WL 102377, at *1 (N.D. Ga. Jan. 4, 2019) (citation omitted) (holding that probable cause existed to search cell phone of defendant involved in armed robberies because, among other things, the defendant's neighbor stated that she observed him using the phone to communicate with others).

In this case, both affidavits note that the armed robber walked into the Call Federal Credit Union with a cellular telephone to his ear as if he was talking to another person. Moreover, the affidavits explain that toll records for the defendant's phone revealed that he had communicated with someone for twenty-two minutes approximately seventeen minutes before the robbery. That communication occurred during the time period when the phone was located near the southwestern corner of the nearby church. Again, the affidavits explain that in the task force officer's "training and experience, when people act in concert with another to commit a crime, they frequently utilize cellular telephones, computers, tablets, notebook computers, and like devices to communicate with each other through voice calls, text messages, social media accounts, and emails." There was a substantial basis to conclude that there was probable cause to search the defendant's cellular telephones and computers. *See, e.g.*, *United States v. Sims*, 508 F. App'x 452, 460 (6th Cir. 2012) (unpublished) (explaining that the "only probable cause necessary" to secure a warrant or wiretap for a cell phone "is that the phone itself be used in connection with an offense or commonly used by someone committing the offense")

In other words, the affidavits connect: (1) the defendant with the armed robbery; (2) the cellular telephone to the armed robbery; (3) cellular telephones to computers; and (4) cellular telephones and computers to crimes committed by multiple individuals.

The affidavit for the XXXX Willis Street address also connects the defendant with that address. Paragraph 51 of the affidavit notes that based on surveillance of the defendant as set forth in paragraphs 39, 42, and 46, XXXX Willis Street was his primary place of residence post-robbery, and, accordingly, likely had evidence and fruits of the crime as described in Attachment B, including United States currency, clothing used in the robbery, the firearm used in the robbery, and other indicia of the armed robbery. *See* ¶ 51, 3:19-SW-244. That is so, the affidavit explained, because parties responsible for violent acts often hide evidence in locations that they reside and in which they have comfort. *Id.* Connecting the defendant to XXXX Mason Dale Drive and, in turn, Mason Dale Drive to the crime, the affidavit explains that the defendant left from XXXX Mason Dale Drive prior to the robbery and then returned to XXXX Mason Dale Drive after the robbery. The affidavit also states that his father and sister reside at the address, and he is listed as a utilities subscriber. *See* ¶ 48, 3:19-SW-243.

The cases cited by the defendant to combat probable cause for these items do little to provide meaningful analysis here. To begin, the Fourth Circuit's decision in *United States v. Lyles* concerned an affidavit premised on a single trash pull resulting in the discovery of three marijuana stems. 910 F.3d 787, 794 (4th Cir. 2018). This trash pull, standing alone, did not support probable cause to search the residence for marijuana possession. *Id.* The case has no analytical value in this case and on these facts. No different with the district court decision out of Kentucky. *See United States v. Ramirez*, 180 F. Supp. 3d 491 (W.D. Ky. 2016). *Ramirez* concerns an equally

17

skeletal affidavit relying specifically upon the arrest of the defendant for a conspiracy to distribute

narcotics arrest and the presence of the cell phone during the defendant's arrest:

> The four corners of affidavit assert the following facts: 1) when Detective Petter
> arrested Ramirez on May 16, 2013, for conspiring to possess marijuana with the
> intent to distribute, he "was in possession of a Verizon Motorola cell phone, blue
> and gray in color, with phone number (502) 552-7460," and the cell phone was
> seized; 2) Detective Petter knew "through training and field experience that
> individuals may keep text messages or other electronic information stored in their
> cell phones which may relate them to the crime and/or co-defendants/victim." Aff.
> 1–2.

*Id.* at 494.

The affidavit failed to provide any details of the arrest or charges, investigatory steps taken, such

as wiretap warrants, evidence obtained in the search of the defendant's residence, or the fact of an

ongoing DEA investigation.  *Id.* at 496.

In sharp contrast, here, the affidavits provided numerous details about the investigation,

and evidence linking the defendant to the crime, and establishing a reasonable likelihood that

electronic devices may contain relevant evidence.  Furthermore, the affidavit in this case points

out that the defendant was actually using his cell phone at the Credit Union.  Accordingly, the

defendant cannot carry his burden of demonstrating that the magistrate did not have a substantial

basis upon which to conclude there was probable cause to search and seize computers and cell

phones connected to the defendant.

### C.  As Defendant's Primary Residence, XXXX Willis Street had Ample Connection to the $195,000 Armed Robbery of Call Federal Credit Union

A futile extension of his first argument, the defendant's contention that a search of XXXX

Willis Street was not supported by probable cause must fail.  The defendant does not contest that

there was probable cause that he committed the armed robbery.  He focuses solely on the probable

cause to search the residence in which he spent most of his evenings between July 23, 2019, and

August 12, 2019, for evidence of the crime. He argues that there is an insufficient nexus between the defendant's residence and evidence, fruits, and instrumentalities of the armed robbery.

In this case, the magistrate judge had a substantial basis for concluding that there was probable cause to search XXXX Willis Street for evidence, fruits, and instrumentalities of the $195,000 armed robbery of the Call Federal Credit Union.

The affidavit in this case is comprehensive—a thirty-three page affidavit detailing the defendant's connection the robbery, his connection to XXXX Willis Street, and the likelihood that evidence, fruits, and instrumentalities of the crime would be found at XXXX Willis Street. The armed robbery in this case came complete with a black and silver firearm, handwritten note, distinctive clothing (reflective vest, round brimmed hat), and nearly $200,000 in United States currency stolen. *See* ¶¶ 10–12, 15, 16, 3:19-SW-244.

After securing a state search warrant on June 14, 2019, for information pertaining to anonymized accounts in the custody and control of Google, Inc., law enforcement identified a particular account—the Chatrie Account—that fit the information gleaned about the perpetrator of the armed robbery. *Id.* at ¶ 19. The Chatrie Account: (1) was near the church prior to the robbery at the same time that the church witness recalled seeing the suspicious individual in the dark blue Buick sedan; (2) inside the credit union during the robbery; and (3) immediately left the area following the robbery leaving from the area near the church. *Id.* The subscriber information for the Chatrie Account had the email of okellochatrie55@gmail.com, a name of "Jamaican media," and showed a last login date of May 20, 2019. *Id.* at ¶ 20. Law enforcement also determined that the defendant both owned a 2010 blue Buick sedan and purchased a silver and black firearm from Bob Moates Sports shop approximately one month prior to the robbery. *Id.* at ¶ 25.

After obtaining a federal search warrant on July 18, 2019, for historical location information for the Google Account of okellochatrie55@gmail.com and Google Account ID:365520819283, law enforcement not only confirmed the Chatrie Account's location for the time surrounding the robbery but also the account's location between May 1, 2019, and July 15, 2019. *Id.* at ¶ 45.

During the period of July 23, 2019, to July 28, 2019, technical surveillance of the defendant's vehicle showed him at the XXXX Willis Address for 131 hours of recorded time or more than ninety percent of the time. *Id.* at ¶ 46.

Moreover, he spent most evenings at XXXX Willis Street between that period of time and August 12, 2019. Approximately a week before July 23, 2019, law enforcement conducted a license plate reader check for the defendant's blue 2010 Buick Lacrosse and found the Buick parked in front of XXXX Willis Street. They eventually observed the defendant on the porch with a black female who was braiding his hair, walk over to the Buick Lacrosse and retrieve an item out of the back seat. *Id.* at ¶ 48.

The affidavit then provides that the XXXX Willis Street address, based on this surveillance, was the defendant's primary place of residence post-robbery, and, accordingly, likely had evidence and fruits of the crime as described in Attachment B, including United States currency, clothing used in the robbery, and the firearm used in the robbery. *Id.* at ¶ 51. That is so, the affidavit explained, because parties responsible for violent acts often hide evidence in locations in which they reside and have comfort. *Id.* The affidavit also stated that, based on the facts in the affidavit, including surveillance of the defendant following the robbery and his decision to secure another cellular telephone in the name of another individual, the defendant's lifestyle had significantly changed since the robbery on May 20, 2019. *Id.* at ¶ 47. These changes included the place where

he stayed and, such changes, the affidavit explained, "normally occurs to avoid law enforcement suspicion and/or detection." *Id.*   The affidavit then explained that evidence of crimes such as a robbery will be found at an individual's primary place of residence or a place in which they have comfort.  XXXX Willis Street fit that description for this defendant.  *See United States v. Jones*, 2019 WL 5778009, — F.3d —, *3 (4th Cir. 2019) (noting that defendant's residence can be established through law enforcement surveillance).

Based on the affidavit submitted, the magistrate judge had a substantial basis for concluding that probable cause existed to search the XXXX Willis Street address for evidence, fruits, and instrumentalities of the robbery.

To combat the magistrate judge's finding of probable cause, the defendant focuses on the lack of direct evidence connecting his crime or evidence derived therefrom to XXXX Willis Street, and the timing between his armed robbery and law enforcement's execution of a search warrant for XXXX Willis Street.

In other words, he calls on this Court to conclude that there was not a substantial basis to conclude that XXXX Willis Street would include evidence, fruits, or instrumentalities of his armed robbery of the Call Federal Credit Union.  No mind, the defendant implies, that he got away with $195,000 in United States currency held by a credit union and potentially having indicia of credit union ownership, that he used a black and silver firearm during the robbery (a firearm's description that matched the one he purchased from Bob Moates), wore peculiar clothing (a round brimmed hat, reflective sunglasses, reflective traffic vest, and bookbag), handed over a handwritten note, and had a mobile telephone in hand when entering the Credit Union.  According to the defendant, the significant likelihood that these pieces of evidence would be kept in his primary residence is an insufficient nexus to support a constitutional search.

In *United States v. Williams*, the Sixth Circuit affirmed the magistrate judge's finding of probable cause for a residential search warrant in a firearm and drug trafficking investigation because, in part, "it is reasonable to suppose that some criminals store evidence of their crimes in their homes, even though no criminal activity or contraband is observed there."  544 F.3d 683, 686–87 (6th Cir. 2008).   In the same vein, "[a] magistrate may infer a nexus between a suspect and his residence, depending upon 'the type of crime being investigated, the nature of things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places.'" *Id.* (collecting cases from Sixth, Third, and Ninth Circuits).  The Fourth Circuit has similarly rejected the defendant's contention that direct evidence is required that evidence of the crime will be found at the residence, holding that a "magistrate may draw a reasonable inference from the facts stated if the affiant does not assert facts 'directly linking the items sought to the defendant's residence.'"  *United States v. Wienke*, 733 F. App'x 65, 69 (4th Cir. 2018) (unpublished) (per curiam) (quoting *United States v. Grossman*, 400 F.3d 212, 217 (4th Cir. 2005)); *see also United States v. Jones*, 2019 WL 5778009, — F.3d —, *3 (4th Cir. 2019) (citing *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988)).   In *Wienke*, the Fourth Circuit reiterated that "weapons, firearms, documents, photographs, and address books" were the "types of possessions [that] would be kept in [a defendant's] residence."  733 F. App'x at 71.

In this case, the affidavit states that surveillance demonstrated that the defendant resides at XXXX Willis Street and, as such, the residence likely has evidence of the armed robberies because "parties responsible for violent acts often hide evidence in locations that they reside and in which they have comfort."   Importantly, law enforcement recognized that the defendant's lifestyle following the robbery changed.  And, such changes, "normally occur[] to avoid law enforcement suspicion and/or detection."  That is, he began to spend his evenings at XXXX Willis Street with

an unknown black female between July 23, 2019, and August 12, 2019.  Moreover, between July 23, 2019, and July 28, 2019, the defendant spent more than ninety percent of this time in the vicinity of XXXX Willis Street.

The reasonable inference from the affidavit is that the defendant's residence likely held evidence of the armed robberies, including the firearm used in the armed robbery, distinct clothing from the armed robbery, handwriting exemplars, and some portion of the nearly $200,000 in United States currency he stole from the Call Federal Credit Union.  *See United States v. Cobb*, 397 F. App'x  128, 133 (6th Cir. 2010) (unpublished) (concluding that firearm, clothing, and some portion of $100,000 would be found in defendant's residence six weeks after robbery).  It is a reasonable inference that when this amount of money is taken from a  financial institution it will remain for months after the robbery.  *See Cobb*, 397 F. App'x at 133 (6th Cir. 2010) (unpublished); *see also United States v. Jackson*, 756 F.2d 703, 705 (9th Cir. 1985) (concluding that there was probable cause to search defendant's residence after an armed robbery of savings loan association when there "was a reasonable inference that [the defendant] might keep [portion of $228,241 of] stolen currency in his apartment from a bank robbery two months earlier.").  Moreover, the affidavit makes clear that the defendant was last employed by the Home Depot.  Substantial sums of United States currency would be probative of the defendant's involvement with the armed robbery.

Several Fourth Circuit decisions are also insightful to this analysis.  In *United States v. Brown*, the Fourth Circuit affirmed the district court's finding of probable cause to search a defendant's residence in relation to an armed robbery in violation of 18 U.S.C. 2113(a), (d), (f).  96 F. App'x 112 (4th Cir. 2004) (unpublished) (per curiam).  In reaching that conclusion, the Fourth Circuit provided that a "ten page, single-spaced warrant" drafted by an "FBI Special Agent

with expertise in bank robberies" that connected the defendants to the robberies and attested "that proceeds from the bank robberies, as well as other evidence particularly described in an attached list, would be contained within [the defendant's] residence" sufficiently showed "a nexus between [the defendant's] criminal activity and his residence." *Id.* at 113; *see also United States v. Abramski*, 706 F.3d 307, 318–19 (4th Cir. 2013); *United States v. Cureton*, No. RDB-16-0087, 2017 WL 889030, (D. Md. Mar. 6, 2017) (finding probable cause to search residence of defendant suspected of armed robbery based, in part, on four days of surveillance placing the defendant in vicinity of residence).

Similarly, the Fourth Circuit affirmed a residential search several weeks after two armed robberies of a bank in which the robbers stole nearly $12,000. *See United States v. Zenone*, 153 F.3d 725 (4th Cir. Aug. 10, 1998) (table). The *Zenone* panel concluded that the "required nexus for probable cause between the [robbers' joint residence] and the evidence of criminal activity to be seized was clearly shown" where the special agent's "detailed affidavit provided a wealth of facts linking the [robbers] to the commission of the two April 1996 bank robberies." *Id.* at *5. Items seized under the search warrant included a backpack, firearms, ammunition, and clothing (black ski masks and Presidential mask of Ronald Reagan). *Id.* at *3.

As these cases demonstrate, a substantial basis existed for the magistrate judge's conclusion that there was probable cause to search the XXXX Willis location for evidence of the armed robbery of the Call Federal Credit Union. Ample evidence connected the defendant with the armed robbery. After ascertaining his identity based on several search warrants, law enforcement surveilled him. This surveillance plainly demonstrated that XXXX Willis Street was where he spent the vast majority of his time and evenings. It was his residence. And evidence of the crime, as set forth in Attachment B, would naturally be located at this place. Two months is a

24

relatively short amount of time when considering the amount of money stolen from the Credit Union. The firearm used in the robbery matched the description of a firearm that law enforcement traced back to a legally purchased firearm by the defendant. Moreover, the robbery involved distinct clothing and a handwritten note. All of these items are not only likely to be found within a defendant's residence, but they are not likely to dissipate or be destroyed during the time that elapsed between the robbery and the search.

The defendant advances an unconvincing line of cases to rebut this strong probable cause. First, the defendant's analysis is fatally premised on the faulty notion that the affidavit required direct evidence that evidence to be seized "might be in the residence." Going all in on this misguided premise, all but one of the cases cited by the defendant are narcotics cases. Their analysis is frankly irrelevant to this Court's consideration in an armed robbery case involving the aforementioned facts.

The defendant first cites *United States v. Wilhelm* despite acknowledging that the case does not touch at all on the issue of nexus between the crime and place to be searched. 80 F.3d 116 (4th Cir. 1996). The defendant then points to a line of cases involving confidential informants observing drugs in narcotics trafficking cases—*Bynum*, *Blackwood*, and *Clyburn*. *United States v. Bynum*, 292 F.3d 192 (4th Cir. 2002); *United States v. Blackwood*, 913 F.2d 139 (4th Cir. 1990); *United States v. Clyburn*, 24 F.3d 613, (4th Cir. 1994). In each case, a confidential source observes narcotics in a residence within the seventy-two hours preceding the search warrant and either takes part in or observes past controlled purchases and drug deals from the residence. None of these cases provide insight on the nexus between a residence and evidence of an armed robbery where a handwritten note is used and nearly $200,000 is stolen.

25

The one relevant case cited by the defendant—*United States v. Powers*—demonstrates the futility of the defendant's motion.[7]  1. F. Supp. 3d 470 (M.D.N.C. 2014).  There, the district court suppressed a search warrant for the search of a defendant's residence for evidence of an armed robbery where the defendant had no involvement in the armed robbery.  *Id.* at 474–75.  Rather, law enforcement was searching the home of one person for another, non-resident individual who happened to be the subject of an arrest warrant for the armed robbery.  *Id.* at 472–73.  The district court concluded that the search of the residence was not supported by probable cause because the affidavit did not even "suggest that [the arrested party] lived there."  *Id.* at 475.

The case in *Powers* turned on law enforcement's inability to tie the target of the armed robbery to the place to be searched with anything other than an informant's observation of the target in the residence and the fact that they found him there on the day of the execution of an arrest warrant.  As the Fourth Circuit stated in *United States v. Branch*, the search warrant in *Powers* "was issued based on the suspect's *transitory presence*," whereas in *Branch*, law enforcement reasonably believed that the target of the murder investigation lived at the residence to be searched and that evidence of the murder, namely the firearm used, would be found there some two months later.  705 F. App'x 151, 156–57 (4th Cir. 2017) (unpublished) (per curiam) (emphasis added).

In this case, weeks of surveillance established XXXX Willis Street as the primary residence of the defendant and the affidavit supporting probable cause set forth as much.  That is, surveillance established that he was spending the vast majority of his time, including evenings, at XXXX Willis Street with an unknown black female between July 23, 2019, and August 12, 2019.  Moreover,

---

[7] Notably, the district court in *Powers* assessed the nexus between the residence and evidence of an armed robbery and drug trafficking separately.

between July 23, 2019, and July 28, 2019, the defendant spent more than ninety percent of his time in the vicinity of XXXX Willis Street.  Notably, there is no indication that his presence there was as recent as July or otherwise fleeting.   As the Fourth Circuit in *Branch* pointedly stated, "[w]hatever limited persuasive effect *Powers*—a district court decision —might have in another case, it has none here as it is factually inapposite."  *Id.* at 157.

> D.  *Searching XXXX Willis Street and XXXX Mason Dale Drive Several Months after the $195,000 Armed Robbery of Call Federal Credit Union was not Premised on Stale Information*

Again, the defendant errantly relies solely upon narcotics cases in contending that probable cause for the search of XXXX Willis Street several months after the defendant's armed robbery of the Call Federal Credit Union is based upon stale information.  The defendant does not contest that probable cause exists to believe that he is the armed robber of the Call Federal Credit Union. XXXX Willis Street is the residence that law enforcement, from July 23, 2019 through August 12, 2019, discovered he spent most of his evenings.  Indeed, surveillance of the defendant revealed that he spent ninety percent of his time weeks prior to the search  in the vicinity of XXXX Willis Street.  XXXX Mason Dale Drive is similarly connected to the defendant as well as his crime— the Google account connected to Chatrie showed that his account left from XXXX Mason Dale Drive prior to the robbery and then returned there after the robbery, that his father and sister reside at the address, and that he is listed as a utilities subscriber.   In other words, there is not only probable cause to believe that the defendant committed the armed robbery, there is a sufficient nexus between the armed robbery, XXXX Willis Street, and XXXX Mason Dale Drive.

That the robbery occurred several months prior to the execution of the search warrants does not extinguish the presence of probable cause in this case because the nature of the property to be seized demonstrates the likelihood that it still would be present.  "Stale search warrants arise in

two situations: (1) the government waited an extended period of time between the information provided and the execution of the warrant; and (2) the information supporting the search warrant was too old to provide 'present' probable cause."  *United States v. Blizzard*, 313 F. App'x 620, 620–21 (4th Cir. 2009) (unpublished) (per curiam) (citing *United States v. McCall*, 740 F.2d 1331, 1335 (4th Cir. 1984)).

In *Farmer*, the Fourth Circuit explained that, "[t]he vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit."  370 F.3d at 439.  By extension, the *Farmer* panel opined, the nature of the property sought will support a finding of probable cause where the property comprises the type of property or records that  "are not ordinarily destroyed or moved about from one place to another."  *Id.* at 440.  In *Farmer*, the court specifically included bank statements payment receipts as this type of evidence.  Likewise, in *United States v. Hanton*, the court found that three years passing between the events and the search did not render probable cause to search a residence stale because evidence of money laundering was unlikely to have been relocated. 189 F. App'x 247 (4th Cir. 2006).

First, the defendant owned a silver and black firearm similar to the one used in the armed robbery.  The Fourth Circuit has consistently upheld searches for firearms based on facts occurring months earlier than a search warrant is sought and obtained.  *See Branch*, 705 F. App'x at 156–57; *United States v. Anderso*n, 851 F.2d 727, 729 (4th Cir. 1988).  There is little reason to believe the defendant would destroy a firearm, particularly one that he legally purchased.  *See, e.g.*, *United States v. Crowffey*, 182 F. App'x 249, 250 (4th Cir. 2006) (unpublished) (per curiam).

In addition, the defendant was seen wearing distinct clothing and stole nearly $200,000— this factual information is not stale for purposes of establishing probable cause several months

after the robbery. *See, e.g.*, *Cobb*, 397 at 133 (concluding that firearm, clothing, and some portion of $100,000 would be found in defendant's residence six weeks after robbery); *see also Jackson*, 756 F.2d at 705 (holding that probable cause to search defendant's residence after armed robbery of savings loan association where there "was a reasonable inference that [the defendant] might keep [portion of $228,241 of] stolen currency in his apartment from a bank robbery two months earlier."). The Fourth Circuit in *Abramski* affirmed the search of an armed robbery target's residence seven months after the robbery. *Abramski*, 706 F.3d at 318-9 n.9. Lastly, the armed robber used a handwritten note and the search warrant permitted law enforcement to recover any handwriting samples from various sources, including legal documents, diaries, and journals. This type of documentary evidence, the Fourth Circuit has observed, is not ordinarily destroyed or moved about from one place to another. *See, e.g.*, *United States v. Hanton*, 189 F. App'x 247, 251 (4th Cir. 2006) (unpublished) (per curiam).

### E. Suppression would be Unwarranted under United States v. Leon's Good-Faith Exception

Even if defendant's particularity, overbreadth, staleness, and nexus challenges were meritorious, suppression would be unwarranted under the good-faith exception to the exclusionary rule. *See United States v. Leon*, 468 U.S. 897, 922 (1984); *see also United States v. Burton*, 756 F. App'x 295, 300–01 (4th Cir. 2018) (assuming, without deciding that cell phone and home warrants were overbroad, court found that officers acted in good-faith reliance on warrants); *United States v. Qazah*, 810 F.3d 879, 885-86 (4th Cir. 2015) (explaining that "[w]hen officers obtain a search warrant but the requirements of the Fourth Amendment are nonetheless violated, evidence recovered during the search may" be excluded "in certain egregious cases," but that "in

the ordinary course, the exclusion of evidence is not the proper remedy"), *cert. denied*, 136 S. Ct. 2398 (2016).

According to *Leon*, "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. 468 U.S. at 898. As such, exclusion is not an available remedy when the law enforcement officers executing a warrant follow its instructions. As the Supreme Court has explained, the exclusionary rule "does not apply when the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid." *Davis v. United States*, 564 U.S. 229, 238-39 (2011) (quoting *Leon*, 468 U.S. at 922). "The error in such a case rests with the issuing magistrate, not the police officer, and 'punish[ing] the errors of judges' is not the office of the exclusionary rule." *Id.* at 239 (quoting *Leon*, 468 U.S. at 916). Of relevance here, the Court has applied that reasoning both where the warrant was allegedly unsupported by probable cause (as in *Leon*, 468 U.S. at 903), and where it was found to be overbroad (as in the companion case of *Massachusetts v. Sheppard*, 468 U.S. 981, 988–91 (1984)).

The circumstances of this case fall within the heartland of the good-faith exception. The Affiant prepared substantive, detailed affidavits that: (a) described facts that undisputedly establish probable cause to believe that defendant committed the subject offenses; and (b) also included facts that led a neutral magistrate to find probable cause that evidence of those violations would be found in the defendant's residences, on his cellular telephone, and on his computers. The warrant applications were reviewed by prosecutors. The Affiant then submitted the applications to a magistrate judge. Having thus taken "every step that could reasonably be expected," the Affiant was entitled to conclude "that the warrant[s] authorized a search for the materials outlined in the affidavit[s]," *Sheppard*, 468 U.S. at 989. *See United States v. McLamb*, 880 F.3d 685, 690–91 (4th Cir. 2018) (good-faith exception applied where no "judicial precedent" had re-solved legal

30

questions underlying the issuing judge's authority and the FBI consulted with prosecutors before seeking the warrant).

None of the exceptions recognized in *Leon* apply here.  *See United States v. Wellman*, 663 F.3d 224, 228–29 (4th Cir. 2011).  Even if the affidavit ultimately is deemed to lack sufficient particularity, is overbroad, fails to provide a nexus between the residence and armed robbery, or is based on stale information, it was not so "bare bones" or "so lacking in indicia of probable cause" as to render "official belief in its existence was objectively unreasonable."  In this case, nothing in the record suggests that any of these situations applies, and defendant has made no claim to the contrary.

   F.  *Severability of Computer and Cellular Telephone Portions of Search Warrant that Defendant Claims are Overbroad, Lack Particularity, and are Not Supported by Probable Cause would not Warrant Suppression of Evidence Seized*

An "infirmity due to overbreadth does not doom the entire warrant." *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001).  Similarly, neither does an infirmity for lack of probable cause.  *See United States v. Galpin*, 720 F.3d 436, 448 (2d Cir. 2013).  The remedy is to sever the offending phrase(s) from the warrant, suppress any evidence collected under that specific portion, and admit the evidence collected under the valid portions that remain.  *Greene*, 250 F.3d at 477; *cf. Cassady v. Goering*, 567 F.3d 628, 649 (10th Cir. 2009) (McConnell, J., dissenting) (recognizing that "every federal court to consider the issue has adopted the doctrine of severance").

This Court recently addressed the issue of severability in an unpublished opinion.  *See United States v. Jones*, No. 3:17cr71, 2018 WL 935396 (E.D. Va. Feb. 16, 2018).  Should the Court conclude that the warrant's provisions for the defendant's cellular telephones and computers are overbroad or otherwise lack support, blanket suppression is not warranted.

To the contrary, the relevant paragraphs—3, 6, 7, 8, and 9—did not result in the seizure of any evidence of value.  More importantly, those paragraphs do not "so predominate the warrant that the warrant in essence authorizes a 'general, exploratory rummaging in a person's belongings."  *Id.* at *16.  Rather, they relate solely to the seizure of cellular telephones and computers.

As in *Jones*, those items make up a small "fraction of the items to be seized listed on the warrant" and their inclusion did not increase the scope or invasiveness of a search under the other parts of the warrant alone.  *Id.* at *17.  When severing portions of the search warrant relating to the computers and mobile telephones, law enforcement maintained ample probable cause to search the XXXX Willis Street and XXXX Mason Dale Drive. "Therefore, even after severing the portion of the warrant's scope to which [the defendant] objects as overbroad [or lacking in probable cause], all evidence seized during the search would still be admissible because the officers had probable cause to search all the places they did based only on the parts of the warrant that authorized a search for [other items] alone."  *Id.* at *18.

Accordingly, should the Court conclude that the cellular telephone and computer provisions of the warrants lack particularity, are overboard, or lack probable cause support, the Court should sever those paragraphs from the warrants leaving the rest of the evidence recovered intact.

## III.    CONCLUSION

The Court should deny the defendant's motions to suppress evidence recovered from XXXX Willis Street and XXXX Mason Dale Drive.

Respectfully submitted,

G. ZACHARY TERWILLIGER
United States Attorney

32

By:       /s/
_____
Kenneth R. Simon, Jr.
Peter S. Duffey
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Virginia
919 E. Main Street, Suite 1900
Richmond, VA 23219
(804) 819-5400
Fax: (804) 771-2316
Email: Kenneth.Simon2@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of November, 2019, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic

notification of such filing to the following:

Laura Koenig
Office of the Federal Public Defender (Richmond)
701 E Broad Street
Suite 3600
Richmond, VA 23219
Email: Laura_Koenig@fd.org

Paul Geoffrey Gill
Office of the Federal Public Defender (Richmond)
701 E Broad Street
Suite 3600
Richmond, VA 23219
Email: paul_gill@fd.org

Michael William Price
National Association of Criminal Defense Lawyers
1660 L Street NW
12th Floor
Washington, DC 20036
 (202) 465-7615
Email: mprice@nacdl.org
*PRO HAC VICE*

_____/s/_____
Kenneth R. Simon, Jr.
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
919 E. Main Street, Suite 1900
Richmond, VA 23219
(804) 819-5400
Fax: (804) 771-2316
Email: Kenneth.Simon2@usdoj.gov