IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Richmond Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 3:19-CR-130-MHL |
| | ) | |
| OKELLO T. CHATRIE, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUPPRESSION OF EVIDENCE
## OBTAINED FROM BLUE BUICK LACROSSE

The United States of America, by its undersigned attorneys, moves this Court to deny Defendant Okello T. Chatrie's motion to suppress evidence recovered from the defendant's 2010 Blue Buick Lacrosse. (ECF No. 21).

Prior to the May 20, 2019 armed robbery of the Call Federal Credit Union in Midlothian, Virginia, an eyewitness identified a suspicious individual parked near the Journey Christian Church in a newish model, Blue Buick Sedan.  When law enforcement discovered that a Google account belonging to the defendant had all the indices of the credit union armed robber, they also discovered that he owned a 2010 Blue Buick Lacrosse.  Law enforcement sought and obtained a search warrant for that Blue Buick Lacrosse, and during the ensuing search they recovered a twelve round magazine for nine millimeter ammunition and two nine millimeter luger bullets.  *See* 3:19-SW-245.  Not a single electronic device—cellular telephone nor computer—was seized from the defendant's 2010 Blue Buick Lacrosse.

The defendant now seeks blanket suppression of the evidence recovered from the Blue Buick Lacrosse, arguing that authorizing the seizure of computers rendered the warrant overbroad, the affidavit lacked a sufficient nexus between the Blue Buick and the armed robbery, and probable

cause in the affidavit relied on stale information. Like the defendant's conclusory motions to suppress evidence obtained during the search of two residences, the defendant's motion to suppress evidence obtained from his 2010 Blue Buick Lacrosse should be denied.

## I.  BACKGROUND[1]

At approximately 4:50 p.m. eastern standard standard time, on May 20, 2019, a then-unknown male entered the Call Federal Credit Union in Midlothian, Virginia with a firearm. While the man stood in line, victim-teller J.B. asked another teller, J.W., to assist this customer when he reached the counter.  When he reached J.W.'s station, the man presented a handwritten note.  That note read, in part, "I got your family as hostage and I know where you live, If you or your coworker alert the cops or anyone your family and you are going to be hurt . . . I need at least 100k."  After J.W. told him that she did not have access to that amount of money, the armed robber pulled out a silver and black handgun.  Waving the firearm around, he then directed J.W., other Call Federal Credit Union employees, and customers to move to the center of the lobby and get on the floor.   Once there, the armed robber led victims behind the teller counter and into a back room where the Credit Union's safe was located.

Once in the back room, he ordered everyone to their knees at gunpoint and demanded that the bank manager open the safe.  The Credit Union manager, fearing for his life, obliged by opening the safe and handing over $195,000 in United States currency.

After the armed robbery, victims dialed 911 to request assistance.  When law enforcement arrived, they reviewed surveillance video from the credit union and determined that the armed

---

[1] The United States has provided defense counsel with full copies of all search warrant materials in this case.  Their contention that redactions are made without explanation is belied by their failure to request such information.  They are not entitled to the personal identifying information of others at this time.

robber entered the credit union from an area behind a nearby church, held a cellular telephone to his ear when entering the credit union, and ran back towards the church after the robbery.  An employee of that church explained to law enforcement that he saw a suspicious individual in a newer model, blue Buick sedan prior to the time of the robbery.

With this information in hand, law enforcement sought and obtained a state search warrant on June 14, 2019, for information pertaining to anonymized accounts in the custody and control of Google, Inc., identifying Google IDs[2] that were within the vicinity of the Call Federal Credit Union and the nearby church just prior to, and right after, the armed robbery.  This search warrant is commonly referred to as a "GeoFence" warrant.[3]

Based on returns of information for 19 anonymized accounts from Google on June 28, 2019, law enforcement identified several accounts of interest.   The lead case agent recognized at the outset that one particular Google ID (hereinafter, the "Chatrie Account") was likely the device involved in the armed robbery because, among other things, the Chatrie Account: (1) was near the church prior to the robbery at the same time that the church witness recalled seeing the suspicious individual in the dark blue Buick sedan; (2) was inside the credit union at the time of the robbery; and (3) immediately left the area following the robbery from an area near the church.

Pursuant to the state GeoFence search warrant, on July 10, 2019, Google provided additional location information and history for nine of the original nineteen anonymized Google

---

[2] The information gleaned from Google pursuant to this search warrant was entirely anonymized through all but one phase—the final phase—of the returns for the warrant.  More specifically, Google merely provided information associated with a "Device ID" number.  Google explains that "the Device ID is used only for distinguishing unique devices in a particular user's location history and cannot be mapped to an Android ID or an IMEI/MEID."

[3] The United States provides a fuller rundown of the GeoFence warrant in its response in opposition to the defendant's motion to suppress the evidence obtained from that warrant.

IDs to account for thirty minutes before and thirty minutes after the armed robbery.

Based on a review of this additional location information, law enforcement discovered that the Chatrie Account traveled to XXXX Mason Dale Drive following the armed robbery.  Law enforcement assessed XXXX Mason Dale Drive and found that a utilities inquiry showed the defendant listed as a subscriber for the Mason Dale address.   Further database searches revealed that Chatrie was born in Jamaica, had purchased a silver and black nine millimeter G2C Taurus semiautomatic firearm from Bob Moates Sports Shop less than one month before the armed robbery, and owned a blue, 2010 Buick Lacrosse.  Virginia Employment Commission records showed Chatrie's most recent employment as The Home Depot.  The Home Depot shared with law enforcement that Chatrie provided them with a home address of XXXX Mason Dale Drive, email address of okellochatrie55@gmail.com, and phone number of 804-475-8298 during the course of his employment with the home improvement store.

Pursuant to the GeoFence warrant, law enforcement then requested and obtained subscriber information for the Chatrie Account, and two additional anonymized accounts.  On July 11, 2019, Google provided subscriber information for just these three accounts.  The United States did not obtain any subscriber or other identifying information on the other 16 anonymized accounts.  The subscriber information for the Chatrie Account had the email of okellochatrie55@gmail.com, a name of "Jamaican media," and showed a last login date of May 20, 2019, the date of the robbery of Call Federal Credit Union.

Law enforcement later obtained a federal search warrant on July 17, 2019, for historical location information for the Google account of okellochatrie55@gmail.com and Google account

ID: 365520819283.[4] That location information demonstrated, among other things, that the account left XXXX Mason Dale Drive before the robbery and returned to XXXX Mason Dale Drive after the robbery.

Law enforcement also sought and obtained a federal search warrant on July 17, 2019, for historical and prospective location information from Sprint Mobile for the cellular telephone number 804-475-8298. It was later determined that the Sprint account for this phone number was deactivated on July 7, 2019.

On July 19, 2019, law enforcement sought and obtained federal search warrants, one for a cell site simulator to ascertain the defendant's new phone number[5] and another to place a tracking device on the defendant's 2010 blue Buick Lacrosse. At the same time, law enforcement obtained and analyzed toll records from Sprint for the defendant's phone, his father's phone, and his sister's phone. Analysis of the defendant's father's and sister's toll records revealed a telephone number in common that was later discovered to belong to the defendant, despite having someone else listed as the subscriber for the T-Mobile telephone.

Law enforcement also surveilled the defendant beginning in mid-July. Surveillance of the defendant and his vehicle revealed that he spent the vast majority of his time at XXXX Willis Street and XXX Rosegill Road.

Further review of the historical location information obtained from the federal search warrant obtained on July 17, 2019, showed that the defendant spent much of his time at XXXX

---

[4] Importantly, the historical information obtained for Chatrie's account is the same type of information gleaned from the GeoFence warrant. That is, location information for Chatrie's Google account.

[5] No evidence of value was obtained from the use of the cell site simulator.

Mason Dale Drive during the week prior to the robbery, was near the Call Federal Credit Union at the time of the robbery, was near XXXX Mason Dale Drive before and after the robbery, and spent several hours at XXX Rosegill Road.  During the week following the armed robbery, the defendant's phone was located at XXXX Mason Dale Drive and the Rosegill residence.  Law enforcement surveillance between July 23, 2019, and August 12, 2019, revealed that the defendant spent most of his evenings at XXXX Willis Street.

On August 12, 2019, law enforcement sought and obtained a search warrant for the residences located at XXXX Mason Dale Drive, XXXX Willis Street, XXX Rosegill Road, and the Buick Lacrosse.  When executing these search warrants in the early morning of August 13, 2019, law enforcement recovered evidence of value from XXXX Mason Dale Drive and XXXX Willis Street.  At the XXXX Mason Dale Drive residence, law enforcement recovered two robbery-style demand notes from the bedroom belonging to the defendant.  At XXXX Willis Street, law enforcement recovered nearly $100,000 in United States Currency (including bills wrapped in bands signed by the victim-bank teller), a silver and black firearm that appeared to be identical to the firearm used in the robbery, a money counter, and a safe.[6]

The defendant was at XXXX Willis Street when the search warrant was executed.  After being placed under arrest and advised of his *Miranda* rights, the defendant admitted to the armed robbery of the Call Federal Credit Union on May 20, 2019.

On September 17, 2019, a Richmond grand jury returned a two-count indictment for Forced Accompaniment during an Armed Credit Union Robbery, in violation of 18 U.S.C. § 2113(e), and

---

[6] All electronics recovered—whether cellular telephones or computers—returned no evidence of value.  Moreover, the defendant and his girlfriend provided consent to search the cellular telephones and computers recovered from XXXX Willis Street.

Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  The defendant pleaded not guilty on October 1, 2019, and trial was scheduled for December 3, 2019, through December 5, 2019, at 9:00 a.m. before the Honorable M. Hannah Lauck.   At a status conference, on November 12, 2019, the Court granted the defendant's motion to continue trial beyond the speedy trial date.  (ECF No. 34)

On October 22, 2019, the defendant filed the Motions to Suppress that are subject of this response.

## I.   <u>ARGUMENT</u>

The defendant contends that the search warrant for his Buick Lacrosse: (1) is fatally overbroad; (2) fails to provide probable cause for the search of computers; (3) provides an insufficient nexus between the alleged crime and his Buick Lacrosse; and (4) is supported by stale information.

This Court should reject each of the defendant's arguments.

### A.  *The Warrant for the Buick Lacrosse does not Lack Sufficient Particularity*

The defendant calls for blanket suppression of the evidence obtained under the authority of the search warrant because it is overbroad.   *See* Def.'s Mot. to Suppress, ECF No. 20 at 2-4. He contends that the warrant is overbroad because it authorizes the search and seizure of information contained within his mobile telephones and computers such as all internet activity, photographs, chat messages, and correspondence.   *Id.* at 2-3.  As such, he maintains, the United States has been able to examine the intimate personal details, shopping and browsing habits, and personal photographs of the defendant.  *Id.* at 3.  Although set forth as a particularity argument, the defendant's argument also reads as an attack on probable cause to search the defendant's mobile telephone and computers found in the Blue Buick.  *Id.* at 3 ("Assuming probable cause that

7

Mr. Chatrie committed the robbery, this provides probable cause to search for communications immediately surrounding the robbery, not for personal photos or browsing history."). On either front, the Court should reject the defendant's invitation to suppress evidence.

To support his primary argument—that the warrant is overboard because it lacks particularity—the defendant fails to point to a single case supporting his theory. In making his particularity argument, the defendant reads the paragraphs of the warrant in a vacuum, disregarding the context of the warrant in its entirety. It is true that the particularity requirement applies to the warrant, as opposed to the application or supporting affidavit submitted by the applicant. *See United States v. Hurwitz*, 459 F.3d 463, 470 (4th Cir. 2006) (citing *Groh v. Ramirez,* 540 U.S. 551, 557 (2004)). This particularity requirement may, however, be satisfied by cross-reference in the warrant to separate documents that identify items to be seized in sufficient detail. *See Groh*, 540 U.S. at 557–58. "As a general rule, a supporting affidavit or document may be read together with (and considered part of) a warrant that otherwise lacks sufficient particularity 'if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant.'" *Hurwitz*, 459 F.3d at 470–71 (quoting *Groh*, 540 U.S. at 557–58).

In the Fourth Circuit, it is sufficient either for the warrant to incorporate the supporting document by reference or for the supporting document to be attached to the warrant itself. *Id.* at 471. The entire warrant should be reviewed as a whole. *United States v. Washington*, 852 F.2d 803, 805 (4th Cir. 1988). Accordingly, the warrant here should be reviewed in its entirety, including the supporting affidavit and attachments. Furthermore, in reviewing warrants, courts are instructed to avoid reading their terms in a "hypertechnical manner," and should opt instead for a "commonsense and realistic approach . . . [so as] to avoid turning a search warrant into a

constitutional straight jacket." *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010) (marks and citation omitted).

This commonsense approach extends to vetting the ensuing search.  In this case, the requirement for a commonsense reading makes the defendant's argument, that the warrant is constitutionally defective because innocent photos and browsing history are captured as part of the probable cause search of the defendant's cellular telephones and computers, misguided.

For example, in *United States v. Fawole*, a case cited by the defendant, the Fourth Circuit acknowledged that innocent items may indeed, and constitutionally, be seized when they are contained within an item permissibly seized pursuant to a search warrant.  785 F.2d 1141, 1144 (4th Cir. 1986), *abrogation on other grounds recognized by Williams*, 592 F.3d at 523 n.3.  In that case, a briefcase that was within the scope of the warrant because it could have plausibly contained the items to be searched for, namely "address books, diaries, business records, documents, receipts, and warranty books," contained innocuous documents with no hint of criminality.  *Id.*  The Fourth Circuit commonsensically explained that although seizure of certain documents in the briefcase exceeded the scope of the warrant, "the seizure and return of items within a single briefcase containing evidence of a crime does not amount to the sort of 'general, exploratory rummaging in a person's belongings' proscribed by the Fourth Amendment."  *Id.* The Supreme Court has recognized the home as deserving of maximal Fourth Amendment protection.  *See Florida v. Jardines*, 569 U.S. 1, 6 ("[W]hen it comes to the Fourth Amendment, the home is first among equals.").

Nevertheless, a search of a home pursuant to a search warrant necessarily involves searching through items that are otherwise innocuous to find evidence of a crime.  So to does the search of every person or vehicle.  The defendant's cellphone and computers are no different.  His

argument defies logic and finds no support in Fourth Amendment jurisprudence.  It should be rejected.

The defendant points to paragraphs two, three, and six through nine of the warrant as demonstrative of their constitutional deficiency.  Paragraph 2 of Attachment B provides that law enforcement is permitted to seize "[a]ll records relating to violations of" armed credit union robbery, forced accompaniment during such a robbery, possessing a firearm during the commission of these crimes of violence, as well as any records going to the "planning, execution, and concealment of [these] crimes."  *See* 3:19-SW-245.   Paragraph 3 goes on to provide for the seizure of "[m]obile telephones."  *Id.*   Paragraph 6 similarly provides for seizure of "any computer or storage medium whose seizure is otherwise authorized by th[e] warrant, and  any computer or storage medium that contains or in which is stored records or information that is otherwise called for by th[e] warrant."  *Id.*   Paragraphs 7 through 9 of Attachment B merely offer the technical definitions attributed to records, information, computer, and storage medium.  *Id.*  The Application and Affidavit to the warrant plainly sets forth that the search of the vehicle and the items to be seized are related to the armed robbery of the credit union, specifically to violations of 18 U.S.C. § 2113 and 18 U.S.C. § 924(c)(1)(A), respectively.   Over fifteen pages of the affidavit detail the probable cause that the defendant committed this crime and his connection to the Blue Buick Lacrosse.  Then, the affidavit makes clear that the Buick Lacrosse, based on its connection the defendant and the crime, likely have evidence, fruits, and instrumentalities of the crime.

Moreover, the defendant's argument also disregards the limiting factor of Paragraph 2 in Attachment B, which provides an illustrative list of the records at issue.  In addition to requiring that the evidence seized related to specific crimes, the warrant also identifies an illustrative list of the records to be collected in paragraph 2.  Courts have held that a warrant meets the Fourth

Amendment particularity requirement where, as here, the warrant contains a description of the items to be seized that is "delineated in part by an illustrative list of seizable items." *United States v. Riley*, 906 F.2d 841, 844–45 (2d Cir. 1990). In reaching this conclusion, courts have recognized that where, as here, a warrant contains an illustrative list of records, that list further limits the discretion of the executing agents to construe the warrant in light of that directive and to seize only records similar to those records listed in the warrant. *Id.*

Despite the clear particularity of the warrant and accompanying documents in this case, the defendant calls the Court's attention to case law that is wholly inapposite. Consider, for example, *Coolidge v. New Hampshire*. 403 U.S. 443 (1971). There, the Supreme Court analyzed the warrantless search and seizure of a defendant's car after concluding that the warrant issued for that automobile was not issued by "neutral and detached magistrate." *Id.* at 453. In that context, the Supreme Court rejected the government's contention that the plain view doctrine nevertheless protected the search of the automobile by pointing to the underpinnings of the warrant requirement. In doing so, the *Coolidge* Court pointed, in part, to the interest in having searches be "as limited as possible" to avoid subjection to an "exploratory rummaging" of [one's] "belongings." *Id.* at 467. That was the extent of the Supreme Court's particularity analysis in *Coolidge*. One of the cases cited in *Coolidge* for the aforementioned proposition is also cited by the defendant. Like *Coolidge*, *Stanford v. Texas* does nothing to redeem the defendant's argument. 379 U.S. 476 (1965).

In *Stanford*, the Supreme Court dealt with the interplay between the First and Fourth Amendment, reminding that the Fourth Amendment guards against more than writs of assistance permitting general searches whenever and wherever. *Id.* at 482. Rather, the *Stanford* Court noted, the protection of freedom of expression through literature and the like was sacrosanct to a robust

11

Fourth Amendment protection. *Id.* ("[T]hings to be seized" must "be accorded the most scrupulous exactitude when the things are books, and the basis for their seizure is the ideas which they contain."). Indeed, the Supreme Court eschewed analogizing to seizure of "weapons, narcotics or cases of whiskey" because rather than contraband of any kind the warrant at issue in *Stanford* permitted seizure of "literary material" concerning the Community Party of Texas and operations of that party. *Id.* at 486. This "language," the Court opined, was "constitutionally intolerable" as it swept too broadly. Stated simply the defendant's reliance on these cases is misplaced, because he takes their language out of its context.

The two Fourth Circuit decisions cited by the defendant are similarly unavailing. In addition to *Fawole*, the defendant mentions *United States v. Uzenski*. 434 F.3d 690 (4th Cir. 2006).

In *Uzenski*, a panel assessed whether blanket suppression should result from law enforcement seizing items outside the scope of a residential search warrant during a search for evidence relating to a defendant's manufacture of home-made pipe bombs. In analyzing that issue, the panel explained that blanket suppression is an "extraordinary remedy" reserved for extreme circumstances and it is not a remedy "[e]ven where officers exceed the bounds of their authority pursuant to the warrant . . . [and] seize[] items [ ] not identified in the warrant." *Id.* at 706. The *Uzenski* panel made plain that blanket suppression is only warranted when "a fishing expedition for the discovery of incriminating evidence" occurs—for example, when a warrant authorizes a search for four weapons and marijuana but the searching agencies seize thirty-five items, including firearms, ammunition, and various drug paraphernalia or where officers seized 667 items not specified by the warrant. *Id.* In this case, the officers seized only those items that they were authorized to seize, rendering *Uzenski* wholly irrelevant.

The search warrants in this case are sufficiently particular and, accordingly, the defendant's

motion to suppress should be denied.

B. *Search of Cellular Telephones and Computers Located in the Defendant's Car was Supported by Probable Cause*[7]

When the defendant contends that the warrant fails to establish probable cause to seize and search the his computers found in his vehicle, he runs into the insurmountable task of demonstrating that there was not substantial evidence in the record supporting the magistrate's decision to issue the warrant.

Probable cause is a "practical, nontechnical conception," and a magistrate judge's determination of this practical conception is "to be paid great deference by reviewing courts" so as to avoid the "after-the-fact scrutiny by courts of the sufficiency of an affidavit . . . tak[ing] the form of de novo review." *United States v. Graham*, 93 F. App'x 511, 514 (4th Cir. 2004) (unpublished) (per curiam).   "[The] inquiry is thus limited to whether there was a substantial basis for determining the existence of probable cause." *See United States v. McNeal*, 818 F.3d 141, 154–55 (4th Cir. 2016).   Probable cause requires only "a fair probability, and not a prima facie showing, that contraband or evidence of a crime will be found in a particular place."   *United States v. Bosyk*, 933 F.3d 319, 325 (4th Cir. 2019) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (internal quotation marks omitted)).

---

[7] The defendant's motion header states that the search warrant lacked a sufficient nexus between the place to be searched and the alleged crime.  The argument, however, focuses solely on the probable cause for electronic devices aside from the cellular telephones.  Nevertheless, because the defendant arguably raises the issue so we address it below.

In this case, the magistrate judge had a substantial basis for concluding that there was probable cause to search computers and other storage mediums[8] recovered in the defendant's vehicle, for evidence of the $195,000 armed robbery of the Call Federal Credit Union.

There is probable cause to believe the defendant committed the armed robbery at the Call Federal Credit Union.   As set forth in the affidavit, the armed robber walked into the credit union with a mobile telephone to his ear.   *See* ¶ 13, 3:19-SW-245. Subsequent investigation revealed that a Google account associated with the defendant fit the location information for the perpetrator of the armed robbery. *See* ¶¶ 18, 19, 45, 3:19-SW-245.  In other words, there was probable cause to believe that the defendant utilized a mobile telephone to undertake the armed robbery of the Call Federal Credit Union—an instrumentality of the crime that also included evidence of the crime.   Indeed, location information for the defendant's Google accounts showed his account to be at or near the credit union at the time of the crime.   *See* ¶ 45, 3:19-SW-245.  And, it is reasonable for the magistrate judge to infer that it was the defendant's use of the cellular telephone that placed his Google account at the scene of the crime.

No different with the authorization to search computers.   The affidavit sets forth how a computer may be connected to such a crime, noting that computers allow subjects to plan, coordinate, execute, and flee the scene of violent crimes.   *See* ¶ 47, 3:19-SW-245.  Moreover, perpetrators of such violent crimes, the affidavit continues, use computers to gather intelligence before and after the execution of a robbery or like offenses.   *Id.*  Although this particular affidavit does not contain the sentence noting that data from cellular telephones is often backed up to computers, Magistrate Judge Young signed each of the warrants in this case.   There was probable

---

[8] Storage mediums are defined to include "any physical object upon which computer data can be recorded," such as "hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media."

cause to search and seize these items.  *See United States v. Gholston*, 993 F. Supp. 2d 704 (E.D. Mich. 2014).

In *Gholston*, the district court held that there was probable cause to search a cell phone seized from a defendant after his arrest for being one of two individuals involved in a robbery of a gas station.  *Id.* at 718.  The district court made this decision because the affidavit explained that individuals involved in a robbery may use cellular telephones to preplan the robbery.  *Id.*;  *see also United States v. Pendergrass*, Crim. No. 1:17-CR-315-LMM-JKL, 2018 WL 7283631, at *18 (N.D. Ga. Sept. 11, 2018), *adopted by* 2019 WL 102377, at *1 (N.D. Ga. Jan. 4, 2019) (citation omitted) (holding that probable cause existed to search cell phone of defendant involved in armed robberies because, among other things, the defendant's neighbor stated she observed him using the phone to communicate with others).

By extension, there was probable cause to believe that evidence and fruits and instrumentalities of the defendant's armed robbery would be found in his blue Buick Lacrosse.

The blue Buick Lacrosse registered to the defendant matched the description given by witness, T.R.  *See* ¶ 48, 3:19-SW-245.  When T.R. was shown photographs of the defendant's vehicle, he noted that the vehicle in the photographs was the same make, model, body shape, color, and year as the vehicle he observed behind Journey Christian Church before the robbery on May 20, 2019.  *Id.*  Based upon Google's return of anonymized information pursuant to the state GeoFence warrant, law enforcement discovered that the Chatrie Account was near the southwestern corner of Journey Christian Church before the robbery at approximately 4:30 to 4:40 p.m.  This was the same time period during which T.R. recalled encountering a suspicious individual in a blue Buick sedan.  That account, law enforcement later discovered, had subscriber information with an email address of Okellochatrie55@Gmail.com.

As the affidavit commonsensically explained, there was probable cause to believe the defendant committed the armed robbery of the Call Federal Credit Union using the blue Buick, and, accordingly, it was both necessary and prudent to search the blue Buick Lacrosse for fruits and evidence of the crime.

Stated simply, probable cause to search the vehicle used during the armed robbery for evidence and fruits and instrumentalities of the robbery abounded. *See United States v. Barros*, 340 F. App'x 509, 513 (10th Cir. 2009) (unpublished) (citation omitted) ("The warrant clearly noted a robbery took place and a suspect matching [defendant's] description fled the scene in a car similar in color to [defendant's] vehicle and bearing license plates registered to [him]. These statements established connections between [defendant] and the robbery and provided probable cause to believe evidence of the robbery might be found in [his] car[.]").

The cases cited by the defendant do not support suppression in this case. To begin, the Fourth Circuit's decision in *United States v. Lyles* concerned an affidavit premised on a single trash pull resulting in the discovery of three marijuana stems. 910 F.3d 787, 794 (4th Cir. 2018). This trash pull, standing alone, did not support probable cause to search the residence for marijuana possession. *Id.* The case has no analytical value in this case and on these facts. No different with the district court decision out of Kentucky. *See United States v. Ramirez*, 180 F. Supp. 3d 491 (W.D. Ky. 2016). *Ramirez* concerns an equally skeletal affidavit relying specifically upon the arrest of the defendant for a conspiracy to distribute narcotics arrest and the presence of the cell phone during the defendant's arrest:

> The four corners of affidavit assert the following facts: 1) when Detective Petter arrested Ramirez on May 16, 2013 for conspiring to possess marijuana with the intent to distribute, he "was in possession of a Verizon Motorola cell phone, blue and gray in color, with phone number (502) 552-7460," and the cell phone was seized; 2) Detective Petter knew "through training and field experience that

individuals may keep text messages or other electronic information stored in their cell phones which may relate them to the crime and/or co-defendants/victim." Aff. 1–2.

*Id.* at 494.

The affidavit failed to provide any details of the arrest or charges, investigatory steps taken, such as wiretap warrants, evidence obtained in the search of the defendant's residence, or the fact of an ongoing DEA investigation. *Id.* at 496. In sharp contrast, here the affidavit is exceptionally detailed, and the link between the defendant's car and the robbery – which has already been discussed – is well documented in the affidavit. As a result, the defendant cannot carry his burden that the warrant's authorization to search and seizure computers and cell phones were not supported by probable cause.

### C. Searching the Blue Buick Sedan Several Months after the $195,000 Armed Robbery of Call Federal Credit Union was not Premised on Stale Information

The defendant relies solely upon narcotics cases in contending that probable cause for the search of the vehicle several months after the defendant's armed robbery of the Call Federal Credit Union is based upon stale information. The defendant does not contest that probable cause exists to believe that he is the armed robber of the Call Federal Credit Union. Nor does he contest the facts tying him to that vehicle. Rather, the defendant argues that staleness renders the evidence obtained through the search warrant suppressible. Case law supports rejecting the defendant's argument.

"Stale search warrants arise in two situations: (1) the government waited an extended period of time between the information provided and the execution of the warrant; and (2) the information supporting the search warrant was too old to provide 'present' probable cause." *United States v. Blizzard*, 313 F. App'x 620, 620–21 (4th Cir. 2009) (unpublished) (per curiam) (citing *United States v. McCall*, 740 F.2d 1331, 1335 (4th Cir. 1984)).

First, the defendant owned a silver and black firearm similar to the one used in the armed robbery. The Fourth Circuit has consistently upheld searches for firearms based on facts months earlier than a search warrant is sought and obtained. *See Branch*, 705 F. App'x at 156–57; *United States v. Anderso*n, 851 F.2d 727, 729 (4th Cir. 1988). There is little reason to believe the defendant would destroy a firearm, particularly one that he legally purchased. *See, e.g.*, *United States v. Crowffey*, 182 F. App'x 249, 250 (4th Cir. 2006) (unpublished) (per curiam).

In addition, the defendant was seen wearing distinctive clothing and stole nearly $200,000—this factual information is not stale for purposes of establishing probable cause several months after the robbery. *See, e.g.*, *United States v. Cobb*, 397 F. App'x 128, 133 (6th Cir. 2010) (unpublished) (concluding that firearm, clothing, and some portion of $100,000 would be found in defendant's residence six weeks after robbery); *see also United States v. Jackson*, 756 F.2d 703, 705 (9th Cir. 1985) (concluding that probable cause to search defendant's residence after an armed robbery of savings loan association where there "was a reasonable inference that [the defendant] might keep [portion of $228,241 of] stolen currency in his apartment from a bank robbery two months earlier."). The Fourth Circuit in *Abramski* affirmed the search of an armed robbery target's residence seven months after the robbery. *Abramski*, 706 F.3d at 318-9 n.9. Lastly, the armed robber used a handwritten note, and the search warrant permitted law enforcement to recover any handwriting samples from various sources, including legal documents, diaries, and journals. This type of documentary evidence, the Fourth Circuit has observed, is not ordinarily destroyed or moved about from one place to another. *See, e.g.*, *United States v. Hanton*, 189 F. App'x 247, 251 (4th Cir. 2006) (unpublished) (per curiam).

### D. *Suppression would be Unwarranted under United States v. Leon's Good-Faith Exception*

Even if defendant's particularity, overbreadth, staleness, and nexus challenges were meritorious, suppression would be unwarranted under the good-faith exception to the exclusionary rule. *See United States v. Leon*, 468 U.S. 897, 922 (1984); *see also United States v. Burton*, 756 Fed. Appx 295, 300-01 (4th Cir. 2018) (assuming, without deciding that cell phone and home warrants were overbroad, court found that officers acted in good-faith reliance on warrants); *United States v. Qazah*, 810 F.3d 879, 885-86 (4th Cir. 2015) (explaining that "[w]hen officers obtain a search warrant but the requirements of the Fourth Amendment are nonetheless violated, evidence recovered during the search may" be excluded "in certain egregious cases," but that "in the ordinary course, the exclusion of evidence is not the proper remedy"), *cert. denied*, 136 S. Ct. 2398 (2016). According to *Leon*, "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. 468 U.S. at 898. As such, exclusion is not an available remedy when the law enforcement officers executing a warrant follow its instructions.

As the Supreme Court has explained, the exclusionary rule "does not apply when the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid." *Davis v. United States*, 564 U.S. 229, 238-39 (2011) (quoting *Leon*, 468 U.S. at 922). "The error in such a case rests with the issuing magistrate, not the police officer, and 'punish[ing] the errors of judges' is not the office of the exclusionary rule." *Id.* at 239 (quoting *Leon*, 468 U.S. at 916). Of relevance here, the Court has applied that reasoning both where the warrant was allegedly unsupported by probable cause (as in *Leon*, 468 U.S. at 903), and where it was found to be overbroad (as in the companion case of *Massachusetts v. Sheppard*, 468 U.S. 981, 988–91 (1984)).

The circumstances of this case fall within the heartland of the good-faith exception. The Affiant prepared substantive, detailed affidavits that: (a) described facts that undisputedly establish probable cause to believe that defendant committed the subject offenses; and (b) also included facts that led a neutral magistrate to find probable cause that evidence of those violations would be found in the defendant's vehicle, on his cellular telephone, and on his computers. The warrant applications were reviewed by prosecutors. The Affiant then submitted the applications to a magistrate judge. Having thus taken "every step that could reasonably be expected," the Affiant was entitled to conclude "that the warrant[s] authorized a search for the materials outlined in the affidavit[s]," *Sheppard*, 468 U.S. at 989. *See United States v. McLamb*, 880 F.3d 685, 690-91 (4th Cir. 2018) (good-faith exception applied where no "judicial precedent" had re-solved legal questions underlying the issuing judge's authority and the FBI consulted with prosecutors before seeking the warrant).

None of the exceptions recognized in *Leon* apply here. *See United States v. Wellman*, 663 F.3d 224, 228–29 (4th Cir. 2011). Even if the affidavit ultimately is deemed to lack sufficient particularity, overbroad, fails to provide a nexus between the residence and armed robbery, or is based on stale information, it was not so "bare bones" or "so lacking in indicia of probable cause" as to render "official belief in its existence was objectively unreasonable." In this case, nothing in the record suggests that any of these situations applies, and defendant has made no claim to the contrary.

### E. Computer and Cellular Telephone Portions of Search Warrant are Severable

An "infirmity due to overbreadth does not doom the entire warrant." *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001). Similarly, neither does an infirmity for lack of probable cause. *See United States v. Galpin*, 720 F.3d 436, 448 (2d Cir. 2013). The remedy is to sever the offending phrase(s) from the warrant, suppress any evidence collected under that specific portion, and admit the evidence collected under the valid portions that remain. *Greene*, 250 F.3d at 477; *cf. Cassady v. Goering*, 567 F.3d 628, 649 (10th Cir. 2009) (McConnell, J., dissenting) (recognizing that "every federal court to consider the issue has adopted the doctrine of severance").

This Court recently addressed the issue of severability in an unpublished opinion. *See United States v. Jones*, No. 3:17cr71, 2018 WL 935396 (E.D. Va. Feb. 16, 2018). Should the Court conclude that the warrant's provisions for the defendant's cellular telephones and computers are overbroad or otherwise lack support, blanket suppression is not warranted.

To the contrary, the relevant paragraphs—3, 6, 7, 8, and 9—did not result in the seizure of any evidence of value. More importantly, those paragraphs do not "so predominate the warrant that the warrant in essence authorizes a 'general, exploratory rummaging in a person's belongings." *Id.* at *16. Rather, they relate solely to the seizure of cellular telephones and computers.

As in *Jones*, those items make up a small "fraction of the items to be seized listed on the warrant" and their inclusion did not increase the scope or invasiveness of a search under the other parts of the warrant alone. *Id.* at *17. When severing portions of the search warrant relating to the computers and mobile telephones, law enforcement maintained ample probable cause to search the home. "Therefore, even after severing the portion of the warrant's scope to which [the defendant] objects as overbroad [or lacking in probable cause], all evidence seized during the

search would still be admissible because the officers had probable cause to search all the places they did based only on the parts of the warrant that authorized a search for [other items] alone." *Id.* at *18.

Accordingly, should the Court conclude that the cellular telephone and computer provisions of the warrant lack particularity, are overboard, or lack probable cause support, the Court should sever those paragraphs from the warrant leaving the rest of the evidence recovered intact.

## II.    CONCLUSION

The Court should deny the defendant's motions to suppress evidence recovered from the Defendant's 2010 Blue Buick Lacrosse.

Respectfully submitted,

G. ZACHARY TERWILLIGER
United States Attorney


By:    _____/s/_____
Kenneth R. Simon, Jr.
Peter S. Duffey
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Virginia
919 E. Main Street, Suite 1900
Richmond, VA 23219
(804) 819-5400
Fax: (804) 771-2316
Email: Kenneth.Simon2@usdoj.gov
_____

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of November, 2019, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic

notification of such filing to the following:

Laura Koenig
Office of the Federal Public Defender (Richmond)
701 E Broad Street
Suite 3600
Richmond, VA 23219
Email: Laura_Koenig@fd.org

Paul Geoffrey Gill
Office of the Federal Public Defender (Richmond)
701 E Broad Street
Suite 3600
Richmond, VA 23219
Email: paul_gill@fd.org

Michael William Price
National Association of Criminal Defense Lawyers
1660 L Street NW
12th Floor
Washington, DC 20036
 (202) 465-7615
Email: mprice@nacdl.org
*PRO HAC VICE*

_____/s/_____
Kenneth R. Simon, Jr.
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
919 E. Main Street, Suite 1900
Richmond, VA 23219
(804) 819-5400
Fax: (804) 771-2316
Email: Kenneth.Simon2@usdoj.gov