**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Case No. 3:19cr130 |
| | ) | |
| **OKELLO T. CHATRIE,** | ) | |
| **Defendant** | ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO
MOTION TO SUPPRESS EVIDENCE
OBTAINED FROM SEARCH OF BUICK LACROSSE**

Okello Chatrie, through counsel, replies as follows to the government's response to his motion to suppress evidence obtained from the search of the Buick Lacrosse. *See* ECF Nos. 21 and 43.

**I.    The car search warrant is fatally overbroad and cannot be severed.**

When the founders of our country wrote the Fourth Amendment, their concern was focused on prohibiting "general warrants known as writs of assistance under which officers of the Crown had so bedeviled the colonists." *Stanford v. Texas*, 379 U.S. 476, 481 (1965). These general warrants had allowed customs officials to be able to search all manner of private places to ferret out goods that American colonists had imported without paying British taxes. *Id.* Early Americans so hated these general warrants because "they placed the liberty of every man in the hands of every petty officer" and were the "worst instrument[s] of arbitrary power." *Id.* The Fourth Amendment was intended to protect citizens from such general searches by requiring that a neutral judge find probable cause to seize and search for particular items.

The primary purpose of the particularity requirement was to eliminate the discretion of the police officers executing the search warrant as to what items the judge had authorized them to

1

seize.  "As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."  *Stanford*, 379 U.S. at 485-86 (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927).

When the government seizes, and the warrant purports to authorize seizure of, cell phones and electronic devices and searches them, the government has access to and possession of a trove of private information that would never be available in one location but for the advent of technology.  The Supreme Court's decision in *Riley v. California*, 573 U.S. 373 (2015), recognizes that through cell phones, the "sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions." *Id.* at 394.  "[T]here is an element of pervasiveness that characterizes cell phones but not physical records. Prior to the digital age, people did not typically carry a cache of sensitive personal information with them as they went about their day. Now it is the person who is not carrying a cell phone, with all that it contains, who is the exception." *Id.* at 395.  "A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is." *Id.* at 396-97.

There is nothing in the affidavit supporting the warrant that suggests that searching the entire phone or a computer/storage device for essentially limitless "records and information," including all internet activity, is justified.  The affidavit lays out information about a bank robbery occurring and why the government believed that Mr. Chatrie was a suspect in that robbery.  As Mr. Chatrie indicated in his motions, the affidavit in support of the warrant provide probable cause to search for mobile phone communications immediately surrounding the robbery.  *See* ECF No. 21 at 3.  There is absolutely no specific, factual basis for the government to apply for or for the judge to authorize the expansive seizures and searches of entire mobile phones and electronic

devices in this case. The only information connecting the robbery suspect to an electronic device was an observation that the robber appeared to be on a cell phone around the time of the robbery, which provides probable cause to search for evidence of mobile phone communications around the time of the robbery—nothing more.

The overbroad searches and seizures the warrant purported to authorize in this case leave only to the officer's discretion what items of evidence should be seized from the phones and slightly less broadly from electronic devices. As the Supreme Court recognized many decades ago, the Fourth Amendment requires a "neutral and detached" judge to find probable cause because the investigating officers are engaged in "the often competitive enterprise of ferreting out crime." *Coolidge*, 403 U.S. at 449 (quoting *Johnson v. United States*, 333 U.S. 10, 13-14 (1948)). "[T]he whole point of the basic rule so well expressed by Mr. Justice Jackson is that prosecutors and policemen simply cannot be asked to maintain the requisite neutrality with regard to their own investigations—the 'competitive enterprise' that must rightly engage their single-minded attention." *Id.* at 450. Thus, it is the role of only the courts to enforce the constitutional requirement of particularity.

The government urges the Court to sever the overbroad portions of the warrants, but the pervasiveness of the invalid portions of the warrant prevent severance. "Severability can apply to a warrant with invalid portions 'only if the valid portions of the warrant [are] sufficiently particularized, distinguishable from the invalid portions, and make up the greater part of the warrant.'" *United States v. Sells*, 463 F.3d 1148, 1151 (10th Cir. 2006) (quoting *United States v. Naugle*, 997 F.3d 819, 822 (10th Cir. 1993)); *United States v. Sykes*, No. 2016 WL 8291220, at *17 (E.D.N.C. Aug. 22, 2016), report and recommendation adopted, 2016 WL 6882839 (E.D.N.C. Nov. 22, 2016). "While the severance analysis does not end with a mere counting of provisions,

the number of valid versus invalid provisions is one element in the analysis of which portion makes up the greater part of the warrant." *Cassady v. Goering*, 567 F.3d 628, 640 (10th Cir. 2009).

In this case, "[t]he scope and invasiveness of the invalid portions also counsel against severance," *United States v. Powers*, 1 F. Supp. 3d 470, 479 (M.D.N.C. 2014) (finding severability inappropriate because the court could not conclude that valid portion of the warrant made up the greater part of the warrant). Here, the warrants list only broad categories of materials, most of which are broader than the scope of probable cause, and none of which particularly describe the information for which probable cause existed. For example, only four paragraphs out of eleven listed in the items to be searched for and seized limits itself in any way to evidence involving or related to an armed bank robbery. *See* Warrants Attach. B ¶¶ 1, 2, 5, and 10. The warrant primarily targets seizing and searching digital data, which does not support or even make severance possible. *See, e.g., United States v. Marcus*, 807 F. Supp. 934, 937 (E.D.N.Y. 1992) (refusing to sever overbroad portions of warrant where probable cause established reason to believe four pornographic slides would be found, but those four slides were not even specifically described in the warrant).

The government's expected reliance on the good faith argument does not save these warrants. *See, e.g., Marcus*, 807 F. Supp. at 935 (finding good faith inapplicable to warrant based on probable cause to search for four pornographic slides where warrant did not even describe slides and greatly expanded the types of information and items that could be searched and seized); *see also Cassady*, 567 F.3d at 643-44 (rejecting qualified immunity and finding that no reasonable officer could have believed that impermissibly broad warrant complied with Fourth Amendment). Thus, the Court should suppress all evidence seized pursuant to the search of the car.

## II. The search warrant of the car also lacked a sufficient nexus between the place to be searched and the alleged crime.

In analyzing the nexus issue in the car warrant, it is critical to remember that there is far more than a semantic difference between probable cause to search a particular place and probable cause to arrest a particular person. The affidavit in support of the car warrant lays out in detail the evidence the police obtained identifying Mr. Chatrie as a suspect in this case. Aside from his ownership of the car and its potential use in the robbery three months earlier, however, there is nothing but generalized assertions by the affiant that evidence of the crime would be found in the car. "It does not follow, however, that probable cause for arrest would justify the issuance of a search warrant, or, on the other hand, that probable cause for a search warrant would necessarily justify an arrest. Each requires probabilities as to somewhat different facts and circumstances—a point which is seldom made explicit in the appellate cases." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 n.6 (1978) (quoting LaFave, Search and Seizure: "The Course of True Law . . . Has Not . . . Run Smooth," U. Ill. Law Forum (1966)).

Simply because a criminal suspect has a car does not give the government the right to search it for evidence of the suspected crime. Rather, there must be particularized information tying the place to be searched to the items to be seized within a relevant timeframe. "The fact that there is probable cause to arrest a person for a crime does not automatically give police probable cause to search his residence or other area in which he has been observed for evidence of that crime." *United States v. Savoca*, 739 F.2d 220, 224 (6th Cir. 1984). Were the rule to be the opposite, there would be no distinction between probable cause to arrest and probable cause to search anywhere to which the suspect happens to have a connection. *Id.* at 225. As discussed above, however, probable cause to arrest and probable cause to search a place for evidence of a crime are distinct analyses—distinct, as applicable here, because the Fourth Amendment requires

5

sufficient, particularized evidence that a nexus exists between the place to be searched and the items to be seized. Because here there was not a sufficient and timely nexus to the car, the Court must suppress evidence found therein.

## CONCLUSION

The Court must find that the warrant was overbroad and that the affidavit did not provide a sufficient nexus to show that evidence of the alleged crime would be found in the place and on the items to be searched. As such, the Court must suppress all evidence gained from search of the car.

Respectfully submitted,
OKELLO T. CHATRIE

By: _____/s/_____
Laura Koenig
Va. Bar No. 86840
Counsel for Defendant
Office of the Federal Public Defender
701 E Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0881
Fax (804) 648-5033
laura_koenig@fd.org

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 25, 2019, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

                                                   _____/s/_____
                                          Laura Koenig
                                          Va. Bar No. 86840
                                          Counsel for Defendant
                                          Office of the Federal Public Defender
                                          701 E Broad Street, Suite 3600
                                          Richmond, VA 23219-1884
                                          Ph. (804) 565-0881
                                          Fax (804) 648-5033
                                          laura_koenig@fd.org