IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Richmond Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 3:19-CR-130-MHL |
| | ) | |
| OKELLO T. CHATRIE, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S SURREPLY TO
## DEFENDANT'S MOTION FOR DISCOVERY OF SENSORVAULT DATA

The United States of America, by its undersigned attorneys, hereby submits this surreply to the Defendant's Reply pursuant to the Court's Order entered on December 16, 2019. (ECF No. 53).

Google, LLC ("Google"), one of the largest technology companies in the world, provided a limited set of location history to the United States as required by a state search warrant that provided probable cause that the information sought constituted evidence of a crime. All information provided to the United States by Google came pursuant to that search warrant and has been provided to the defendant in full. Despite this complete disclosure, the defendant urges this Court to require more than Federal Rule of Criminal Procedure 16 or *Brady v. Maryland*, 373 U.S. 83 (1963) compel—to hold that once a search warrant compels disclosure of a specified set of information from a private company, *all* of the company's documents tangentially related to the compelled subset are now in the possession, custody, or control of the United States. This line of reasoning should be flatly rejected.

In addition, the defendant raises Sixth Amendment concerns regarding his purported need for Google's documents. These Sixth Amendment concerns presume that the likely expert

testimony from FBI Special Agent Jeremy D'Errico is insufficient to give the defendant the confrontation that the Constitution requires. The Court should deem the cross-examination of Special Agent D'Errico sufficient to satisfy the Sixth Amendment.

## I. BACKGROUND

The facts of this case have been recited by the United States in its response. (ECF No. 38, at 1–6). Regarding the underlying discovery motion, the defendant acknowledges that the United States has sufficiently addressed information requested in paragraphs 6, 7, 11(a), and 11(b). As to the defendant's anonymous identifier, the defendant has received that information. Specifically, the defendant's identifier is provided in the Google GeoFence returns and ends with 5659. The United States has disclosed every facet of data provided by Google. The remaining paragraphs relate to items either in the possession, custody, or control of Google (paragraphs 1, 3, 4, 5, 9) or items that undersigned counsel has been advised do not exist (paragraphs 11(c), (d), (e)).[1]

## II. ARGUMENT

**A. Neither Rule 16 nor *Brady* Support the Defendant's Outstanding Discovery Requests, because Documents Retained by Google and not Turned over in Response to a Search Warrant are not Within the Possession, Custody, or Control of the United States.**

Federal Rule of Criminal Procedure 16 provides, in relevant part, that the United States must turn over certain "items, if the item is within the government's possession, custody, or control" where those documents are material to the defense. Fed. R. Crim. P. 16(a)(1)(E). "Rule 16 differs from *Brady*, which rests upon due process considerations, and provides the minimum amount of pretrial discovery granted in criminal cases." *United States v. Caro*, 597 F.3d 608, 620 (4th Cir. 2010). In *United States v. Armstrong*, the Supreme Court clarified that, "in the context

---

[1] Should undersigned counsel become aware of any of the materials set forth in 11(c), (d), and (e), the United States will notify the defendant's counsel.

of Rule 16 'the defendant's defense' means the defendant's response to the Government's case in chief." 517 U.S. 456, 462 (1996).

The defendant's reply concludes that because Google provided documents in response to a search warrant, any documents wholly in Google's possession must be turned over pursuant to Rule 16. That is simply not the case.

Although the Fourth Circuit has provided limited precedential case law on what constitutes possession, custody, or control for purposes of Rule 16, the decisions cited in the United States' opening brief are nevertheless instructive. In *United States v. Pinto*, the Fourth Circuit rejected a Rule 16 argument regarding the failure to disclose documents belonging to a bail bondsman when "the government did not have actual knowledge of the existence, *must less possession or control*, of the documents." 905 F.2d 47, 50 (4th Cir. 1990) (*citing United States v. Gatto*, 763 F.2d 1040, 1048 (9th Cir. 1985)) (emphasis added). The Ninth Circuit's *Gatto* decision—cited approvingly in *Pinto*—emphasized "that the triggering requirement under rule 16(a)(1)(C) is that the papers, documents, and tangible objects be in the *actual* possession, custody or control of the government." *Gatto*, 763 F.2d at 1049. Imposing a rule based on "due diligence" or "constructive possession or control" would go beyond what Rule 16 requires. *Cf. United States v. Shifflett*, No. 93–5693, 1995 WL 125506, at *6 (4th Cir. Mar. 23, 1995) (unpublished) (concluding that Rule 16 did not require disclosure of "cocaine . . . in the possession and custody of the state, not of the federal government.").

Decisions within the Eastern District of Virginia accord with the understanding that Rule 16 requires government possession of the discovery in question. In *United States v. Salad*—a piracy case arising from the hijacking of an American yacht and the murder of four U.S. citizens on board—Chief Judge Davis required the United States to maintain the yacht for the defendant's

3

inspection under Rule 16. 779 F. Supp. 2d (E.D. Va. 2011). Judge Davis acknowledged that "the plain language of the Rule" requires that the sought after evidence "must be (1) tangible, (2) within the Government's possession, custody or control, and (3) material to preparing the defense." *United States v. Salad*, 779 F. Supp. 2d 503, 506 (E.D. Va. 2011). Applying the Rule, Judge Davis deemed the yacht within the possession of the United States because federal law required government officials to "take *possession* of" and maintain the estate of a citizen who died abroad. *See id.* (quoting 22 U.S.C. § 2715c(a)(1)). Here, there is no federal law that requires the United States to reach beyond the terms of a search warrant to seize additional documents from Google.

Other out-of-circuit decisions are helpful in crystallizing this point. In *United States v. Finnerty*, a district court assessed whether documents in possession of the New York Stock Exchange were in the possession, custody, or control of the United States where, among other things, the NYSE provided documents to the Government on an ad-hoc basis. 411 F. Supp. 2d. 428, 432–33 (S.D.N.Y. 2006). The court rejected the argument that this cooperation created a "joint investigation" between the Government and the NYSE, observing that the NYSE rebuffed several requests. *See id.* at 433. "The mere fact that the Government may have requested and received documents from the NYSE in the course of its investigation," the court explained, did "not convert the investigation into a joint one." *Id.*

In *United States v. Sarras*, the defendant sought production of a minor's and her mother's computers as well as the minor's medical records in a child pornography prosecution. 575 F.3d 1191, 1214–15 (11th Cir. 2009). Affirming the district court's denial of the defendant's request, the Eleventh Circuit reminded that, under Rule 16, the United States "does not have a duty to disclose items it does not possess" nor "a duty to obtain evidence it does not possess" from third parties. *Id.* at 1215. The proper procedure is pursuit of these materials through Federal Rule of

Criminal Procedure 17. *Id.*

The defendant's arguments fare no better through the lens of *Brady*. To be clear, the United States has reviewed all materials provided by Google for *Brady* material and fulfilled its obligation.

The Fourth Circuit has held "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *United States v. Taylor*, 942 F.3d 205, 225 (4th Cir. 2019) (*quoting Kyles v. Whitley*, 514 U.S. 419, 437 (1995)). In assessing to whom this duty applies, the Fourth Circuit has never held a private entity compelled to respond to a search warrant is subject to this imputation.

Several out-of-circuit decisions compellingly explain why that holding is not likely to come. *See United States v. Joselyn*, 206 F.3d 144 (1st Cir. 2000) and *United States v. Gray*, 648 F.3d 562 (7th Cir. 2011) (Posner, J.). In *Joselyn*, American Honda assisted the United States in the kickback and bribery prosecution of two American Honda employees. Following trial, the defendants sought a new trial, arguing that American Honda, and, by extension, the United States had withheld favorable information during the trial. *Joselyn*, 206 F.3d at 151. The "attribution theory," as the panel referred to it, rested upon the premise of a close working relationship between the United States and American Honda. *Id.* at 152–53. The *Joselyn* panel accepted as true the defendant's contention that American Honda assisted the United States on a number of fronts, including providing the Assistant United States Attorney their own "prosecution memo" and giving assessments of the credibility of various witnesses. *Id.* Even so, the First Circuit rejected that the United States' obligations extended to American Honda's file because the company "was not part of the prosecution team." *Id.* at 154. The panel refused to extend membership of that important group "to cooperating private parties who have their own set of interests." *Id.*

Similarly, in *Gray*, Judge Posner, writing for a unanimous panel, concluded that a private

company hired by Indiana Medicaid was not part of the United States' prosecution team, so *Brady* did not extend to the company's files. *See* 648 F.3d at 566. The company "had been hired … to process and pay bills submitted to Indiana Medicaid," not as "a private detective agency" required "to assist state and federal prosecutors in prosecuting Medicaid fraud." *Id.*

Like the defense arguments in *Joselyn* and *Gray*, the defendant's arguments regarding *Brady* misconstrue the nature of the relationship between Google and the United States. The United States only has possession over what Google has chosen to provide to the government. More important, Google only provided information to the government because it was compelled to do so by a search warrant. To the extent the defendant thinks that the United States has a *Brady* obligation to reach beyond the terms of the search warrant to get more information from Google, he "appear[s] to be arguing that the Government's *Brady* obligation is superior to and takes precedence over an individual's Fourth Amendment rights." *United States v. Collins*, No. 1:18-cr-567, — F. Supp. 3d. —, 2019 WL 4296206, at *10 (S.D.N.Y. Sept. 6, 2019). But "the Government's possession of and ability to review [the evidence at issue] is necessarily circumscribed by the Fourth Amendment." *Id.*

None of the cases cited by the defendant support extending the United States' *Brady* obligations to materials held entirely by Google. Those cases involve actions taken by prosecutors that were not taken here, like directing someone to assist without the command of legal process, paying an individual to assist in a prosecution, or using an individual's testimony. *See McCormick v. Parker*, 821 F.3d 1240, 1247 (10th Cir. 2016) (holding that testifying sexual assault nurse examiner's lapsed credentialing imputed to prosecution where examiner kept a record of exam to prepare to testify, did so testify, and investigators on case brought minor to specific hospital to be examined in connection with investigation); *Bracamontes v. Superior Court of San Diego Cty.*,

255 Cal. Rptr. 3d 53, 64 (Cal. Ct. App. 2019) (finding that *Brady* imputation appropriate where private forensic laboratory hired by the government to conduct DNA testing of critical evidence in an effort to identify or exclude suspects, including Bracamontes); *State v. Farris*, 656 S.E.2d 121, 125 (W. Va. 2007) (imputing knowledge of *Brady* material to prosecution where report prepared by prosecution's forensic psychologist); *People v. Superior Court (Dominguez)*, 239 Cal. Rptr. 3d 71, 80 (Cal. Ct. App. 2018) (rejecting application of *Brady* obligation to private research institute that provided software program, related support, and relevant updates to prosecution in aid of prosecution's use of software did).

At bottom, a search warrant based on a judicial finding of probable cause permitted the United States to retrieve a limited set of location history information from Google. Google provided documents in this investigation pursuant to that judicial process. By Google's own admission, its participation here was "compelled" by that judicial process. (*See* Google, LLC, ECF No. 59-1, at 2). As Google explained, that is typically the relationship between Google and law enforcement across the nation. (*Id.* at 16). The United States' use of court-approved process to obtain a narrow subset of Google's information does not implicate Rule 16 or *Brady* obligations over a larger universe of Google data. If the defendant wants more than the United States provided, then his avenue for requesting the information is through Rule 17 and Google itself.

**B. Even if the Defendant Identified Information within the Government's Possession, Custody, or Control, He Fails to Show Materiality under Either Rule 16 or *Brady*.**

Even where the items are in the United States' possession, custody, or control, there is only an obligation to turn over items "material to preparing the defense," intended for use in the United States' case-in-chief at trial, or "obtained from or belong[ing] to the defendant." *See* Fed. R. Crim. 16(a)(1)(E). In assessing materiality, the burden is on the defendant to show "that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the

quantum of proof in his favor." *Caro*, 597 F.3d at 620. The defendant must make some showing as to how the discovery "would have actually helped prove his defense." *Id.* at 621. For purposes of *Brady*, materiality turns on whether the suppressed evidence creates "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles*, 514 U.S. at 433. The issue of materiality of suppressed evidence must be considered "collectively, not item by item." *Id.* at 436.

The defendant's materiality argument misses the mark. Given the considerable evidence against him, Google location information, particularly as it relates to the GeoFence, is not material. *See, e.g.*, *United States v. Clem*, 644 F. App'x 238, 241 (4th Cir. 2016) (unpublished) (concluding that Rule 16 materiality not met "given the wealth of evidence against [defendant]"); *United States v. Taylor*, 942 F.3d 205, 226 (4th Cir. 2019) (recognizing that *Brady* materiality not met where "the evidence was not of the type that could have resulted in acquittal."). And that evidence is legion: the armed robber's physical description and accent that plainly matches the defendant; the surveillance that placed him in a vehicle that matches one a witness saw at the scene of the armed robbery; and the evidence found during the execution of a search warrant at his residences, including a firearm resembling one matching the firearm used in the robbery, a money counter, nearly $100,000 of United States currency (some of which was wrapped with bands bearing the victim-teller's initials), and practice demand notes in the defendant's bedroom. If that were not enough, the defendant admitted to committing the armed robbery on May 20, 2019, post-*Miranda*. To call the evidence irrespective of Google location information overwhelming may be an understatement. None of that evidence turns on Google's location information, so the defendant cannot say that additional information held by Google and not turned over in response to the search

8

warrant is "material" to his defense.[2]

### C. Defendant's Remaining Arguments—Sixth Amendment, Material Omission, and Request for Creation of *Jencks* Material—Should Be Rejected.

As to his Sixth Amendment rights, the defendant can cross-examine the United States' expert over his own assessment of the accuracy of Google's location information. Importantly, the FBI Special Agent did not have access to any information that is not otherwise available to the defendant's proposed expert. The expert's expertise is not gained from Google. Rather, the defendant's expertise springs from his specialized understanding of location information to assess Google location information accuracy based on a review of Google's public pronouncements about location information, academic papers discussing the matter, and knowledge of industry practices by other companies in the location technology space. If the defendant takes issue with such testimony, he can cross-examine the witness or file a motion pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

The defendant's assertion that the Google Device ID and Anonymous ID provided in the GeoFence warrant are the same is incorrect. The anonymous identifier necessarily belongs to a masked Google User but, as exemplified with the subscriber information provided for each of the three unmasked Google users, the Anonymous IDs in the GeoFence Warrant returns are not the same as the Google ID attributed to the users. The Google ID provided in the stage three return was utilized to get historical location information pursuant to a search warrant. *See* 3:19-SW-207. Moreover, Google's correspondence concerning the Device ID provides as follows:

> [T]he Device ID (or device tag) is not a valid target identifier that can otherwise be used to search for information. The Device ID is used only for distinguishing unique devices in a

---

[2] Moreover, the contention that additional information is needed to confirm that a nearby church's Wi-Fi router may have been accessed by certain users is not correct. The Journey Christian Church was clearly included within the GeoFence area in light of information indicating that the armed robber was parked near the church prior to the robbery.

9

particular user's location history and cannot be mapped to an Android ID or an IMEI/MEID.

Lastly, the defendant cites to *Brady* case law to support the rushed nature of the disclosure requests. The United States has and will continue to abide by its *Brady* obligations. That obligation does not extend to documents solely in the possession of Google that were not produced pursuant to the state search warrant. What's more, using *Brady* to seek disclosure of information prior to a suppression hearing extends this "trial right" beyond its intended scope. *See United States v. Moussaoui*, 591 F.3d 263, 285 (4th Cir. 2010) ("The *Brady* right . . . is a *trial* right" that "exists to preserve the fairness of a trial verdict and to minimize the chance that an innocent person would be found guilty." (emphasis in original)).

### III. CONCLUSION

The Court should deny the defendant's motion to for discovery.

Respectfully submitted,

G. ZACHARY TERWILLIGER
United States Attorney

By: /s/
Kenneth R. Simon, Jr.
Peter S. Duffey
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
919 E. Main Street, Suite 1900
Richmond, VA 23219
(804) 819-5400
Fax: (804) 771-2316
Email: Kenneth.Simon2@usdoj.gov