**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:19cr130** |
| | ) | |
| **OKELLO T. CHATRIE,** | ) | |
| **Defendant** | ) | |

**DEFENDANT'S MOTION FOR ISSUANCE OF A**
**SECOND SUBPOENA *DUCES TECUM* PURSUANT TO RULE 17(c)**
**AND MEMORANDUM IN SUPPORT THEREOF**

Okello Chatrie, through counsel, respectfully moves this Court to enter an Order directing that a subpoena *duces tecum* be issued to Google LLC ("Google") pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure, and that Google be required to provide the responsive documents and things within 14 days in order to allow the parties sufficient time to review and address the information. The grounds for this Motion, including the subpoena to be issued, are set forth below.

## INTRODUCTION

This Court had previously scheduled a hearing for July 2, 2020, on Mr. Chatrie's motion to suppress evidence obtained from a "geofence" general warrant, as well as the fruits thereof. *See* ECF No. 101; *see also* ECF Nos. 29 & 104. As of June 12, 2020, both parties had filed supplemental briefs in anticipation of the hearing. *See* ECF Nos. 104 & 109. On June 17, however, Google moved this Court to file a supplemental declaration, ECF No. 110, asserting that Mr. Chatrie had not provided an accurate record with respect to the opt-in process for Google's "Location History" setting. *See id.* at 2; ECF No. 110-1 at 2. Specifically, Google contends that a video exhibit depicting an example of this opt-in process was somehow incomplete because it did

not show a supposed "second opt-in screen." *See* ECF No. 110-1 at 2. The Court granted Google's motion over Mr. Chatrie's objection, finding that this factual dispute "may affect the Court's ruling on Chatrie's Geofence Motion to Suppress." ECF No. 115 at 3. In so doing, the Court continued the July 2, 2020, hearing and stated that "the Court will consider a request for an additional Rule 17 subpoena to be submitted to Google" if requested by July 2. *Id.* at 3-4.[1] Consequently, pursuant to Rule 17(c), Mr. Chatrie now moves this Court to issue a subpoena directing Google to produce the documents and things identified in Exhibit A.

As discussed below, this information is relevant to and admissible in a pre-trial hearing on Mr. Chatrie's motion to suppress the geofence warrant. The defense has been unable to procure it from the government or through its own testing, but it is nonetheless essential to Mr. Chatrie's proper preparation for the suppression hearing. At the last moment, Google has called into question the veracity of  Mr. Chatrie's expert, Spencer McInvaille, who testified that it was possible to opt-in to "Location History" through a pop-up screen on Google Maps that never mentioned "Location History." *See* 1/21/20 Tr. at 56-57. This evidence supports Mr. Chatrie's position that he did not knowingly and voluntarily consent to Google's collection of his Location History data, a key issue in assessing the merits of Mr. Chatrie's Fourth Amendment suppression argument. Google disputes the exemplar Mr. McInvaille created and submitted to the Court as Exhibit 4, *see* 1/21/20 Tr. at 35, asserting that there is a "second opt-in screen" that the defense did not show.

As an initial matter, Google is incorrect. Mr. McInvaille has now re-run his test and recorded the entire opt-in process again, as reproduced in Exhibit B. Once again, the video demonstrates that a user can enable Location History simply clicking "YES, I'M IN" on a vague

---

[1]  The Court further stated that it will "consider any briefing seeking to compel Google's appearance for live testimony during the upcoming evidentiary hearing on the Geofence Motion to Suppress." Mr. Chatrie anticipates making this request as well.

pop-up in Google Maps. There is no second opt-in screen. *See* Exhibit B at 4:36-5:08. By navigating to the phone's settings after clicking, "YES, I'M IN," Mr. McInvaille confirms that the Location History setting has been enabled without any additional action on the part of the user. *See* Exhibit B at 5:23.

As Mr. McInvaille acknowledges, the cell phone and operating system in the video are similar to, but not the same as, the setup Mr. Chatrie likely used. *See* 1/21/20 Tr. at 36-37; 45-47. Google, however, is uniquely capable of providing information about the opt-in process that Mr. Chatrie actually encountered. Google has stated on multiple occasions that users must take a number of steps to opt in to Location History, including (1) opting into Location History as a setting; (2) enabling the "Location Reporting" feature; (3) enabling the "Device-Location" setting; and (4) permitting location sharing with Google. *See* ECF 96-1 at 2-3; ECF No. 59-1 at 7-8. Mr. Chatrie therefore seeks Google's records concerning the date and process through which that Mr. Chatrie opted into these settings. If these records do not exist, then Mr. Chatrie seeks records concerning the generic opt-in process for a user with the same device and operating system he used.

### ARGUMENT

**1.  Legal Standard for Issuance of Rule 17(c) Subpoenas**

Rule 17 of the Federal Rules of Criminal Procedure governs the issuance of subpoenas in criminal cases. Subsection (c) provides, in relevant part:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1). "Rule 17(c) implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor." *In re Martin Marietta Corp.*, 856 F.2d 619, 621 (4th Cir. 1988); *see also United States v. Llanez-Garcia*, 735 F.3d 483, 493 (6th Cir. 2013) (observing that Rule 17(c) "implements a criminal defendant's constitutional right 'to have compulsory process for obtaining witnesses in his favor' by providing a means to subpoena witnesses and documents for a trial or a hearing. U.S. Const. amend. VI[.]") (citing 2 Charles Alan Wright et al., Federal Practice and Procedure § 272 (4th ed.) ("Rule 17 is not limited to subpoenas for the trial" and observing that a subpoena may be issued for a preliminary examination, a grand jury investigation, a deposition, a determination of a factual issue raised by a pre-trial motion, or a post-trial motion).

In *United States v. Nixon*, the Supreme Court set forth the standards for issuing a Rule 17(c) subpoena. 418 U.S. 683, 699-700 (1974). Adopting the test devised by Judge Weinfeld in *United States v. Iozia*, pre-trial production of evidence is appropriate where the moving party shows:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*Id*. (citing *United States v. Iozia*, 13 F.R.D. 335, 338 (SDNY 1952)). The *Nixon* Court further distilled this test to three factors: (1) relevancy; (2) admissibility; (3) specificity. *Id.* at 700.

It is well-settled that Rule 17(c) is not to be used as a broad discovery tool, nor as a means to gather materials for impeachment purposes only. *See, e.g., id.* at 700-01; *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951); *United Sates v. Beckford*, 964 F.Supp. 1010, 1032 (E.D.Va. 1997). Furthermore, the decision whether to issue a Rule 17(c) subpoena and require the

documents be produced pre-trial rests with the sound discretion of the district court. *Nixon*, 418 U.S. at 702; *Beckford*, 964 F.Supp. at 1021 n.9. And while Rule 17(c) does not explicitly require a party to make a motion to the court prior to issuance of a subpoena, doing so "is an orderly and desirable procedure and one frequently followed" in this jurisdiction. *Beckford*, 964 F.Supp. at 1021.

Finally, although most cases involving Rule 17(c) concern production prior to "trial," the Court's authority under Rule 17(c) relates to a judicial "proceeding," *see* Fed. R. Crim. P. 17(a), which includes pre-trial hearings. *See* 2 Charles Alan Wright et al., Federal Practice and Procedure § 272 (4th ed.). In this case, the documents and things relate to a pre-trial hearing on Mr. Chatrie's motion to suppress the evidence produced by Google as a result of the geofence warrant, as well as all of the fruits thereof. *See* ECF No. 29. The Court has already indicated that it intends to hold such a hearing, the outcome of which may be dispositive in this case. Mr. Chatrie therefore seeks pre-hearing access to the documents and information in question in order to allow the parties sufficient time to review them and prepare for that hearing, consistent with Rule 17(c). *See* Fed. R. Crim. P. 17(c)(1) (permitting courts to require production pre-trial or "before they are to be offered in evidence").

**2.  The Information Sought from Google is Relevant.**

All of the information Mr. Chatrie seeks from Google here relates to whether he knowingly and voluntarily conveyed Location History data to Google, a critical question in the determination of Mr. Chatrie's motion to suppress the government's search of that data.

Requests (1)-(4) concern the four steps that Google states users must take in order to opt into Location History and store this location data with Google. Mr. Chatrie seeks Google's records of when and how he enabled these settings. Mr. Chatrie also asks Google to provide related

documentation detailing this opt-in process, including screenshots or a video of it, akin to the videos Mr. McInvaille has produced. This information will allow Mr. Chatrie and the Court to know what occurred in this case, create a full and accurate record, and assess whether Mr. Chatrie would have reasonably understood what he was agreeing to.

If Google does not have such records pertaining to Mr. Chatrie specifically, then Mr. Chatrie seeks written documentation as well as screenshots or a video concerning the generic opt-in process for a user similarly situated to Mr. Chatrie. Specifically, Mr. Chatrie requests information about all of the possible ways in which a user with the same device and operating system could have taken each of the steps necessary to enable Location History. Mr. Chatrie likely used a Samsung S9+ SM-G965U, running Android OS 8.0, revision number G965USQS3BRK3. However, because it is possible to complete some of these steps through Google's website, Mr. Chatrie also seeks information about that process as well, where applicable.

Request (5) seeks documentation of Google's defaults for the "Location History," "Location Reporting," and "Device-Location" settings at the initial setup of a Samsung S9+ SM-G965U, running Android OS 8.0, revision number G965USQS3BRK3. And request (6) seeks information about any changes to the opt-in process for these steps during the time Google supported Android OS 8.0. This information will clarify what Mr. Chatrie had to opt into on his Samsung S9+, and what was already enabled by default. It will also clarify whether these processes may have changed during the time Mr. Chatrie was using his phone. All of this information is relevant to demonstrating that Mr. Chatrie did not knowingly or voluntarily share his Location History data with Google.

### 3. The Information Sought from Google is Admissible.

All of the information sought from Google here would be admissible in a pre-trial hearing on Mr. Chatrie's motion to suppress the geofence data obtained from Google and its fruits. The applicable standard for admissibility under Rule 17(c) is the same standard that would apply if the defense were to introduce the evidence at the pre-trial suppression hearing, which is not the same as the standard for admissibility at trial.[2] In an evidentiary hearing on a motion to suppress, relaxed rules of evidence apply. Under Federal Rule of Evidence 104(a), "[p]reliminary questions concerning … the admissibility of evidence shall be determined by the court, [which] is not bound by the rules of evidence except with respect to privileges." Just as the out-of-court statements of a confidential informant might properly support a finding of probable cause, *see United States v. Matlock*, 415 U.S. 164, 172–73 (1974), so too may a judge receive evidence in support of suppression that may not be admissible before a jury. A judge will rightly "give it such weight as his [or her] judgment and experience counsel." *Id.*

Furthermore, as the Supreme Court suggested in *Nixon*, a lower evidentiary standard may also apply when a subpoena is directed to a third-party rather than the government. *See* 418 U.S. at 699 n.12. This is because the "evidentiary" requirement has developed mainly in cases in which defendants have sought pre-trial disclosure from the government under Rule 17(c), as opposed to Rule 16 or *Brady*. Prior to *Nixon*, the leading case on Rule 17(c) was *Bowman Dairy v. United States*, which involved a subpoena seeking documents the government had obtained through confidential informants. 341 U.S. 214, 218 (1951). *Bowman* recognized a defendant's right to obtain such materials under 17(c) if "any part of them are not put in evidence by the Government."

---

[2] As discussed above, Rule 17(c) clearly contemplates such pre-trial proceedings, permitting courts to require production either "before trial" or pre-trial or "before they are to be offered in evidence." Fed. R. Crim. P. 17(c)(1).

*Id.* at 219. Otherwise, the Court reasoned, the government could "exclude from the reach of process of the defendant any material that had been used before the grand jury or could be used at trial." *Id.* at 221. In short, the *Bowman* Court viewed Rule 17(c) as a way to obtain materials for trial that the defense likely learned about from the discovery provided by the government under Rule 16. *Id.* at 219. *Bowman*'s requirement that these materials be "evidentiary" was a way of distinguishing between the type of material subject to broad discovery under Rule 16 and demands for producing specific documents under Rule 17(c). *Id.* at 219-220. Thus, the Court found one part of the subpoena in *Bowman* unenforceable because it contained "catch-all" demand amounted to a "fishing expedition." *Id.* at 221. Critically, however, the Court assumed that the recipient of the subpoena would be the government, which has independent discovery obligations under Rule 16.

In the wake of *Bowman*, courts began to adopt the four-part formulation first articulated a year later in *Iozia*, 13 F.R.D. at 338. *See supra* at 5. Like *Bowman*, *Iozia* involved a subpoena to the government seeking documents that had been voluntarily provided to the government by a third party. While the court found that aspect of the subpoena to be enforceable, it also found that demands for 11 years-worth of files from investigating agencies were too broad and had "every appearance of a fishing expedition" aimed at uncovering impeachment evidence. *Iozia*, 13 F.R.D. at 340. Nonetheless, the court recognized the government's Rule 16 obligations and noted that the defense would have prior access to any relevant impeachment evidence for any person called to testify at trial. *Id*.

It was against this background that the *Nixon* Court adopted the *Iozia* factors. The Court was therefore careful to note that, with respect to the "evidentiary" prong in particular, the situation in *Nixon* was unlike *Bowman Dairy* or *Iozia*. *See* 418 U.S. at 699 n.12. These facts presented "the more unusual situation … where the subpoena, rather than being directed to the government by

defendants, issues to what, as a practical matter, is a third party." *Id*. This was significant because the party seeking the subpoena in *Nixon* could not first avail itself of discovery under Rule 16, unlike the defendants in *Bowman Dairy* and *Iozia*. The Court therefore left the door open to the possibility that the evidentiary requirement may not apply with "full vigor" when the subpoena is directed to a third party. *Id*. In sum, the somewhat stringent standard derived from *Bowman Dairy* and *Iozia* was crafted with subpoenas between the prosecution and defense in mind, not access to information held by a third party like Google. With respect to third parties, the text of Rule 17(c) simply codifies the traditional right of the prosecution or the defense to seek evidence for trial by a subpoena *duces tecum*.

Thus, when a criminal defendant subpoenas a third-party such as Google in preparation for suppression hearing, *Nixon*'s admissibility requirement does not apply with full force. Instead, Mr. Chatrie "need only show that the request is (1) reasonable, construed as "material to the defense," and (2) not unduly oppressive for the producing party to respond." *United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008), *as amended* (Feb. 20, 2008). Under such relaxed rules of evidence, all the documents and things requested by the subpoena here are most certainly "admissible," as they are highly relevant and material to demonstrating the voluntariness (or lack thereof) with which users create and store their geolocation information with Google. Moreover, production of the requested materials would not be "unduly oppressive" for Google. Producing documentation of Mr. Chatrie's opt-in to Location History, if it exists, would appear to require minimal effort. If these records do not exist, however, it should be straightforward and not overly burdensome for Google to show this Court what the opt-in process would have looked like for a user such as Mr. Chatrie.

**4.   The Information Sought from Google is Specific.**

Mr. Chatrie has identified the information he seeks from Google with sufficient specificity. In this context, specificity embodies both the "good faith" and "fishing expedition" concepts that the *Nixon* Court imported from *Iozia*. *See United States v. King*, 194 F.R.D. 569, 573 (E.D. Va. 2000).

Although Mr. Chatrie does not know exactly how Google maintains records of its Location History opt-in process, the defense has identified the type of mobile device and operating system at issue.  As Google demonstrated in its most recent declaration, it appears to have records indicating how this process operated in the past. Mr. Chatrie seeks those records. Furthermore, Mr. Chatrie requests that Google produce them in a way that will be readily understandable by Mr. Chatrie and this Court, namely screenshots or a video of the process. This is not a fishing expedition, but a focused request in response to Google's supplemental declaration and continued involvement in this case. Mr. Chatrie seeks these materials in good faith and maintains that they are highly relevant and material to his suppression argument.

<u>**CONCLUSION**</u>

For the foregoing reasons, Mr. Chatrie respectfully requests that this Court enter an Order pursuant to Rule 17(c) directing that a subpoena *duces tecum* be issued to Google for the documents and things described in Exhibit A. Mr. Chatrie further requests that Google be required to provide the responsive documents and things prior within 14 days of the date the subpoena issues in order to allow the parties sufficient time to review and analyze them before the Court holds the next evidentiary hearing.

Respectfully submitted,

OKELLO T. CHATRIE

By:    _____/s/_____
       Michael W. Price
       NY Bar No. 4771697 (pro hac vice)
       Counsel for Defendant
       National Association of Criminal Defense Lawyers
       Fourth Amendment Center
       1660 L St. NW, 12th Floor
       Washington, D.C. 20036
       Ph. (202) 465-7615
       Fax (202) 872-8690
       mprice@nacdl.org

       _____/s/_____
       Laura Koenig
       Va. Bar No. 86840
       Counsel for Defendant
       Office of the Federal Public Defender
       701 E Broad Street, Suite 3600
       Richmond, VA 23219-1884
       Ph. (804) 565-0881
       Fax (804) 648-5033
       laura_koenig@fd.org