IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Richmond Division*

UNITED STATES OF AMERICA            )
                                    )
        v.                          )        CRIMINAL NO. 3:19-CR-130-MHL
                                    )
OKELLO T. CHATRIE,                  )
                                    )
        Defendant.                  )

**UNITED STATES' RESPONSE TO COURT'S *SUA SPONTE* ORDER
REGARDING EFFECT OF VIRGINIA MAGISTRATE
EDUCATIONAL LEVEL**

The United States of America, by its undersigned attorneys, hereby responds to the

Court's *sua sponte* June 24, 2020, Order directing the parties to file a statement addressing the

effects, if any, of a magistrate judge who may not hold a law degree or a higher education degree

signing the GeoFence warrant in this case.   ECF No. 116.

The United States respectfully submits that a duly appointed magistrate's educational

qualifications have no bearing on this Court's analysis of suppression in this case.   Virginia sets

the requirements for its magistrates in Virginia Code Section 19.2-37.   The magistrate in this

case met the qualifications to serve.  Even if the Court concludes the magistrate's status beyond

being duly appointed is relevant to this case, application of the good-faith doctrine would remain

appropriate.

The fundamental question for this Court to decide is whether "the magistrate had a

substantial basis for concluding that probable cause existed."  *United States v. Hodge*, 354 F.3d

305, 309 (4th Cir. 2004) (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983)).   "[T]he

Fourth Amendment requires no more."  *Gates*, 462 U.S. at 236.   And, to ascertain whether that

substantial basis existed, this Court reviews the search warrant application, including the law enforcement officer's affidavit and accompanying documents.  *See United States v. Blauvelt*, 638 F.3d 281, 288 (4th Cir. 2011) ("The ample evidence set forth in the supporting affidavit submitted with the warrant application afforded the magistrate a substantial basis upon which to conclude that probable cause existed.").  If there was a substantial basis for the magistrate's decision—as gleaned through a review of "information in the affidavit" and accompanying documents—the search warrant must be sustained.  *See Hodge*, 354 F.3d at 311.

When honing in on the significance of a magistrate's qualifications, the question facing this Court does not change.  The Supreme Court's decision in *Shadwick v. City of Tampa*, 407 U.S. 345 (1972) is instructive.

In *Shadwick*, the Supreme Court weighed whether clerks of the Tampa Municipal Court qualify as neutral and detached magistrates and were otherwise capable of issuing arrest warrants.  In reaching its conclusion that these clerks fit within the ambit of "judicial officer" or "magistrate," the *Shadwick* Court held that a magistrate need not be a "lawyer or judge." *Shadwick*, 407 U.S. at 352.  Rather, the *Shadwick* Court held, "an issuing magistrate must meet two tests. He must be neutral and detached, and he must be capable of determining whether probable cause exists for the requested arrest or search."   *Id.* at 350.  The *Gates* decision clarified the reach of *Shadwick*'s holding when observing that "search and arrest warrants long have been issued by persons who are neither lawyers nor judges, and who certainly do not remain abreast of each judicial refinement of the nature of 'probable cause.'"  *Gates*, 462 U.S. at 235 (citing *Shadwick*, 407 U.S. at 348–350).

When looking back to *Shadwick*'s "two tests"—neutrality and capability—whether a magistrate is neutral and detached logically goes to whether he is beholden to the prosecution or

law enforcement rendering him incapable of partiality.   *See Shadwick*, 407 U.S. at 350–51.   As to capability, the *Shadwick* Court upheld the ability of clerks to issue arrest warrants, pointing to the commonsense reality that "nonlawyers" regularly "evaluate more complex and significant factual data." *Id.* at 351–52.  For example, "[g]rand juries daily determine probable cause prior to rendering indictments, and trial juries assess whether guilt is proved beyond a reasonable doubt." *Id.* at 352.  The determination made by a diverse array of citizens about whether there is probable cause to indict an individual for or convict him of the legion of federal crimes in the United States Code is no less impactful or difficult than deciding whether probable cause exists for a GeoFence search warrant—a search warrant attesting to probable cause that Google, a witness to a crime, maintains evidence of a crime, namely temporally and geographically limited location records.

Neither *Shadwick* nor *Gates* appear to envision federal courts assessing the academic credentials of duly appointed state magistrates when evaluating whether there was a substantial basis for the issuing magistrate to conclude that probable cause existed.   *Cf.*  U*nited States v. Neering*, 194 F. Supp. 2d 620, 623–28 (E.D. Mich. 2002) (invalidating search warrant signed by magistrate who was not appointed in accordance with Michigan law, but holding that the Fourth Amendment does not require legal training for magistrates).  Reviewing a law enforcement officer's affidavit and accompanying documents is sufficient to make the determination about whether a magistrate had a substantial basis to find that probable cause existed.  Indeed, whether placed in front of a Virginia Circuit Court judge appointed by the legislature—as Task Force Officer Hylton's previous GeoFence warrants had been—or placed in front a magistrate appointed pursuant to a statutory provision approved by the legislature and signed by the Governor, the facts and law that must support probable cause are no different.   There is no legal

support for *ad hoc* deference, leaving it up to the reviewing court to pick and choose what credentials give room for deference.  If there was a substantial basis for the decision based on a review of "information in the affidavit" and accompanying documents, the search warrant must be sustained.  *Hodge*, 354 F.3d at 311.

Should this Court delve into the propriety of Virginia's magistrate system, the system withstands constitutional scrutiny.   Several courts of appeals have rejected the need for specialized knowledge or legal training and relied on *Shadwick* in doing so.  *See, e.g.*, *United States v. Pennington*, 328 F.3d 215, 217 (6th Cir. 2003) (stating that the "[t]he caselaw clearly rejects" the position "that a judicial commissioner appointed by a legislative body of a county who is not a judge or even an attorney may not lawfully issue a search warrant or act as a neutral magistrate for purposes of the Fourth Amendment"); *United States v. Mitro*, 880 F.2d 1480, 1485–86 (1st Cir. 1989) (upholding a search warrant issued by assistant clerk because the assistant clerk "was a neutral, detached officer capable of determining whether probable cause existed for the requested search"); *United States v. Comstock*, 805 F.2d 1194, 1201 n.7 (5th Cir. 1986) ("The Constitution does not require special qualifications, other than neutrality, of those who issue search warrants.").

Section 19.2-37 of the Code of Virginia establishes the requirements for serving as a Virginia magistrate.  The magistrate in this case, like others appointed after 2008, has a higher education degree and underwent training to fulfill his obligations. Virginia law requires all magistrates hired after July 1, 2008 to have a bachelor's degree from an accredited institution of higher education.  *See* Va. Code. Ann. § 19.2-37(B).  As Magistrate Bishop was hired in 2018, this requirement applied to him and his educational credentials would have been verified by the Department of Magistrate Services during the hiring process.  In addition, according to Jonathan

4

Green, Director of the Department of Magistrate Services, new magistrates must complete a four week long certification school, conducted by the Department of Magistrate Services, where they receive instruction on a variety of topics that are relevant to their position. They must also pass a written examination and complete a minimum of 240 hours of training before being released for independent service. Magistrate Bishop satisfied all of those requirements and was released for service on October 24, 2018. A Virginia magistrate duly appointed in accordance with Virginia statutory requirements was permitted to issue the GeoFence warrant in this case.

There does not appear to be a Fourth Circuit decision clarifying *Shadwick*'s "capability of determining probable cause" discussion, but the Sixth Circuit's decision in *United States v. Master* explains the practical implications of undertaking the review that follows from an individualized assessment of state magistrates:

> A state is allowed to determine when a person is authorized to approve warrants, where that person has the authority to approve warrants, and what type of warrants that person is allowed to approve. To hold otherwise would allow federal courts to completely undermine state determinations of who is an authorized magistrate, and it is beyond question that we determine who is a qualified magistrate by consulting state law.

614 F.3d 236, 240–41 (6th Cir. 2010).

The sole question, then, is whether a state authorized or empowered the magistrate to issue the warrant and, by extension, sets forth guidelines for the appointment of magistrates. That is the case in Virginia. And the magistrate in this case was duly appointed in keeping with Virginia's requirements.

Lastly, even if the Court determined that the magistrate's educational level mattered to the constitutionality of the search warrant in this case, application of the good-faith doctrine remains appropriate. The Seventh Circuit, relying in part upon *United States v. McLamb*, 880 F.3d 685, 691 (4th Cir. 2018), recently explained that any

5

constitutional concerns about a magistrate judge should lead this Court back to application of the good-faith doctrine. *See United States v. Kienast*, 907 F.3d 522, 527–28 (7th Cir. 2018) ("The deterrence rationale for the exclusionary rule aims at the conduct of the police, not the conduct of the magistrate judge. Thus, whether the magistrate judge lacked authority has no impact on the rule."). To that point, it would seem impractical and inappropriate under Fourth Amendment precedent to call on officers to effectively check a Magistrate's CV before seeking a search warrant. TFO Hylton obtained two previous GeoFence warrants in the state signed by Circuit Court judges. Because of burdens placed upon circuit court judges and other related concerns, TFO Hylton received counsel from Chesterfield County Police Department leadership to seek out magistrates rather than Circuit Court judges for search warrant approval. That decision should have no bearing on the Court's decision about whether there was a substantial basis for the magistrate to find probable cause to believe that Google possessed evidence related to the armed robbery in this case.

Based on the foregoing, this Court's assessment of Magistrate Bishop, if any, should focus solely upon whether he was a duly appointed magistrate under Virginia law. He was and remains so.

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By:  _____/s/_____
Kenneth R. Simon, Jr.
Peter S. Duffey
Assistant United States Attorneys
Eastern District of Virginia
United States Attorney's Office
919 E. Main Street, Suite 1900

Richmond, VA 23219
(804) 819-5400
Fax: (804) 771-2316
Email: Kenneth.Simon2@usdoj.gov

Nathan Judish
Senior Counsel, Computer Crime and
Intellectual Property Section
Criminal Division
United States Department of Justice

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of July, 2020, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic

notification of such filing to the following:

Laura Koenig
Office of the Federal Public Defender (Richmond)
701 E Broad Street
Suite 3600
Richmond, VA 23219
Email: Laura_Koenig@fd.org

Paul Geoffrey Gill
Office of the Federal Public Defender (Richmond)
701 E Broad Street
Suite 3600
Richmond, VA 23219
Email: paul_gill@fd.org

Michael William Price
National Association of Criminal Defense Lawyers
1660 L Street NW
12th Floor
Washington, DC 20036
 (202) 465-7615
Email: mprice@nacdl.org
*PRO HAC VICE*

_____/s/_____
Kenneth R. Simon, Jr.
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
919 E. Main Street, Suite 1900
Richmond, VA 23219
(804) 819-5400
Fax: (804) 771-2316
Email: Kenneth.Simon2@usdoj.gov