**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| ) | **Case No. 3:19cr130** |
| ) | |
| **OKELLO T. CHATRIE,** ) | |
| Defendant ) | |

**DEFENDANT OKELLO CHATRIE'S SUPPLEMENTAL MEMORANDUM**
**REGARDING MAGISTRATE**

Okello Chatrie, through counsel, submits this memorandum in response to ECF No. 116, which gave an opportunity for supplemental briefing on the "effects, if any, of a magistrate who may not hold a law degree or a higher education degree signing the Geofence warrant." *Id.* at 2.

**INTRODUCTION**

The Fourth Amendment requires state magistrates to be (1) "neutral and detached," and (2) "capable of determining whether probable cause exists for the requested arrest or search." *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972). If the magistrate signing a search warrant does not meet both of these tests, then it is no warrant at all. *See United States v. Scott*, 260 F.3d 512, 515 (6th Cir. 2001) ("[W]hen a warrant is signed by someone who lacks the legal authority necessary to issue search warrants, the warrant is void ab initio."). It follows that the "good faith" exception to the exclusionary rule is not applicable to any search that relies on its purported authority. *Id.* In such circumstances, it is as if the search were warrantless.

In this case, Magistrate David M. Bishop, who signed the geofence warrant, was likely incapable of making the necessary probable cause determination for at least two reasons. First, Mr. Bishop likely does not meet the minimum qualifications to be a magistrate under Virginia law because he does not hold a bachelor's degree from an "accredited institution of higher education."

1

Va. Code § 19.2-37(B). Second, even if Mr. Bishop did meet the minimum qualifications to be a magistrate, his inexperience makes it unlikely that he was capable of determining probable cause for such a novel and complex search warrant as the geofence warrant at issue here.

## **LEGAL BACKGROUND**

A magistrate's qualifications relate directly to his or her capacity to make probable cause determinations. Although the Supreme Court has declined to hold that state magistrates must be lawyers or judges, it has emphasized that all magistrates must be capable of making probable-cause determinations. *Shadwick*, 407 U.S. at 350. The Court has looked to state law for guidance on the qualifications of who may be lawfully vested with the authority to issue warrants. *Id.* at 352. Consequently, a magistrate's qualifications to issue a search warrant may be "inextricably intertwined with state law." *United States v. Matser*, 614 F.3d 236, 240 (6th Cir. 2010). Thus, the operative rule is that "[s]tate law determines what person is allowed to approve what warrant," *id.*, provided that "all are neutral and detached and capable of the probable-cause determination required of them." *Shadwick*, 407 U.S. at 353.

In Virginia, state law requires all magistrates appointed after July 1, 2008, to have a bachelor's degree from an "accredited institution of higher education." Va. Code § 19.2-37(B). This change in the law occurred in 2008 and was intended to establish a minimum educational requirement for magistrates, discontinuing "equivalent experience" as an alternative to a bachelor's degree. *See* Ex. A at 9 (Report on the Virginia Magistrate System to the Chairmen of the House Appropriations and Senate Finance Committees of the Virginia General Assembly (Dec. 11, 2007)). The Supreme Court of Virginia recommended the change because "[m]agistrates are required to make probable cause determinations, conduct legal research, and apply statutes and legal principles to factual situations using independent judgment and appropriate reasoning and

analysis." *Id.* at 7. In the Virginia Supreme Court's view—and ultimately, in the legislature's as well—"[a] bachelor's degree would provide magistrate candidates with *the minimum level of education necessary* to effectively fill the position." *Id.* (emphasis added). Or in other words, Virginia state law maintains that a bachelor's degree from an "accredited institution of higher education" is necessary to ensure that magistrates are capable of doing things like determining probable cause for a search warrant. *See* Va. Code §19.2-37(B).[1]

Conversely, the presumption must be that one who does not meet Virginia's minimum education requirement does not have the minimum qualifications to capably determine probable cause for a search warrant—any search warrant. If a search warrant is signed by an individual who lacks the necessary authority, then the warrant was never issued by a lawful magistrate and should be declared void *ab initio* under the Fourth Amendment. *See United States v. Master*, 614 F.3d 236, 265 (6th Cir. 2010); *Scott*, 260 F.3d at 515; *United States v. Jones*, No. 616CR34GFVTHAI7, 2018 WL 3212073, at *8 (E.D. Ky. Apr. 13, 2018). Furthermore, the *Leon* good faith exception to the exclusionary rule is not applicable if the individual issuing a search warrant is wholly without legal authority to do so. *See Scott*, 260 F.3d at 515 ("Despite the dearth of case law, we are confident that *Leon* did not contemplate a situation where a warrant is issued by a person lacking the requisite legal authority. *Leon* presupposed that the warrant was issued by a magistrate or judge clothed in the proper legal authority …"); *Master*, 614 F.3d at 239 (quoting *Scott*).

Even if a magistrate meets Virginia's minimum educational criteria, however, the inquiry does not end there. Whatever standards or limitations a state may choose to erect, the Fourth Amendment floor remains. *See Shadwick*, 407 U.S. at 354. Magistrates must still be "capable of

---

[1] Magistrates appointed prior to July 1, 2008, were permitted to defer the bachelor's degree requirement "while obtaining the necessary education" from a nearby "accredited four-year college or university." Ex. A at 8.

3

determining probable case *for the requested arrested or search.*" *Id.* at 350 (emphasis added). In *United States v. Turner*, for example, the Fourth Circuit "question[ed] whether district court clerks would be qualified to determine probable cause for the arrest and seizure of property" as a matter of constitutional law, although it did not ultimately reach the issue. 933 F.2d 240, 245 (4th Cir. 1991). Here, the ultimate question is whether an inexperienced, non-lawyer magistrate, who may not meet Virginia's basic educational requirements to be a magistrate, is qualified to determine probable cause for a novel geofence warrant involving the search of "numerous tens of millions" of Google users. *See* ECF No. 96-1 at 4.

Historically, the Supreme Court has held that magistrates who lack formal legal training are not "per se" incapable of making probable cause determinations. *Shadwick*, 407 U.S. at 353; *see also Illinois v. Gates,* 462 U.S. 213, 235–36 (1983) (recognizing that "many warrants are— quite properly, . . . —issued on the basis of nontechnical, common-sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings."). But the Court's premise for these holdings—that the probable cause determination requires only "nontechnical, common-sense judgments"—does not carry through to highly technical and legally complex search warrants, such as the geofence warrant in this case. All probable cause determinations are not equal, and there is a world of difference between determining probable cause for an impaired driving arrest, as in *Shadwick*, and one of the broadest digital searches in Fourth Amendment history. *See* 407 U.S. at 351 ("We presume from the nature of the clerk's position that he would be able to deduce from the facts on an affidavit before him whether there was probable cause to believe a citizen guilty of impaired driving, breach of peace, drunkenness, trespass, or the multiple other common offenses covered by a municipal code. There has been no showing that this is too difficult a task for a clerk to accomplish.").

Whereas determining probable cause for an arrest on a common offense may require no specialized knowledge or training, a geofence warrant is not a familiar search tool and no court has addressed its legality or provided guidance on how to evaluate the adequacy of an affidavit in support of one.[2] The description of the search requested is highly technical and involves a unique, multi-step process of pseudo-"anonymized" returns to be administered by Google. *See* ECF No. 54-1 at 4-5, 10-11. In such circumstances, an inexperienced magistrate may rely heavily on the affiant for guidance in his decision-making when it comes to probable cause. *See People v. Escamilla*, 65 Cal. App. 3d 558, 563 (Ct. App. 1976). This prospect is even more concerning where, as here, the affidavit makes several errors and omissions in describing the scope of the search that are critical to the probable cause determination, *see* ECF No. 104 at 28-29, none of which would be apparent to an individual who is unfamiliar with the law or Google's location-tracking practices and capabilities. This "casts grave doubt upon the ability of a layman judge to meet the required qualification of not only being capable of a probable cause determination but also of being neutral and detached." *Escamilla*, 65 Cal. App.3d at 563.

As a result, it is necessary to inquire whether Mr. Bishop was actually capable of determining probable cause in the context of a geofence warrant, regardless of whether he meets the bare minimum educational requirements in Virginia. Based on additional information about Mr. Bishop that the defense has recently learned, the answer is likely no.

---

[2] Virginia law does not even appear to permit magistrates to issue warrants, such as a geofence warrant, involving the search of more than one user's data. Whereas Virginia Code § 19.2-70.3 allows magistrates to issue warrants for the contents of electronic communications, the law only contemplates requests "pertaining to *a subscriber* to or *customer*" (singular). By contrast, the geofence warrant misrepresents the law by stating that section 19.2-70.3 requires a service provider to "disclose certain business records pertaining to their customers" (plural). *See* ECF No. 54-1 at 3.

## DAVID M. BISHOP'S QUALIFICATIONS

Counsel for Mr. Chatrie have still been unable to obtain an official copy of Mr. Bishop's qualifications to serve as a magistrate in Virginia from the Chesterfield County Magistrate's office or otherwise. Nonetheless, Mr. Bishop appears to have graduated from Pensacola Christian College in May 2016 with a Bachelor of Science degree in Criminal Justice.[3] There is, however, a serious question about whether Pensacola Christian College qualifies as an "accredited institution" for purposes of Virginia law. *See* Va. Code § 19.2-37(B) (requiring magistrates to have a "bachelor's degree from an accredited institution of higher education").

Pensacola Christian College is not licensed in Florida, where it is located, claiming an exemption from state commission oversight in order to "retain its independence." *See* Ex. B at 22, Pensacola Christian College, 20-21 Undergraduate Catalogue. It is also not certified to operate in Virginia by the State Council of Higher Education.[4] In 2013, the year after Mr. Bishop presumably began attending, it was accredited for the first time by the Transnational Association of Cristian Colleges and Schools (TRACS), a national agency recognized by the Department of Education in 1991 to accredit "Christian postsecondary institutions" in the United States.[5]

It is unclear, however, if the recent TRACS accreditation is sufficient for purposes of Virginia Code § 19.2-37(B). Accrediting agencies can vary significantly in their standards and

---

[3] Counsel for Mr. Chatrie cannot find a written record of Mr. Bishop obtaining a bachelor's degree of any kind; however, he is shown receiving a diploma from Pensacola Christian College in a video of the College's 2016 commencement ceremony that the College posted online. *See* Pensacola Christian College, Commencement 2016 at 1:06:20, 1:08:09, and 1:08:12, https://www.pcci.edu/newsevents/2016/commencement.aspx.

[4] The website for the State Council of Higher Virginia is not functioning, but a list of all certified schools as of May 13, 2020, can be found through the Internet Archive here: https://web.archive.org/web/20200513153159/https://schev.edu/index/students-and-parents/explore/virginia-institutions.

[5] *See* U.S. Department of Education, Accreditation in the United States, https://www2.ed.gov/admins/finaid/accred/accreditation_pg5.html; TRACS, Pensacola Christian College, https://tracs.org/pensacola-christian-college/.

recognition. The most widely respected agencies are regional bodies, such as the Southern Association of Colleges and Schools Commission on Colleges ("SACSCOC"), which covers Florida and Virginia. *See* About SACSCOC, https://sacscoc.org/. By contrast, the conventional wisdom is that national accrediting agencies are significantly less prestigious. Unfortunately, section 19.2 does not define what counts as an "accredited institution of higher learning" in this context. Other provisions of the Virginia Code, however, do specify the types of accreditation necessary. For example, in the context of licensing public accountants, an "accredited institution" means "a degree-granting institution of higher education accredited either by (i) one of the six major regional accrediting organizations . . . or (ii) an accrediting organization demonstrating . . . that its accreditation process and standards are substantially equivalent." Va. Code § 54.1-4400. Likewise, rehabilitation providers must have a baccalaureate degree from a "regionally accredited" college or university. *See* 18 Va. Admin. Code 115-40-22. On the other hand, onsite sewage system professionals may be licensed with a degree from either a regional or national agency. *See* 18 Va. Admin. Code 160-40-280.

Public universities in Virginia also require regional accreditation. The University of Virginia, for example, will only recognize credits from a school accredited by one of the six regional accrediting agencies (e.g., the Southern Association of Colleges and Schools). *See* Transfer of Credit from Other Institutions, University of Virginia, https://college.as.virginia.edu/transfer-credit. The same is true of Virginia State University. *See* Application Process, Virginia State University, http://www.vsu.edu/admissions/apply/transfer-apply/index.php. Pensacola Christian College has not been accredited by the Southern Association of Colleges and Schools, or by any other regional accrediting agency.

Furthermore, it is not clear that the bachelor's degrees granted by Pensacola Christian College are the same kind as contemplated by Virginia Code § 19.2-37(B). The College maintains that it is exempt from government oversight in Florida, citing Fla. Stat. § 1005.06(1)(e). *See* Pensacola Christian College, Accreditation and Authorization, https://www.pcci.edu/Academics/Accreditation.aspx. But section (f) of that section adds that a "religious college may operate without governmental oversight if . . . the titles of degrees issued by the institution cannot be confused with secular degree titles." Fla. Stat. § 1005.06(1)(f) & (1)(f)(3). Instead, Florida law requires a "religious modifier that immediately precedes, or is included within" degree titles including "Bachelor of Arts" and "Bachelor of Science." Fla. Stat. § 1005.06(1)(f)(3). As Mr. Chatrie has still been unable to get an official copy of Mr. Bishop's qualifications, it remains unclear if Mr. Bishop's degree title reflects this requirement of Florida law. In either event, it would appear that the intent of the law is to indicate that degrees from unlicensed religious colleges are not to be confused with secular degrees from licensed schools.

Given Pensacola Christian College's lack of licensing and accreditation apart from TRACS, as well as the critical caveat that degrees from religious colleges exempt from oversight should be titled differently from secular degree titles, it is unlikely that a degree from the College satisfies Virginia's requirement that magistrates to have a "bachelor's degree from an accredited institution of higher education." Va. Code § 19.2-37(B). Rather, the intent of the law was to put the qualifications for magistrates on par with other professionals, not unlike public accountants or rehabilitation providers. *See* Ex. A at 7.[6] Consequently, Mr. Bishop likely did not qualify to serve

---

[6] In recommending a basic education requirement for magistrates, the Virginia Supreme Court cited three court-related positions that require bachelor's degrees: "juvenile and domestic relations district court intake officers, state probation and parole officers, and pretrial services personnel." Ex. A at 7. While this is surely accurate as a matter of practice, counsel for Mr. Chatrie were unable to locate any state law mandating this requirement or specifying the type of accreditation necessary for these positions.

as a magistrate when he signed the geofence warrant in this case. Such a failure to meet the basic educational requirement set by the state weighs heavily in favor of finding that Mr. Bishop was not capable of making the probable determination here.

Even if, however, Virginia law does recognize Pensacola Christian College as an "accredited" institution of higher learning, Mr. Bishop's lack of experience makes it unlikely that he was capable of determining probable cause for a warrant as technical and complex as a geofence warrant. Upon information and belief, Mr. Bishop was hired as a magistrate on or about June 25, 2018, just two years after graduating from college. After being hired, Mr. Bishop would have had to complete 240 hours of classroom training as well as nine months of a "probationary period" mandated by Va. Code § 19.2-38. As a result, Mr. Bishop would have had, at most, only a few months of experience evaluating warrant applications on his own when he signed the geofence warrant in this case on June 14, 2019.

Furthermore, it is unlikely Mr. Bishop would have encountered a geofence warrant prior to this time or been trained on how to handle them. Unfortunately, counsel for Mr. Chatrie have been unable to contact or speak with Mr. Bishop to ascertain this information, despite attempts to do so. Similarly, it is unlikely that Mr. Bishop would have received any training on geofence warrants, their legality, or in evaluating the sufficiency of an application for one. The Magistrate Manual advises on search warrant procedures generally and specifically discusses Va. Code § 19.2-70.3, involving warrants for the content of an *individual* subscriber or customer's account. *See* Ex. C, Office of the Executive Secretary, Magistrate Manual at pp. 5-15—5-13 ("Search Warrant Procedures"). But neither the Manual nor the law envisions warrants seeking data belonging to multiple individuals, let alone an unknown number of unspecified individuals.

9

While there is no "per se" rule that magistrates must have specialized legal or technical training, *see Shadwick*, 407 U.S. at 353, a warrant as novel, legally complex, and highly technical as the geofence warrant here may demand such training in order for a magistrate to be capable of making a probable cause determination. Counsel for Mr. Chatrie have been unable to determine with any certainty whether Mr. Bishop possesses any such training or experience, but all indications are that he did not when he signed the warrant.

## **CONCLUSION**

If Mr. Bishop did not meet the minimum education requirement to be a magistrate under Virginia law, then it is likely he was incapable of determining probable cause for the geofence search warrant. It is even more likely when considering the unprecedented nature of the warrant against Mr. Bishop's inexperience. And if Mr. Bishop was not capable of making the necessary probable cause determination, then he did not have the constitutional authority to issue the warrant. This renders it void *ab initio* and precludes application of the good faith exception to the exclusionary rule.

Respectfully submitted,
OKELLO T. CHATRIE

By: _____/s/_____   _____/s/_____
Michael W. Price                              Laura Koenig
NY Bar No. 4771697 (*pro hac vice*)           Va. Bar No. 86840
NACDL, Fourth Amendment Center                Office of the Federal Public Defender
1660 L St. NW, 12th Floor                     701 E Broad Street, Suite 3600
Washington, D.C. 20036                        Richmond, VA 23219-1884
Ph. (202) 465-7615                            Ph. (804) 565-0881
Fax (202) 872-8690                            Fax (804) 648-5033
mprice@nacdl.org                              laura_koenig@fd.org