

**EXECUTIVE SECRETARY**
KARL R. HADE

**ASSISTANT EXECUTIVE SECRETARY & LEGAL COUNSEL**
EDWARD M. MACON

**COURT IMPROVEMENT PROGRAM**
LELIA BAUM HOPPER, DIRECTOR

**EDUCATIONAL SERVICES**
CAROLINE E. KIRKPATRICK, DIRECTOR

**FISCAL SERVICES**
JOHN B. RICKMAN, DIRECTOR

**HISTORICAL COMMISSION**
MELINDA LEWIS, DIRECTOR

# SUPREME COURT OF VIRGINIA

OFFICE OF THE EXECUTIVE SECRETARY
100 NORTH NINTH STREET
RICHMOND, VIRGINIA 23219-2334
(804) 786-6455

**HUMAN RESOURCES**
JOHN M. CARTER, DIRECTOR

**JUDICIAL INFORMATION TECHNOLOGY**
ROBERT L. SMITH, DIRECTOR

**JUDICIAL PLANNING**
CYRIL W. MILLER, JR., DIRECTOR

**JUDICIAL PROGRAMS**
KARL A. DOSS, DIRECTOR

**JUDICIAL SERVICES**
PAUL F. DELOSH, DIRECTOR

**LEGAL RESEARCH**
STEVEN L. DALLE MURA, DIRECTOR

**LEGISLATIVE & PUBLIC RELATIONS**
KATYA N. HERNDON, DIRECTOR

December 11, 2007

The Honorable John H. Chichester
Chairman, Senate Finance Committee
Senate of Virginia
P.O. Box 904
Fredericksburg, VA 22404

The Honorable Vincent F. Callahan, Jr.
Chairman, House Appropriations Committee
Virginia House of Delegates
P.O. Box 1173
McLean, VA 22101

Dear Chairmen:

The Appropriations Act, Item 30 G (Special Session I, 2006), called for the Office of the Executive Secretary to submit a report to the Chairmen of the House Appropriations and Senate Finance Committees regarding the selection, training, oversight, accountability, and scheduling of magistrates, and the use of video-conferencing technology to provide magistrate services to the public where part-time, on-call magistrates may currently serve. In January 2007, Chief Justice Hassell established a study group to undertake a comprehensive evaluation of Virginia's magistrate system, including the topics required for the report. The study group, which included judges, a circuit court clerk, magistrates, Commonwealth's attorneys, a public defender, private attorneys and staff from the Office of the Executive Secretary, concluded its work and presented its findings to the Chief Justice. Please find enclosed a report that describes the current magistrate system and makes recommendations to improve the quality and consistency of services provided by magistrates.

Should you have any questions regarding the attached report, please do not hesitate to contact me.

Sincerely,

Karl R. Hade

Enclosure

cc:     Division of Legislative Automated Systems
        Mr. Richard E. Hickman, Jr., Senate Finance Staff
        Mr. Michael Jay, House Appropriations Staff

# REPORT ON THE VIRGINIA MAGISTRATE SYSTEM TO THE CHAIRMEN OF THE HOUSE APPROPRIATIONS AND SENATE FINANCE COMMITTEES OF THE VIRGINIA GENERAL ASSEMBLY

TABLE OF CONTENTS

**Executive Summary** ............................................................................................ iii
**Recommendations** .............................................................................................. iii

**I.   Introduction** .......................................................................................... 1
    A. Brief Overview of the Magistrate System ........................................ 1
    B. Appropriations Act – Item 30 (G) (Special Session I, 2006) ............ 1

**II.   Magistrate Oversight, Supervision and System Structure** ............ 2
    A. Current Magistrate System Supervision and Structure ..................... 2
    B. Challenges Posed By the Current Supervision and System Structure ....... 3
    C. Creation of a Regional Management Structure ................................. 3
    D. Magistrates Should Have Regional Jurisdiction .............................. 5
    E. Abolish the Four-Year Term of Office for Magistrates .................... 5
    F. Establish a Uniform System for Processing Complaints .................. 6
    Recommendations Regarding Magistrate Oversight, Supervision and System Structure ... 6

**III.   Magistrate Selection, Appointment, Qualifications and Termination** ... 6
    A. Current Method and Criteria for Magistrate Selection, Appointment and Termination ... 6
    B. Improving Recruitment, Hiring and Termination Processes ............ 7
    C. Increasing the Qualifications Required for Magistrates .................. 7
    D. Improving the Salary Structure ....................................................... 8
    Recommendations to Improve Magistrate Selection and Appointment ... 9

**IV.   Magistrate Training** ........................................................................... 10
    A. Current System for Training Magistrates ........................................ 10
    B. Expansion of the Training Requirements ......................................... 11
    Recommendations to Improve Magistrate Training .......................... 13

**V.   Magistrate Accountability and Professionalism** ......................... 14
    A. Current Restrictions ......................................................................... 14
    B. Expansion of Relationships Barring Employment as a Magistrate ... 14
    C. Service as Marriage Celebrant Should be Prohibited ...................... 14
    D. Other Concurrent Employment ........................................................ 15
    E. Rules of Professional Conduct ......................................................... 15
    Recommendations to Improve Magistrate Accountability and Professionalism ... 16

**VI.   Scheduling of Magistrates** ................................................................ 16
    A. Current Staffing and Scheduling Structure ..................................... 16
    Recommendations to Improve Scheduling and Staffing ................... 19
    B. Use of Videoconferencing Technology ............................................ 20
    Recommendations to Improve the Use of Videoconferencing Technology ... 22

**VII. Conclusion** ................................................................................................ **22**

**List of Attachments** ....................................................................................... **23**
     **Attachment A**
     **Attachment B**
     **Attachment C**

EXECUTIVE SUMMARY

In 2006, the General Assembly directed the Executive Secretary of the Supreme Court of Virginia to submit a report to the Chairmen of the House Appropriations and Senate Finance Committees regarding the selection, training, oversight, accountability, and scheduling of magistrates, and the use of videoconferencing technology. Appropriations Act – Item 30 (G) (Special Session I, 2006). In response, Chief Justice Leroy R. Hassell, Sr., established a Magistrate Study Group, which included judges, a circuit court clerk, magistrates, Commonwealth's Attorneys, a public defender, and private attorneys, to evaluate the Virginia magistrate system.

The Magistrate Study Group, through a number of its committees and subcommittees, reviewed the pertinent areas of magistrate operations. It presented conclusions and proposals to the Chief Justice and the Executive Secretary of the Supreme Court of Virginia.  The Justices of the Supreme Court and the Committee on District Courts also discussed the Magistrate Study Group's recommendations.  This report represents the Supreme Court of Virginia's assessment of the magistrate system, as well as its recommendations to improve the services the magistrate system provides to the people of the Commonwealth of Virginia.

## <u>Recommendations</u>

1.  **Section 19.2-35 of the Code of Virginia should be amended to transfer supervisory authority over magistrates from the chief circuit court judges to the Executive Secretary.**

2.  **Sections 19.2-35 and 19.2-44 of the Code of Virginia should be modified to provide magistrates with regional authority to make the most efficient use of technology and personnel resources.**

3.  **Section 19.2-43 of the Code of Virginia should be amended to provide the Executive Secretary with authority to appoint personnel needed to manage and administer the realigned magistrate system.**

4.  **Section 19.2-38 of the Code of Virginia should be amended to eliminate four-year terms of office for magistrates.**

5.  **A standardized process should be developed and implemented for receiving and responding to complaints from users of magistrate services and the public.**

6.  **Sections 19.2-35 and 19.2-38 should be amended to transfer the power to select, appoint and terminate magistrates from the chief circuit court judges to the Executive Secretary.**

7.  **Sections 19.2-36, 19.2-37 and 19.2-38.1 of the Code of Virginia should be amended to enhance the qualifications required for magistrates and chief magistrates by:  a) requiring a minimum educational requirement of a bachelor's degree for magistrates**

and discontinuing "equivalent experience" as an alternative to this educational requirement; and b) requiring that any new chief magistrate be a member in good standing of the Virginia State Bar.

8. Application of the enhanced educational requirement to incumbent magistrates and chief magistrates who have not already earned a bachelor's degree should be delayed for ten years to allow the incumbent magistrates and chief magistrates to retain their positions while making satisfactory progress towards attaining a degree. The requirement that chief magistrates be members in good standing of the Virginia State Bar would not apply to incumbent chief magistrates.

9. Compensation should be increased to attract and retain qualified applicants for magistrate and chief magistrate positions.

10. The professional training provided by the Office of the Executive Secretary to magistrates should be expanded and the criteria for a magistrate to become certified should be uniformly applied.

11. Section 19.2-38.1 of the Code of Virginia should be amended to expand the magistrate probation period from six to nine months to allow for additional on-the-job training prior to the certification course.

12. All incumbent magistrates should be required to attend a mandatory training course and be re-certified by January 1, 2010.  To maintain certification, magistrates should be required to complete a minimum of 24 hours of CLE every two years and have satisfactory annual performance evaluations.

13. The Office of the Executive Secretary should provide a mandatory management training program exclusively designed for chief magistrates, who should receive this training within one month of appointment.

14. Section 19.2-37 of the Code of Virginia should be amended to extend the familial relationships that would prohibit a person from serving as a magistrate and to restrict the outside employment in which a magistrate can engage.

15. The Office of the Executive Secretary will promulgate Rules of Professional Conduct for magistrates and such rules will be approved by the Supreme Court.

16. The Office of the Executive Secretary should discontinue the use of on-call magistrates.

17. The Office of the Executive Secretary should transition to the exclusive use of full-time magistrates by replacing part-time magistrates with full-time magistrates.

18. Magistrate staffing should be increased by 20 FTE magistrate positions.

19. **Magistrate schedules should be standardized and formalized, so as to be predictable, regular, efficient and fair. To accomplish this, magistrate schedules should be based upon a 40-hour workweek and, generally, eight-hour shifts.**

20. **The Office of the Executive Secretary should provide magistrates, on a statewide basis, with up-to-date videoconferencing technology that is compatible and easy to use.**

21. **The Office of the Executive Secretary should provide 24-hour, seven day a week technology support by adding to the staff supporting the magistrate system.**

# I. INTRODUCTION

## A. Brief Overview of the Magistrate System

In 1974, the Virginia magistrate system was established to replace the office of justice of the peace as part of the statewide reorganization of the courts. Magistrates have a range of duties, and they exercise the following powers: (1) issue warrants in criminal proceedings; (2) admit criminal defendants to bail or commit them to jail; (3) issue search warrants; (4) issue emergency protective orders; (5) issue mental and medical emergency custody orders; and (6) issue mental and medical temporary detention orders. Va. Code §§ 16.1-253.4, 19.2-45, 37.2-808, -809.

Magistrates and chief magistrates are appointed by the chief judge of the circuit court in consultation with the chief general district court judge and the chief juvenile and domestic relations district court judge. Va. Code §§ 19.2-35, -36. Magistrates are appointed for four-year terms, but they serve at the pleasure of the chief circuit court judge. Va. Code § 19.2-38. The chief circuit court judge has full supervisory authority over the magistrates, unless this authority is delegated to the chief judge of the general district court. Va. Code § 19.2-35.  The chief magistrate of the district provides direct daily supervision of magistrates and assists the chief judge in the operation of the magistrate system, including maintaining magistrate schedules and training responsibilities. Va. Code § 19.2-36.

There are statutory qualifications for a person to be appointed as a magistrate. Va. Code § 19.2-37. Among other qualifications, the person must have a bachelor's degree from an accredited institution of higher learning or possess "equivalent experience"; must not either be a clerk of a district court, or have a spouse who is; must not be the parent, child, spouse or sibling of a district court judge of that district; must not be a law enforcement officer; and must either reside in the judicial district for which he or she is seeking appointment or live in an adjoining district.

There are 32 judicial districts in Virginia. The authority of a magistrate extends throughout the entire judicial district for which he is appointed. Va. Code § 19.2-44. The Committee on District Courts establishes the number of magistrates in each district.  Most magistrates are full-time employees and work on a shift basis in offices that are open 24-hours per day, seven days a week; however, many magistrates also work on a part-time or on-call basis.  Magistrate hearings are conducted in person or through videoconference systems, although some rural magistrate offices that do not have access to videoconferencing use on-call magistrates to provide 24-hour service to the public.

The Committee on District Courts establishes training standards for magistrates, and the Office of the Executive Secretary of the Supreme Court of Virginia (OES) is responsible for assisting with the training provided to magistrates. Va. Code §§ 19.2-38.1, -43.

## B. Appropriations Act – Item 30 (G) (Special Session I, 2006)

Item 30 (G) directs the Executive Secretary of the Supreme Court of Virginia to submit a report to the Chairmen of the House Appropriations and Senate Finance Committees regarding the selection, training, oversight, accountability, and scheduling of magistrates.  The report is also

"[to] examine issues regarding the use of videoconferencing technology to provide magistrate services to the public where part-time, on-call magistrates may serve currently."

In response, Chief Justice Leroy R. Hassell, Sr., established the Magistrate Study Group to undertake a comprehensive evaluation of the Virginia magistrate system.  The list of members for the Magistrate Study Group is included as Attachment A.  The Honorable Thomas S. Shadrick, Chief Judge, Second Judicial Circuit, was appointed to chair the Study Group.

The Magistrate Study Group began its work on January 30, 2007.  Study Group members were assigned to one or more of the following subcommittees:  Selection, Qualifications, Supervision, and Compensation Subcommittee, Chair – the Honorable C. Randall Lowe, Chief Judge, Twenty-eighth Judicial Circuit; Training, On-Going Certification, and OES Support Subcommittee, Chair – the Honorable Michael P. McWeeny, Chief Judge, Nineteenth Judicial Circuit; Staffing, Workload Analysis, and Use of Technology Subcommittee, Chair – the Honorable Gary A. Hicks, Chief Judge, Fourteenth Judicial Circuit; and Scheduling Subcommittee, Chair – the Honorable Aundria Deloris Foster, Judge, Seventh Judicial Circuit. After more than 40 meetings, the Study Group presented its findings and recommendations to the Chief Justice and the Executive Secretary.

This report, submitted in response to Item 30 (G), represents the Supreme Court of Virginia's conclusions and recommendations regarding the selection, training, oversight, accountability, and scheduling of the magistrates, and the use of videoconferencing technology.

## II.  MAGISTRATE OVERSIGHT, SUPERVISION AND SYSTEM STRUCTURE

### A. Current Magistrate System Supervision and Structure

There are 400.2 full-time equivalent (FTE) magistrate positions for the 32 judicial districts in Virginia.  The Committee on District Courts establishes the number of magistrates in each district.  Va. Code § 19.2-34.   The authority to appoint and terminate magistrates is vested in the chief circuit court judge having jurisdiction within the judicial district.  Va. Code §§ 19.2-35, -38. Persons are appointed as magistrates for four-year terms; however, appointments are revocable at the pleasure of the chief circuit court judge. Va. Code § 19.2-38.  The chief circuit court judge also appoints the chief magistrate. Va. Code § 19.2-36.

The chief circuit court judge exercises supervisory authority over the magistrates in the judicial district. Va. Code § 19.2-35.  This authority may be delegated to the chief general district court judge. Id.  The chief magistrate of the district is responsible to the supervising chief judge. The chief magistrate provides direct daily supervision of magistrates and assists the supervising chief judge in the operation of the magistrate system within the district, including maintaining magistrate schedules and training magistrates.  Va. Code § 19.2-36.

Currently, each magistrate exercises jurisdiction within the judicial district for which he was appointed. Va. Code § 19.2-44. The provision of magistrate services may vary significantly depending on the size, geography and population of a judicial district.  For example, most judicial

districts, especially those that are comparatively large, are served by several magistrate offices that are separated by many miles.  Other districts, especially those consisting of metropolitan areas, may be served by a single magistrate office.

## B. Challenges Posed By the Current Supervision and System Structure

Magistrates are supervised by the chief circuit judge or, if this authority is delegated, by the chief general district court judge. Va. Code § 19.2-35.  This places the responsibility for the direct administrative supervision of the magistrate on a judge who may also be called upon to hear a case in which he may have to review that magistrate's judicial decision, albeit as an indirect review in the case of a circuit court judge.

This system of supervising magistrates has also been problematic because chief circuit and chief general district court judges tend to be removed from the context of the work of the magistrates. The geographic size of a district may also hinder the ability of a chief judge to provide supervision because the judge's resident court may be in another location in the district. Although chief magistrates are charged with the day-to-day supervision of magistrates, the supervision in many districts is limited because of the geographical challenge noted with regard to judges and because of the need for chief magistrates to work full magisterial shifts to compensate for understaffing.

The current system also fails to provide for a standardized process for receiving and responding to complaints against magistrates.  Complainants might contact the chief magistrate, the chief circuit court judge or even the Office of the Executive Secretary.  This lack of a uniform complaint procedure can be frustrating to complainants, and any redress could vary significantly depending upon which entity receives and handles the complaint.  Furthermore, inequitable management among jurisdictions has not only reduced uniformity in office procedures, the handling of complaints, and the application of statutory principles, but has also resulted in substantial variations in the overall quality of magistrate performance from district to district.

The existing management structure for magistrates is defined by judicial district boundaries.  These boundaries produce inequitable management responsibilities for chief magistrates as the number of magistrates per district varies substantially.  For example, in Judicial District Two-A, the chief magistrate supervises only four magistrates, while the chief magistrate in the Nineteenth Judicial District supervises 30 magistrates.  The number of localities that a chief magistrate serves varies considerably, as well.  For example, the Twenty-fifth Judicial District contains 12 cities and counties while the First, Second, Third, Fourth, Seventh, Eighth, Thirteenth, Fourteenth and Eighteenth Judicial Districts encompass one locality each.

## C. Creation of a Regional Management Structure

The district-oriented administrative structure has produced inconsistent management policies, procedures and practices among the judicial districts. Rather than have 32 separate and uncoordinated management structures for magistrates corresponding to the judicial districts, the Magistrate Study Group proposed that the Office of the Executive Secretary provide oversight of the magistrate system on a statewide basis, but through a new regional administrative structure.

OES would be able to develop, implement and enforce a standard set of procedures and guidelines for magistrates. This administrative structure would be designed to ensure that complainants, petitioners, defendants and respondents receive uniform and fair treatment by magistrates across the Commonwealth.

To manage magistrate offices on a regional basis, the Office of the Executive Secretary should create regional magistrate supervisor positions.  Regional magistrate supervisors would report directly to the Office of the Executive Secretary and would be responsible for supervising chief magistrates in the respective regions.  A regional magistrate supervisor would be assigned to each magisterial region.  Each regional magistrate supervisor would provide direct supervision to the chief magistrates in the region who, in turn, would provide day-to-day supervision of the magistrates.  Regional magistrate supervisors would also maintain regular contact with the chief circuit court judges, chief general district court judges, and chief juvenile and domestic relations district court judges, as well as the various clerks' offices within the region, in order to ensure the proper and effective functioning of the magistrate system.

In addition, the Office of the Executive Secretary should establish a new position of magistrate system coordinator.  The magistrate system coordinator would oversee and coordinate the provision and administration of magistrate services statewide; directly supervise the regional magistrate supervisors and magistrate advisors; develop and coordinate magistrate and chief magistrate training; serve as a liaison between the magistrate offices, the Supreme Court of Virginia, and the Office of the Executive Secretary; and participate in policy-making for the magistrate system.  The addition of these positions into the magistrate management structure – regional magistrate supervisors and the magistrate system coordinator – would result in uniformity in the policies, procedures and practices of magistrate offices statewide.  A chart of the proposed magistrate administrative structure is provided as Attachment B.

Because more intensive magistrate training is recommended, as described below in Section IV, the Office of the Executive Secretary should create a new position of magistrate training coordinator. The magistrate training coordinator would coordinate and oversee state and local magistrate educational programs and efforts. Responsibilities of the position would include planning, developing, designing, and managing the Magistrate Certification Course; developing curriculum, examinations and grading criteria; assembling and maintaining training materials; administering and grading certification examinations; recruiting faculty for magistrate training programs; and assisting instructors in developing class materials and conducting training.  Three full-time instructors should also be hired to conduct magistrate training, which will take place throughout the year.

At a minimum, candidates for the newly created positions of magistrate system coordinator and regional magistrate supervisors should possess the same qualifications as for the chief magistrate position.  Candidates for the magistrate training coordinator position should meet the minimum professional qualifications for a magistrate position, should have a strong working knowledge of the magistrate system, and should be familiar with principles of adult education.

## D. Magistrates Should Have Regional Jurisdiction

To facilitate the balancing of management responsibilities under the new administrative structure, the statewide magistrate system should be realigned from the current district configuration to a more efficient regional design.  It is proposed that the magistrate system be realigned as follows into eight magisterial regions.

| Region Number | Corresponding Judicial Districts |
|:---:|:---:|
| 1 | 27th, 28th, 29th, 30th |
| 2 | 21st, 22nd, 23rd, 24th, 25th |
| 3 | 6th, 10th, 11th |
| 4 | 16th, 20th, 26th |
| 5 | 17th, 18th, 19th, 31st |
| 6 | 2A, 7th, 8th, 9th, 15th |
| 7 | 1st, 2nd, 3rd, 4th, 5th |
| 8 | 12th, 13th, 14th |

Each magisterial region would merge three to five contiguous judicial districts and would consist of approximately 30 to 60 FTE magistrates and three to five chief magistrates.  When determining the composition of the proposed magisterial regions, several factors were considered, including the location of regional jails, the size, geography and population of each judicial district, and the availability of magistrate services throughout the region once videoconferencing is fully implemented. A map of the proposed regions is provided as Attachment C.

With the creation of a regional management structure, as well as the expanded utilization of videoconferencing technology and a focus on the most efficient use of magistrate staff, magistrates should have authority to serve an entire magisterial region. Presently, a magistrate's authority is limited to the judicial district for which he is appointed; however, a magistrate may exercise these powers in a contiguous political subdivision when the chief circuit judges of his district and the contiguous district agree. Va. Code § 19.2-44. If magistrate authority were expanded beyond the boundaries of the judicial district for which the magistrate was appointed, magistrates could assist their colleagues in other districts within the magisterial region by conducting hearings via videoconference.  This would provide 24-hour magistrate service to jurisdictions where magistrate workloads do not support staffing an office on a full-time basis, eliminating the need for on-call magistrates.  Multi-jurisdictional authority for magistrates, in conjunction with a compatible videoconferencing system, would also allow a magistrate in a less busy office to assist a magistrate in another office during high volume periods.

## E. Abolish the Four-Year Term of Office for Magistrates

As noted earlier, although magistrates are appointed for four-year terms, they serve at the pleasure of the chief circuit court judge.  Evaluation of performance criteria varies according to the chief circuit court judge.  Because magistrates, chief magistrates, regional magistrate supervisors, and the magistrate system coordinator would be appointed to serve at the pleasure of the Executive Secretary and be subject to all OES personnel policies and procedures under the new administrative structure, there is even less justification to continue the scheme of four-year terms

5

for these at-will employees. Like all court system personnel who are employed on an at-will basis, these individuals would be subject to routine performance assessments.  Under the new system, all magistrates and chief magistrates must satisfy uniform job performance standards for the duration of their employment.

**F. Establish a Uniform System for Processing Complaints**

Since there is no uniform system for processing complaints, the Office of the Executive Secretary should develop a procedure to systematically handle complaints regarding the magistrate system.  Contact information for the chief magistrates and regional magistrate supervisors should be publicized on Virginia's Judicial System website so that access to the information necessary to file a complaint is readily available.

**Recommendations Regarding Magistrate Oversight, Supervision and System Structure**

1. **Section 19.2-35 of the Code of Virginia should be amended to transfer supervisory authority over magistrates from the chief circuit court judges to the Executive Secretary.**

2. **Sections 19.2-35 and 19.2-44 of the Code of Virginia should be modified to provide magistrates with regional authority to make the most efficient use of technology and personnel resources.**

3. **Section 19.2-43 of the Code of Virginia should be amended to provide the Executive Secretary with authority to appoint personnel needed to manage and administer the realigned magistrate system.**

4. **Section 19.2-38 of the Code of Virginia should be amended to eliminate four-year terms of office for magistrates.**

5. **A standardized process should be developed and implemented for receiving and responding to complaints from users of magistrate services and the public.**

## III.  MAGISTRATE SELECTION, APPOINTMENT, QUALIFICATIONS AND TERMINATION

**A. Current Method and Criteria for Magistrate Selection, Appointment and Termination**

Pursuant to Section 19.2-35 of the Code of Virginia, chief circuit court judges possess the authority to appoint and terminate magistrates. Nonetheless, the Magistrate Study Group found wide variance in the level of involvement of chief circuit court judges in the hiring process, resulting in widely varying hiring practices.  The Magistrate Study Group found that existing hiring practices do not always gauge either the professional or personal characteristics necessary for the effective performance of the duties of a magistrate.

Since July 1, 1995, every magistrate appointed has been required to have a bachelor's degree from an accredited institution of higher learning or "equivalent experience." Va. Code §

19.2-38.1. There is no requirement that chief magistrates have any additional education or experience beyond that which is required of a magistrate. Magistrates appointed before July 1, 1995 were only required to have a high school diploma or General Education Development Certificate. While many magistrates have earned a bachelor's degree, a substantial number of magistrates were hired either prior to July 1, 1995 or pursuant to the "equivalent experience" exception to the bachelor's degree requirement. Moreover, the Magistrate Study Group found that the "equivalent experience" criterion has been inconsistently interpreted and applied.

Currently, the salary structure for magistrates is determined by magistrate classification, which, in turn, is based upon a magistrate's full-time equivalency (FTE) hours. There are six classes of magistrates (Class I through Class VI). Magistrate VI status is the highest classification and indicates the magistrate works a full-time schedule of 35 to 45 FTE hours. The salary range for Magistrate VI is $34,242 to $54,588, with the salary range for each class below Magistrate VI proportionately reduced by 20%. The present salary range for chief magistrates is $39,678 to $63,237. A salary differential of 20% is paid for magistrates who live and work in Northern Virginia. Hence, in Northern Virginia, the salary range for Magistrate VI is $41,670 to $66,422, and the range for chief magistrates is $48,274 to $76,954.

## B. Improving Recruitment, Hiring and Termination Processes

The Executive Secretary should be given the authority to hire and terminate magistrates, chief magistrates and other personnel in the magistrate system. The chief circuit court judge and chief district judges serving the locality where a vacancy occurs should provide input to the chief magistrate and the regional magistrate supervisor at OES responsible for recruitment. Annual performance evaluations of all magistrates will be conducted. The Magistrate Study Group concluded that this structure would promote consistent, substantive hiring and advancement decisions, and facilitate identification of individuals who are not performing at an acceptable level. A significant majority of the circuit court chief judges support this proposal.

## C. Increasing the Qualifications Required for Magistrates

Because of the varied and complex duties of magistrates, the Magistrate Study Group proposed, and the Supreme Court of Virginia recommends, a minimum educational requirement of a bachelor's degree for magistrates and that the "equivalent experience" alternative to the educational requirement be discontinued. Magistrates are required to make probable cause determinations, conduct legal research, and apply statutes and legal principles to factual situations using independent judgment and appropriate reasoning and analysis. A bachelor's degree would provide magistrate candidates with the minimum level of education necessary to effectively fill the position. The same educational threshold is required for several other court-related personnel positions, which, like magistrates, require application of strong analytical skills and the exercise of independent judgment and discretion. These positions include juvenile and domestic relations district court intake officers, state probation and parole officers, and pretrial services personnel.

It is anticipated that the implementation of this educational requirement would create, over time, a college-educated workforce that should enhance the quality of decision making by

magistrates.  To further improve magistrates' qualifications, candidates with a law degree or advanced degree in criminal justice would be taken into account in the hiring process.

Although raising the minimum educational qualification for magistrates is necessary, immediate implementation of this criterion could adversely impact many incumbent magistrates who have not yet earned a bachelor's degree.  To prevent any sitting magistrate or chief magistrate who does not have a bachelor's degree from unfairly losing his or her job because of currently failing to meet the educational requirements, the Magistrate Study Group proposed, and the Supreme Court of Virginia recommends, that the requirement of a bachelor's degree be deferred for incumbent magistrates or chief magistrates so they may continue in their current positions while obtaining the necessary education. Because every region of the state has or is near an accredited four-year college or university, magistrates who need to earn their bachelor's degree can access these institutions fairly conveniently either in Virginia or a neighboring state. Moreover, several colleges and universities offer evening and on-line classes that are designed for adult students who work full-time jobs.

Specifically, incumbent magistrates and chief magistrates would have ten years from the effective date of this requirement to continue serving in their positions without a break in service before the requirement of a bachelor's degree applies to them.  Therefore, assuming this requirement becomes effective July 1, 2008, affected magistrates would be required to make satisfactory progress toward a bachelor's degree beginning in the academic year following July 1, 2009, and would be expected to obtain a bachelor's degree on or before July 1, 2018, unless granted a waiver by the Executive Secretary.

The Magistrate Study Group also proposed, and the Supreme Court of Virginia recommends, that all newly hired chief magistrates be required to be members in good standing of the Virginia State Bar.  A legal education, including especially a working knowledge of Virginia criminal law, would assist chief magistrates in training magistrates and in resolving legal issues they encounter on the job.

Incumbent chief magistrates will not be required to earn a law degree.  In many localities in Virginia access to a legal education at a law school accredited by the American Bar Association is very limited, and in some cases non-existent.  Furthermore, class schedules at many Virginia law schools would not accommodate a magistrate's work schedule.  Generally, evening classes and on-line classes are not available at all or are limited, so that applying the requirement of a law degree to incumbent chief magistrates would be impracticable.

### D. Improving the Salary Structure

In order to recruit and retain qualified magistrates, it is recommended that the salary structure be reconfigured based upon a combination of educational achievement and years of experience in the position, and that magistrate compensation be increased at all levels of the magistrate system. Additionally, new classifications for magistrate positions have been developed, based on whether or not the magistrate is an attorney.

Proposed Magistrate I through Magistrate III positions are non-attorney magistrates. The Magistrate I position is an "entry level" magistrate position. The Magistrate II and III positions reflect increased experience as a magistrate beyond the Magistrate I position. The same is true for the proposed Magistrate/Attorney I, II and III positions. The intent of establishing these different levels is to provide a career advancement track for magistrates similar to that in many state and local agencies and departments. By recognizing and compensating magistrates for their increased experience and educational achievements, the goal is to attract and retain better-qualified magistrates.

Given the significant judicial decisions that magistrates are called upon to make and in view of the recommended enhanced educational and professional qualifications, the Magistrate Study Group proposed, and the Supreme Court of Virginia recommends, increased compensation for magistrates at all levels as follows:

| Position | Starting Salary |
|---|---|
| Magistrate I | $48,440 |
| Magistrate II | $50,378 |
| Magistrate III | $52,393 |
| Magistrate/Attorney I | $63,036 |
| Magistrate/Attorney II | $65,558 |
| Magistrate/Attorney III | $68,180 |
| Chief Magistrate/Non-Attorney (applicable to incumbent chief magistrates only) | $69,765 |
| Chief Magistrate/Attorney | $77,517 |

In order to promote consistency and fairness in compensation, particularly in light of increased salaries, new magistrates and chief magistrates would not be eligible to receive local supplements once the new salaries take effect. Localities would be permitted to continue to pay local supplements to incumbent magistrates receiving them, but the amount of the supplemental income currently paid to magistrates would be frozen as of June 30, 2008.

**Recommendations to Improve Magistrate Selection and Appointment**

**6. Sections 19.2-35 and 19.2-38 should be amended to transfer the power to select, appoint and terminate magistrates from the chief circuit court judges to the Executive Secretary.**

**7. Sections 19.2-36, 19.2-37 and 19.2-38.1 of the Code of Virginia should be amended to enhance the qualifications required for magistrates and chief magistrates by: a) requiring a minimum educational requirement of a bachelor's degree for magistrates and discontinuing "equivalent experience" as an alternative to this educational requirement; and b) requiring that any new chief magistrate be a member in good standing of the Virginia State Bar.**

**8. Application of the enhanced educational requirement to incumbent magistrates and chief magistrates who have not already earned a bachelor's degree should be delayed for ten years to allow the incumbent magistrates and chief magistrates to retain their positions**

**while making satisfactory progress towards attaining a degree. The requirement that chief magistrates be members in good standing of the Virginia State Bar would not apply to incumbent chief magistrates.**

9. **Compensation should be increased to attract and retain qualified applicants for magistrate and chief magistrate positions.**

## IV.  MAGISTRATE TRAINING

### A. Current System for Training Magistrates

Minimum training standards for magistrates are established by the Committee on District Courts.  Va. Code § 19.2-38.1.  Upon initial appointment, each new magistrate is placed on probation for a period of six months, during which time he must satisfy the minimum training standards specified by the Committee on District Courts.  The Executive Secretary is responsible for assisting with the training provided to magistrates.  Va. Code § 19.2-43.

In order for a new magistrate to become certified, the minimum training standards require the following: 1) a minimum of 40 hours of training on the use and application of the Magistrate Manual from the chief magistrate; 2) at least 30 days of on-the-job training through observation of the chief magistrate or another experienced magistrate; and 3) once the training specified above has been completed and the new magistrate and chief magistrate so certify, attendance and successful completion of the Magistrate Certification Course.  The Magistrate Certification Course, which is offered four times per year by the Office of the Executive Secretary, consists of four days of classroom instruction followed by an examination.  Instruction on the following subjects is provided during the four-day Magistrate Certification Course:

- Bail Procedures (5.75 hours);
- Canons of Ethics (1.25 hours);
- Probable Cause for Arrest and Search Warrants (3.75 hours);
- Elements of a Crime (2.0 hours);
- Interviewing Techniques (1.5 hours);
- Juvenile and Domestic Relations Procedures (2.75 hours);
- Legal Research Techniques (2.0 hours);
- Civil Procedure (3.25 hours);
- Adult Arrest Procedure (3.0 hours); and
- Temporary Detention Orders (4.75 hours).

A magistrate must receive a score of at least 75% to pass the examination and become certified.  Once a magistrate is certified, the minimum training standards require 24 hours of continuing legal education every four years for the magistrate to maintain certification.

Newly appointed chief magistrates must attend a Management Orientation Course conducted by the Office of the Executive Secretary.  This is a combined management training offered to both new district court clerks and new chief magistrates.

All training provided to magistrates by the Office of the Executive Secretary is currently conducted by magistrate advisors.  Magistrate advisors provide technical assistance, training and guidance to magistrates and serve as liaisons between magistrates and OES.

## B. Expansion of the Training Requirements

### 1. Magistrate Certification Course

The Magistrate Certification Course was developed 25 years ago.  While the responsibilities of magistrates have expanded significantly over the past 25 years, the length of the Magistrate Certification Course has remained unchanged.  As a result, the content of certain subjects has been condensed to accommodate additional topics in the four-day instruction period.  Both magistrates and OES staff have indicated that four days of classroom instruction is insufficient to provide adequate training for the certification examination.  These concerns regarding the length of the certification course seem to be reflected in the failure rate that is seen on the certification examination.  On average, 20% of new magistrates fail to receive a passing score on the initial exam.  The limited instruction permitted by a four-day course, as well as inconsistent and incomplete on-the-job training, increases the likelihood of failure.

Given the limited time to present the material, instruction during the Magistrate Certification Course is provided through a lecture-only format.  While lectures are suitable for providing instruction on matters of substantive law, practical exercises, such as simulated scenarios and role-playing, would provide needed practical training on the magistrate hearing process and better prepare magistrates to perform their job duties.  To adequately cover the body of law that continues to expand and to reinforce lectures with practical exercises, a significant extension of the current Magistrate Certification Course is needed.

The Magistrate Study Group proposed that the Office of the Executive Secretary expand the Magistrate Certification Course from four days to four weeks of instruction, and the Supreme Court of Virginia endorses this recommendation.  The course should continue to be offered four times per year; however, the curriculum should combine instruction on legal theory with exercises that illustrate the practical application of the law, procedures and processes.  During the expanded four-week Magistrate Certification Course, magistrates should receive instruction on the following subjects:

- Bail Procedures (16 hours);
- Canons of Ethics (8 hours);
- Probable Cause (12 hours);
- Elements of Specific Crimes (44 hours);
- Interviewing (4 hours);
- Juvenile and Domestic Relations Law (12 hours);
- Legal Research (8 hours);
- Civil Procedure (12 hours);
- Adult Arrest Procedure (12 hours);
- Criminal Law Theory (4 hours); and

11

- Mental/Medical Emergency Custody and Mental/Medical Temporary Detention Order Procedures (20 hours).

At the conclusion of the course, magistrates should be required to take a written examination on the subject matter and complete practical performance tests.  In order to become certified, magistrates should be required to earn a minimum passing score of 75% on the written examination and pass the performance tests.  Magistrates who do not receive a passing score on the written examination should be offered an opportunity to retake the written examination; however, no retesting should be offered to magistrates who do not satisfactorily complete the performance tests.

Practices currently differ among districts with regard to candidates who fail to become certified.  Pursuant to OES policy, magistrates are allowed two attempts to pass the certification exam.  However, three districts allow their magistrates only one attempt to pass the examination. Under either policy, it is reasonable to expect that unsuccessful candidates would be terminated from their positions. Nonetheless, the Magistrate Study Group found that some magistrates who were terminated for failing the certification exam were rehired and allowed to repeat the process. Inconsistent application of the certification policy in some districts undercuts the rationale and value of the certification requirement. This requirement should be consistently applied.

### 2. On-the-Job Training

The Magistrate Study Group found that a number of problems have plagued magistrate training conducted by the chief magistrates.  The quality of training offered by chief magistrates during the probationary period is inconsistent.  Some chief magistrates are not able to devote adequate time and attention to this training because of staffing shortages.  As a result, many new magistrates have essentially had to train themselves, with little guidance from their chief magistrates.  Magistrates receiving insufficient on-the-job training are more likely to find themselves unprepared for the Magistrate Certification Course and more often fail the certification examination.  Moreover, some magistrates and chief magistrates have complained that six months is not sufficient time to provide the necessary on-the-job training to prepare new hires for certification.  Expanding the probationary period from six to nine months would allow additional time for on-the-job training prior to the certification course.

### 3. Re-certification and Maintaining Certification

Some magistrates have been "grandfathered" since 1974, and were not required to successfully complete a certification course.  Given concerns about magistrate competency, it is important for OES to make sure that incumbent magistrates are capable and qualified to serve in their positions.  While the majority of incumbent magistrates may not need the intense four-week certification course, they could benefit from receiving supplemental training.  The Office of the Executive Secretary should require incumbent magistrates, at a minimum, to attend a mandatory training course that offers condensed instruction on the subject matter offered during the four-week course.  This training should include lectures and interactive demonstrations.  At the conclusion of the course, incumbent magistrates should be tested on the subject matter in order to

become re-certified.  Those failing to become re-certified by a prescribed date should be terminated.

To maintain certification, magistrates must complete a minimum of 24 hours of CLE every two years and have satisfactory annual performance evaluations.  Taking the certification course or attending a specifically tailored CLE can enhance a magistrate's comprehension of the subject matter and ability to apply the relevant legal concepts and principles.  If a magistrate's performance is unsatisfactory, he or she should be required to attend such a training program.  The annual performance evaluation provides one forum for identifying and addressing the problem.

### 4. Management Training for Chief Magistrates

The curriculum for the Management Orientation Course attended by new district court clerks and new chief magistrates includes subject matter relevant to district court clerks that has little to do with the specific responsibilities of chief magistrates.  A separate course devoted exclusively to management training for chief magistrates should be developed and provided to new chief magistrates within one month of their appointments.

### Recommendations to Improve Magistrate Training

**10. The professional training provided by the Office of the Executive Secretary to magistrates should be expanded and the criteria for a magistrate to become certified should be uniformly applied.**

**(a) The Magistrate Certification Course should be expanded from four days to four weeks, and the curriculum for the certification course should combine instruction on legal theory with exercises that illustrate the practical application of the law, procedures and processes.**

**(b) Magistrates should be required to take a written examination on the subject matter and complete practical performance tests consisting of mock hearings.  In order to become certified, magistrates must earn a passing grade of at least 75% on the written examination and satisfactorily complete the performance tests.**

**(c) Magistrates who do not receive a passing score on the written certification examination should be offered an opportunity to retake the written examination; however, no retesting should be offered to magistrates who receive unsatisfactory scores on the performance tests.**

**11. Section 19.2-38.1 of the Code of Virginia should be amended to expand the magistrate probation period from six to nine months to allow for additional on-the-job training prior to the certification course.**

**12. All incumbent magistrates should be required to attend a mandatory training course and be re-certified by January 1, 2010.  To maintain certification, magistrates should be**

**required to complete a minimum of 24 hours of CLE every two years and have satisfactory annual performance evaluations.**

13. **The Office of the Executive Secretary should provide a mandatory management training program exclusively designed for chief magistrates, who should receive this training within one month of appointment.**

## V. MAGISTRATE ACCOUNTABILITY AND PROFESSIONALISM

Magistrates are an integral part of the court system, one of whose distinguishing characteristics must be impartiality. The norm of impartiality applies to all who serve the public in the court system; but the magistrate, in serving as a judicial officer, must not only be impartial, but must be especially careful to avoid the appearance of partiality. There are several recommended changes to the professional expectations of magistrates which would promote this norm of impartiality.

### A. Current Restrictions

Section 19.2-37 of the Code of Virginia sets forth the disqualifying personal and professional relationships that create either an actual or apparent conflict of interest. These statutory prohibitions specify that magistrates must not (a) be a law enforcement officer; (b) be a clerk, deputy or assistant clerk, or employee of a clerk of a district court; (c) have a spouse who is a clerk, deputy or assistant clerk or employee of a clerk of a district court; (d) be the parent, child, spouse or sibling of a district court judge presiding in the same judicial district; or (e) be the chief executive officer, or a member of the board of supervisors, town or city council, or other governing body for a political subdivision of the Commonwealth.

### B. Expansion of Relationships Barring Employment as a Magistrate

Public confidence in the integrity of the magistrate system requires magistrates to avoid conflicts of interest. There are obvious and compelling reasons for the disqualifying relationships with district court personnel and district court judges; however, there is no reason why parallel prohibitions should not apply to familial relationships with personnel of the circuit court. Section 19.2-37 of the Code of Virginia should be modified to extend the prohibited familial relationships to the positions of circuit court clerks, deputy circuit court clerks, employees of a clerk of the circuit court, and judges of the circuit courts in the region(s) served by the magistrate. The current prohibition of a familial relationship to a judge of the same district where the magistrate serves should be extended to encompass a district court judge who sits in the same magisterial region served by the magistrate.

### C. Service as Marriage Celebrant Should be Prohibited

Performing marriages for a fee, gratuity or other remuneration creates at least the appearance of a conflict with job responsibilities. During work hours, a magistrate should be

engaged in the performance of his or her magistrate duties.  Performing marriages is clearly beyond the scope of these responsibilities.

The Magistrate Study Group found that it is not uncommon for some magistrates to perform marriages as a means of earning supplemental income. These marriage ceremonies are frequently performed in the public office of the magistrate. Clearly, it is inappropriate to use public office for private financial gain.  Moreover, when an on-duty magistrate leaves the office to conduct a marriage elsewhere, the magistrate is unavailable to perform his official duties. A magistrate should also be prohibited from accepting a fee, a gratuity, or any other thing of value for performing services at any time as a marriage celebrant.

## D. Other Concurrent Employment

A magistrate's engagement in concurrent outside employment creates the problems of conflict of interest, distraction from professional focus, and the use of public office for private gain. Therefore, there should be a statutory bar on the performance of concurrent employment during on-duty hours.

The issue of secondary employment is further complicated when a magistrate is engaged in the practice of law. When a magistrate engages in the practice of law, not only is the line between arbiter and advocate blurred, but an apparent conflict of interest is also created. While a magistrate engaged in the practice of law might in good faith assert that he is able to distinguish between his work as a magistrate and his work as an attorney, the distinction may escape court personnel and the public. It is also noteworthy that a judge of the Commonwealth is precluded from practicing law. Va. Sup. Ct. R., Pt. 6, § III, Canon 4 (G). Accordingly, given their judicial role, it is reasonable to apply the same blanket restriction to magistrates.

Because the judicial role of magistrates involves the public trust, it should be conducted without actual or potential distraction by outside employment and without the appearance of conflict during either on- or off-duty hours. Magistrates should be cautious about engagement in any other activity for financial gain during off-hours that would tend to distract from the effective performance of a magistrate's duties.  Before seeking employment in any ostensibly non-conflicting activity, the magistrate should be required to obtain the approval of the Executive Secretary, who would evaluate whether the supplemental employment would interfere with effective performance in the magistrate position.

## E. Rules of Professional Conduct

A theme emerges from the recommendations of this report thus far, that instituting more rigorous employment criteria and more exacting training, along with regular performance reviews, would enhance professionalism among Virginia magistrates.  Consistent with this theme, magistrates should be subject to binding, formal canons of professional conduct analogous to those applied to lawyers and, more specifically, to judges.

Currently, magistrates are subject to the "Canons of Conduct for Virginia Magistrates," originally adopted by the Committee on District Courts and effective January 1, 1980. These

canons are set forth in manuals produced by OES. HUMAN RESOURCES POLICY MANUAL, § 808; MAGISTRATES MANUAL, "Introduction," § J. The adoption of formal rules by the Supreme Court of Virginia and their promulgation in the same manner as other court rules would improve familiarity with and understanding of a magistrate's professional responsibilities.

### Recommendations to Improve Magistrate Accountability and Professionalism

**14. Section 19.2-37 of the Code of Virginia should be amended:**

> **(a) to include the status of or relationship to a clerk, deputy clerk, or assistant clerk of the circuit court, and the familial relationship to a circuit court judge as disqualifying a candidate from appointment as a magistrate;**

> **(b) to prohibit a magistrate from accepting a fee, gratuity, or other thing of value for performing marriage ceremonies;**

> **(c) to prohibit a magistrate from engaging in the performance of concurrent additional employment during on-duty hours;**

> **(d) to prohibit a magistrate from practicing law; and**

> **(e) to prohibit a magistrate from engaging in the performance of concurrent additional employment during off-duty hours unless he receives prior written approval from the Executive Secretary.**

**15. The Office of the Executive Secretary will promulgate Rules of Professional Conduct for magistrates and such rules will be approved by the Supreme Court.**

## VI.  SCHEDULING OF MAGISTRATES

### A. Current Staffing and Scheduling Structure

There are 427 magistrates currently working in the Virginia magistrate system:  380 full-time magistrates, including 32 chief magistrates, and 47 part-time magistrates.  When the system is fully staffed, there are 400.2 FTE magistrate positions statewide.

#### 1. Classification

There are presently six classifications of magistrates that have been established based upon the FTE hours worked per week.  Magistrates in classification I, II, and III are part-time. Magistrates in classification IV, V, and VI are considered full-time.  The 427 magistrates presently employed represent a combined total of 391.6 FTE positions. The hourly FTE range for each classification of magistrate is as follows:

| Magistrate Classification | Hours per week | Equivalency |
|---|---|---|
| *Part-time:* | | |
| Magistrate I | 1 – 8 | .2 FTE |
| Magistrate II | 9 – 16 | .4 FTE |
| Magistrate III | 7 – 24 | .6 FTE |
| *Full-time:* | | |
| Magistrate IV | 25 – 32 | .8 FTE |
| Magistrate V | 33 – 40 | 1.0 FTE |
| Magistrate VI | 35 – 45 | 1.0 FTE |

### 2. "On-call" Scheduling System

On-call magistrates may be classified as part-time or full-time. An on-call part-time magistrate is one who averages up to three days of magistrate activity a week while an on-call full-time magistrate is one who averages four to five days of magistrate activity a week. Magistrate activity consists of the actual performance of job duties (i.e., hearings, processes, etc). On-call means being available for duty if called upon. These part and full-time magistrates may be on-call for eight, ten, twelve or twenty-four-hour shifts during a week or scheduling period. Some magistrates work a combination of shifts. Some are on-call for set periods during the month, while others may be on-call for the entire month.  Scheduling is predicated on the demographic need of the locality and magistrate classification.

Seventy-nine magistrates work on an on-call basis in eleven judicial districts: Two A, Fifth, Sixth, Ninth, Tenth, Eleventh, Fifteenth, Twentieth, Twenty-first, Twenty-fifth and Twenty-sixth. The districts that utilize on-call magistrates are mostly rural. In urban districts, part-time magistrates work set hours and are not on-call.  Because on-call magistrates spend much of their time waiting for law enforcement or the public to request their services, their scheduling differs from a part-time magistrate working in an urban office.

The central characteristic of on-call employment is a magistrate's availability for duty, if called.  During on-call hours, a magistrate may be involved in personal activities or working another job, but must discontinue these activities to respond to a call for magistrate services. According to policies established by the Committee on District Courts, on-call magistrates are required to respond within 20 minutes upon being notified of the need for magistrate services; however, the Magistrate Study Group found that it is not uncommon for magistrates to fail to meet the mandated response time. Recruiting and retaining magistrates for on-call positions is difficult because of the unpredictable scheduling and low pay.

The on-call magistrate system creates inefficiencies within the magistrate system, as law enforcement offices and citizens often must wait for a magistrate to reach the office before they receive service.  This results in a loss of valuable patrol time for law enforcement officers.  In some rural jurisdictions, there may only be a single deputy on patrol at any given time.  Also, there are situations in which ready access to a magistrate is critical, such as incidents of domestic violence or emergency medical or mental health matters.  A delayed response by a magistrate may aggravate a situation and certainly undermines confidence in the judicial system.  Consequently, on-call scheduling of magistrates should be eliminated.

### 3. "Part-time" Scheduling System

Twenty-four judicial districts utilize part-time magistrates.  Sixteen of these districts use part-time magistrates who are not on-call.  Part-time magistrates serve in the following capacities: (1) they provide coverage for full-time magistrates who are on annual, sick, personal, or holiday leave, or who are out of the office for training; (2) they provide shift coverage within a district in conjunction with other magistrates during peak hours or situations requiring additional assistance when the number of arrests may be high, such as major civic and community events and DUI checkpoints; (3) they are part of the regular schedule; and (4) they serve as floaters who work at different offices within a judicial district.  However, the part-time magistrate system generally is burdened by the same problems as an on-call magistrate system (i.e., irregular and unpredictable workdays and shifts; low pay; difficulty in recruiting and retaining qualified applicants; and conflicts with other employment).

Although there may be some incidental benefits to using part-time magistrates, the Magistrate Study Group concluded that full-time magistrates could better serve the magistrate system and the public.  Because full-time magistrates are better paid than part-time magistrates, attrition is less prevalent among the full-time ranks.

While the Commonwealth is obligated to provide 24-hour magistrate coverage for its citizens, not every magistrate office needs to have a full-time magistrate on duty at all times. During less busy periods, access to a magistrate in another office by videoconferencing can provide the necessary coverage (the use of videoconferencing for magistrate services is discussed later in this section of the report).  The transition to a 40-hour workweek for all magistrates should begin immediately.  Currently, there are 101 magistrates that would need to be transitioned to a different status. This could be achieved with the least disruption to the part-time magistrates by combining part-time vacancies into full-time positions. Ultimately, a full-time magistrate system would improve the quality of service and increase access afforded to the public.

### 4. Magistrate Work-shift and Leave Policies

Magistrate scheduling and work-shift practices vary by district.  As previously discussed, in some districts magistrates are on-call.  In other districts, magistrates work in shifts.  In most offices, magistrates rotate through all the shifts.  The magistrates in some districts, however, work fixed shifts.  In other words, one magistrate may work all midnight shifts, while another magistrate may work only the day shift.  A third magistrate may work only the evening shift.  Magistrates typically see different types of cases at different times of the day. Assigning magistrates to fixed shifts is problematic in that the magistrates may not develop the breadth of experience required for the diversity of cases and offenses they encounter during a typical 24-hour period. Moreover, magistrates who do not work fixed rotating schedules cannot predict from one month to the next which days they will be working. To address these problems, instituting a system of fixed schedules where magistrates predictably rotate through the various shifts is recommended.

Variability in the number of hours per work shift is also a problematic feature of the current magistrate system. For magistrates who are not on-call, work-shifts are eight, ten, or twelve hours

long.  Most shift offices utilize a twelve-hour schedule, fewer use eight-hour shifts and even fewer use ten-hour shifts. Each of these shifts has advantages and disadvantages. Longer work shifts allow magistrates more time off.  However, long shifts are taxing for the magistrate, especially in a high-volume office.  It is recommended that magistrate work schedules be based on eight-hour shifts.  Approval of longer shifts would be contingent upon workload volume and the staffing level of each office, and adherence to a 40-hour workweek.

Leave policies for magistrates are inconsistent. The current system is subject to manipulation, as a magistrate does not necessarily have to report leave as long as he works a fixed number of days each month.  Moreover, there is inequity in the system when leave is reported based on days, not hours. In such cases, a magistrate who works 12-hour shifts may report a day of leave; at the same time, a magistrate working 8-hour shifts reports a day of leave. Therefore, it is recommended that the length of work shifts be standardized, and a policy where leave is earned and reported in hours rather than days be established.

### 5. Staffing levels

A review of the number and types of magistrate hearings and transactions was conducted. An analysis of this data indicated that several of the more populous districts in Virginia have been understaffed, given their caseloads. Many of these districts are experiencing significant population growth, which will only exacerbate the need for greater magistrate staffing.  The data indicates that the First, Second, Fourth, Seventh, Eighth, Thirteenth, Fourteenth, Fifteenth, Nineteenth, Twenty-third, and Thirty-first Judicial Districts typically have the highest number of magistrate transactions and processes each year, yet the number of allocated positions for these districts does not reflect the size of their caseloads.  While the regional restructuring of the magistrate system and increased use of videoconferencing will benefit these districts during high volume periods, these districts will still need additional positions to handle typical work levels. Moreover, because full-time magistrates currently staff these districts, they will not benefit from the conversion of part-time positions to full-time positions that will take place in many less populous districts. It is recommended that new FTE magistrate positions be created in these districts.

### Recommendations to Improve Scheduling and Staffing for the Magistrate System

The Office of the Executive Secretary should coordinate the development and implementation of a magistrate staffing and management configuration that provides optimum magistrate coverage based on actual FTE needs.  Based on this conclusion, the following recommendations are offered:

**16. The Office of the Executive Secretary should discontinue the use of on-call magistrates.**

**17. The Office of the Executive Secretary should transition to the exclusive use of full-time magistrates by replacing part-time magistrates with full-time magistrates.**

**18. Magistrate staffing should be increased by 20 FTE magistrate positions as follows:**

| Region | Judicial District | Additional Allocated FTE Positions |
|--------|-------------------|------------------------------------|
| 1 | | 0 |
| 2 | 23rd | 1 |
| 3 | | 0 |
| 4 | | 0 |
| 5 | 19th | 2 |
| | 31st | 3 |
| 6 | 7th | 2 |
| | 8th | 1 |
| | 15th | 1 |
| 7 | 1st | 1 |
| | 2nd | 1 |
| | 4th | 3 |
| 8 | 13th | 3 |
| | 14th | 2 |
| TOTAL: | | 20 |

**19. Magistrate schedules should be standardized and formalized, so as to be predictable, regular, efficient and fair. To accomplish this, magistrate schedules should be based upon a 40-hour workweek and, generally, eight-hour shifts.**

**B. Use of Videoconferencing Technology**

Videoconferencing technology is used in Virginia as an alternative means of conducting magistrate hearings. During a hearing conducted by videoconference, the complainant appears in front of a videoconference unit at a remote location while the magistrate hears the matter via a unit at the magistrate office.

Presently, every judicial district with the exception of the First, Seventh, Fourteenth and Eighteenth conducts hearings by videoconference.  Fourteen of the 32 judicial districts are totally integrated through videoconference technology.  In other words, every locality within these districts has access to and is interconnected by videoconference units.  There are 126 videoconference units currently in use in the magistrate system.

Three types of videoconference units are presently being used in Virginia's magistrate offices: PictureTel 760 units, Ipower units, and VSX7000 units.  These models are not compatible with each other and, therefore, only offices with the same models are able to achieve full use of videoconferencing technology.  VSX7000 is the newest model and regarded as the best unit currently in use in Virginia.  Results from a 2007 Magistrate Survey on Videoconferencing Technology indicated that while 80% of magistrates reported satisfaction with videoconferencing equipment, 100% of the magistrates using the VSX7000 unit reported complete satisfaction.  It is anticipated that all districts, including those that have not previously used videoconferencing, will have VSX7000 units installed in their magistrate offices by June 2008.

The Office of the Executive Secretary projects the total cost for expanding and upgrading existing videoconferencing technology for every magistrate office to be $787,000.  The cost of such equipment will be funded through the "Courts Technology Fund." Va. Code § 17.1-132.

While the cost of installing and maintaining video conferencing may be considerable, the benefits from using this technology are substantial:

1. Videoconference technology allows districts with multiple units to provide adequate coverage when magistrates are on annual, sick or emergency leave.

2. Videoconferencing eliminates the necessity of using on-call and part-time magistrates by having full-time magistrates provide services remotely.

3. Videoconferencing provides quicker access and services to law enforcement and the public so they no longer have to travel to a magistrate office for an in-person hearing.  Rather, they simply need to travel to the nearest videoconference unit, which is usually found at a police precinct or regional jail.

4. Videoconferencing allows magistrates to cover a broader geographical area and reduces expenses associated with magistrates traveling to a locality.

Another critically important apparatus used by magistrates is the "eMagistrate system," which is a secured internal web application that works either in conjunction with the videoconferencing systems or on its own.  Magistrates use eMagistrate to issue the most common types of legal process, including warrants and summonses.  These documents are printed on blank paper, which reduces reliance on and the use of stocked, preprinted forms.  The eMagistrate system has been used in all Virginia magistrate offices since June 2005.  Because the wording for most offenses/charges has been standardized, charging documents are less ambiguous and easier to understand.  Additionally, the eMagistrate system provides magistrates with real-time access to information concerning defendants and respondents, and transmits criminal process and bail information to criminal justice agencies.  It also allows a specific criminal action to be tracked from the issuance of the charge to disposition.

As the magistrate system must be operational 24 hours per day, seven days a week, the need for information technology is critical to the support of this system.  Six additional information technology positions (an applications programmer, two technology support specialists, and three computer operators) are necessary to maintain and support the eMagistrate system, to coordinate the increased use of videoconferencing for regional magistrate hearings and to enable the operation of the 24/7 data center.

A magistrate's authority is currently limited to the judicial district for which he is appointed. Va. Code § 19.2-44. Regional authority for magistrates in conjunction with a compatible videoconferencing system would also allow a magistrate in a less busy office to assist a magistrate in another office during high volume periods and enhance 24-hour magistrate service, where workloads do not support staffing an office on a full-time basis.

### Recommendations to Improve the Use of Videoconferencing Technology

**20. The Office of the Executive Secretary should provide magistrates, on a statewide basis, with up-to-date videoconferencing technology that is compatible and easy to use.**

**21. The Office of the Executive Secretary should provide 24-hour, seven day a week technology support by adding to the staff supporting the magistrate system.**

## VII. CONCLUSION

A capable and professional magistrate is vital to the institutional success of the Virginia court system. For many citizens, the magistrate system is the first impression, the "face" of the courts. Magistrates are charged with responsibilities of enormous sensitivity and importance, such as issuing protective orders in the context of domestic violence and determining whether an individual charged with a crime may remain free prior to trial or must have his liberty interest curtailed. The Supreme Court of Virginia, through these recommendations, seeks to improve the magistrate system to most efficiently and effectively serve the citizens of the Commonwealth.

In reviewing the magistrate system and formulating these recommendations, the Supreme Court had the generous assistance of serving magistrates, judges, attorneys for both the defense and the prosecution, and a circuit court clerk, as well as staff of the Office of the Executive Secretary. The Court wishes to thank all those who supported the preparation of this report.

**VIRGINIA MAGISTRATE SYSTEM REPORT**
**LIST OF ATTACHMENTS**


A.  Magistrate Study Group Roster and Subcommittee Assignments

B.  Magistrate System Administrative Organizational Chart

C.  Map of Proposed Magisterial Regions

# Attachment A

## Magistrate Study Group Roster and Subcommittee Assignments

CHAIR – Honorable Thomas S. Shadrick, Chief Judge, 2nd Judicial Circuit

1.  Selection, Qualifications, Supervision, and Compensation Subcommittee
    Chair:      Honorable C. Randall Lowe, Chief Judge, 28th Judicial Circuit
    Members:    Chief Justice Leroy Rountree Hassell, Sr.
                Elizabeth B. Turnbull, Chief Magistrate, 4th Judicial Circuit
                Esther J. Windmueller, Esq., Richmond, VA
                Saundra Mastro Jack, Esq., Counsel and Administrative Director to
                Bobby Lewis, Magistrate Advisor
                Gregory Scott, Magistrate Advisor
                Billy Criswell, Compensation Analyst, OES Human Resources Department

2.  Training, On-going Certification, OES Support Subcommittee
    Chair:      Honorable Michael P. McWeeny, Chief Judge, 19th Judicial Circuit
    Members:    Michael N. Herring, Esq., Richmond Commonwealth's Attorney
                Cynthia E. Dodge, Esq., Pulaski Public Defender
                Ronald B. Neely, Magistrate Advisor
                Kozuo Webb, Magistrate Advisor

3.  Staffing Model, Workload Analysis, and Use of Technology Subcommittee
    Chair:      Honorable Gary A. Hicks, Chief Judge, 14th Judicial Circuit
    Members:    Robert N. Joyce, Esq., Rockbridge County Commonwealth's Attorney
                Honorable Larry B. Palmer, Clerk, 24th Judicial Circuit
                Vincent A. Tassa, Chief Magistrate, 31st Judicial Circuit
                Ronald B. Neely, Magistrate Advisor
                Gregory Scott, Magistrate Advisor

4.  Scheduling Subcommittee
    Chair:      Honorable Aundria Deloris Foster, Judge, 7th Judicial Circuit
    Members:    Honorable Anita D. Filson, Judge, 25th Judicial Circuit
                Cheryl A. Thompson, Chief Magistrate, 16th Judicial Circuit
                Bobby Lewis, Magistrate Advisor
                Kozuo Webb, Magistrate Advisor

Study Group Consultant:  Eva S. Tashjian-Brown, Esq., Richmond, VA

OES Staff Support:       Paul F. DeLosh, Director, Department of Judicial Services
                         Thomas M. Diggs, Ed.D., J.D., Assistant Director, Judicial Programs
                         Karl A. Doss, Esq., Director, Department of Judicial Programs
                         Katya N. Herndon, Esq., Director, Legislative & Public Relations

**Attachment B**

# Magistrate System Administrative Organizational Chart



**Attachment C**

# Map of Proposed Magisterial Regions

Region 1 – 27th, 28th, 29th, 30th Judicial Districts
Region 2 – 21st, 22nd, 23rd, 24th, 25th Judicial Districts
Region 3 – 6th, 10th, 11th Judicial Districts
Region 4 – 16th, 20th, 26th Judicial Districts
Region 5 – 17th, 18th, 19th, 31st Judicial Districts
Region 6 – 2A, 7th, 8th, 9th, 15th Judicial Districts
Region 7 – 1st, 2nd, 3rd, 4th, 5th Judicial Districts
Region 8 – 12th, 13th, 14th Judicial Districts

