## CHAPTER 5 - SEARCH WARRANT PROCEDURES

### I. INTRODUCTION

There are two types of searches.  The first deals with the traditional search for purposes of obtaining evidence for use in a criminal trial.  The second deals with administrative searches and concerns itself with inspections such as fire, hazardous materials, health, and safety matters.  This chapter discusses both types of searches.

#### A. Criminal Searches

A search, for Fourth Amendment purposes, involves a government intrusion upon a person's "reasonable expectation of privacy" or a physical intrusion on an individual's person, houses, papers, or effects for the purpose of obtaining information.  United States v. Jones, 565 U.S. ___ 101259 (2012).

Before the decision in Katz v. U.S., 389 U.S. 347 (1967) (adding the reasonable-expectation-of-privacy test to the common law trespassory test), the government intrusion had to be a physical intrusion in order to be regarded as a search.  This requirement for a physical intrusion was easily defined and easily understood, but it led to some undesirable results.  As technology advanced, electronic listening devices were developed making it possible for the government to monitor conversations in an individual's dwelling without ever physically intruding into that dwelling.  Thus, in Katz, the Supreme Court was confronted with a factual situation in which the police, without a search warrant, had placed electronic listening devices on the outside of a telephone booth and were able to overhear the conversation without making a physical intrusion.  In Katz, the court held that the U.S. Constitution (Fourth Amendment) is not designed merely to protect against physical trespass, it is designed to protect the right of privacy.  "The Fourth Amendment protects people, not places.  What a person knowingly exposes to the public, even in his own house, is not a subject of Fourth Amendment protection. … But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."  Thus in Katz, the court abandoned the technical analysis of whether there was a physical intrusion and substituted the more theoretical or general analysis of whether there was an invasion of a reasonable expectation of privacy.  This is a reflection of the basic concept regarding fair play and justice.  The court recognized that the Fourth Amendment serves as a limitation on the power of the government, and this limitation cannot be undermined by technological gadgetry.

Both the Virginia Constitution (Article I, Section 10) and the United States Constitution (Amendment IV) forbid the issuance of search warrants, which are not based upon "probable cause."  The reason is obvious.  People should be secure in the possession of their homes and property from unjustified intrusions.  The abuse of this right by British authorities in issuing general search warrants called "writs of assistance" contributed to the American Revolution and led to the enactments of the safeguards of the Virginia and United States Constitutions.

The magistrate must keep in mind that the issuance of a search warrant, sets aside, to some extent, an individual's right to privacy.  The right to privacy is not an absolute right; it must be balanced against society's right to obtain evidence of a crime.  For these reasons, there are very strict provisions regulating the issuance of search warrants.  A failure to comply with these provisions may result in serious consequences, both for the judicial officer issuing the warrant and for the Commonwealth.  A magistrate who willfully fails to observe the proper procedure may be found guilty of malfeasance and is subject to removal from office.  He may be liable in money damages, in some instances, to a party injured by the illegal search (Williams v. Kozak, 280 Fed. 373 (4th Cir. 1922)).  Perhaps more importantly, a miscarriage of justice may result, in that evidence seized from an obviously guilty person may not be later admitted in court if the search warrant is illegal.

## II.   VIRGINIA STATUTES ON SEARCH WARRANTS

The following statutes, listed below, set forth procedures for criminal search warrants.  There are other types of search warrants, inspection warrants, and investigative warrants set forth in the Code of Virginia.  Probable cause hearings for criminal search warrants are the most common type of search hearing that a magistrate conducts.  While probable cause determination for administrative, inspection or investigative warrants is the same as for general criminal search warrants, procedures vary considerably.

Virginia Code § 3.2-6568 states:

> When an affidavit is made under oath before a magistrate or court of competent jurisdiction by any animal control officer, humane investigator, law-enforcement officer, or State Veterinarian's representative that the complainant believes and has reasonable cause to believe that the laws in relation to cruelty to animals have been, are being, or are about to be violated in any particular building or place, such magistrate or judge, if satisfied that there is reasonable cause for such belief, shall issue a warrant authorizing any sheriff, deputy sheriff, or police officer, to search the building or place.  After issuing a warrant under this section, the magistrate or judge shall file the affidavit in the manner prescribed by § 19.2-54.  After executing the warrant, the animal control officer, humane investigator, law-enforcement officer, or State Veterinarian's representative shall return the warrant to the clerk of the circuit court of the city or county wherein the search was made.

Virginia Code § 4.1-337 states:

> A.  If complaint on oath is made that alcoholic beverages are being manufactured, sold, kept, stored, or in any manner held, used or concealed in a particular house, or other place, in violation of law, the judge, magistrate, or other person having authority to issue criminal warrants, to whom such complaint is made, if satisfied that there is a probable cause for such belief, shall issue a warrant to search such house or other place for alcoholic beverages.  Such warrants, except as herein otherwise

provided, shall be issued, directed and executed in accordance with the laws of the
Commonwealth pertaining to search warrants.

B.  Warrants issued under this title for the search of any automobile, boat,
conveyance or vehicle, whether of like kind or not, or for the search of any article of
baggage, whether of like kind or not, for alcoholic beverages, may be executed in any
part of the Commonwealth where they are overtaken, and shall be made returnable
before any judge within whose jurisdiction such automobile, boat, conveyance,
vehicle, truck, or article of baggage, or any of them, was transported or attempted to
be transported contrary to law.

Virginia Code § 19.2-52 states:

Except as provided in § 19.2-56.1, search warrants, based upon complaint on oath
supported by an affidavit as required in § 19.2-54, may be issued by any judge,
magistrate or other person having authority to issue criminal warrants, if he be
satisfied from such complaint and affidavit that there is reasonable and probable
cause for the issuance of such search warrant.

Virginia Code § 19.2-53 states:

Search warrants may be issued for the search of or for specified places, things or
persons, and seizure therefrom of the following things as specified in the warrant:

1.   Weapons or other objects used in the commission of crime;

2.   Articles or things the sale or possession of which is unlawful;

3.   Stolen property or the fruits of any crime;

4.   Any object, thing, or person, including without limitation, documents, books,
     papers, records or body fluids, constituting evidence of the commission of crime.
     Notwithstanding any other provision in this chapter to the contrary, no search
     warrant may be issued as a substitute for a witness subpoena.

5.   Any person to be arrested for whom a warrant or process for arrest has been
     issued.

Virginia Code § 19.2-54 states:

No search warrant shall be issued until there is filed with the officer authorized to
issue the same an affidavit of some person reasonably describing the place, thing, or
person to be searched, the things or persons to be searched for thereunder, alleging
briefly material facts, constituting the probable cause for the issuance of such warrant
and alleging substantially the offense in relation to which such search is to be made
and that the object, thing, or person searched for constitutes evidence of the

commission of such offense. The affidavit may be filed by electronically transmitted (i) facsimile process or (ii) electronic record as defined in § 59.1-480. Such affidavit shall be certified by the officer who issues such warrant and delivered in person; mailed by certified mail, return receipt requested; or delivered by electronically transmitted facsimile process or by use of filing and security procedures as defined in the Uniform Electronic Transactions Act (§ 59.1-479 et seq.) for transmitting signed documents, by such officer or his designee or agent, to the clerk of the circuit court of the county or city wherein the search is made, within seven days after the issuance of such warrant and shall by such clerks be preserved as a record and shall at all times be subject to inspection by the public after the warrant that is the subject of the affidavit has been executed or 15 days after issuance of the warrant, whichever is earlier; however, such affidavit, any warrant issued pursuant thereto, any return made thereon, and any order sealing the affidavit, warrant, or return may be temporarily sealed for a specific period of time by the appropriate court upon application of the attorney for the Commonwealth for good cause shown in an ex parte hearing. Any individual arrested and claiming to be aggrieved by such search and seizure or any person who claims to be entitled to lawful possession of such property seized may move the appropriate court for the unsealing of such affidavit, warrant, and return. The burden of proof with respect to continued sealing shall be upon the Commonwealth. Each such clerk shall maintain an index of all such affidavits filed in his office in order to facilitate inspection. No such warrant shall be issued on an affidavit omitting such essentials, and no general warrant for the search of a house, place, compartment, vehicle or baggage shall be issued. The term "affidavit" as used in this section, means statements made under oath or affirmation and preserved verbatim.

Failure of the officer issuing such warrant to file the required affidavit shall not invalidate any search made under the warrant unless such failure shall continue for a period of 30 days.  If the affidavit is filed prior to the expiration of the 30-day period, nevertheless, evidence obtained in any such search shall not be admissible until a reasonable time after the filing of the required affidavit.

**NOTE:**  A 2012 amendment to Va. Code § 19.2-54 authorizes magistrates to receive an affidavit from an affiant by electronically transmitted "electronic record," which is defined in Va. Code § 59.1-480 as "a record created, generated, sent, communicated, received, or stored by electronic means."  Virginia Code § 16.1-69.51 authorizes the Committee on District Courts (CDC) to determine both the form and character of records used by district courts and magistrates.  The CDC has exercised the authority granted to it by the General Assembly under Va. Code § 16.1-69.51 by the preparation and distribution of the DC-338 AFFIDAVIT FOR SEARCH WARRANT and other similar district court forms.  Therefore, only electronic means that do not materially alter the form should be accepted, such as an *Adobe* PDF (portable document format) sent to a magistrate's state electronic mail account.

If a magistrate were to accept filing of an affidavit from the affiant by electronic means, he would have to print the affidavit and then treat it similar to the manner in which affidavits received by facsimile process are treated.  The magistrate would then need to delete the "electronic record" from any computer memory. It would not be inappropriate for a magistrate to inform an affiant that filing by "electronic record" is not as secure as hand delivery of an affidavit to the magistrate.

The magistrate would then conduct a normal probable cause hearing.  If the affiant does not appear in person, he would need to appear by audio and video that complies with Va. Code § 19.2-3.1.

The 2012 amendment to Va. Code § 19.2-54 also provides magistrates with the authority to deliver to the circuit court clerk the affidavit by "use of filing and security procedures as defined in the Uniform Electronic Transactions Act (§ 59.1-479 et seq.) for transmitting signed documents."  However, due to the nature of the position of the circuit court clerk, there is not an agreed upon procedure statewide at this time.  Therefore, it is recommended that magistrates not attempt to deliver an affidavit to a circuit court clerk's office in this manner at this time.

> **NOTE:** Virginia Code § 19.2-54 does not specify that the affidavit must be sealed prior to issuance of the search warrant.  If a magistrate issues a search warrant and the affiant informs the magistrate that the attorney for the Commonwealth will apply to have the affidavit temporarily sealed, it would not be inappropriate for the magistrate to delay the immediate filing the affidavit with the appropriate court(s).  Va. Code § 19.2-54 requires that the magistrate or his designee file the affidavit within seven days after issuance.  The statute does not require that the magistrate "forthwith" file the affidavit with the court(s).  A magistrate complies with the statute as long as he or his designee files the affidavit within seven days.

Va. Code § 19.2-56 states, in relevant part, "The judge, magistrate, or other official authorized to issue criminal warrants shall attach a copy of the affidavit required by § 19.2-54, which shall become a part of the search warrant and served therewith.  However, this provision shall not be applicable in any case in which the affidavit is made by means of a voice or videotape recording or where the affidavit has been sealed pursuant to § 19.2-54."  (Emphasis added.)  Therefore, unless the court has already sealed the affidavit, the magistrate shall attach a copy of the affidavit to the search warrant (SW).

There are three potential chronologies relating to sealed affidavits:

1.  The magistrate issues the SW.  The court seals the affidavit.  The officer executes the SW.

2.  The court seals the affidavit.  The magistrate issues the SW.  The officer executes the SW.

3.   The magistrate issues the SW.  The officer executes the SW.  The court seals the affidavit.

In situations 1) and 3), Va. Code § 19.2-56 requires the magistrate to attach the affidavit to the search warrant.  Only in situation 2) would the magistrate not attach the affidavit to the search warrant.

Once the magistrate issues the search warrant, his role with law enforcement is complete.  The magistrate should not explain to the officer how to execute the search warrant or what documents the executing officer must leave at the place to be searched.  The attorney for the Commonwealth or the law enforcement agency's legal advisor should provide such guidance to executing officers.

> **NOTE:**  A 2011 amendment to Va. Code § 19.2-54 limits the public's ability to inspect affidavits for search warrants.  Affidavits are not subject to inspection by the public until after the warrant that is the subject of the affidavit has been executed or 15 days after issuance of the warrant, whichever is earlier.  By this time, the magistrate likely would have delivered the affidavit and all copies to the appropriate circuit clerks' offices as required in the statute.  Another 2011 amendment authorizes the appropriate court to temporarily seal the affidavit, any warrant issued pursuant thereto, any return made thereon, and any order sealing the affidavit, warrant, or return for a specific period of time upon application of the attorney for the Commonwealth for good cause shown.

Virginia Code § 19.2-55 states:

Any person having authority to issue criminal warrants who willfully and knowingly issues a general search warrant or a search warrant without the affidavit required by § 19.2-54 shall be deemed guilty of a malfeasance.

Virginia Code § 19.2-56 states:

The judge, magistrate or other official authorized to issue criminal warrants, shall issue a search warrant if he finds from the facts or circumstances recited in the affidavit that there is probable cause for the issuance thereof.

Every search warrant shall be directed to (i) the sheriff, sergeant, or any policeman of the county, city or town in which the place to be searched is located, (ii) any law-enforcement officer or agent employed by the Commonwealth and vested with the powers of sheriffs and police, or (iii) jointly to any such sheriff, sergeant, policeman or law-enforcement officer or agent and an agent, special agent or officer of the Federal Bureau of Investigation, the Bureau of Alcohol, Tobacco and Firearms of the United States Treasury, the United States Naval Criminal Investigative Service, the United States Department of Homeland Security, any inspector, law-enforcement official or police personnel of the United States Postal Inspection Service, or the Drug Enforcement Administration. The warrant shall (i) name the affiant, (ii) recite the

offense in relation to which the search is to be made, (iii) name or describe the place to be searched, (iv) describe the property or person to be searched for, and (v) recite that the magistrate has found probable cause to believe that the property or person constitutes evidence of a crime (identified in the warrant) or tends to show that a person (named or described therein) has committed or is committing a crime.

The warrant shall command that the place be forthwith searched, either in day or night, and that the objects or persons described in the warrant, if found there, be seized.  An inventory shall be produced before a court having jurisdiction of the offense in relation to which the warrant was issued as provided in § 19.2-57.

Any such warrant as provided in this section shall be executed by the policeman or other law-enforcement officer or agent into whose hands it shall come or be delivered.  If the warrant is directed jointly to a sheriff, sergeant, policeman or law-enforcement officer or agent of the Commonwealth and a federal agent or officer as otherwise provided in this section, the warrant may be executed jointly or by the policeman, law-enforcement officer or agent into whose hands it is delivered.  No other person may be permitted to be present during or participate in the execution of a warrant to search a place except (i) the owners and occupants of the place to be searched when permitted to be present by the officer in charge of the conduct of the search and (ii) persons designated by the officer in charge of the conduct of the search to assist or provide expertise in the conduct of the search.

Every search warrant shall contain the date and time it was issued.  However, the failure of any such search warrant to contain the date and time it was issued shall not render the warrant void, provided that the date and time of issuing of said warrant is established by competent evidence.

The judge, magistrate, or other official authorized to issue criminal warrants shall attach a copy of the affidavit required by § 19.2-54, which shall become a part of the search warrant and served therewith.  However, this provision shall not be applicable in any case in which the affidavit is made by means of a voice or videotape recording or where the affidavit has been sealed pursuant to § 19.2-54. Any search warrant not executed within 15 days after issuance thereof shall be returned to, and voided by, the officer who issued such search warrant.

Subsection A of Va. Code § 19.2-56.1 states:

Any warrant sought for the search of a premises or the contents thereof belonging to or under the control of any licensed attorney-at-law to search for evidence of any crime solely involving a client of such attorney shall be issued only by a circuit court judge.  Any evidence seized pursuant to this section shall be inventoried forthwith by the clerk of the issuing court and sealed by the issuing judge.  As soon thereafter as is practicable, the issuing judge shall conduct an in camera inspection of the seized evidence in the presence of the attorney from whom the evidence was seized. Following such inspection the issuing judge shall return any evidence so seized which

is determined to be within the scope of the attorney-client privilege and not otherwise subject to seizure.

> **NOTE:**  A magistrate does not have authority to issue a search warrant under these circumstances.  When a magistrate acts entirely outside of his jurisdiction, he may be responsible for actual compensatory damages, which proximately result from his actions, including damages for other wrongs done by the police in executing the illegal warrant.  Williams v. Kozak, 280 F. 373, 374 (1922) (for a civil matter, a justice of the peace issued a criminal search warrant without the affidavit as required by the statute); *see* also 74-75 Va. AG 251A (citing Berry v. Smith, 148 Va. 484 (1927) for the proposition that a judicial officer acting in excess of his jurisdiction may be held civilly liable).

Virginia Code § 19.2-56.2 (application for and issuance of search warrant for a tracking device; installation and use) states:

A. As used in this section, unless the context requires a different meaning:

"Judicial officer" means a judge, magistrate, or other person authorized to issue criminal warrants.

"Law-enforcement officer" shall have the same meaning as in § 9.1-101.

"Tracking device" means an electronic or mechanical device that permits a person to remotely determine or track the position or movement of a person or object.

"Tracking device" includes devices that store geographic data for subsequent access or analysis and devices that allow for the real-time monitoring of movement.

"Use of a tracking device" includes the installation, maintenance, and monitoring of a tracking device but does not include the interception of wire, electronic, or oral communications or the capture, collection, monitoring, or viewing of images.

B. A law-enforcement officer may apply for a search warrant from a judicial officer to permit the use of a tracking device. Each application for a search warrant authorizing the use of a tracking device shall be made in writing, upon oath or affirmation, to a judicial officer for the circuit in which the tracking device is to be installed, or where there is probable cause to believe the offense for which the tracking device is sought has been committed, is being committed, or will be committed.

The law-enforcement officer shall submit an affidavit, which may be filed by electronically transmitted (i) facsimile process or (ii) electronic record as defined in § 59.1-480, and shall include:

1. The identity of the applicant and the identity of the law-enforcement agency conducting the investigation;

2. The identity of the vehicle, container, item, or object to which, in which, or on which the tracking device is to be attached, placed, or otherwise installed; the name of the owner or possessor of the vehicle, container, item, or object described, if known; and the jurisdictional area in which the vehicle, container, item, or object described is expected to be found, if known;

3. Material facts constituting the probable cause for the issuance of the search warrant and alleging substantially the offense in relation to which such tracking device is to be used and a showing that probable cause exists that the information likely to be obtained will be evidence of the commission of such offense; and

4. The name of the county or city where there is probable cause to believe the offense for which the tracking device is sought has been committed, is being committed, or will be committed.

C. 1. If the judicial officer finds, based on the affidavit submitted, that there is probable cause to believe that a crime has been committed, is being committed, or will be committed and that there is probable cause to believe the information likely to be obtained from the use of the tracking device will be evidence of the commission of such offense, the judicial officer shall issue a search warrant authorizing the use of the tracking device. The search warrant shall authorize the use of the tracking device from within the Commonwealth to track a person or property for a reasonable period of time, not to exceed 30 days from the issuance of the search warrant. The search warrant shall authorize the collection of the tracking data contained in or obtained from the tracking device but shall not authorize the interception of wire, electronic, or oral communications or the capture, collection, monitoring, or viewing of images.

2. The affidavit shall be certified by the judicial officer who issues the search warrant and shall be delivered to and preserved as a record by the clerk of the circuit court of the county or city where there is probable cause to believe the offense for which the tracking device has been sought has been committed, is being committed, or will be committed. The affidavit shall be delivered by the judicial officer in person; mailed by certified mail, return receipt requested; or delivered by electronically transmitted facsimile process or by use of filing and security procedures as defined in the Uniform Electronic Transactions Act (§ 59.1-479 et seq.) for transmitting signed documents.

3. By operation of law, the affidavit, search warrant, return, and any other related materials or pleadings shall be sealed. Upon motion of the Commonwealth or the owner or possessor of the vehicle, container, item, or object that was tracked, the circuit court may unseal such documents if it appears that the unsealing is consistent with the ends of justice or is necessary to reasonably inform such person of the nature of the evidence to be presented against him or to adequately prepare for his defense.

4. The circuit court may, for good cause shown, grant one or more extensions, not to exceed 30 days each.

D. 1. The search warrant shall command the law-enforcement officer to complete the installation authorized by the search warrant within 15 days after issuance of the search warrant.

2. The law-enforcement officer executing the search warrant shall enter on it the exact date and time the device was installed and the period during which it was used.

3. Law-enforcement officers shall be permitted to monitor the tracking device during the period authorized in the search warrant, unless the period is extended as provided for in this section.

4. Law-enforcement officers shall remove the tracking device as soon as practical, but not later than 10 days after the use of the tracking device has ended. Upon request, and for good cause shown, the circuit court may grant one or more extensions for such removal for a period not to exceed 10 days each.

5. In the event that law-enforcement officers are unable to remove the tracking device as required by subdivision 4, the law-enforcement officers shall disable the device, if possible, and all use of the tracking device shall cease.

6. Within 10 days after the use of the tracking device has ended, the executed search warrant shall be returned to the circuit court of the county or city where there is probable cause to believe the offense for which the tracking device has been sought has been committed, is being committed, or will be committed, as designated in the search warrant, where it shall be preserved as a record by the clerk of the circuit court.

E. Within 10 days after the use of the tracking device has ended, a copy of the executed search warrant shall be served on the person who was tracked and the person whose property was tracked. Service may be accomplished by delivering a copy to the person who, or whose property, was tracked or by leaving a copy with any individual found at the person's usual place of abode who is a member of the person's family, other than a temporary sojourner or guest, and who is 16 years of age or older and by mailing a copy to the person's last known address. Upon request, and for good cause shown, the circuit court may grant one or more extensions for such service for a period not to exceed 30 days each. Good cause shall include, but not be limited to, a continuing criminal investigation, the potential for intimidation, the endangerment of an individual, or the preservation of evidence.

F. The disclosure or publication, without authorization of a circuit court, by a court officer, law-enforcement officer, or other person responsible for the administration of this section of the existence of a search warrant issued pursuant to this section,

application for such search warrant, any affidavit filed in support of such warrant, or any return or data obtained as a result of such search warrant that is sealed by operation of law is punishable as a Class 1 misdemeanor.

Virginia Code § 19.2-57 states:

> The warrant shall be executed by the search of the place described in the warrant and, if property described in the warrant is found there, by the seizure of the property.  The officer who seizes any property shall prepare an inventory thereof, under oath.  An inventory of any seized property shall be produced before the circuit court of the county or city where the search was conducted.  The officer executing the warrant shall endorse the date of execution thereon and the officer or his designee shall file the warrant, with the inventory attached (or a notation that no property was seized) and the accompanying affidavit, unless such affidavit was made by voice or videotape recording, within three days after the execution of such search warrant in the circuit court clerk's office, wherein the search was made, as provided in § 19.2-54.  Saturdays, Sundays, or any federal or state legal holiday shall not be used in computing the three-day filing period.  The officer, or his designee or agent, may file the warrant, inventory, and accompanying affidavit by delivering them in person, or by mailing them certified mail, return receipt requested, or delivering them by electronically transmitted facsimile process.

Virginia Code § 19.2-59 states:

> No officer of the law or any other person shall search any place, thing or person, except by virtue of and under a warrant issued by a proper officer.  Any officer or other person searching any place, thing or person otherwise than by virtue of and under a search warrant, shall be guilty of malfeasance in office.  Any officer or person violating the provisions of this section shall be liable to any person aggrieved thereby in both compensatory and punitive damages.  Any officer found guilty of a second offense under this section shall, upon conviction thereof, immediately forfeit his office, and such finding shall be deemed to create a vacancy in such office to be filled according to law.

> Provided, however, that any officer empowered to enforce the game laws or marine fisheries laws as set forth in Title 28.2 may without a search warrant enter for the purpose of enforcing such laws, any freight yard or room, passenger depot, baggage room or warehouse, storage room or warehouse, train, baggage car, passenger car, express car, Pullman car or freight car of any common carrier, or any boat, automobile or other vehicle; but nothing in this proviso contained shall be construed to permit a search of any occupied berth or compartment on any passenger car or boat or any baggage, bag, trunk, box or other closed container without a search warrant.

[Editor's note: Courts have held that Va. Code § 19.2-59 provides the same protection as the Fourth Amendment to the United States Constitution.  *See* Carter v. Commonwealth, 209 Va.

317, 163 S.E.2d 589 (1968), cert. denied, 394 U.S. 991 (1969); Amato v. City of Richmond, 875 F. Supp. 1169 (E.D. Va. 1988).]

Virginia Code § 19.2-66 involves orders authorizing the interception of a wire, electronic or oral communication.  Magistrates have no authority in such matters.

Virginia Code § 19.2-70.3 states:

> A. A provider of electronic communication service or remote computing service, which, for purposes of subdivisions 2 through 4, includes a foreign corporation that provides such services, shall disclose a record or other information pertaining to a subscriber to or customer of such service, excluding the contents of electronic communications and real-time location data, to an investigative or law-enforcement officer only pursuant to:
>
> 1. A subpoena issued by a grand jury of a court of the Commonwealth;
>
> 2. A search warrant issued by a magistrate, general district court or a circuit court;
>
> 3. A court order for such disclosure issued as provided in subsection B; or
>
> 4. The consent of the subscriber or customer to such disclosure.
>
> B. A court shall issue an order for disclosure under this section only if the investigative or law-enforcement officer shows that there is reason to believe the records or other information sought are relevant and material to an ongoing criminal investigation, or the investigation of any missing child as defined in § 52-32, missing senior adult as defined in § 52-34.4, or an incapacitated person as defined in § 37.2-1000 who meets the definition of a missing senior adult except for the age requirement. Upon issuance of an order for disclosure under this section, the order and any written application or statement of facts may be sealed by the court for 90 days for good cause shown upon application of the attorney for the Commonwealth in an ex parte proceeding. The order and any written application or statement of facts may be sealed for additional 90-day periods for good cause shown upon subsequent application of the attorney for the Commonwealth in an ex parte proceeding. A court issuing an order pursuant to this section, on a motion made promptly by the service provider, may quash or modify the order, if the information or records requested are unusually voluminous in nature or compliance with such order would otherwise cause an undue burden on such provider.
>
> C. Except as provided in subsection D, a provider of electronic communication service or remote computing service, including a foreign corporation that provides such services, shall disclose the contents of electronic communications or real-time location data to an investigative or law-enforcement officer only pursuant to a search warrant issued by a magistrate, a juvenile and domestic relations district court, a general district court, or a circuit court, based upon complaint on oath supported by

an affidavit as required in § 19.2-54, or judicial officer or court of another any of the several states of the United States or its territories, or the District of Columbia when the warrant issued by such officer or such court complies with the provisions of subsection G.  In the case of a search warrant directed to a foreign corporation, the affidavit shall state that the complainant believes that the records requested are actually or constructively possessed by a foreign corporation that provides electronic communication service or remote computing service within the Commonwealth of Virginia.  If satisfied that probable cause has been established for such belief and as required by Chapter 5 (§ 19.2-52 et seq.), the magistrate, the juvenile and domestic relations district court, the general district court, or the circuit court shall issue a warrant identifying those records to be searched for and commanding the person seeking such warrant to properly serve the warrant upon the foreign corporation.  A search warrant for real-time location data shall be issued if the magistrate, the juvenile and domestic relations district court, the general district court, or the circuit court is satisfied that probable cause has been established that the real-time location data sought is relevant to a crime that is being committed or has been committed or that an arrest warrant exists for the person whose real-time location data is sought.

D. A provider of electronic communication service or remote computing service, including a foreign corporation that provides such services, shall disclose a record or other information pertaining to a subscriber to or customer of such service, including real-time location data but excluding the contents of electronic communications, to an investigative or law-enforcement officer pursuant to an administrative subpoena issued pursuant to § 19.2-10.2 concerning a violation of § 18.2-374.1 or 18.2-374.1:1, former § 18.2-374.1:2, or § 18.2-374.3 when the information sought is relevant and material to an ongoing criminal investigation.

E. When disclosure of real-time location data is not prohibited by federal law, an investigative or law-enforcement officer may obtain real-time location data without a warrant in the following circumstances:

1. To respond to the user's call for emergency services;

2. With the informed, affirmative consent of the owner or user of the electronic device concerned if (i) the device is in his possession; (ii) the owner or user knows or believes that the device is in the possession of an employee or agent of the owner or user with the owner's or user's consent; or (iii) the owner or user knows or believes that the device has been taken by a third party without the consent of the owner or user;

3. With the informed, affirmative consent of the legal guardian or next of kin of the owner or user, if reasonably available, if the owner or user is reasonably believed to be deceased, is reported missing, or is unable to be contacted; or

4. If the investigative or law-enforcement officer reasonably believes that an emergency involving the immediate danger to a person requires the disclosure,

without delay, of real-time location data concerning a specific person and that a warrant cannot be obtained in time to prevent the identified danger.

No later than three business days after seeking disclosure of real-time location data pursuant to this subsection, the investigative or law-enforcement officer seeking the information shall file with the appropriate court a written statement setting forth the facts giving rise to the emergency and the facts as to why the person whose real-time location data was sought is believed to be important in addressing the emergency.

F. In order to comply with the requirements of § 19.2-54, any search of the records of a foreign corporation shall be deemed to have been made in the same place wherein the search warrant was issued.

G. A Virginia corporation or other entity that provides electronic communication services or remote computing services to the general public, when properly served with a search warrant and affidavit in support of the warrant, issued by a judicial officer or court of any of the several states of the United States or its territories, or the District of Columbia with jurisdiction over the matter, to produce a record or other information pertaining to a subscriber to or customer of such service, including real-time location data, or the contents of electronic communications, or both, shall produce the record or other information, including real-time location data, or the contents of electronic communications as if that warrant had been issued by a Virginia court.  The provisions of this subsection shall only apply to a record or other information, including real-time location data, or contents of electronic communications relating to the commission of a criminal offense that is substantially similar to (i) a violent felony as defined in § 17.1-805, (ii) an act of violence as defined in § 19.2-297.1, (iii) any offense for which registration is required pursuant to § 9.1-902, (iv) computer fraud pursuant to § 18.2-152.3, or (v) identity theft pursuant to § 18.2-186.3.

H. The provider of electronic communication service or remote computing service may verify the authenticity of the written reports or records that it discloses pursuant to this section, by providing an affidavit from the custodian of those written reports or records or from a person to whom said custodian reports certifying that they are true and complete copies of reports or records and that they are prepared in the regular course of business. When so authenticated, no other evidence of authenticity shall be necessary. The written reports and records, excluding the contents of electronic communications, shall be considered business records for purposes of the business records exception to the hearsay rule.

I.  No cause of action shall lie in any court against a provider of a wire or electronic communication service or remote computing service or such provider's officers, employees, agents, or other specified persons for providing information, facilities, or assistance in accordance with the terms of a court order, warrant, administrative subpoena, or subpoena under this section or the provisions of subsection E.

J. A search warrant or administrative subpoena for the disclosure of real-time location data pursuant to this section shall require the provider to provide ongoing disclosure of such data for a reasonable period of time, not to exceed 30 days.  A court may, for good cause shown, grant one or more extensions, not to exceed 30 days each.

K. An investigative or law-enforcement officer shall not use any device to obtain electronic communications or collect real-time location data from an electronic device without first obtaining a search warrant authorizing the use of the device if, in order to obtain the contents of such electronic communications or such real-time location data from the provider of electronic communication service or remote computing service, such officer would be required to obtain a search warrant pursuant to this section.  However, an investigative or law-enforcement officer may use such a device without first obtaining a search warrant under the circumstances set forth in subsection E.  For purposes of subdivision E 4, the investigative or law-enforcement officer using such a device shall be considered to be the possessor of the real-time location data.

L. For the purposes of this section:

"Electronic device" means a device that enables access to, or use of, an electronic communication service, remote computing service, or location information service, including a global positioning service or other mapping, locational, or directional information service.

"Foreign corporation" means any corporation or other entity, whose primary place of business is located outside of the boundaries of the Commonwealth, that makes a contract or engages in a terms of service agreement with a resident of the Commonwealth to be performed in whole or in part by either party in the Commonwealth, or a corporation that has been issued a certificate of authority pursuant to § 13.1-759 to transact business in the Commonwealth.  The making of the contract or terms of service agreement or the issuance of a certificate of authority shall be considered to be the agreement of the foreign corporation or entity that a search warrant or subpoena, which has been properly served on it, has the same legal force and effect as if served personally within the Commonwealth.

"Properly served" means delivery of a search warrant or subpoena by hand, by United States mail, by commercial delivery service, by facsimile or by any other manner to any officer of a corporation or its general manager in the Commonwealth, to any natural person designated by it as agent for the service of process, or if such corporation has designated a corporate agent, to any person named in the latest annual report filed pursuant to § 13.1-775.

"Real-time location data" means any data or information concerning the current location of an electronic device that, in whole or in part, is generated, derived from, or obtained by the operation of the device.

## III.  THE AFFIDAVIT FOR SEARCH WARRANT FORM (DC-338)

For information regarding the proper use of this form, as well as the DC-339, SEARCH WARRANT, *see* the *DISTRICT COURT MANUAL FORMS VOLUME*.

The person seeking the search warrant is known as the "affiant."  Under Virginia law, any person, including private citizens, can be an affiant on a search warrant affidavit.  It is rare, however, for anyone other than a law enforcement officer to request a search warrant.  Although Va. Code § 19.2-56 allows an affiant to prepare an affidavit by means of a voice or videotape recording, the affiant normally submits the facts supporting the search warrant on a DC-338, AFFIDAVIT FOR SEARCH WARRANT.  Regardless of how the affidavit is presented, the magistrate must require the affiant to make oath or affirmation to the statements contained in the affidavit.  It is recommended that all information presented to the magistrate during a search warrant probable cause hearing be preserved on the affidavit either in a recording of the oral evidence or in written format.  While the Virginia Court of Appeals in Polston v. Commonwealth, 24 Va. App. 738, 485 S.E.2d 632 (1997), aff'd, 255 Va. 500, 498 S.E.2d 924 (1998), upheld the validity of a search warrant where a magistrate questioned an informant under oath during a search warrant hearing without the testimony having been recorded, such a practice does not preserve a record of all the facts presented to the magistrate.  Without a written record, the court may lack the necessary information to determine the validity of the warrant.

The affiant must swear to the affidavit in person or through a videoconference system before an official authorized to administer oaths.  An oath may not be administered over the telephone.  Virginia Code § 19.2-3.1 allows the affiant to transmit the affidavit to the magistrate by facsimile process when the magistrate is communicating with the affiant through a videoconference system.  A magistrate may administer oaths via a videoconference system.  Virginia Code § 19.2-54 allows the affiant to transmit the affidavit to magistrate through facsimile process even when the magistrate is not communicating with the affiant through a videoconference system as authorized in Va. Code § 19.2-3.1.   In this situation, the affiant must swear to the facts written in the affidavit in person before an official authorized to administer oaths.  The magistrate is not authorized to administer an oath over the telephone.

During the probable cause hearing, the magistrate must ascertain whether the search is to be made within the Commonwealth of Virginia.  A 2014 amendment to Va. Code § 19.2-44 provides magistrates with authority to "issue search warrants in accordance with the provisions of Chapter 5 (§ 19.2-52 et seq.) throughout the Commonwealth."  Such statewide authority applies to criminal search warrants but does not apply to administrative warrants issued pursuant to other chapters or titles of the Code of Virginia.  It also does not apply to search warrants for tracking devices issued pursuant to Va. Code § 19.2-56.2, which provides specific geographic requirements.  A magistrate does not have the authority to issue a search warrant authorizing a search outside of the Commonwealth of Virginia except in the narrow circumstances detailed in Va. Code § 19.2-70.3 regarding searches for electronic communication records held by "foreign corporations."

Virginia Code § 19.2-70.3 requires the affidavit to contain specific language. Subsection C states in part, "In the case of a search warrant directed to a foreign corporation the affidavit shall state that the complainant believes that the records requested are actually or constructively possessed by a foreign corporation that provides electronic communication service or remote computing service within the Commonwealth of Virginia."   This does not relieve the affiant of the responsibility to provide facts, not conclusions, in the affidavit. Among other things, the affidavit should provide sufficient facts addressing how an entity is a "foreign corporation."  The affidavit must also provide sufficient facts for the magistrate to determine whether the entity is a "provider of electronic communication service" or "remote computing service," as defined in Va. Code § 19.2-61.

Likewise, Va. Code § 19.2-70.3(C) requires the search warrant to search a foreign corporation to contain certain language.  The search warrant must command the person seeking such warrant to "properly serve" the warrant upon the foreign corporation.  It is recommended that the magistrate include the following language in the body of the search warrant: "This warrant shall be properly served on the entity named in the warrant in accordance with § 19.2-70.3 of the Code of Virginia."

When filing the original affidavit of a search warrant issued pursuant to Va. Code § 19.2-70.3, for purposes of Va. Code § 19.2-54 the magistrate shall consider any search of the records of a foreign corporation to have been made in the same place wherein the search warrant was issued.  Va. Code § 19.2-70.3(F).  The term "wherein the search warrant was issued" is interpreted to mean the location where the magistrate is physically located at the time of issuance.  For example, if a sheriff's deputy physically located in Lee County appears before the magistrate on video while the magistrate is physically located in Floyd County, the search warrant should be considered issued in Floyd County for purposes of filing the affidavit with the circuit court.

Generally, however, a magistrate may issue a search warrant for a search in the Commonwealth of Virginia when the crime underlying the warrant occurred out of state. For example, a murder occurs in North Carolina.  The suspect lives in Halifax County, Virginia.  The search warrant affidavit supports a probable cause determination that the gun used in the murder is located in the suspect's residence in Halifax, Virginia.  Consequently, Virginia law authorizes any magistrate in the Commonwealth of Virginia to issue the search warrant.

It is irrelevant whether a law enforcement officer needs a search warrant prior to conducting a search.  It is improper for a magistrate to decline to issue a search warrant solely on the basis that the officer may conduct a lawful search without one.  The magistrate's function is to determine whether probable cause exists for the search and whether the search is to be made within the Commonwealth of Virginia.  The magistrate does not determine whether the officer may conduct the search without a search warrant.

Assuming that the information presented by the affiant is otherwise reliable, the magistrate also does not determine whether the information presented in the affidavit was obtained in violation of constitutional protections.  A defendant may raise such claims in a motion to

suppress evidence.  A hearing on such a motion will afford the attorney for the Commonwealth and the defendant the opportunity to make legal arguments on the issue.

The magistrate should not assist the affiant in the completion of the affidavit since the magistrate must later review the facts to determine probable cause.  If a magistrate is involved in the completion of the affidavit, the magistrate no longer is in the role of a neutral and detached judicial officer.  Stepping outside a judicial role by assisting or coaching the affiant in the preparation of the affidavit, not only jeopardizes the integrity of the judicial system, but also might invalidate any search made pursuant to the tainted warrant.  Similarly, the magistrate should never accompany the law enforcement officer when such officer executes the search warrant.  Again, such abandonment of judicial neutrality provides a basis to invalidate the search.

The most important aspect of the search warrant probable cause hearing is the magistrate's review of the affidavit.  To properly determine probable cause, the magistrate must ensure that the affidavit contains all information required by statute.  Listed below is an affidavit checklist.

A.   **A Description Of The Place, Thing, Or Person To Be Searched**

The affidavit must reasonably describe the place, thing, or person to be searched.  A reasonable description is one that is detailed enough to provide "the searching officers with sufficient information to identify, without confusion or excessive effort," the place to be searched.  Manley v. Commonwealth, 211 Va. 146, 152, 176 S.E. 2d 309 (1970).  House numbers, apartment numbers, directions and the name of the occupant are all helpful and the affiant should include them if available.  "A search warrant directed against a multiple-occupancy structure is invalid if it fails to describe the particular sub-unit to be searched with sufficient definiteness to preclude search of other units located in the larger structure and occupied by innocent persons. … [I]t will ordinarily not be held invalid where it adequately specifies the name of the occupant of the sub-unit against which it is directed and provides the searching officers with sufficient information to identify, without confusion or excessive effort, such apartment unit."  Id. at 151.

B.   **The Things Or Persons That Are The Subject Of The Search**

If the property to be seized is contraband, the affiant does not have to describe the contraband in great detail in the affidavit.  But if the item or items are not contraband or if the search is for a person, the affiant must describe as clearly and distinctly as possible the person or items that are the subject of the search.  Serial numbers, names, identification marks or a general physical description should be included in the affidavit when possible.

Concerning the particularity of the description of the items sought, in Morke v. Commonwealth, 14 Va. App. 496, 419 S.E.2d 410 (1992) the Court of Appeals

stated:  "The test for determining the requisite degree of particularity exacted by the fourth amendment is a pragmatic one: The degree of specificity required . . . may necessarily vary according to the circumstances and type of items involved . . . . There is a practical margin of flexibility permitted . . . in the description of items to be seized.  Consequently, the fourth amendment requires neither that a search warrant be elaborately detailed, nor that authorities minutely identify every item for which they are searching.  So long as the search warrant describe[s] the objects of the search with reasonable specificity, it complies with the dictates of the fourth amendment.  The determination whether the warrant possesses the requisite degree of specificity necessarily requires a fact-specific, case-specific analysis."  (Citations and quotation marks omitted.)

In Morke, the Court of Appeals cited Andresen v. Maryland, 427 U.S. 463 (1976), as a case demonstrating sufficient particularity where the Supreme Court of the United States Supreme upheld a warrant that authorized the seizure of specified property "*together* with other fruits, instrumentalities and evidence of crime at this [time] unknown" because the description authorized seizure of items related to a specified offense."  (Emphasis added.)

If the description is so broad as to be an indiscriminate sweep of all books, records, pamphlets, etc., courts have ruled that such searches are unconstitutional for being general and exploratory in nature.  *See* Stanford v. Texas, 379 U.S. 476 (1965) (Fourth Amendment case dealing with a First Amendment issue of the seizure of books and other items relating to Communist Party matters); *see also* Klitzman, Klitzman & Gallagher v. Krut, 744 F.2d 955 (3rd Cir. 1984) (seizure of attorney files beyond the scope of the alleged fraud); *see also* United States v. Oloyede, 982 F.2d 133 (4th Cir. 1992) (broad search authorized because business was "permeated with fraud").  A magistrate should limit the breadth of such a search warrant.  The magistrate might limit the search for records by subject matter, involved person, date range, or other identifiable distinction.

The Code of Virginia specifically identifies the following items as seizable and thus the proper objects of a search warrant:

- Weapons or other objects used in commission of a crime;

- Articles or things the sale or possession of which is unlawful;

- Stolen property or the fruits of any crime;

- Any object, thing, or person, including without limitation, documents, books, papers, records or body fluids, constituting evidence of the commission of crime;

- Any person to be arrested for whom a warrant or process for arrest has been issued.

Additionally, a 2015 amendment to Va. Code § 19.2-70.3 authorizes a magistrate to issue a search warrant for the real-time location data of a cell phone of a person if that person is wanted on an arrest warrant.

Virginia Code § 19.2-56 provides that a warrant must "recite that the magistrate has found probable cause to believe that the property or person constitutes evidence of a crime (identified in the warrant) or tends to show that a person (named or described therein) has committed or is committing a crime."  The only limitation on seizure of items that constitute evidence of a crime is when such a seizure is prohibited by law.

Virginia Code § 19.2-70.3 was amended in 2010 to require Virginia corporations or other entities to disclose certain information pursuant to search warrants issued by judicial officers or courts *from other states* when the Virginia corporation or entity is properly served therewith.  In such a situation, the Virginia corporation or other entity is only required to comply if the search warrant relates to certain criminal offenses described in subsection G.

A question arises concerning the subject matter authority of a Virginia magistrate to issue a search warrant to obtain information from a service provider relating to a criminal offense other than those enumerated in subsection G.  The provisions of subsections C and G do not limit a magistrate's subject matter authority to issue a search warrant.  Rather, they affect the extent to which a service provider is required to disclose information in response to a search warrant.

Read together, subsections C and G require service providers to disclose the information sought regarding any criminal offense when the search warrant was issued by a Virginia judicial officer.  However, a service provider is not required to disclose the information sought unless it relates to an offense substantially similar to those enumerated in subsection G when the search warrant was issued by a judicial officer or court of any of the several states of the United States or its territories, or the District of Columbia.

This interpretation of Va. Code § 19.2-70.3 is based on the rule of statutory construction known as the "last antecedent doctrine."  *See* Alger v. Commonwealth, 267 Va. 255, 590 S.E.2d 563 (2004).  In Alger, the Supreme Court of Virginia summarized the rule:

> Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent.  The last antecedent is "the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence."  Thus a proviso usually is construed to apply to the provision or clause immediately preceding it.

In 2010, the General Assembly amended Va. Code § 19.2-70.3 by adding subsection G and amending subsection C, in part, by adding the following language in italics:

> A provider of electronic communication service or remote computing service, including a foreign corporation that provides such services, shall disclose the contents of electronic communications to an investigative or law-enforcement officer only pursuant to a search warrant issued by a magistrate, a juvenile and domestic relations district court, a general district court, or a circuit court, based upon complaint on oath supported by an affidavit as required in § 19.2-54, *or judicial officer or court of any of the several states of the United States or its territories, or the District of Columbia when the warrant issued by such officer or such court complies with the provisions of subsection G]*.

The proviso "when the warrant issued by such officer or such court complies with the provisions of subsection G" relates back only to the last antecedent, "or judicial officer or court of any of the several states of the United States or its territories, or the District of Columbia." No contrary intention appears. Applying the last antecedent doctrine, *the proviso* in subsection C concerning the provisions of subsection G applies as follows:

> A provider of electronic communication service or remote computing service, including a foreign corporation that provides such services, shall disclose the contents of electronic communications to an investigative or law-enforcement officer only pursuant to a search warrant issued by a … judicial officer or court of any of the several states of the United States or its territories, or the District of Columbia when the warrant issued by such officer or such court complies with the provisions of subsection G [describing certain offenses].

Therefore, the offense restrictions apply only to the enforcement and execution of search warrants issued by a judicial officers or courts of any of the several states of the United States or its territories, or the District of Columbia. In fact, subsection G does not address violations of the enumerated Virginia statutes; it addresses offenses that are "substantially similar" to the enumerated statutes, meaning offenses in other jurisdictions.

This interpretation is consistent with the summary of the bill provided by the General Assembly's Legislative Information Service when the statute was amended in 2010:

> **Foreign search warrants to be honored**. Provides that a Virginia corporation or other entity that provides electronic communication services or remote computing services to the general public, when properly served with a warrant and affidavit in support of the warrant, issued by a judicial officer or court of another state with jurisdiction over the matter, to produce a record or other information pertaining to a subscriber to or customer of such service or the contents of electronic communications, or both, shall produce the record or other information as if that warrant had been issued by a Virginia court. This provision applies only to records relating to certain violent or sexual criminal offenses, computer fraud and identity theft.

While this enforcement and execution issue is not specifically a concern for Virginia magistrates, it is discussed here to clarify that a Virginia magistrate's subject matter authority to issue a search warrant concerning service providers is not limited to the statutes enumerated in subsection G, whether or not the service provider is located in Virginia.

Concerning geographic authority, a magistrate may issue a search warrant concerning information possessed by a service provider when (1) the records sought are possessed within the Commonwealth of Virginia or (2) the records sought are possessed outside of Virginia by a "foreign corporation," as defined in Va. Code § 19.2-70.3(K).

Virginia Code § 19.2-70.3 (C) was amended in 2014 to authorize use of a search warrant to obtain "real-time location data" from an electronic communication service provider.  The statute defines "real-time location data" as "any data or information concerning the current location of an electronic device that, in whole or in part, is generated, derived from, or obtained by the operation of the device."  In essence, this allows law enforcement officers to track a person by his own mobile device rather than attaching and monitoring a government-installed GPS tracking device.  This 2014 amendment authorized magistrates to issue a search warrant for real-time location data in the same manner as a search warrant for a GPS tracking device when the information obtained (the real-time location data) would be evidence of the commission of the crime.  This authorization to issue real-time location data was expanded in 2015 to authorize magistrates to issue search warrants for real-time location data when there is probable cause that the real-time location data is relevant to a crime that is being committed or has been committed.  The probable cause determination for real-time location data thus differs from that of standard criminal search warrants.  The magistrate must find probable cause that the information gathered (the real-time location data) is merely relevant to a crime as opposed to the information being evidence of the commission of a crime.  Because search warrants for real-time location data are so different from standard criminal search warrants, they involve distinct district court forms.  The DC-308, AFFIDAVIT FOR SEARCH WARRANT FOR REAL-TIME LOCATION DATA, should be utilized as the affidavit and the DC-309, SEARCH WARRANT FOR REAL-TIME LOCATION DATA, should be utilized as the search warrant.

Similar to Va. Code § 19.2-56.2, which authorizes the attachment and monitoring of GPS tracking devices, Va. Code § 19.2-70.3 authorizes a search warrant for the disclosure of real-time location data for a reasonable period of time, not to exceed 30 days.  Also like Va. Code § 19.2-56.2, a court, not a magistrate, may, for good cause shown, grant one or more extensions, not to exceed 30 days each.  It is recommended that magistrates require ongoing disclosure for 30 days, when requested, unless the affidavit contains specific, relevant facts demonstrating that a 30 day period is unreasonable or the affiant requests a shorter period of authorization.  Absent such facts, limiting the time period of authorization to less than 30 days would appear arbitrary.  If a magistrate were to order a service provider to provide on-going

disclosure, the magistrate should enter in the blank on the DC-309, SEARCH WARRANT FOR REAL-TIME LOCATION DATA: "You are required to provide ongoing disclosure of these records for -----days (not to exceed 30 days).

Based on existing language in Va. Code § 19.2-70.3, magistrates may also issue a search warrant to obtain "historic location data," which is any data or information concerning the prior location of an electronic device that, in whole or in part, was generated, derived from, or obtained by the operation of the device. This historical location data still must be evidence of crime, not simply relevant to a crime, as is the case with "real-time location data." Although not expressly provided in Va. Code § 19.2-70.3, federal courts have authorized such disclosure as "a record or other information pertaining to a subscriber or to customer of such service." This is the term used in subsection A of Va. Code § 19.2-70.3. This type of information is also known as "cell site location information" (CSLI). Federal courts accept that CSLI is a "record or other information pertaining to a subscriber ... or customer." *See, e.g.*, In the Matter of the Application of the US for an Order Directing a Provider of ECS to Disclose Records to the Government, 620 F.3d 304 (3rd Cir. 2010).

1. Federal privacy law concerns

   Federal privacy laws regulate whether drug or alcohol abuse clinic personnel may release patient records. See 42 U.S.C. § 290dd-2 and 42 C.F.R. Part 2. While the federal regulations do not prevent a Virginia magistrate from issuing a search warrant for such records based on probable cause, clinic personnel cannot be compelled to provide patient records unless the searching law enforcement officers are also armed with a "unique kind of court order" that Virginia magistrates are not authorized to issue. Any law enforcement officer that seizes such patient records in violation of the federal regulations may be subject to federal penalties. For more information, *see* THE CONFIDENTIALITY OF ALCOHOL AND DRUG ABUSE PATIENT RECORDS REGULATION AND THE HIPAA PRIVACY RULE: IMPLICATIONS FOR ALCOHOL AND SUBSTANCE ABUSE PROGRAMS, June 2004 (promulgated by the U.S. Department of Health and Human Services). The document is available at: http://www.hipaa.samhsa.gov/

   Similarly, 42 U.S.C. § 2000aa limits the authority of "a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize documentary materials … possessed by a person in connection with a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce …." The statute contains a variety of exceptions such as:

   (1) there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate: Provided, however, that a government officer or employee may not search for or seize such materials under the provisions of this paragraph if the offense to which

the materials relate consists of the receipt, possession, communication, or withholding of such materials or the information contained therein (but such a search or seizure may be conducted under the provisions of this paragraph if the offense consists of the receipt, possession, or communication of information relating to the national defense, classified information, or restricted data under the provisions of section 793, 794, 797, or 798 of title 18, or section 2274, 2275, or 2277 of this title, or section 783 of title 50, or if the offense involves the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, the sexual exploitation of children, or the sale or purchase of children under section 2251, 2251A, 2252, or 2252A of title 18);

(2) there is reason to believe that the immediate seizure of such materials is necessary to prevent the death of, or serious bodily injury to, a human being;

(3) there is reason to believe that the giving of notice pursuant to a subpoena duces tecum would result in the destruction, alteration, or concealment of such materials; or

(4) such materials have not been produced in response to a court order directing compliance with a subpoena duces tecum, and –

all appellate remedies have been exhausted; or

(B) there is reason to believe that the delay in an investigation or trial occasioned by further proceedings relating to the subpoena would threaten the interests of justice.

Subsection C of 42 U.S.C. § 2000aa specifically states, "In the event a search warrant is sought pursuant to paragraph (4)(B) of subsection (b) of this section, the person possessing the materials shall be afforded adequate opportunity to submit an affidavit setting forth the basis for any contention that the materials sought are not subject to seizure."

Arguably, subsection C of 42 U.S.C. § 2000aa applies to *ex parte* probable cause hearings for search warrants conducted by Virginia judicial officers.  However, subsection C applies in very limited circumstances.  To fall within the scope of subsection C, the materials sought must not have been produced in response to a court order directing compliance with a subpoena duces tecum, and there must be reason to believe that further delay would threaten the interests of justice.  If a magistrate believes that such circumstances exist, contact a magistrate advisor for further advice.

42 U.S.C. § 2000aa also contains similar provisions for work product materials relating to such matters.  Contact a magistrate advisor if concerns arise regarding the applicability of this federal statute to state matters.

2.  "Seizable" Items

A magistrate may not issue a search warrant where the thing to be searched for is not in existence.  For example, a magistrate does not have the authority to issue a search warrant to compel a person to give a handwriting or voice sample.  In essence, the issue is whether a magistrate may command certain actions pursuant to Title 19.2, Ch. 5 of the Code of Virginia.  Virginia Code § 19.2-53 authorizes the "search of or for" and "seizure therefrom" of things as specified in the warrant.  There are no other action verbs; the magistrate may not compel someone "to write" or "to speak."  It is appropriate, however, for the magistrate to issue a search warrant authorizing a law enforcement officer to "search … for" and to "seiz[e] therefrom" handwritten documents or voice recordings that are already in existence.

The "in existence" issue should be distinguished from whether the item "seized" is capable of further possession and storage by the executing officers.  For example, while there is no Virginia appellate case on point, arguably a Virginia magistrate may issue a search warrant *to search a* particularly described person *to seize a* particularly described tattoo, assuming that the tattoo is evidence of the commission of a crime.  Arguably a photograph of a tattoo taken by the executing law enforcement officer is a "constructive seizure" of the tattoo.  In the alternative, a "seizure" has occurred although the executing officer does not maintain further possession of the object for any appreciable length of time after executing the search warrant.  "A seizure is a single act, and not a continuous fact.  Possession, which follows seizure, is continuous."  Thompson v. Whitman, 85 U.S. 457, 471 (1874) (boat owner alleged that a sheriff unlawfully seized his boat).  In Riley v. Dorton, 115 F.3d 1159 (1997), the Court of Appeals for the Fourth Circuit dealt with a post-arrest claim of violation of civil rights.  The Fourth Circuit cited the proposition from Thompson v. Whitman that "a seizure is a single act" in reference to the Fourth Amendment.

Furthermore, a magistrate may issue a search warrant to search for and seize a blood sample from a person when an affidavit for a search warrant establishes probable cause that the blood contains evidence of the commission of a crime.  *See* Attorney General Opinion to McAfee, dated 04/08/1992 (1992, page 81); *[I]t is my opinion that a validly obtained search warrant may be executed lawfully despite the accused person's assertion of his statutory right under § 18.2-268(E) to refuse a blood or breath test, and that the test results obtained pursuant to the search warrant may be used in a DUI prosecution.*

In 2017, a clause was added to 19.2-52 which gives priority to search warrant requests for blood in a DUI. It states: "An application for a search warrant to withdraw blood from a person suspected of violating § 18.2-266, 18.2-266.1, 18.2-272, 29.1-738, 29.1-738.02, or 46.2-341.24 shall be given priority over any pending matters not involving an imminent risk to another's health or safety

before such judge, magistrate, or other person having authority to issue criminal warrants."

3.   "All persons present"

The Court of Appeals in the case of <u>Morton v. Commonwealth</u>, 16 Va. App. 946, 434 S.E. 2d 890 (1993) upheld the validity of an "all persons present" search warrant in limited cases.  In this case the magistrate authorized a search of an apartment, a search of a specific person, and the search of all other persons inside the apartment at the time of the execution of the search warrant.  Based on the facts in the search warrant affidavit, the subject location appeared to be a crack house.  The Court of Appeals held that based on the totality of the circumstances, the facts "established a substantial 'nexus' between the observation of cocaine in the apartment, the observation of the distribution of cocaine, the private nature of the apartment, and the easily concealable contraband sufficient to support an 'all persons present' warrant."  Since the Court concluded that the search warrant affidavit established probable cause that the people present "would be engaged in criminal activity," the Court held that the search warrant was proper.  The material facts constituting probable cause, as stated in the affidavit for the search warrant, were as follows:

> On February 27, 1992 [the affiant police officer] received information from a confidential reliable informant that he/she has witnessed crack cocaine inside 100 Princess Anne Street, apt. 320 within the past 48 hours.  This informant has given information in the past that through investigation has proven reliable.  In the past this same informant has given information that has led to the arrest of suspects.  In the past two weeks the manager of the complex has had complaints about this same apt. in regards to the distribution of crack cocaine and prostitution.  The manager has given information in the past which led to arrests of suspects involved in the drug trade.  Many surveillances have been conducted by the Fredericksburg Narcotics Unit in the past sixty days  . . . [and have] revealed several known and convicted drug users, and on two occasions persons being sought by police have sought refuge inside of said apartment.

The Court of Appeals explained the "justification" for an "all persons present" search warrant in a footnote in <u>Felton v. Commonwealth</u>, 56 Va. App. 43, 690 S.E.2d 318 (2010).  The Court of Appeals stated:

> Felton's argument is premised upon a misunderstanding of the justification for an "all persons present" warrant.  Determining whether probable cause exists to support the issuance of an "all persons present" warrant does not depend on the identity of the individuals but whether "the information in the affidavit support[s] a finding of probable cause that those persons present in the private residence would be engaged in criminal activity."  <u>Morton v. Commonwealth</u>, 16 Va. App. 946, 951, 434 S.E.2d 890, 893 (1993).  This is so because the

individuals to be searched are identified "by physical nexus to the on-going criminal event itself."  New Jersey v. De Simone, 288 A.2d 849, 850 (N.J. 1972). "So long as there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant, *presence* becomes the descriptive fact satisfying the aim of the Fourth Amendment." *Id*. (emphasis added).

**C.     The Material Facts Constituting The Probable Cause**

The affidavit must set out facts sufficient to establish probable cause.  Probable cause is defined as a reasonable determination by the magistrate that seizable items are located at the place to be searched.  This determination need not be based on absolute certainty.  It requires only a reasonable belief involving not legal technicalities but common sense and logic.  *See* United States v. Ventresca, 380 U.S. 102 (1965). Initially, the United States Supreme Court in Aguilar v. Texas, 278 U.S. 108 (1964), held that a determination of probable cause actually involved a two-step process whereby the magistrate must make two distinct determinations:

1.   That the facts in the affidavit logically indicate the presence of seizable items; and,

2.   That the facts in the affidavit are reliable.

In 1983, the U.S. Supreme Court abandoned Aguilar's two-pronged test in favor of a "totality of the circumstances test" set forth in Illinois v. Gates, 462 U.S. 213, 231 (1983).  The Court in Gates specifically held: "The task of the issuing magistrate is simply to make a practical, common sense decision, whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that the magistrate has a 'substantial basis for  . . . conclud[ing]' that probable cause existed."

Even under the holding of Illinois v. Gates, an informer's tip which is a mere conclusion and sets forth no basis of knowledge is inadequate to establish probable cause.  Gates, however, allows a judicial officer to find probable cause for issuance of a search warrant when an unreliable informant provides the facts if the affiant can corroborate the facts through other means.  Although the Supreme Court abandoned the Aguilar analysis in favor of totality of the circumstances test, the principles of Aguilar still remain useful in analyzing definitions of probable cause.

The leading case on probable cause coming from the United States Supreme Court is Maryland v. Pringle, 540 U.S 366. (2003). A Maryland court convicted the defendant of possession with intent to distribute cocaine and possession of cocaine.  The Maryland Court of Special Appeals affirmed the conviction, but the Maryland State Court of Appeals reversed the conviction.  The State of Maryland then appealed to the United States Supreme Court.  The facts are as follows.  The defendant was sitting

in the passenger seat of a car being driven by the car's owner.  Another passenger was seated in the back.  A Baltimore County police officer stopped the car for speeding.  The owner of the car consented to a search of the vehicle.  During the search the officer seized $763 from the glove compartment and five glassine baggies of cocaine that were hidden between the back-seat armrest and the back seat.  When questioned, all three of the car's occupants denied ownership of the money or drugs.  The officer threatened that if one of the three did not acknowledge ownership of the items, he was going to arrest all three for possession of cocaine with intent to distribute.  The suspects refused to provide any information, and the officer arrested all of them.  The defendant in this appeal argued that the officer lacked probable cause to arrest him for the possession of the drug.  In the opinion, the United States Supreme Court wrote "[u]nder the Fourth Amendment, made applicable to the States by the Fourteenth Amendment, Mapp v. Ohio, 367 U.S. 643 (1961), the people are 'to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, . . . and no Warrants shall issue, but upon probable cause . . . .'"

Citing United States v. Watson, 423 U.S. 411, 424 (1976), the Court further stated, "[a] warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause."

The Court's explanation of probable cause is found in the following part of the opinion in Pringle:

> The long-prevailing standard of probable cause protects "citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime," while giving "fair leeway for enforcing the law in the community's protection." Brinegar v. United States, 338 U.S. 160, 176 (1949).  On many occasions, we have reiterated that the probable-cause standard is a "'practical, nontechnical conception'" that deals with "'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Illinois v. Gates, 462 U.S. 213, 231 (1983) (quoting Brinegar, supra, at 175-176); see, e.g., Ornelas v. United States, 517 U.S. 690, 695 (1996); United States v. Sokolow, 490 U.S. 1, 7-8 (1989).  "[P]robable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules." Gates, 462 U.S., at 232. The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. See ibid.; Brinegar, 338 U.S., at 175.  We have stated, however, that "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt," ibid. (internal quotation marks and citations omitted), and that the belief of guilt must be particularized with respect to the person to be searched or seized, Ybarra v. Illinois, 444 U.S. 85, 91 (1979). In Illinois v. Gates, we noted:

"As early as <u>Locke v. United States</u>, 7 Cranch 339, 348 [Slip Op. 5] (1813), Chief Justice Marshall observed, in a closely related context: '[T]he term "probable cause," according to its usual acceptation, means less than evidence which would justify condemnation . . . . It imports a seizure made under circumstances which warrant suspicion.' More recently, we said that the "quanta . . . of proof" appropriate in ordinary judicial proceedings are inapplicable to the decision to issue a warrant. <u>Brinegar</u>, 338 U.S., at 173. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision. 462 U.S., at 235."

In holding that there was probable cause for the arrest of all three persons, and consequently holding that the defendant's arrest did not contravene the Fourth and Fourteenth Amendments, the Court wrote in <u>Pringle</u>:

We think it an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine. Thus a reasonable officer could conclude that there was probable cause to believe Pringle committed the crime of possession of cocaine, either solely or jointly. … Here we think it was reasonable for the officer to infer a common enterprise among the three men. The quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him.

Citing <u>United States v. Di Re</u>, 332 U.S. 581 (1948), the Court in <u>Pringle</u> pointed out that "'[a]ny inference that everyone on the scene of a crime is a party to it must disappear if the Government informer singles out the guilty person.' … No such singling out occurred in this case; none of the three men provided information with respect to the ownership of the cocaine or money."

The principles set forth in <u>Maryland v. Pringle</u>, 540 U.S 366 (2003), are applicable to both probable cause hearings for arrests and searches and seizures.

3. Determination of the logical validity of the facts in the affidavit

Obviously a magistrate can do little to improve his inherent common sense and logic, other than to familiarize himself with factual situations that have been held to constitute probable cause in the past. While familiarity with past decisions is obviously desirable, it is not a foolproof method of determining probable cause since the type of facts that are sufficient to establish probable cause vary with the particular situation and must be determined on a case-by-case basis.

When a court finds a lack of probable cause, it is frequently not because probable cause did not exist in fact, but because it was not set out in the affidavit. The most important measure a magistrate can take to insure that probable cause exists is to be sure that he has <u>facts</u> rather than <u>conclusions</u> upon which to exercise common sense

and logic.  A reviewing court may disagree with the magistrate's determination that the facts establish probable cause, but this question is never reached and the warrant is automatically invalid if no facts were presented to the magistrate.  The determination that probable cause exists is a conclusion that only the magistrate may reach, and he can only reach this conclusion after considering a factual situation set forth in the affidavit.  No one, not even the Attorney General himself, can merely relay a conclusion to the magistrate and have the magistrate act on the conclusion.  If the Attorney General were to file an affidavit that states: "I desire to search John Smith's house because I know he has stolen property in the house," the magistrate would be required to say that the search warrant cannot be issued without establishing sufficient facts.  In the above example there are no facts for the magistrate to consider.  The magistrate would be rubber-stamping the Attorney General's conclusion if he determined that probable cause existed without requiring the necessary, supporting facts.

The magistrate should approach every affidavit with a frame of mind which demands: "do not merely set out your conclusions or hunches, inform me of the facts and I will decide if there is probable cause to search the premises."  The reason that the magistrate himself must make the determination of probable cause is because the magistrate serves as a neutral judicial officer.  The magistrate exercises great power in determining the constitutional right to be free of unreasonable searches and such an important constitutional right is not to be taken lightly.  The magistrate must never allow himself to become a puppet for police officers because the magistrate is not an arm of law enforcement.  The magistrate serves in a capacity of a judge weighing the competing interests in crime detection versus the interest in protecting individual freedoms.  The constitution interposes the magistrate between the police and the private citizen.  The police are "engaged in the often competitive enterprise of ferreting out crime."  Johnson v. U.S., 333 U.S. 10, 13 (1948).  Whereas the magistrate, as a judicial officer, is not actively involved in criminal investigation and thus can be more detached and objective in weighing the facts.  Thus, if an officer were to file an affidavit stating that the officer believed John Smith had stolen property in his apartment because Smith "looks" like a criminal and the officer has a "hunch" about Smith, the magistrate should determine that looks and hunches amount to mere suspicion.  While this suspicion is an adequate basis for continued investigation by the police, it is not an adequate factual basis for a determination of probable cause upon which to issue a search warrant.

An example of sufficient facts to establish probable cause would be where the officer swearing to the affidavit states that he personally observed John Smith carry 20 portable televisions into his apartment at 3:00 a.m. on the morning of January 3.  The affidavit further states that the police have received a complaint from the owner of an appliance store that 20 portable televisions were stolen during the evening of January 2.  Such an affidavit would clearly furnish the magistrate with sufficient facts to establish probable cause that stolen items are located in a specific location.  The magistrate need not accept another person's conclusions.  He can examine the fact that Smith was seen transporting 20 portable televisions the morning after 20 portable

televisions were stolen and can form a reasonable belief that the 20 stolen televisions are now in Smith's apartment.  Note that the determination of probable cause does not preclude the possibility that Smith's televisions are not in fact stolen.

Smith may have a perfectly innocent explanation, but that is an issue for trial.  The magistrate need only form a reasonable belief of the likelihood of the stolen televisions being in Smith's apartment.  Smith's ultimate explanation, if any, does not alter the existence of probable cause because it does not alter the factual situation before the magistrate at the time he issued the warrant.

The facts of Colaw v. Commonwealth, 32 Va. App. 806, 531 S.E.2d 31 (2000) offer a prime example of a search warrant affidavit totally lacking facts to support the issuance of a search warrant.   In Colaw, a deputy obtained a search warrant from the magistrate that authorized the search of a residence where a party was to occur.  The search warrant affidavit stated, "[O]n September 12th 1997 a reliable informant called me by phone and noticed me of a party at Steven Wimer's residence that the people there will be using and selling narcotics."  The confidential informant was described as someone who has "displayed knowledge of drug use and distribution on numerous occasions.  This informant has given information in the past that has led to 2 arrests."

The magistrate issued the warrant at 12:46 am on September 13, 1997, and the deputy served the warrant at 2:10 a.m.  During the search of the residence the deputy discovered cocaine and a small scale in defendant's overnight bag.  He also found packaging material and a metal spoon under a towel on the table where the overnight bag was located.  The defendant made a motion to suppress the evidence seized because the affidavit lacked sufficient probable cause for issuance of the search warrant.  The trial court agreed that the affidavit did not establish probable cause and ruled the evidence inadmissible under the good faith exception to the exclusionary rule.  On appeal, the defendant argued that "that the affidavit underlying the warrant was a 'bare-bones affidavit'" and that it was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  Quoting United States v. Leon, 468 U.S. 897 (1984), the Court of Appeals stated:  "'Under the good faith exception [to the exclusionary rule] evidence illegally seized is admissible if the officer conducting the search reasonably relied on a search warrant issued by a detached and neutral magistrate.'"   The Court of Appeals further cited United States v. Leon:

> The good faith exception to the exclusionary rule is not available in the following four instances: (1) Where the magistrate was misled by information in the affidavit which the affiant knew was false or should have known was false; (2) the issuing magistrate totally abandoned his judicial role, (3) the warrant was based on an affidavit "so lacking in indicia of probable cause" as to render official belief in its existence unreasonable or (4) where the warrant was so facially deficient that an executing officer could not reasonably have assumed it was valid.

The Court of Appeals agreed with the trial court that the search warrant affidavit lacked probable cause for three reasons.

a. "[I]t failed to provide a basis for the source of the affiant's knowledge."

In explaining the affidavit's deficiency, the Court further stated:

> [T]he affidavit failed to articulate the basis for the informant's knowledge that the party would be occurring at the Wimer residence or that it would occur on September 13.  Further, it failed to state the basis for his knowledge that drugs would be present at the residence.  No evidence indicated that the informant had been told of a party planned at the Wimer residence September 13 or that he had been invited to a party there.  Insofar as the record shows, the informant may have only been aware that parties were regularly held at the Wimer residence, and the warrant was issued on September 13 in anticipation that a party would be held there.

b. "[T]he warrant was an invalid anticipatory search warrant."

Citing McNeill v. Commonwealth, 10 Va. App. 674, 395 S.E.2d 460, (1990), the Court pointed out that "[a]n anticipatory search warrant is valid only when probable cause [exists] to believe that the items to be seized will be at the place to be searched at the time the warrant is executed."

c. "The affidavit also failed to provide a reason or explanation for the informant's knowledge that the criminal activity would occur."

The Court in Colaw v. Commonwealth, 32 Va. App. 806, 531 S.E.2d 31 (2000), commented further:

> Here, the same police officer was both the affiant and the executing officer.  However, the affidavit contains no facts, and presumably the affiant was aware of none, that would support the conclusion that people were at the residence to be searched or would be there on September 13 or that they would be "using and selling drugs."  The affidavit merely stated a conclusory declaration by a third party informant that people at the residence "will be using and selling narcotics."  A police officer could not reasonably have believed that the warrant was properly issued when it was based on a "bare bones" affidavit that contained only conclusory assertions by a third-party informant about a future event without supporting facts to constitute probable cause. …

An executing officer, making an objective assessment of the warrant, would find no facts in the warrant to support a reasonable, good faith belief that drugs would

be at the residence at a future time.  The affidavit states, in effect, that an undisclosed informant said drugs would be at a certain residence at an unspecified future date and time.  Based on the affidavit, the informant did not report having been inside the residence, having seen anyone purchase or sell drugs inside the residence, or having seen anyone using drugs inside the residence.  Neither the affiant nor the informant reported having witnessed a drug transaction in the residence or a drug transaction involving anyone who was there or resided there.  The affidavit contains no statement which asserts that anyone saw drugs in the residence or on a person at the residence.  *See* Janis v. Commonwealth, 22 Va. App. 646, 653-54, 472 S.E.2d 649, 653 (1996) (holding that the 'affidavit gave absolutely no indication that the fruits of criminal activity would probably be found at that location, rendering [the officer's] belief in probable cause, based solely on the affidavit, objectively unreasonable'), aff'd en banc, 23 Va. App. 696, 479 S.E.2d 534 (1996); *see also* Atkins, 9 Va. App. at 464, 389 S.E.2d at 180 (holding that evidence was admissible under the good faith exception where the affidavit contained 'a detailed description of the nature of the offense, the premises to be searched, the items for which they were searching, and the transaction which led the informant to believe that the drugs would be in this apartment').  Only by blindly accepting the informant's conclusory statement could one believe that drugs would be at the residence.  Accordingly, we find that the affidavit was so lacking in an indicia of probable cause as to render official belief in its existence entirely unreasonable.

The case of Anzualda v. Commonwealth, 42 Va. App. 481, 592 S.E.2d 761 (2004) (en banc 44 Va. App. 764, 607 S.E.2d 749 (2005)) provides another example of a clearly defective search warrant affidavit.  The material facts contained in the search warrant affidavit were as follows:

> On March 17, 2000, Carlos Tolentito and Hildeberto Velasco were shot to death with 9 millimeter rounds on Occohannock Neck Road.  An individual incarcerated in the Northampton County Jail has become a suspect in the offense in that he has made incriminating statements to at least three persons.  An intimate friend of the suspect has informed the undersigned that the suspect informed the intimate friend that he had traded a pistol to an individual known as "Cowboy" for marijuana, "Cowboy" being known to her as residing at the place to be searched.  The undersigned has personal knowledge that "Cowboy" is Delio Anzualda.

The thing to be searched for was "a 9 millimeter pistol and/or ammunition."

The deputy seized cocaine, marijuana, two rifles, and a shotgun during the search.  The pistol was not among the items seized.  The defendant's attorney argued the facts presented in the affidavit did not support a probable cause finding that the pistol would be located in the defendant's home.  In holding that the affidavit was insufficient to support probable cause, the Court of Appeals wrote:

The timing nexus is particularly deficient in this affidavit.  Without specifying any dates, the affidavit relates that an unidentified suspect told a friend, who was an unidentified informant, that he (the suspect) traded a pistol to Anzualda.  The affidavit does not disclose when the suspect had the conversation with the informant.  Furthermore, the substance of the conversation does not convey any time frame or other facts which would suggest when the suspect had the conversation.  Indeed, the conversation just as likely could have occurred a year prior to the date of the affidavit as at any other hypothesized time.

Likewise, the affidavit does not disclose when the suspect traded the pistol.  It does not disclose whether the suspect transferred the pistol before or after the homicides.  Furthermore, the affidavit does not assert the pistol was ever seen in the residence or even where the trade occurred.  Indeed, the affidavit's statement of material facts does not even disclose whether the pistol the suspect traded was a "9 millimeter" firearm or was believed to be a weapon capable of discharging "9 millimeter rounds."  Thus, the information communicated by the suspect does not disclose a reasonable probability that the pistol the suspect traded would be at the residence on September 15, when the warrant was issued and executed.  The affidavit also does not allege that the traded pistol was connected with the homicide.

. . .

The only date or time reference contained in the affidavit is March 17, 2000, the date of the homicides.  Significantly, however, the affidavit leaves vague and undisclosed the connection of the "suspect" to the homicides.  It notes only that an individual incarcerated in jail "has become a suspect in the offense in that he has made incriminating statements to at least three persons."  By leaving unstated whether the suspect's statements suggest that he was present during the homicides or that he knew the identity of the killer or that he implicated himself as the killer, the affidavit renders speculative when the transfer of the pistol occurred.  Indeed, if the individual has become a suspect merely because he told the informant and others that he traded a pistol to Anzualda, then probable cause is non-existent because nothing in the affidavit links the March 17, 2000 killings and the pistol.  Only by assuming that the suspect's statements suggested he was the killer could the magistrate conclude the transfer of the pistol occurred after March 17, 2000.  Such an assumption, however, is grounded in no fact that is recited in the affidavit.

Under some situations, it is proper for a magistrate to issue a search warrant when there are no specific facts to link the item or items that are a basis of the search to the location of the search.  A case that illustrates this point is Gregory v. Commonwealth, 46 Va. App. 683, 621 S.E.2d 162 (2005).  Gregory involved an appeal from a ruling in a suppression hearing.  In a jury trial, the circuit court convicted the defendant of second-degree murder, felony eluding and three counts of possession of drugs with the intent to distribute.

In Gregory, a trooper stopped the car driven by Gregory for speeding.  After the stop, the trooper began administering field sobriety tests.  At that point, the defendant got back into the car and the trooper jumped in to prevent the defendant from driving off.  While the trooper struggled with the defendant, the car took off but overturned a short distance later.  The trooper was killed as a result of the rollover.  The defendant who also sustained injuries was apprehended later on.  He refused to give his name.  The vehicle had independent dealer license plates registered to Quick Enterprises, LLC.  The defendant was the registered agent for that company.   The day after the incident, an investigator sought a search warrant for the defendant's residence.  The purpose of the search was to "connect Shawn D. Gregory to the BMW sedan with license plate JCG-8714."  The items of things to be search for were "all papers, documents, titles, or photographs showing usage or ownership of this BMW."  A magistrate issued the search warrant.  During the search of the residence, the officers observed drugs.  Soon afterwards, an investigator obtained a second search warrant to search for drugs in the residence.  This search uncovered $600,000 worth of cocaine and heroin and $125,207 in cash.  On appeal Gregory argued that the magistrate lacked probable cause to issue the first search warrant because the "affidavit failed to state with requisite particularity that documents connecting him to the BMW existed or would be found at his residence."

Citing United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993), the Court of Appeals in Gregory stated that the "crucial question in determining whether a search warrant is supported by probable cause is whether the item to be seized is likely to be found in the place to be searched."  In holding that the magistrate had probable cause to issue the search warrant the court cited several holdings of prior cases.  "The magistrate is free 'to draw reasonable inferences about where incriminating evidence is likely to be found, based on the nature of the evidence and the type of offense.'"  Gwinn v. Commonwealth, 16 Va. App. 972, 434 S.E.2d 901 (1993).  "'[A] sufficient nexus can exist between a defendant's criminal conduct and his residence even when the affidavit supporting the warrant 'contains no factual assertions directly linking the items sought to the defendant's residence.'"  United States v. Grossman, 400 F.3d 212, 217 (4th Cir. 2005).  "In determining whether the affidavit provides a sufficient nexus, 'the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence.'"  United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988).

The Court of Appeals in Gregory further stated:

> In Anderson, the court upheld a search warrant for the defendant's residence though the affidavit did not link the firearm to the residence.  The opinion relied on United States v. Jacobs, 715 F.2d 1343, 1346 (9th Cir. 1983) (reasonable for magistrate to conclude clothing would remain at the residence); United States v. Steeves, 525 F.2d 33, 38 (8th Cir. 1975) (gun owners generally keep them at home or on their persons); United States v.

Rahn, 511 F.2d 290, 293 (10th Cir. 1975) (reasonable to assume weapons kept in residences); and Bastida v. Henderson, 487 F.2d 860, 863 (5th Cir. 1973) ("[a] very likely place to find [pistols] would either be on the persons of the assailants or about the premises where they lived").

The Fourth Circuit Court of Appeals has consistently held that to establish probable cause the magistrate must "review facts and circumstances as a whole and make a common sense determination of whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Williams, 974 F.2d 480, 481 (4th Cir. 1992) (quoting Gates, 462 U.S. at 238). The facts and circumstances in the affidavit only need to permit a person of reasonable caution to believe the articles sought would be found there. The appellate review of the magistrate's decision is to determine whether there is a "substantial basis" for the conclusion that probable cause exited. Simmons v. Poe, 47 F.3d 1370, 1379 (4th Cir. 1995). The facts presented to the magistrate need not provide certainty that the objects sought will be found but need only establish a reasonable belief that evidence of the crime will be found in the place to be searched. See United States v. Humphrey, 104 F.3d 65, 69 (5th Cir. 1997). In upholding the validity of the search warrant, the Court of Appeals in Gregory held that "the magistrate could reasonably conclude that documents relating to ownership or use of a car existed and would be kept with other personal papers in one's residence. The defendant and the BMW were associated with the apartment. Documents related to the ownership and use of such a vehicle are just the type of things people tend to keep in their homes among their papers and personal effects. 'Passports, personal identification, and bank records are precisely the sorts of items which people tend to keep at home among their personal papers and effects.' United States v. Freeman, 685 F.2d 942, 949 (5th Cir. 1982). The magistrate could reasonably infer the defendant would keep records about the car he drove in the apartment where he lived."

In applying the principles set forth in Gregory, the magistrate first should determine whether the facts presented in the search warrant establish probable cause to link a specific person to a crime. Secondly, the magistrate needs to determine from the facts whether the item or items that form the basis of the search constitute evidence of that crime. Lastly, the magistrate must make a common sense determination as to whether it is likely that a person would keep the item or items that are the subject of the search in the place where the search is to be made. In many cases the place to be searched will be the residence of the person. The question then becomes whether it is likely that a person would keep this item in his home.

4. Determination of the reliability of the facts in the affidavit

After determining that the facts set forth in the affidavit logically indicate that seizable items are located in the place to be searched, the magistrate must make a second determination that the facts set forth in the affidavit are reliable facts, i.e.,

there must be some indication that the facts are true.  There is no requirement that the reliability of the facts be established beyond a reasonable doubt.  Again, reasonableness is the standard and it is sufficient if the magistrate has a reasonable basis for concluding that the facts are probably true.

In the hypothetical affidavit where Smith was seen on January 3 carrying 20 portable televisions, similar in appearance to the 20 televisions stolen on January 2, the magistrate was justified in determining that the facts establish the likelihood that there are stolen televisions in Smith's apartment.  But a search warrant could not be issued at this point because there is no basis for accepting that Smith was in fact seen with the televisions.  After examining the facts set out in the affidavit, the magistrate should demand that the affidavit further set out the source of the facts, i.e., who saw Smith with the televisions?  If the affidavit stated merely that the police received their information from an anonymous phone caller, then there is no basis upon which the magistrate can judge the reliability of the phone caller. Without knowing anything about the phone caller, there is no way to determine if he was telling the truth.  The phone caller could be anyone with a grudge against Smith, and the call could be totally false and just an effort to embarrass Smith. The magistrate has no facts before him indicating that the source of the report is reliable.  The results of a search cannot be used to justify issuance of the warrant. This procedure would involve hindsight, and the courts will only consider the facts before the magistrate at the time the warrant was issued.

As with the first determination of a reasonable belief that seizable items are present, the magistrate must make the determination of reliability and the determination must be based on facts.  Were the affidavit to identify the phone caller as a person the police know to be "reliable" this is a mere conclusion that the magistrate cannot rubber-stamp.  The magistrate should require the setting out, not of conclusions as to reliability, but of facts upon which the magistrate himself can arrive at a conclusion that the phone caller is reliable.  The police probably have some basis for believing that the phone call is reliable and not a crank or they would not be requesting a search warrant.  But the determination of reliability made by the police does not satisfy the Fourth Amendment requirement that a judicial officer determine the reliability for issuance of a search warrant. The police must pass on to the magistrate their basis for crediting the report as reliable, and then the magistrate must independently consider the factual basis and determine if it is sufficient to convince him that the report is reliable.

Thus, every affidavit must contain two sets of facts:

o   Facts logically indicating the presence of seizable items,

o   Facts indicating the reliability of the first set of facts.

The reliability of the first set of facts is not established merely because the police officer swears to the affidavit.  The officer is only swearing that to the best of his

knowledge the facts are true, but his knowledge may not be adequate to satisfy the test of probable cause.  When a person prepares an affidavit setting out facts within his knowledge, there is one of two ways he obtained "knowledge" of these facts.  The affiant either personally observed the facts, or someone told the officer that he or she observed the facts.  When the affidavit contains only facts personally observed by the officer, the magistrate is not confronted with an informer situation and the magistrate need only determine the reliability of the officer.  Law enforcement officers are per se reliable.  *See* United States v. Ventresca, 380 U.S. 102 (1965); Sauders v. Commonwealth, 218 Va. 294, 237 S.E.2d 762 (1977).  If the magistrate determines that a law enforcement officer is the affiant, then the magistrate accepts the facts as reliable unless the magistrate knows the officer is providing false or misleading information in the affidavit.  When the affidavit contains facts not personally observed by the officer, an informer situation exists.  An informer situation goes far beyond just the classic "underworld" informer.  Any time the person swearing to the affidavit sets out a fact he has not personally observed, an informer situation exists.

Section 6 of the DC-338, AFFIDAVIT FOR SEARCH WARRANT, is designed to inform the judicial officer of the basis for the facts provided in the affidavit.  The section states:

> 6. [ ] I have personal knowledge of the facts set forth in this affidavit
>     AND/OR
>
> [ ] I was advised of the facts set forth in this affidavit, in whole or in part,
>     by one or more other person(s).  The credibility of the person(s)
>     providing this information to me and/or the reliability of the information
>     may be determined from the following facts:

The DC-338, AFFIDAVIT FOR SEARCH WARRANT allows either or both boxes shown above to be checked.

In every informer situation, the magistrate must be given the facts that indicate the reliability of the informer (the actual observer of the facts).  The magistrate must always determine who was the actual observer of the facts set forth in the affidavit and require some factual evidence of the observer's reliability.  Thus, if the affidavit states that the police received the facts from informer X, the affidavit must go on to state whether informer X actually observed these facts or whether he in turn received the facts from informer Y.  In the latter case, it is informer Y (the actual observer) whose reliability must be established, as well as the reliability of informer X.

Under the totality of the circumstances test, probable cause may exist even when the informant does not see the exact action that constitutes a crime, but merely sees events leading up to, and after, the crime.  Consider Slade v. Commonwealth, 43 Va. App. 61, 596 S.E.2d 90 (2004).  In this case, the Newport News Circuit

Court convicted the defendant of possession of cocaine with the intent to
distribute.  During the execution of a search warrant, police discovered cocaine in
the defendant's residence.  On appeal the defendant argued that the trial court
should have suppressed the evidence because the magistrate lacked probable
cause to issue the search warrant.  The affidavit contained the following language:

> On December 4, 2002, this affiant received information from a confidential
> reliable informant that he/she and a [sic] unwitting informant had been to an
> apartment known as 438 Tara Court, #7. The reliable informant advised that
> he/she observed the unwitting informant knock on the door of 438 Tara Court
> #7 and walk in with the U.S. currency. The reliable informant advised that the
> unwitting informant returned and handed the reliable informant a quantity of
> cocaine and stated that there is more cocaine for sale inside 438 Tara Court #7
> when the reliable informant wanted more. The reliable informant advised
> he/she had taken the unwitting informant to 438 Tara Court #7 several times
> in the past and has given U.S. currency to the unwitting informant to purchase
> cocaine from inside 438 Tara Court #7 and the unwitting informant has stated
> that there is more cocaine for sale inside 438 Tara Court #7 when the reliable
> informant wanted more.

At the suppression hearing, the defendant stipulated that the "confidential reliable
informant" was indeed reliable, so that was never an issue on appeal.  The
defendant, however, argued that no facts were presented in the affidavit to support
the reliability of the "unwitting informant."  In analyzing the case, the Court of
Appeals noted that the United States Supreme Court in Illinois v. Gates, 462 U.S.
213 (1983) stated: "Whether a warrant is supported by probable cause is
determined from the 'totality-of-the-circumstances.' … The task of the issuing
magistrate is simply to make a practical, common-sense decision whether, given
all the circumstances set forth in the affidavit before him, including the "veracity"
and "basis of knowledge" of persons supplying hearsay information, there is a fair
probability that contraband or evidence of a crime will be found in a particular
place.  And the duty of a reviewing court is simply to ensure that the magistrate
had a 'substantial basis for . . . [concluding]' that probable cause existed."

Applying the Gates "totality of the circumstances" test the Court of Appeals
upheld the validity of the search warrant.  Quoting McGuire v. Commonwealth,
31 Va. App. 584, 525 S.E.2d 43 (2000), the Court wrote "Ordinarily, an
informant's controlled buy may constitute probable cause sufficient for a
magistrate judge to issue a warrant."  The Court in Slade went on to state:

> The affidavit provided a detailed description of the reliable informant who,
> after giving 'buy money' to the unwitting informant, saw him knock on the
> door of the Tara Court residence, walk in with U.S. currency, and return to
> hand the confidential informant cocaine that he had purchased. The reliable
> informant stated that he had taken the unwitting informant to the same address
> several times with the same result.  Appellant stipulated that the confidential

informant was reliable, and it is his credibility that forms the basis for the warrant.  The unwitting informant was merely an instrument of the controlled buy.

In an affidavit where an informant provides most of the information, the reliability of the affiant is insufficient to establish the reliability of the informant because the affiant is merely a relayer of the facts observed by the informer.  The reliability of the affiant is meaningless if the source of the information is unreliable.  If the information comes from an unreliable person, the information does not become reliable merely because someone who is reliable repeats it.  Any test of reliability must begin by determining the person whose reliability is in question.  Thus a magistrate must always determine the ultimate source of the facts set forth in the affidavit, and have some indication of the reliability of that ultimate source.  (Who is the ultimate source of the facts and how reliable is that source?)  Determination of the person whose reliability is in question does not necessarily require that the informer's identity be revealed.  Police factually may establish the reliability of informer X without ever revealing X's true name.  The factors listed below are some general principles that the magistrate may consider as factors that bear on reliability:

o   The source (observer) of the facts is a police officer.  "Observations of fellow police officers of the government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their numbers." (United States v. Ventresca, 380 U.S. 102 (1965)).  Facts may be accepted as reliable when they are personally observed by police officers.  But reliability does not extend to facts discovered by police through "investigation" versus observation.  An investigation may have uncovered facts whose only source is an unreliable informer.

   –   Example of reliability established - The affidavit states that all of the facts in the affidavit were relayed to the affiant by police officer Jones who personally observed all of the facts.  The facts may be accepted as reliable because Jones who is a police officer observed them.

   –   Example of failure to establish reliability - The affidavit states that the facts in the affidavit were developed through investigation of the police department.  The magistrate does not know who observed the facts and thus there is no indication of the reliability of the observer.  The police department may have obtained all the facts from an unreliable informer.

o   The source (observer) of the facts has been reliable in the past.  See Jones v. United States, 362 U.S. 257 (1960).).  The magistrate must be presented with more than the conclusions that the informer was reliable in the past.  The magistrate must have facts from which the magistrate can conclude that the informer was reliable in the past and thus is reliable now.

- Example of reliability established - The affidavit states that the source of the facts is a person who, in the last two years, has given the police multiple tips on drug possession, the tips resulting in six convictions for illegal possession of drugs.

- Example of failure to establish reliability - The affidavit states that the source of the facts is an informer the police "know" to be reliable. Such a statement is not adequate because the magistrate has no facts indicating reliability, only an unsubstantiated conclusion by the police.

o  The source (observer) of the facts is identified as a victim of a crime, eyewitness to a crime, or concerned citizen. *See* Tamburino v. Commonwealth, 218 Va. 821, 241 S.E. 2d 762 (1978); Saunders v. Commonwealth, 218 Va. 294, 237 S.E. 2d 150 (1977); Simmons v. Commonwealth, 217 Va. 552, 231 S.E. 2d 218 (1977); Brown v. Commonwealth, 212 Va. 672, 187 S.E. 2d 160 (1972).

o  The source (observer) of the facts personally appears before the magistrate. Virginia Code § 19.2-72 permits the magistrate to summon witnesses in order to facilitate determination of probable cause for purposes of arrest. The theory is that the magistrate can observe the appearance and demeanor of the person, and thus judge reliability as the jury does with witnesses appearing in court. Although Va. Code § 19.2-72 permits such a procedure, it is fraught with potential problems and the magistrate should discuss such a situation with the chief magistrate before undertaking to call witnesses. Furthermore, Va. Code § 19.2-72, which authorizes the summoning of witnesses, is in Chapter 7 of Title 19.2 (arrests). As Ch. 5 of Title 19.2 (search warrants) does not contain a similar provision, it is questionable whether a magistrate may summon witnesses for a search warrant hearing.

o  The source (observer) of the facts has been corroborated as to some of the facts he reports. Draper v. United States, 358 U.S. 307 (1959). The theory is that if the police can independently establish the truth of some of the facts related by the informer, it is reasonable to conclude that the remaining uncorroborated facts are also true.

     **Example**: The informer stated that the suspect would be making a pickup of heroin and would be bringing the heroin back with him. The informer named and accurately described the suspect, and accurately stated that the suspect would arrive by train on one of two specified mornings. When the police verified that the information as to description, and the time and manner of arrival were accurate, the United States Supreme Court held that probable cause was established.

5.   The Time Factor and Stale Probable Cause

The time during which the events set forth in the affidavit occurred is a prime element in determining probable cause for the issuance of a search warrant.  The magistrate must determine whether the facts presented create a reasonable belief that the same conditions described in the affidavit exist at the time of the issuance of the warrant.  Evidence that the defendant illegally possessed drugs on a given date is not probable cause to believe he possessed the drugs 72 days later.  *See* Stovall v. Commonwealth, 213 Va. 67, 70 (1972).  A substantial time lapse is not controlling, however, when the magistrate reasonably can conclude from the facts that the defendant is continuing the criminal activity and that the items to be seized are still at the place to be searched.

6.   Anticipatory Search Warrants

An anticipatory search warrant is one that authorizes the search for items that are not yet at the place to be searched at the time the affiant submits the affidavit to the magistrate or judge.  Most anticipatory search warrants involve contraband that is packaged and in transit for delivery by the U.S. Postal Service or a commercial delivery service.  However, a variety of other circumstances might create a request for an anticipatory search warrant.  *E.g.*, People v. Bui, 381 Ill.App.3d 397, 885 N.E.2d 506 (Ill. App., 2008) (SW for visitor entering prison with contraband); Morton v. Commonwealth, 06 Vap UNP 2938042 (2006) (anticipatory SW executed immediately after controlled purchase of drugs in residence).

The leading case in Virginia is Ward v. Commonwealth, 273 Va. 211, 639 S.E.2d 269 (2007).  In this case, the Petersburg Circuit Court convicted the defendant of possession of cocaine and marijuana with the intent to distribute.  The appeal involved the validity of an anticipatory search warrant issued by a circuit court judge.  A postal inspector was investigating a suspicious package at the Petersburg post office.  The package was addressed to Anna Wilson at 129 Church Street, Petersburg, VA 23803 and contained 2 pounds, 1.2 ounces of marijuana, and 2.35 ounces of cocaine.  The address database did not show an address for Anna Wilson in Petersburg.  The inspector contacted a letter carrier who stated that she had delivered recently a couple similar packages addressed to Anna Wilson and from the same sender to the defendant who was staying at a residence located at 129 South Old Church Street.  The postal inspector obtained a federal search warrant for the package and opened it pursuant to the federal search warrant.  The package contained marijuana and cocaine.  The drugs were packaged in such a way as to avoid detection by drug dogs.  The inspector then packaged the drugs up so that she could make a control drug delivery.  In anticipation of this delivery, two Petersburg detectives prepared an affidavit and asked for an anticipatory search warrant from a circuit court judge.  The search warrant affidavit requested the search of the residence located at "129 S. Old Church St."  The facts presented in the affidavit were as follows:

Evelyn Cross, a US Postal Inspector, became involved in a cocaine and
marijuana investigation.  A package [described in detail] . . . arrived in
Richmond, VA on 11-13-03 . . . [and] is addressed to: Ms. Anna Wilson, 129
Church St., Petersburg, VA. On 11-19-03 Agent Evelyn Cross applied for and
received a search warrant for [the] above mentioned package, [which
contained substances that were field tested and] tested positive for [over 2
pounds of] marijuana and [2.4 ounces of] cocaine. The package has been
maintained in the control and custody of your affiant, [Detective Riley].
Agents from the US Postal Service acting in an undercover capacity will pose
as a delivery person for the post office and will attempt to deliver the package.
The Petersburg Police Department working in conjunction with the US Postal
Service will attempt to deliver the package on today[']s date.  The search
warrant will only be executed on the residence if the following occurs: the
package and its contents are accepted and/or the package enters the residence
itself, or the police observe the package exiting the residence, or the security
of the controlled samples is at risk, or if the undercover officer's safety is at
risk.  If none of the events listed above occur the search warrant will not be
executed and will be returned to the issuing magistrate.

A few hours after the judge granted the search warrant, the postal inspector made
the delivery to the 129 Church Street address.  The defendant accepted the
package in person after he had studied it in the presence of the inspector.  (He
even called the inspector back when he realized that one of the letters she had
delivered along with the package was not his.)  Later that day, the detectives
executed the search warrant.  During the search the detectives seized the package
that was unopened and lying on a table.  The search also turned up 62 zip lock
bags, $250 in cash, and a pager.

On appeal the defendant argued that the affidavit failed to provide a nexus
between Anna Wilson at 129 Church Street and the residence to be searched at
129 South Old Church Street.  The defendant also argued that a controlled police
delivery could be the result of government abuse because the police could send
the object that is the subject of the search to an address where it would not be
found but for the police.

Several federal cases have held that an anticipatory search warrant is not valid
unless there is a sufficient nexus between the parcel to be delivered and the
address where the search will occur.  The Fourth Circuit Court of Appeals in
United States v. Dornhofer, 859 F.2d 1195, 1198 (4th Cir. 1988) held that this
nexus exists if the package was initially placed on a "sure course" to the place to
be searched by people other than law enforcement personnel.

In United States v. Grubbs, 547 U.S. 90 (2006), the United States Supreme Court
stated that "when an anticipatory warrant is issued, 'the fact that the contraband is
not presently located at the place described in the warrant is immaterial, so long

as there is probable cause to believe that it will be there when the search warrant is executed. … [F]or a conditioned anticipatory warrant to comply with the Fourth Amendment's requirement of probable cause, two prerequisites of probability must be satisfied.  It must be true not only that if the triggering condition occurs 'there is a fair probability that contraband or evidence of a crime will be found in a particular place,' … but also that there is probable cause to believe the triggering condition will occur.  The supporting affidavit must provide the magistrate with sufficient information to evaluate both aspects of the probable-cause determination.'"

In analyzing the facts, the Supreme Court of Virginia stated that the first prong of Grubbs was clearly met by the language of the affidavit.  It was clear from the affidavit that if the package were delivered, the contraband would be located at the residence in question.  The Court, however, stated that the Grubbs opinion required the following:  "The supporting affidavit must provide the magistrate with sufficient information to evaluate both aspects of the probable-cause determination."  The Court noted that if the magistrate was limited to the information contained in the affidavit, "then events ex post the issuance of an anticipatory search warrant could not be used to satisfy the probable cause requirement."

The Court assumed, but did not expressly hold, that the affidavit did not meet the second prong of Grubbs.  In other words, the facts did not a support probable cause finding that the package would be delivered and accepted at the address in question.  The triggering event in this case (and in most anticipatory search warrant situations) has two parts – delivery and acceptance.  In the Ward case, there was probable cause to believe that the package would be delivered because the person making delivery was a postal inspector.  The facts in the affidavit, however, did not support a probable cause finding that the package would be accepted because the package contained an incorrect address and was to be delivered to a person who did not live at the address thought to be correct.  In reality, the facts presented at trial indicated that the letter carrier who had the defendant on his route had recently delivered two other packages addressed to "Anna Wilson" at 129 Church Street.  No one at the defendant's residence had contacted the post office to state that the previous two packages were improperly delivered.  Had the search warrant affidavit contained this information, the facts would have supported a probable cause finding that the package would be accepted.

In anticipatory search warrant cases, the affidavit often contains facts that show that the package in question contains a valid address, and is addressed to a resident at that address.  With this information, the magistrate is not faced with the same problem as noted in Ward.  Since people generally accept packages addressed to them at the correct address, the magistrate properly would conclude that probable cause exists that the person to whom the package is address will accept it.

Occasionally the magistrate may be faced with an affidavit for an anticipatory search warrant regarding a package, verified to contain contraband, which is addressed to a potentially fictitious person at a valid address. The issue is whether the second prong of Grubbs – whether there is probable cause to believe the triggering condition will occur – can be satisfied. There is no mandatory appellate case law to guide a Virginia magistrate on this issue. However, a magistrate may consider the rationale of the federal trial court in U.S. v. Turner, 491 F.Supp.2d 556 (E.D. Va. 2007) as persuasive. Turner is a post-Grubbs opinion on the defendant's motion to suppress evidence. The facts are as follows:

Defendant, Michael Turner, is the named lessee of 1105 Hugo Street, Norfolk, Virginia. [It is undisputed that the Norfolk Police were not aware of Turner's status as lessee of 1105 Hugo Street on the day that the search warrant for such residence was executed.] On the morning of September 21, 2006, at the FedEx receiving facility in Norfolk, the Norfolk Police Department intercepted a package sent from Joe Williams in Tucson, Arizona, addressed to Gary Williams at 1105 Hugo Street, Norfolk, Virginia. A police drug dog alerted on the package, a warrant was obtained, the package was opened pursuant to such warrant, and one kilogram of cocaine was found inside. As indicated on the shipping label, the package was sent "FedEx Priority Overnight" and was therefore scheduled for delivery on the same morning that the cocaine was discovered. Based upon the discovery of the kilogram of cocaine, which the government represents is worth approximately $20,000, the Norfolk Police obtained an anticipatory search warrant for 1105 Hugo Street; the warrant "anticipated" a controlled delivery of the package by Norfolk Police at approximately 1 p.m. on that same day and required that prior to the warrant's execution, "someone of authority from 1105 Hugo Street Norfolk, Virginia has accepted [the package]."

After obtaining the anticipatory warrant, a Norfolk Police investigator disguised as a FedEx carrier attempted delivery of the package to 1105 Hugo Street; however, no one answered the door, prompting the disguised officer to leave the package on the porch. Approximately one minute later, a "white male ... wearing a white tank top t-shirt, white baseball cap, long jean shorts, sunglasses" exited the front door of 1105 Hugo Street; the individual "had a cigarette in his mouth" and "a large tattoo on [his] right arm in black and white." The individual looked to the left and to the right and then took the package inside the residence; such individual was later identified as the defendant, Michael Turner. Approximately four minutes after the package was taken inside by the defendant, the police executed the search warrant for 1105 Hugo Street. Upon entering the residence, the officers located the unopened package on the defendant's bed. [The bedroom was described by the police as the master bedroom, and the defendant's checkbook, with both his name and the address 1105 Hugo Street, was found on the dresser. Based on the arguments advanced at the hearing, "Gary Williams" appears to be a fictional name.] Also located in such bedroom was approximately 400 grams

of cocaine, nine pounds of marijuana, a semi-automatic firearm, and sandwich bags near a digital scale that was covered with white residue.

The federal court rejected Turner's claim that there was not probable cause that the triggering event would occur.  The court stated:

> The probable occurrence of the triggering condition, successful delivery of the package to 1105 Hugo Street, was supported by the assertion in the affidavit that: "At approximately 1300 hour [sic], Investigator M.S. Joseph posing as a Federal Express delivery driver will deliver the brown box ... to 1105 Hugo Street."  Although there was some possibility that the package would be rejected, such occurrence was unlikely as the box contained $20,000 worth of cocaine and was sent via FedEx overnight service in order to effectuate next day delivery. *See* Grubbs, 126 S.Ct. at 1500 ("[T]he occurrence of the triggering condition-successful delivery of the videotape to Grubb's residence-would plainly establish probable cause for the search.... Although it is possible that Grubbs could have refused delivery of the videotape he had ordered, that was unlikely.").  Additionally, the speed of the Norfolk Police's submission of the application for the anticipatory warrant, the second warrant necessary as part of the expedited investigation spanning just a few hours, supports the affiant's claim that delivery could be effectuated by a disguised officer shortly after the package was "due" for delivery.  [Defendant argues that, prior to delivery, the police should have conducted further investigation in order to determine who resided at 1105 Hugo Street.  Additionally, defendant suggested calling the residence to confirm that someone was available to accept the package.  Although such suggestions would plainly simplify the probable cause determination, on these facts, they are patently unrealistic.  First, the officers were constrained by a very limited time-frame due to the fact that the scheduled delivery of the package was just hours after the cocaine was discovered and delivery in the late afternoon or on the following day when the package was specifically designated as "Priority Overnight" and scheduled for morning delivery would have drastically increased the probability that the intended recipient would grow suspicious and deny the package; such potential for rejection is bolstered by the public's ability to track FedEx packages over the internet.  Second, a call to 1105 Hugo Street to confirm that someone was available to accept routine delivery of a FedEx package would certainly have raised a red flag.]  The fact that the package containing $20,000 worth of cocaine was on a "sure course" to a defined address *prior to any police involvement* and was thereafter put back on such "sure course" by a police controlled delivery, is plainly distinguishable both from cases where the authorities, as part of a sting, mail the contraband to a defendant's residence ….

In Ford v. Commonwealth, 55 Va. App. 598 (2010), there was no information presented during the suppression hearing that the addressee was a real person. The Court of Appeals mentioned that the Virginia State Police special agent

"explained the use of fictitious names for shippers and receivers is common and it would have surprised him if the package had been addressed to Ford." However, this was not an issue in the case because it was not raised by the defense. Therefore, the Court of Appeals did not have the opportunity to discuss whether such facts affected whether a nexus existed between the package and the location to be searched.

In Morton v. Commonwealth, 06 Vap UNP 2938042 (2006), the Court of Appeals upheld a warrant issued by the magistrate for an anticipatory search warrant to be executed conditioned upon a successful controlled purchase of drugs by a confidential informant. The affidavit stated, in part:

> On Monday May 19, 2003 your affiant had the . . . Informant contact Morton by telephone, at 2701 Cushing Drive, and set up a deal for Tuesday May 20, 2003 in which the . . . Informant will meet Morton at 2701 Cushing Drive and purchase 1/2 kilogram of cocaine for $15,000.00. . . . After Morton accepts payment for the cocaine and delivers the cocaine to the . . . Informant, the search warrant will be executed to recover the monies used to purchase the cocaine as well as other evidence in the Conspiracy to Distribute Cocaine.

> This search warrant will only be executed on the residence if the following occurs: The Confidential and Reliable Informant enters 2701 Cushing Drive and makes the exchange of money for cocaine or . . . enters 2701 Cushing Drive to make the exchange and is at risk from persons located within 2701 Cushing Drive. If none of these events occurs the search warrant will not be executed and will be returned to the issuing magistrate.

The police followed the plan as detailed in the affidavit. The informant contacted Morton on May 19 and arranged to purchase one-half kilo of cocaine from him the following day. On May 20, the informant proceeded to Morton's residence, entered the same, and emerged "[n]o more than ten minutes" later with one-half kilo of cocaine. The informant testified that once inside, "we sat down, um, counted the money, and Gerard put the coke on the table, and we exchanged the coke for the money."

After the informant left Morton's residence, he met with police and gave them the cocaine from the sale. Pursuant to the search warrant, police entered the residence and secured the premises. During the search, the police seized the buy money, a handgun, digital scales, razor blades, baking soda, and several other separately packaged quantities of cocaine.

Regarding the first prong of Grubbs, the Court of Appeals in Morton stated:

> The first [prong of Grubbs], that being the likely presence of contraband or evidence of a crime in the place to be searched after the occurrence of a triggering event, was certainly satisfied here. Here, Inspector Maxwell

arranged for an informant, Fowler, to enter 2701 Cushing Drive with $15,000 to consummate a transaction with appellant for cocaine. The triggering event was specified in the warrant as follows:

> "This search warrant will only be executed on the residence if the following occurs: The Confidential and Reliable Informant enters 2701 Cushing Drive and makes the exchange of money for cocaine or . . . enters 2701 Cushing Drive to make the exchange and is at risk from persons located within 2701 Cushing Drive."

If neither of these events occurred, police would not execute the warrant.

As such, police would not execute this warrant unless either Fowler finished the transaction and brought the purchased cocaine to Maxwell or police determined that Fowler was at risk from persons inside the residence. In either case, "there [was] a fair probability that contraband or evidence of a crime [would] be found" in the residence. Grubbs, 126 S. Ct. at 1500. If after emerging from appellant's residence Fowler gave cocaine to Inspector Maxwell, then certainly one could assume the money used to consummate that transaction was present in the residence and also "a fair probability" that other items indicative of conspiracy to distribute cocaine were present as well. If the second event were to occur, that being the informant was at risk from those inside the residence, then there is "a fair probability" of evidence of another crime, that being a crime against Fowler's person. Either way, the first prerequisite is satisfied.

Regarding the second prong of Grubbs, the Court of Appeals in Morton stated:

> The second prerequisite [of Grubbs] deals with the triggering event itself; there must be probable cause to believe the triggering event will in fact occur. As Inspector Maxwell himself was responsible for orchestrating the triggering event, there is no question that the magistrate had probable cause to believe the event would occur.  Moreover, the affidavit contained information describing informant's preliminary actions: "On Monday May 19, 2003 your affiant had the . . . Informant contact Morton by telephone, at 2701 Cushing Drive, and set up a deal for Tuesday May 20, 2003 in which the . . . Informant will meet Morton at 2701 Cushing Drive and purchase 1/2 kilogram of cocaine for $15,000.00."  Thus, the affidavit contained particular information describing an appointment at a specific time and at a specific place.  That, coupled with Maxwell's oversight of the entire process, gave the magistrate probable cause to issue a valid anticipatory search warrant.

Finding that the Commonwealth had satisfied both prerequisites of Grubbs, the Court of Appeals held that the affidavit in Morton contained sufficient grounds for the magistrate to issue the anticipatory search warrant.

## IV.  THE SEARCH WARRANT FORM (DC-339)

For information regarding the proper use of this form, as well as the DC-338, AFFIDAVIT FOR SEARCH WARRANT, *see* the *DISTRICT COURT MANUAL FORMS VOLUME*.

If the magistrate finds that the affidavit contains all of the necessary information, then the magistrate must complete the DC-339, SEARCH WARRANT.  The completion of the search warrant itself does not require the setting forth of additional details.  Therefore, the magistrate should complete the warrant based on the information already provided on the affidavit.

### A.  Preparation Of Warrant

The Code of Virginia requires that every search warrant issued contain specific information.  The following text sets forth the statutorily required information.  The magistrate must direct the search warrant to any of the following entities:

- the sheriff, sergeant or any policeman of the county or city *in which the place to be searched is located*; or

  **Example:**  A deputy sheriff from Bath County develops probable cause that items stolen during a burglary in Bath County are currently located in a dwelling in Fluvanna County.  A magistrate from the magisterial region encompassing Fluvanna County must "direct" the search warrant to any sheriff's deputy of the Fluvanna County Sheriff's Office, or another law-enforcement officer or agent employed by the Commonwealth and vested with the powers of sheriffs and police, even though the affiant is a Bath Count deputy sheriff.  The search warrant may not be "directed" to the officers of the Bath County Sheriff's Office.  Pursuant to Va. Code § 19.2-56, however, deputies from the Bath County Sheriff's Office may assist in the search if later designated by the officer in charge of the conduct of the search.

- any law-enforcement officer or agent *employed* by the Commonwealth and vested with the powers of sheriffs and police; or

- jointly to any such sheriff, sergeant, policeman, or law-enforcement officer or agent and an agent or officer of the Federal Bureau of Investigation, the Bureau of Alcohol, Tobacco and Firearms of the United States Treasury, the United States Naval Criminal Investigative Service, the United States Department of Homeland Security, any inspector, law-enforcement official or police personnel of the United States Postal Inspection Service, or the Drug Enforcement Administration.

The magistrate must name the affiant and recite the offense in relation to which the search is to be made in the search warrant.  If based upon a local ordinance or a violation of the Code of Virginia, the affiant must provide a description of the crime.  Although it is not required by statute, the affiant may provide a Code section number or local ordinance number for reference in the DC-338, AFFIDAVIT FOR SEARCH

WARRANT.  The magistrate must name or describe the place to be searched.  In setting forth the description of the place the magistrate should use the same description contained in the affidavit.  The magistrate must describe the property that is the object of the search or person who is the object of the search.  Virginia Code § 19.2-56 also requires that the search warrant contain a statement that the magistrate has found probable cause to believe that the property or person constitutes evidence of a crime as identified in the warrant, or tends to show that a person, named or described in the search warrant has committed or is committing a crime.  The DC-339, SEARCH WARRANT contains preprinted language that satisfies this statutory requirement.  Consequently, the magistrate does not have to add anything to this statement.

The statute further requires that the search warrant command the appropriate officer to search the place described in the warrant, either in day or night, and to seize the objects or persons described in the warrant.  The search warrant also must command the officer to produce the seized items before the court having jurisdiction of the offense in relation to which the warrant was issued.  The DC-339, SEARCH WARRANT contains both of these commands.  Lastly, Va. Code § 19.2-56 requires the magistrate to insert the date and time of issuance and affix his or her signature and title of "Magistrate" to the form.

Pursuant to Va. Code § 19.2-56, the magistrate must attach a copy of the DC-338, AFFIDAVIT FOR SEARCH WARRANT to the original DC-339, SEARCH WARRANT unless a voice recording or videotape affidavit was presented or unless a court ordered the sealing of the affidavit.  It is also recommended that the magistrate attach a copy of the DC-339, SEARCH WARRANT to the original DC-338, AFFIDAVIT FOR SEARCH WARRANT.

Virginia Code § 19.2-250 extends the jurisdiction of cities one mile beyond the corporate limits of the cities.  The Court of Appeals in the case of Robertson v. Rogers, 2 Va. App. 503 (1986) applied this statute in upholding a search warrant.  In Robertson, a judge in Danville issued a search warrant for a residence in Pittsylvania County located within one mile of the city limits of Danville.  The judge filed the affidavit in the Danville Circuit Court Clerk's office.  Because of Va. Code § 19.2-250, the Court of Appeals held that the filing of the affidavit in the City of Danville was permissible.  (With certain exceptions, Va. Code § 19.2-250 also extends the jurisdiction of towns one mile beyond their corporate limits.  The towns located within Loudon County fall within an exception, and the jurisdiction of the authorities of such towns extends 300 yards beyond their corporate limits.  Virginia Code § 19.2-249 extends jurisdictions of counties only 300 yards into a contiguous county or city.  However, Va. Code § 19.2-250 extends the jurisdiction of Chesterfield County and Henrico County one mile into the City of Richmond.)

As mentioned earlier, it is possible for a law enforcement officer to seek a search warrant in Virginia based on a crime that occurred out-of-state.  If the magistrate finds probable cause and issues the search warrant, he or she must file the affidavit

with the circuit court clerk in the city or county where law enforcement made the search.

B.   **Execution And Return Of The Search Warrant**

Virginia Code §§ 19.2-56 and 19.2-57 require that the policeman or other law enforcement officer or agent into whose hands the search warrant was delivered to execute the warrant by the searching the place described in the warrant and by seizing any of the items listed in the warrant.  The officer seizing any property must prepare an inventory of the seized items under oath.  The magistrate may acknowledge the officer's oath by signing the back of the DC-339, SEARCH WARRANT at data element #5 on the reverse.  Virginia Code § 19.2-57 further requires the officer executing the warrant to endorse the date of execution on the back of the DC-339, SEARCH WARRANT and file the executed warrant with a list of property seized, or a notation that no property was seized, and the accompanying affidavit within three days after the execution with the appropriate circuit court clerk.

The magistrate is not involved in the execution of the search warrant and does not provide legal advice on how law enforcement officers should execute a search warrant. However, Va. Code § 19.2-70.3(C), concerning electronic communication services or remote computing services, requires a search warrant to search a "foreign corporation" to contain certain language.  The search warrant must command the person seeking such warrant to "properly serve" the warrant upon the foreign corporation.  It is recommended that the magistrate include the following language in the body of the search warrant: "This warrant shall be properly served on the entity named in the warrant in accordance with § 19.2-70.3 of the Code of Virginia."

If the officer does not execute the search warrant within fifteen days after issuance, he or she must return the search warrant to the magistrate or other judicial officer who issued the search warrant pursuant to the last paragraph of Va. Code § 19.2-56.  The magistrate then marks on the face of the search warrant "Void For Lack Of Timely Service," signs and dates the warrant, and files it with the clerk of circuit court who possesses the original affidavit.

C.   **The Offense In Relation To Such Search**

Virginia Code § 19.2-54 requires the affidavit to substantially allege "the offense in relation to which such search is to be made".  An item is seizable only when it is contraband, or a tool, weapon, fruit, instrumentality, or evidence, including a person, of a crime or stolen property.  In other words, the affidavit must set forth facts showing that the items or person to be seized relate in one of these ways to a specific offense.  Failure to allege a specific offense in the affidavit may result in a finding that the search warrant is invalid.  Thomas v. United States, 376 F.2d 564 (5th Cir. 1967).  While arrest warrants are specifically directed against persons, search warrants may be directed against property or the person.  It is not necessary that the

person whose property is searched or seized be the one who committed the offense. Zurcher v. Stanford Daily, 436 U.S. 547 (1978).

**D.    The Object, Thing Or Person Searched For Constitutes Evidence Of The Commission Of Such Offense**

The affidavit must contain a statement that "the object, thing, or person searched for constitutes evidence of the commission of such offense". The DC-338, AFFIDAVIT FOR SEARCH WARRANT contains preprinted language that satisfies this statutory requirement. Consequently, the affiant does not have to add anything to this statement.

**E.    Distribution Of The Affidavit And Copies**

The affiant should provide an original and three copies of the DC-338, AFFIDAVIT FOR SEARCH WARRANT to the magistrate. If the magistrate finds that probable cause exists from the facts contained in the affidavit the magistrate must issue the search warrant and file the original in the circuit court clerk's office wherein the search was made within seven days after issuance of the warrant pursuant to Va. Code § 19.2-54. If the magistrate somehow forgets to file the affidavit within seven days, the magistrate must file it as soon as possible. Filing the affidavit thirty days or more after issuance of the search warrant jeopardizes the search.

Virginia Code § 19.2-54 provides only four methods of filing the search warrant affidavit: (1) in person, (2) certified mail, return receipt requested, (3) delivered by electronically transmitted facsimile process, or (4) by use of filing and security procedures as defined in the Uniform Electronic Transactions Act (§ 59.1-479 et seq.) for transmitting signed documents. At this time, however, there is no process accepted by all circuit court clerks for the transmission of affidavits pursuant to the Uniform Electronic Transactions Act. The magistrate who delivers the search warrant to the circuit court clerk's office by the above methods does not have to be the magistrate who issued the search warrant. A designee or agent of the magistrate may file the search warrant affidavit. For example, Magistrate Lamb issues a search warrant during her midnight shift. Magistrate Fisher follows her on the day shift. Magistrate Fisher may file the affidavit for Magistrate Lamb. In such a situation, since Magistrate Lamb issued the search warrant, she would complete the "Certified to …" section on the front of the affidavit. Since Magistrate Fisher made delivery of the affidavit to the circuit court clerk's office, he would complete the "Delivered to …" portion of the front of the affidavit. Virginia Code § 19.2-54 does not explicitly allow a magistrate to entrust the search warrant affidavit to a law enforcement officer to file. While Va. Code § 19.2-54 does not state who may act as the magistrate's agent for delivery, the Department of Magistrate Services suggests that only other magistrates act as agents for delivery.

Virginia Code § 19.2-54 states, in part, "Such affidavit shall be ... delivered in person, mailed by certified mail, return receipt requested, [or] delivered by electronically

transmitted facsimile process … by such officer or his designee or agent to the clerk of the circuit court of the county or city wherein the search is made ...."   When a magistrate delivers an affidavit for search warrant to the clerk's office in person or by certified mail, return receipt requested, the magistrate can be assured that delivery was successful.  When utilizing a facsimile process, however, it may not be immediately clear whether delivery was successful.  Although the magistrate might receive immediate feedback that "transmission" appears successful, the statute requires the magistrate to "deliver" the affidavit or copy thereof.  A magistrate has a duty not only to transmit the affidavit but to determine whether the affidavit was received by the clerk's office thereby completing delivery.

It is recommended that magistrates electronically transmit by facsimile process only when the recipient clerk's office is open.  The transmitting magistrate should verify with clerk's office staff that delivery was successful.  Only if the magistrate cannot determine whether delivery by facsimile process was successful should the magistrate retain a copy of the affidavit for search warrant.  In such a case, the magistrate should continue attempting to verify whether delivery is complete.  The magistrate should destroy the copy of the affidavit once the magistrate determines that delivery by facsimile process was successful.

Upon motion of the Commonwealth's attorney, the court may order the affidavit sealed.  Virginia Code § 19.2-56 requires the magistrate to attach the first copy of the affidavit to the original of the search warrant.  If the court sealed the affidavit, or the affidavit is in the form of a voice or videotape recording, the magistrate does not attach the affidavit to the search warrant.  To give proper notice to the custodian of the place to be searched, the magistrate needs to attach the second copy of the affidavit to the copy of the search warrant which law enforcement will leave with the custodian.  If the court seals the affidavit the magistrate would not attach anything to this copy of the search warrant.

## V.   THE AFFIDAVIT FOR SEARCH WARRANT FOR TRACKING DEVICE FORM (DC-340)

### A.   Introduction

On January 23, 2012, the Supreme Court of the United States held that the government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a "search" under the Fourth Amendment.   United States v. Jones, 565 U.S. ___ 101259 (2012).  Although the Court did not reach the issue whether a search warrant is required for the government to attach a tracking device to an object, the Virginia General Assembly passed emergency legislation, which is now in effect, authorizing Virginia judicial officers, including magistrates, to issue a specialized "search warrant" to authorize certain government activities relating to the installation, maintenance, and monitoring of a tracking device.  See Va. Code § 19.2-56.2.

**B.    Proper Form**

The DC-340, AFFIDAVIT FOR SEARCH WARRANT FOR TRACKING DEVICE is the proper form to use.  The traditional search warrant affidavit, the DC-338, AFFIDAVIT FOR SEARCH WARRANT does not include all of the information necessary for a magistrate to make the required findings to issue a DC-341, SEARCH WARRANT FOR TRACKING DEVICE.

**C.    Magistrate's Geographic Authority**

The 2014 amendment to Va. Code § 19.2-44, which generally provides magistrates with statewide authority to issue search warrants, does not apply to search warrants for tracking devices issued pursuant to Va. Code § 19.2-56.2.  Rather, geographic authority is derived in one of two ways.  A magistrate serving the magisterial region (1) in which the tracking device is to be installed, or (2) where there is probable cause to believe the offense for which the tracking device is sought has been committed, is being committed, or will be committed has authority to issue the process.  It is recommended that probable cause be interpreted to mean "a fair probability."

There might be a situation where the magistrate has geographic authority to issue a DC-341, SEARCH WARRANT FOR TRACKING DEVICE because law enforcement officers intend to install the tracking device in the magistrate's region but the facts indicate that the crime has been, is being committed, or will be committed in a locality outside of the magistrate's region.  In such a situation, the magistrate has authority to issue the DC-341, SEARCH WARRANT FOR TRACKING DEVICE despite the fact that the magistrate would file the affidavit in the circuit court located in a locality outside of the magistrate's region.  (See the section below on filing the affidavit.)
It might be the case that a law enforcement officer obtains a DC-341, SEARCH WARRANT FOR TRACKING DEVICE intending to attach the device in one locality, but the object to which the device is authorized to be attached is later located in a different locality.  Whether authority exists for the officer to attach the device under such circumstances is not an issue for the magistrate to address.  However, if a law enforcement officer requests a new probable cause hearing before a magistrate where the object is eventually located, the magistrate should hold a new hearing and issue process if the magistrate makes all of the necessary findings.

**D.    Authority To Act As Affiant**

A law enforcement officer, as defined in Va. Code § 9.1-101, may apply to use a tracking device.  For purposes of issuing a DC-341, SEARCH WARRANT FOR TRACKING DEVICE, it is recommended that magistrates consider the officials listed in Va. Code § 9.1-101 as "law enforcement officers" even if the official appears before a magistrate outside of the locality served by the official.  The affiant will have to determine whether he desires to proceed in such circumstances.

E.    **Required Findings**

There are two probable cause determinations that a magistrate must make:

1.   The first finding is that a crime has been, is being, or will be committed.

2.   The second finding is that the information likely to be obtained from the use of the tracking device will be evidence of the commission of the offense contemplated in the first finding.

A magistrate may not issue a DC-341, SEARCH WARRANT FOR TRACKING DEVICE merely because there is probable cause that a crime has been committed.  The facts presented in the affidavit must establish probable cause that information likely to be obtained from use of the tracking device will be evidence of the commission of the offense.

a.   For example, if a shoplifting suspect has been arrested during the commission of the offense and the fruits of the crime were recovered at that time, in most circumstances it would be unlikely that use of a tracking device would lead to evidence of the commission of that shoplifting offense.

b.   However, if a robbery involving three suspects has occurred and the police locate the suspects' vehicle unattended shortly after the commission of the crime, police might seek to track the vehicle to locate evidence of the commission of the offense.  The magistrate would need to examine the affidavit to determine whether the particular facts involved establish probable cause (a fair probability) that the information likely to be obtained from the use of the tracking device will be evidence of the commission of the offense. Such a finding is more likely in this scenario than the completed shoplifting scenario above.

F.    **Filing The DC-340, AFFIDAVIT FOR SEARCH WARRANT FOR TRACKING DEVICE**

Virginia Code § 19.2-56.2 provides that the affidavit "shall be delivered by the judicial officer in person; mailed by certified mail, return receipt requested; or delivered by electronically transmitted facsimile process or by use of filing and security procedures as defined in the Uniform Electronic Transactions Act (§ 59.1-479 et seq.) for transmitting signed documents."  Although there is no time period specified in the statute, it is recommended that magistrates file the DC-340, AFFIDAVIT FOR SEARCH WARRANT FOR TRACKING DEVICE with the circuit court within seven days after issuance.

Virginia Code § 19.2-56.2 states that these search warrants and affidavits are sealed by operation of law.  That means that they are sealed upon issuance; the attorney for the Commonwealth does not need to file a motion.  Therefore, it is strongly recommended that magistrates not file these affidavits by facsimile process.

However, if a magistrate delivers the affidavit by electronically transmitted facsimile, do so during normal business hours after speaking to the court clerk to verify the telephone number and to alert the clerk to the nature of the incoming facsimile.  Until training is developed involving the procedures defined in the Uniform Electronic Transactions Act, it is strongly recommended that delivery of the affidavit be made in person or by certified mail, return receipt requested.

Virginia Code § 19.2-56.2 further states that the affidavit "shall be delivered to and preserved as a record by the clerk of the circuit court of the county or city where there is probable cause to believe the offense for which the tracking device has been sought has been committed, is being committed, or will be committed."  The affidavit contains a section for the affiant to provide relevant information concerning this information.  In the rare situation where the affiant provides more than one locality in that section of the affidavit, the magistrate would determine the most appropriate locality.  The most appropriate locality appears to be the one in which a prosecution likely will be commenced.   As such, it would not be inappropriate to ask the affiant if he has a preference among several involved localities.

It is recommended that the magistrate attach a photocopy of the DC-341, SEARCH WARRANT FOR TRACKING DEVICE prior to filing the affidavit with the circuit court. No other record of the warrant's existence would exist if the affiant misplaces the form, as no copy is left at the place of execution.

## VI.  THE SEARCH WARRANT FOR TRACKING DEVICE FORM (DC-341)

### A.  Description Of Object

The magistrate must provide a description of the vehicle, container, item, or object to which the law enforcement officer will attach, place or otherwise install a tracking device.  It should be described with reasonable particularity.

### B.  Designation Of The Circuit Court For Return Of The Executed Warrant

The DC-341, SEARCH WARRANT FOR TRACKING DEVICE contains the following language: "This executed **Search Warrant** shall be returned to the _____ Circuit Court within 10 days after the use of the tracking device has ended."

In the blank space, the magistrate would insert the name of the circuit court of the county or city in which the magistrate is filing the DC-340, AFFIDAVIT FOR SEARCH WARRANT FOR TRACKING DEVICE .  Because all documents related to the process are sealed, it is important that only one circuit court receives all of the documents.

C. **Period Of Authorization**

Virginia Code § 19.2-56.2 states that the search warrant "shall authorize the use of the tracking device ... for a reasonable period of time, not to exceed 30 days from the issuance of the search warrant." The statutory language is somewhat ambiguous whether the magistrate must designate a specific time period or whether all search warrants are automatically valid for 30 days. The DC-341, SEARCH WARRANT FOR TRACKING DEVICE requires the magistrate to designate a specific period of time.

It is recommended that magistrates authorize use of a tracking device for 30 days unless the affidavit contains specific, relevant facts demonstrating that a 30 day period is unreasonable or the affiant requests a shorter period of authorization. Absent such facts, limiting the time period of authorization to less than 30 days would appear arbitrary. An example of facts likely sufficient to limit the time period would be where there is probable cause that a respondent intends to violate a family abuse emergency protective order that is valid for only three days.

1. For example: A DC-340, AFFIDAVIT FOR SEARCH WARRANT FOR TRACKING DEVICE states, in part, "The respondent of an active family abuse EPO, John Smith, told me that he intends to contact the protected party during the period that the order is in effect. The order expires this Wednesday at 11:59 p.m." In such a situation, arguably relevant facts exist to demonstrate that the full 30 day period might be unreasonable.

2. However, in the example above, the magistrate might reach a different conclusion if the respondent told the officer that he intended to batter the protected party rather than just contact her. While the respondent would only be able to violate the order while it is in effect, the crime of assault and battery on a family or household member does not depend on the existence of a family abuse EPO.

D. **Magistrate May Not Grant Extension**

A magistrate may only authorize use of a tracking device for a period not to exceed 30 days. However, an affiant may apply to a court, which, for good cause shown, may grant one or more extensions not to exceed 30 days each.

E. **Description Of The Offense**

The magistrate must also substantially describe the offense to which the DC-341, SEARCH WARRANT FOR TRACKING DEVICE relates.

VII.   **THE AFFIDAVIT FOR SEARCH WARRANT FOR REAL-TIME LOCATION DATA FORM (DC-308).**

   A.   **Introduction**

   The 2015 amendment to Va. Code § 19.2-70.3 authorizing search warrants for real-time location data prompted the need for a new form whenever the information sought is real-time location data.  Virginia Code § 19.2-70.3 defines real-time location data as "any data or information concerning the current location of an electronic device that, in whole or in part, is generated, derived from, or obtained by the operation of the device."

   B.   **Proper Form**

   The DC-308, AFFIDAVIT FOR SEARCH WARRANT FOR REAL-TIME LOCATION DATA, is the proper form to use.  The DC-308, AFFIDAVIT FOR SEARCH WARRANT FOR REAL-TIME LOCATION DATA, must contain different findings than the traditional search warrant affidavit.

   C.   **Required Findings**

   Probable cause for a search warrant for real-time location data may be found in one of two ways:

   1.  The first way is that the real-time location data is relevant to a crime that has been or is being committed.

   2.  The second way is that an arrest warrant exists for the person whose real-time location data is sought.

   D.   **Filing the DC-308, AFFIDAVIT FOR SEARCH WARRANT FOR REAL-TIME LOCATION DATA**

   The requirements for search warrants for real-time location data are governed by Va. Code § 19.2-70.3 and therefore governed by the statutes on criminal search warrants.  The filing requirements are the same for the affidavit for real-time location data as they are for the affidavit for criminal search warrants.

VIII.  **THE SEARCH WARRANT FOR REAL-TIME LOCATION DATA FORM (DC-309).**

   A.   **Identity of the Provider of Electronic Communication Service or Remote Computing Service**

   The magistrate must name the provider whose records will be searched.

**B.    Designation of the Circuit Court for Return of the Executed Warrant.**

The DC-309, SEARCH WARRANT FOR REAL-TIME LOCATION DATA, contains the following language: "This executed Search Warrant shall be returned to the _____Circuit Court after the search warrant is executed."  In the blank space, the magistrate would insert the name of the circuit court of the county or city in which the magistrate is filing the DC-308, AFFIDAVIT FOR SEARCH WARRANT FOR REAL-TIME LOCATION DATA.

**C.    Identity of the Records Sought**

The magistrate must identify what real-time location data records possessed by the provider are to be searched.  This may include the name of the person whose device's real-time location data is being sought or other relevant identifying information.

**D.    Period of Authorization**

Virginia Code § 19.2-70.3 authorizes ongoing disclosure of these records for 30 days from the issuance of the search warrant.  The statutory language is somewhat ambiguous as to whether the magistrate must designate a specific time period or whether all search warrants are automatically valid for 30 days.  The DC-309, SEARCH WARRANT FOR REAL-TIME LOCATION DATA, requires the magistrate to designate a specific period of time.  It is recommended that magistrates authorize the disclosure of data for 30 days unless the affidavit contains specific, relevant facts demonstrating that a 30 day period is unreasonable or the affiant requests a shorter period of authorization.  Absent such facts, limiting the time period of authorization to less than 30 days would appear arbitrary.

**E.    No Magisterial Authority to Grant Extension**

A magistrate may only authorize disclosure of real-time location data for a period not to exceed 30 days.  However, an affiant may apply to the circuit court which, for good cause shown, may grant one or more extensions not to exceed 30 days each.

**F.    Offense in Relation to Search**

The magistrate must also substantially describe the offense to which the DC-309, SEARCH WARRANT FOR REAL-TIME LOCATION DATA, relates.

**G.    Foreign Corporation**

You must check this box if the remote computing service or provider of electronic communication services is a foreign corporation.

## IX.   ADMINISTRATIVE SEARCHES

### A.   Introduction

An administrative search, as defined by <u>Katz v. United States</u>, 389 U.S. 347 (1967), and <u>Camara v.  Municipal Court</u>, 387 U.S. 523 (1967), is any government action which intrudes upon a legitimate expectation of privacy.  Prior to <u>Katz v. United States</u>, the Supreme Court had characterized the Fourth Amendment as primarily concerned with searches for evidence of criminal activity and only peripherally concerned with the right of privacy.  In <u>Frank v. Maryland</u>, 359 U.S. 360 (1959), the Court held that "inspections" by health department officials were not "searches" which triggered Fourth Amendment protections.  <u>Camara v. Municipal Court</u> later overturned <u>Frank</u> and placed administrative searches within the scope of the Fourth Amendment.  <u>Camara</u> went on to hold that, absent consent or exigent circumstances, a search warrant is required before the administrative search can take place.  The administrative search warrant, however, does not have to be based on traditional probable cause which requires a reasonable belief that items related to a crime are located in the premises that the government seeks to enter.  <u>Camara</u> held that the reasonableness of the government's request for administrative search warrants is determined by considering such general factors as the passage of time since the last inspection, the condition of the particular building, conditions in the general area, or the need for periodic inspections in an entire area of the community.  It is clear that, unlike a criminal search warrant, an administrative search warrant need not to be based on specific knowledge of a violation in a particular building.

### B.   Probable Cause

<u>Mosher Steel v. Tieg</u>, 229 Va. 95 (1985) recognized that probable cause for administrative search warrants may be of two distinct types.  First, affidavits may establish the likelihood of specific violations.  In such situations, the standards for evaluating probable cause are identical to the standards for criminal search warrants.  Second, in the absence of specific violations, affidavits may establish that the administrative inspection is based on more general but still reasonable legislative or administrative standards.

For general inspection warrants, probable cause requires that reasonable legislative or administrative standards be satisfied with respect to the particular establishment.  <u>Aguilar's</u> requirement of factual allegations, not bare conclusions, applies to such affidavits.  The affidavit must provide the specific facts underlying each step of the procedure by which a particular employer is selected for an administrative inspection.  For example, if a selection is based on an industry's high hazard ranking, the application must reveal specific empirical data resulting in that ranking.  If a particular employer is selected because of a high injury rate, the affiant must substantiate the alleged injury rate with statistics.   To ensure against arbitrary inspections of a particular employer, the application should recite the employer's own

inspection history and the status of general schedule inspections of all employers subject to inspection by the regional division of the inspecting agency.

Camara v. Municipal Court recognized two exceptions:  (1) consent, and (2) emergency situations.  As to the consent searches, the Court recognized that "most citizens allow inspection of their property without a warrant" and consequently "warrants should normally be sought only after entry is refused."  As to the emergency exception to the administrative warrant requirement, such emergencies rarely occur in the housing inspection or business inspection context.  The following are specific types of administrative searches authorized under Virginia law.

## C.    Fire Inspection Warrants (Local Fire Official)

Virginia Code §§ 27-98.1, 27-98.2, 27-98.3, 27-98.4, and 27-98.5 authorize a judge or magistrate to issue an "inspection warrant."  An inspection warrant means "an order in writing, made in the name of the Commonwealth, signed by any judge or magistrate whose territorial jurisdiction encompasses the building, structure or premises to be inspected or entered, and directed to a state or local official, commanding him to enter and to conduct any inspection, examination, testing or collection of samples for testing required or authorized by the Virginia Statewide Fire Prevention Code."

While the probable cause standard and credibility factors of informants may be the same as with any other search warrant, there are some differences in the procedure for fire inspection warrants.  The magistrate will find these differences explained in this section.  If there is no difference in procedures between a fire inspection warrant and a criminal search warrant, the chapter will point this out.

The magistrate must find probable cause from the facts supplied in the affidavit before issuing a fire inspection warrant.  The affidavit must:

1.  particularly describe the place, thing or property to be inspected, examined or tested.  (Refer to the general search warrant section in this chapter concerning the requirements of the description of the place to be searched.)

2.  state the purpose for which the inspection, examination, testing or collection of samples for testing is to be made.  (*See* sections 2a and 2b of the DC-380, AFFIDAVIT FOR FIRE INSPECTION WARRANT)

3.  contain either a statement that consent to inspect, examine, test or collect samples for testing has been sought and refused or facts or circumstances reasonably justifying the failure to seek such consent in order to enforce effectively the fire safety laws, regulations or standards.  In the case of an inspection warrant based upon legislative or administrative standards for selecting buildings, structures, property or premises for inspections, the affidavit must contain factual allegations sufficient to justify an independent determination by the magistrate that the

inspection program is based on reasonable standards and that the standards are being applied to a particular place in a neutral and fair manner.  (*See* section 4, of the DC-380, AFFIDAVIT FOR FIRE INSPECTION WARRANT on the reverse of the form)  Virginia Code § 27-98.2 allows the magistrate to examine the affiant under oath or affirmation to verify the accuracy of any matter in the affidavit.

4.  establish probable cause.  Probable cause exists if such inspection, examination, testing or collection of samples for testing is necessary to ensure compliance with the Fire Prevention Code for the protection of life and property from the hazards of fire or explosion.  (*See* 3a and 3b, of the DC-380, AFFIDAVIT FOR FIRE INSPECTION WARRANT)

5.  contain information for the magistrate to determine the duration of the warrant. *See* section 7, of the DC-380, AFFIDAVIT FOR FIRE INSPECTION WARRANT . Inspection warrants are effective for the time specified in the warrant.  The time period, however, cannot exceed seven days.  The judicial officer may extend or renew the inspection warrant upon application for extension or renewal setting forth the results that have been obtained or a reasonable explanation of the failure to obtain such results.  The extension or renewal period of the warrant also cannot exceed seven days.

6.  request authority to execute the warrant in the absence of the owner, operator or agent in charge or to use forcible entry.  (*See* section 6, of the DC-380, AFFIDAVIT FOR FIRE INSPECTION WARRANT)  The officer may not execute the fire inspection warrant in the absence of the owner, operator or agent in charge of the building, structure, property or premises unless the magistrate specifically authorizes such method of execution in the DC-381, FIRE INSPECTION WARRANT upon showing that such authority is reasonably necessary to effect the purposes of a statute or regulation being enforced.  The officer may not make a forcible entry pursuant to an inspection warrant unless the magistrate expressly authorizes a forcible entry in the warrant.  The magistrate may not authorize forcible entry unless the affiant provides facts to establish:

     a.  a reasonable suspicion of an immediate threat to an occupant of the particular building, structure, property, or premises or, to the general safety and welfare of the public, or to adjacent buildings, structures, properties or premises, or

     b.  that reasonable attempts to serve a previous warrant have been unsuccessful.

The local official seeking the inspection warrant must complete the DC-380, AFFIDAVIT FOR FIRE INSPECTION WARRANT.  The magistrate should not complete or assist the official seeking an inspection warrant in the completion of the affidavit since the magistrate must later adjudge the facts to determine probable cause.  The magistrate needs to file the affidavit in the manner prescribed by Va. Code § 19.2-54.

A magistrate is authorized to issue a fire inspection warrant only if the building, structure, property, or premises is located within the judicial districts in the magistrate's magisterial region.  Authority to issue search warrants to be executed anywhere within Virginia is limited to search warrants issued in accordance with the provisions of Title 19.2, Chapter 5 (§ 19.2-52 et seq.).  If the magistrate finds that the affidavit contains all of the necessary information, the magistrate then must complete the DC-381, FIRE INSPECTION WARRANT.  The magistrate prepares the fire inspection warrant based on the information provided in the affidavit.  If the magistrate authorizes forced entry, the magistrate must issue the warrant jointly to the fire official and to a law enforcement officer who must accompany the fire official during the execution.  The standards for determining credibility and reliability of informants are the same as discussed earlier in the chapter.

The warrant is effective for the time specified in the document.  The time period, however, may not exceed seven days, unless extended or renewed by the judicial officer who signed and issued the original warrant.  The executing official must return the fire inspection warrant to the magistrate who issued it within the time specified in the warrant or within the extended or renewed time.  If the official does not execute the warrant within the specified time, the warrant is void.  The official must list any samples taken pursuant to the warrant in the inventory section of warrant on the reverse of the form.  Once the local official has executed the DC-381, FIRE INSPECTION WARRANT, he or she will return the executed copy to the clerk of the circuit court of the city or county wherein the inspection was made.

A court lacks jurisdiction to hear a challenge to the warrant prior to its return to the circuit court, except as a defense in a contempt proceeding, unless the owner or custodian of the place to be inspected makes, by affidavit, a substantial preliminary showing accompanied by an offer of proof that: (1) a false statement, knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in his affidavit for the inspection warrant, and (2) the false statement was necessary to the finding of probable cause.

7.  After the warrant has been executed and returned to the circuit court, a court may review the validity of the warrant as a defense to a citation issued.  A circuit court also may review the validity of the warrant in a declaratory judgment action.  The review is confined to the face of the warrant, affidavits, and supporting materials presented unless the owner, operator, or agent in charge of the building or premises inspected makes a substantial showing by affidavit accompanied by an offer of proof that: (1) a false statement, knowingly and intentionally, or with reckless disregard for the truth, was made in support of the warrant; and (2) a false statement was necessary to the finding of probable cause.  The review is limited whether there is substantial evidence in the record supporting the decision to issue the warrant.

D.    **Fire Investigation Warrants (Fire Marshal And State Police Arson Investigators)**

Virginia Code § 27-31 requires the fire marshal for each locality to investigate the origin and cause of all fires and explosions that occur within the marshal's jurisdiction.  Pursuant to Va. Code § 27-56, State Police arson investigators also have the responsibility to investigate fires.  Virginia Code § 27-32.2 describes the procedures the fire marshal or State Police arson investigator must follow in requesting a magistrate's issuance of a fire investigation warrant.  In some cases, the investigation requires only the magistrate's issuance of a fire investigation warrant. In other cases, the magistrate must first issue a fire investigation warrant, and then a subsequent criminal search warrant.  To begin the process, the affiant must prepare a DC-376, AFFIDAVIT FOR FIRE INVESTIGATION WARRANT that is sworn to before the magistrate.  The fire marshal or State Police arson investigator must provide facts to support the following findings:

- The cause of the fire or explosion is undetermined.

- The owner of the land, building, or vessel where the fire or explosion occurred, or the owner of the object that exploded or caught fire has refused to allow the marshal to enter the property to investigate the cause of the fire or explosion;

    o  or the marshal was unable to gain permission to enter the property for purposes of the investigation.

- Not more than 15 days have passed since the date the fire was <u>extinguished</u>.

If the magistrate finds probable cause that all three factors are present, the magistrate is required to issue a DC-377, FIRE INVESTIGATION WARRANT that authorizes the fire marshal or State Police arson investigator to enter the land, building, or vessel where the fire occurred, or enter the premises where the object that exploded or caught fire is located for the purposes of determining the origin and source of the fire or explosion.  Any magistrate serving the locality where the land, building, vessel, or object is located may issue the fire investigation warrant.  Authority to issue search warrants to be executed anywhere within Virginia is limited to search warrants issued in accordance with the provisions of Title 19.2, Chapter 5 (§ 19.2-52 et seq.).

The magistrate needs to attach a copy of the DC-376, AFFIDAVIT FOR FIRE INVESTIGATION WARRANT to the copy of the DC-377, FIRE INVESTIGATION WARRANT that is left with the owner of the property.  The magistrate must file the affidavit in the manner prescribed by Va. Code § 19.2-54.  If the fire marshal or State Police arson investigator does not execute the warrant, she must return the warrant to the magistrate who marks it void for lack of execution.  The magistrate would then file it with the clerk's office in which he filed the affidavit.

If after gaining access and during the fire investigation, the fire marshal or State Police arson investigator has probable cause to believe that the fire or explosion resulted in a criminal act, the search must be discontinued until a magistrate issues a

criminal search warrant as provided in Va. Code § 27-32.1, or until consent to search for evidence is obtained.

Under Va. Code § 27-32.1, a search warrant affidavit must be submitted to a magistrate serving the locality where the land, building, vessel, or object is located. To make such application, the affiant must provide facts that support a probable cause determination that the fire or explosion was caused by a criminal act.  The correct form is the criminal DC-338, AFFIDAVIT FOR SEARCH WARRANT. In reviewing the affidavit, the magistrate must make all the necessary probable cause findings associated with a criminal search warrant.  In addition, the affidavit must contain facts to support that the affiant was refused admittance to the land, building, or vessel where the fire or explosion occurred, or was refused admittance to property where the object that exploded or caught fire is located within 15 days from the date that the fire was extinguished.

If the magistrate finds probable cause for issuance of the search warrant, the magistrate must direct the search warrant to the sheriff of the locality where the search is to be made.  The DC-339, SEARCH WARRANT uses the general language, "TO ANY AUTHORIZED OFFICER".  Therefore, the magistrate does not "direct" the search warrant to any particular agency on the face of the warrant.  Although the General Assembly amended Va. Code §  27-32.2 in 2012, it did not amend Va. Code § 27-32.1 correspondingly.  Therefore, it would not be inappropriate for the magistrate to deliver the DC-339, SEARCH WARRANT to the affiant with the admonition to seek legal advice prior to execution.

E.    **Release Of Hazardous Material Or Waste Or Regulated Substance Investigation Warrants (Fire Marshal)**

Virginia Code § 27-37.1 authorizes a magistrate to issue an investigation warrant to the fire marshal to enter property to determine the origin and source of release of hazardous material, hazardous waste, or regulated substance as defined in Va. Code §§ 10.1-1400 or 62.1-44.34:8.  Virginia Code § 10.1-1400 defines "hazardous material" and "hazardous waste" as follows:

"'Hazardous material' means a substance or material in a form or quantity which may pose an unreasonable risk to health, safety or property when transported, and which the Secretary of Transportation of the United States has so designated by regulation or order."

"'Hazardous waste' means a solid waste or combination of solid waste which, because of its quantity, concentration or physical, chemical or infectious characteristics, may:

▪   Cause or significantly contribute to an increase in mortality or an increase in serious irreversible or incapacitating illness; or

- Pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, disposed of, or otherwise managed."

Virginia Code § 62.1-44.34:8 defines "regulated substance" as follows:

"Regulated substance" means an element, compound, mixture, solution, or substance that, when released into the environment, may present substantial danger to the public health or welfare, or the environment.

The term "regulated substance" includes:

- Any substance defined in § 101(14) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, but not any substance regulated as a hazardous waste under Subtitle C of the Resource Conservation and Recovery Act of 1976; or

- Petroleum, including crude oil or any fraction thereof, which is liquid at standard conditions of temperature and pressure (sixty degrees Fahrenheit and 14.7 pounds per square inch absolute).

When authorized by the governing body of the county, city, or town appointing the fire marshal, the fire marshal has the right to enter upon property from which a release of hazardous material, hazardous waste, or regulated substance has occurred or is reasonably suspected to have occurred and that has entered into the ground water, surface water, or soils of the county, city or town.  The purpose of the fire marshal's entry is to investigate the extent and cause of the release of the hazardous material or waste.

Virginia Code § 27-37.1 requires the fire marshal to submit an affidavit under oath to the magistrate.  The proper form for the affiant to use is the DC-388, AFFIDAVIT FOR RELEASE OF HAZARDOUS MATERIAL OR WASTE OR REGULATED SUBSTANCE INVESTIGATION WARRANT.   From the affidavit, the magistrate must determine that probable cause exists for the following:

- The waste, substance or material in question falls within one of the definitions set forth in Va. Code §§ 10.1-1400 or 62.1-44.34:8 (see above);

- A release of the hazardous material, waste or substance has occurred;

- The cause of the release is undetermined;

- The owner of the property or the person having control over such property refused to allow the marshal to enter the property to investigate the origin and source of the hazardous material; or

   o  the marshal was unable to gain permission to enter the property for purposes of the investigation.

Any magistrate serving the locality where the property is located may issue the hazardous material investigation warrant.  Authority to issue search warrants to be executed anywhere within Virginia is limited to search warrants issued in accordance with the provisions of Title 19.2, Chapter 5 (§ 19.2-52 et seq.).  The magistrate needs to file the affidavit in the manner prescribed by Va. Code § 19.2-54.

If the magistrate finds that the affidavit meets all statutory and probable cause requirements, he or she then prepares the investigation warrant.  The magistrate needs to attach a copy of the affidavit to the copy of the fire investigation warrant that is left with the owner of the property.  The proper form is the DC-389, RELEASE OF HAZARDOUS MATERIAL OR WASTE OR REGULATED SUBSTANCE INVESTIGATION WARRANT.  The magistrate completes the warrant based on the information provided in the affidavit.  Once the fire marshal has executed the DC-389, RELEASE OF HAZARDOUS MATERIAL OR WASTE OR REGULATED SUBSTANCE INVESTIGATION WARRANT, he or she will return the warrant to the clerk of the circuit court of the city or county wherein the investigation was made.  If the fire marshal does not execute the warrant, he or she must return the warrant to the magistrate who marks it void for lack of execution.  The magistrate then files it with the clerk's office in which he filed the affidavit.

If after gaining access pursuant to the investigation, the marshal has probable cause to believe that the release of the materials resulted in a criminal act, the marshal must discontinue the search until a magistrate issues a criminal search warrant or until he has gained consent to search for evidence.  Under this section, the fire marshal must prepare a search warrant affidavit for submission to magistrate serving the locality where the property is located.  To make such application, the marshal must provide facts that support a probable cause determination that the release of the hazardous material, waste, or substance was caused by a criminal act.  The correct form is the criminal DC-338, AFFIDAVIT FOR SEARCH WARRANT.  In reviewing the affidavit, the magistrate must make all the necessary probable cause findings associated with a criminal search warrant.  If the magistrate finds probable cause for issuance of the search warrant, the magistrate must direct the search warrant to the sheriff of the locality where the search is to be made.  The proper form for this search is the criminal DC-339, SEARCH WARRANT.  The sheriff then must make entry upon the property and accompany the fire marshal during a search for evidence.

F.   **Pesticide Control Administrative Search Warrants**

Virginia Code § 3.2-3942 authorizes the Commissioner of Agriculture and Consumer Services or his agent to enter any public or private premises operating as a pesticide business at reasonable times, with the consent of the owner or tenant thereof, and upon presentation of appropriate credentials for carrying out the purposes of Title 3.2, Chapter 39, which include:

- inspecting any equipment subject to the Virginia Pesticide Control Act;

- inspecting storage or disposal areas;

- inspecting or investigating complaints of injury to humans, animals, birds or property;

- sampling any pesticide being applied or to be applied; or enforcing any provision of the Virginia Pesticide Control Act.

Virginia Code § 3.2-3900 defines "pesticide business" as meaning:

> "any person engaged in the business of: distributing, applying or recommending the use of a product; or storing, selling, or offering for sale pesticides directly to the user. The term 'pesticide business' does not include (i) wood treaters not for hire; (ii) seed treaters not for hire; (iii) operations that produce agricultural products, unless the owners or operators of such operations described in clauses (i), (ii), and (iii) are engaged in the business of selling or offering for sale pesticides, or distributing pesticides to persons outside of that agricultural producing operation in connection with commercial transactions; or (iv) businesses exempted by regulations adopted by the Board."

Virginia Code § 3.2-3900 defines "pesticide" as:

> "(i) any substance or mixture of substances intended for preventing, destroying, repelling, or mitigating any insects, rodents, fungi, bacteria, weeds, or other forms of plant or animal life, bacterium, or viruses, except viruses on or in living man or other animals, which the Commissioner shall declare to be a pest, (ii) any substance or mixture of substances intended for use as a plant regulator, defoliant, or desiccant, and (iii) any substance which is intended to become an active ingredient in any substance defined in clause (i) and (ii)."

Pursuant to Va. Code § 3.2-3942, if the Commissioner or his agent is denied access, he or she may apply to a judge or magistrate for an administrative search warrant by completing a DC-386, AFFIDAVIT FOR PESTICIDE CONTROL ADMINISTRATIVE SEARCH WARRANT.  In 2008, the General Assembly created Title 3.2, which recodified former Title 3.1.  Virginia Code § 3.1-188.21, which was repealed effective October 1, 2008, had explicitly authorized the Commissioner to delegate his authority, including the authority to apply for a pesticide control administrative search warrant, to other people.

Virginia Code § 3.2-3942 does not explicitly authorize the Commissioner to delegate his authority to other people as it had previously.  Virginia Code § 3.2-701 currently states, "The Commissioner shall protect the agricultural, horticultural, and other interests of the Commonwealth from plant pests and supervise and direct the execution of this article and regulations adopted hereunder."  However, Va. Code § 2.2-604 states, in relevant part, "The chief executive officer [of an administrative agency] may delegate or assign to any officer or employee of his agency any tasks

required to be performed by him …."  Arguably, this section authorizes the Commissioner of Agricultural and Consumer Services to delegate his authority to apply for a pesticide control administrative search warrant.

The affidavit must describe:

- the place, things or persons to be inspected or tested; and

- the purpose for which the inspection, testing, or collection of samples for testing is to be made.

The affidavit also must contain facts that support a probable cause finding that either:

- reasonable legislative or administrative standards for conducting such inspection, testing or collection of samples for testing are satisfied with respect to the particular place, thing, or person; or

- there is a condition, object, activity, or circumstance, which legally justifies such inspection, testing, or collection of samples for testing.

If the affiant bases the request for the search warrant on legislative or administrative standards for selecting places of business for inspection, the affidavit must contain factual allegations sufficient to justify an independent determination by the magistrate that the inspection program is based on reasonable standards and that the standards are being applied to a particular place of business in a neutral and fair manner.

The affidavit also must contain facts to support a probable cause finding that either:

- the Commissioner or his agent sought consent to inspect, test, or collect samples for testing and that owner, operator, person in charge or tenant refused to grant permission for the inspection, or

- the circumstances reasonably justify the failure to seek such consent in order to enforce effectively the pesticide control laws and regulations of the Commonwealth.

The Commissioner or his agent must execute the warrant in the presence of the owner, tenant, operator or agent in charge of the premises unless the Commissioner petitions for authorization to execute the warrant in the absence of the owner, tenant, operator, or agent.  If the magistrate finds from the facts that such authority is reasonably necessary to affect the purposes of the law or regulation being enforced the magistrate must authorize execution in the absence of the owner.  The Commissioner or his agent also must enter the premises without force unless the magistrate grants authority for a forcible entry.  The magistrate must grant permission for a forcible entry if the facts presented in the affidavit are sufficient to:

- create a reasonable suspicion of an immediate threat to the health and safety of persons or to the environment; or

- establish that reasonable attempts to serve a previous warrant have been unsuccessful.

If the magistrate authorizes a forcible entry, the magistrate must issue the warrant jointly to the Commissioner and to a law enforcement officer who shall accompany the Commissioner or his agent during the execution of the warrant.

In addition to reviewing the affidavit, the magistrate may examine the affiant under oath to verify the accuracy of any matter in the affidavit.  The premises that are the subject of the search must be located in the judicial districts in the magisterial region for which the magistrate is appointed.  Authority to issue search warrants to be executed anywhere within Virginia is limited to search warrants issued in accordance with the provisions of Title 19.2, Chapter 5 (§ 19.2-52 et seq.).  If the magistrate finds that the affidavit meets all statutory and probable cause requirements, he or she then prepares the administrative search warrant.  The form that the magistrate uses in this case is the DC-387, PESTICIDE CONTROL ADMINISTRATIVE SEARCH WARRANT.  The magistrate completes the warrant based on the information provided in the affidavit. The chapter on Search Warrants contains instructions on preparing this form.

The search warrant is valid for the time specified by the magistrate.  This period may not exceed fifteen days from date of issuance.  Virginia Code § 3.2-3942 allows the judge or magistrate who issued the initial warrant to extend or renew the warrant. Although no time period for an extension or renewal is mentioned in the statute, the extension or renewal period should not exceed an additional fifteen days.  If the Commissioner does not execute the warrant within the time frame specified by the magistrate, the warrant is void.  After execution, the Commissioner must return the warrant to the clerk of the circuit court of the city or county wherein the search was made.  The magistrate must file the affidavit in the manner prescribed by Va. Code § 19.2-54.

A person may challenge the validity of the search warrant prior to its return only if:

- he or she is charged with contempt and uses the invalidity of the search warrant as a defense in that action; or

- makes a substantial preliminary showing accompanied by an offer of proof that

  o a false statement, knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in his affidavit for the administrative search warrant, **and**

  o the false statement was necessary to the finding of probable cause.

A person may ask the circuit court to review the validity of the search warrant after its execution and return either as a defense to any notice of violation issued by the Commissioner or by declaratory judgment action.  In this case, the statute does not allow the circuit court to conduct a de novo determination of probable cause.  The statute only allows the court to determine whether there is substantial evidence in the record supporting the decision to issue the warrant.  The circuit court's review is confined to the face of the warrant and affidavits and supporting materials presented to the issuing magistrate unless the owner or person in charge of the premises inspected makes by affidavit a substantial showing accompanied by an offer of proof that:

- a false statement, knowingly and intentionally, or with reckless disregard for the truth, was made in support of the warrant, **and**

- the false statement was necessary to the finding of probable cause.

## G.   Dam Inspections

The agents and employees of the Soil and Water Conservation Board have the right to enter private property at reasonable times and under reasonable circumstances to perform dam inspections and tests or to take other actions necessary under Title 10.1 of the Code of Virginia.  The Board or its agents or employees must make a reasonable effort to obtain consent of the landowner prior to making entry.  If the landowner does not allow the agent or employee to enter the property, Va. Code § 10.1-610 authorizes the agent or employee to seek an inspection warrant from a magistrate in the magisterial region in which the dam lies.  Although the statute says that the agent may "apply" for the warrant, the magistrate needs to require the agent to complete a DC-378, AFFIDAVIT FOR DAM INSPECTION WARRANT.  The magistrate must determine from the facts contained in the affidavit that probable cause exists to believe that:

- the property owner or the owner's agent has denied the Soil and Water Conservation Board permission to enter the property, and

- the dam located on the property is unsafe.

If the magistrate determines from the facts presented in the affidavit that probable cause exists for these two findings, the magistrate prepares a DC-379, DAM INSPECTION WARRANT.

The magistrate needs to attach a copy of the DC-378, AFFIDAVIT FOR DAM INSPECTION WARRANT to the second copy of the DC-379, DAM INSPECTION WARRANT.  The second copy of the warrant is left with the owner of the dam in question.  As in other types of administrative warrants, the magistrate must file the affidavit in the manner prescribed by Va. Code § 19.2-54.  Upon execution of the dam inspection warrant, the Soil and Water Conservation Board needs to return the executed warrant to the clerk of the circuit court of the city or county wherein the

search was made.  If the Board does not execute the warrant, the Board's agent must return the warrant to the magistrate who then marks it void for lack of execution.  The magistrate will then file this with the clerk of the circuit court where he filed the affidavit.

### H.    Building Code Violations (Va. Code § 36-105)

A local building official may request a magistrate to issue a building inspection warrant pursuant to subsection C of Va. Code § 36-105.  This statute requires sworn testimony from the local building official.  The magistrate must require the affiant to complete a DC-390, AFFIDAVIT FOR BUILDING INSPECTION WARRANT.  In reviewing this affidavit, the magistrate must determine that probable cause exists to believe that:

- the official received a complaint of an existing violation of the Building Code;

- such violation would constitute an immediate and imminent threat to the health or safety of the owner, tenant, or occupants of any building or structure, or the owner, occupant, or tenant of any nearby building or structure;

- the official made reasonable efforts to obtain consent from the owner or tenant; **and**

- the owner or tenant refused to allow the local building official or his agent access to the dwelling that was the subject of the complaint.

Because an inspection involves an administrative search, the affidavit needs to include facts to support that the person who made the complaint is reliable, and that the facts support a probable cause determination that the alleged violation constitutes an immediate and imminent threat to health or safety.

If the magistrate determines that probable cause exists for the four findings, the magistrate would issue a DC-391, BUILDING INSPECTION WARRANT that authorizes the building official or his agent to enter the building or structure in question for the purpose of determining whether violations of the Building Code exist.

The magistrate needs to file the affidavit in the manner prescribed by Va. Code § 19.2-54.  The magistrate also needs to attach a copy of the affidavit to the copy of the building inspection warrant that is left with the owner or tenant of the property.  If the local building official does not execute the warrant, he or she must return the warrant to the magistrate who marks it void for lack of execution.  The magistrate will then file the unexecuted warrant with the clerk of the circuit court where he filed the affidavit.

### I.    Animal Cruelty Search Warrant

This type of search warrant has much in common with a general type of search warrant described earlier.  Virginia Code § 3.2-6568 sets forth the requirements for

the animal cruelty search warrant.  One distinction between this type of search
warrant and a general search warrant is that, by statute, the affiant is limited to four
officials:  animal control officers, humane investigators, law-enforcement officers or
State Veterinarian's representatives.  There is no specific affidavit for animal cruelty
search warrant form currently approved by the Committee on District Courts.  The
official acting as the affiant needs to draft his own affidavit.  (The use of a DC-338,
AFFIDAVIT FOR SEARCH WARRANT is NOT the appropriate form to use for this type of
search warrant.)

In the affidavit, the official must state facts to support a reasonable cause belief that
the laws in relation to cruelty to animals have been, are being, or are about to be
violated in a particular building or place.  The magistrate's role in reviewing the
affidavit is identical to that for a general search warrant.  However, the focus is on
whether reasonable cause exists that animal cruelty laws are being violated, have
been violated, or about to be violated.  This type of search warrant involves
investigation of offenses and not the seizure of evidence.  (In a general search
warrant, the magistrate determines whether reasonable cause exists that seizable items
are located in the place to be searched.)  If the magistrate finds reasonable cause to
believe that the laws in relation to cruelty to animals have been, are being, or are
about to be violated, the magistrate is required to issue a DC-399, SEARCH WARRANT
– CRUELTY TO ANIMALS.  After issuing a warrant under this section, the magistrate
shall file the affidavit in the manner prescribed by Va. Code § 19.2-54.  After
executing the warrant, the animal control officer, humane investigator, law-
enforcement officer, or State Veterinarian's representative shall return the warrant to
the clerk of the circuit court of the city or county wherein the search was made.

Virginia Code § 3.2-6564 allows the four types of officials noted above to enter the
business establishment of an animal dealer, or a pet shop, groomer, or boarding
establishment if a complaint against the business is made.  Such entry is limited to the
business hours of the establishment.  If the business refuses entry, or if the official
needs to perform an investigative search after business hours, the official must obtain
a search warrant for animal cruelty from a judicial officer.  There is not requirement,
however, that the official first seek entry through permission.  Virginia Code § 3.2-
6568 does not limit the investigative search to businesses.

The 2008 amendment to Va. Code § 3.2-6568 removed a prior requirement that the
warrant specify authorization to conduct the search after sunset.

In summary, there are three distinct differences between an animal cruelty search
warrant and a general search warrant.  First, the affiant in a case involving a search
warrant for cruelty to animals must be one of the four listed officials.  Secondly, the
DC-399, SEARCH WARRANT – CRUELTY TO ANIMALS authorizes one of the officials to
enter a building or land for the purposes of determining whether animal cruelty laws
are being violated, have been violated or about to be violated.  This affiant is not
seeking seizure of physical evidence, as is the case of general search warrants.
Thirdly, any of the four officials noted above may execute the DC-399, SEARCH

WARRANT – CRUELTY TO ANIMALS. (Execution of general search warrants is limited to law enforcement officers.)

On January 1, 2009, Title 3.2, Article 2.1 became effective.  These new statutes relate to commercial dog breeding operations.  Virginia Code § 3.2-6507.3 (Right of entry) authorizes the Commissioner of Agriculture and Consumer Services, the State Veterinarian or his assistant, any animal control officer, and any public health or safety official employed by the locality where a commercial dog breeder resides or maintains breeding operations to investigate violations of Title 3.2, Chapter 65, the comprehensive animal care laws.  Among other things, Va. Code § 3.2-6507.3 authorizes the Commissioner or an animal control officer to enter any premises where animals may be bred or maintained during daytime hours.

**J.   Administrative Search or Inspection Warrants Issued Only By Courts**

1.   TOXIC SUBSTANCES

Pursuant to Va. Code §§ 19.2-393 and 19.2-394, only a circuit court judge has the authority to issue an inspection warrant for the inspection, testing, or collection of samples for testing in connection with the presence, manufacturing, or emitting of toxic substances.  Virginia Code § 19.2-393 defines "toxic substances" as "any substance, including (i) any raw material, intermediate product, catalyst, final product and by-product of any operation conducted in a commercial establishment and (ii) any biological organism, that has the capacity, through its physical, chemical, or biological properties, to pose a substantial risk to humans, aquatic organisms or any other animal of illness, death or impairment of normal functions, either immediately or over a period of time."

2.   COMPLIANCE WITH LAW, REGULATION, ORDER OF THE STATE BOARD OF HEALTH, STATE HEALTH COMMISSIONER, OR STATE DEPARTMENT OF HEALTH

Pursuant to Va. Code § 32.1-25, only a judge of the circuit court has the authority to issue an inspection warrant after the owner or custodian of property has denied the State Health Commissioner or the Commissioner's designee entry on the property "to inspect, investigate, evaluate, conduct tests or take samples for testing as he reasonably deems necessary in order to determine compliance with the provisions of any law administered by the Board, Commissioner or Department, any regulations of the Board, any order of the Board or Commissioner or any conditions in a permit, license or certificate issued by the Board or Commissioner."

3.   COMPLIANCE WITH LAW, REGULATION, ORDER OF THE VIRGINIA
     WASTE MANAGEMENT BOARD, DIRECTOR OF THE DEPARTMENT OF
     WASTE MANAGEMENT OR THE DEPARTMENT OF WASTE
     MANAGEMENT

     Pursuant to Va. Code § 10.1-1456 only a judge of the circuit court has the
     authority to issue an inspection warrant after the owner or custodian of property
     has denied the Director of the Department of Waste Management or the Director's
     designee entry on the property "to inspect, investigate, evaluate, conduct tests or
     take samples for testing as he reasonably deems necessary in order to determine
     whether the provisions of any law administered by the Board, Director or
     Department, any regulations of the Board, any order of the Board or Director or
     any conditions in a permit, license or certificate issued by the Board or Director
     are being complied with."

4.   WORKPLACES

     Pursuant to Va. Code § 40.1-49.9, any judge having the authority to issue criminal
     warrants has the authority to issue an administrative search warrant for the
     inspection of workplaces.

5.   ENDANGERED OR THREATENED SPECIES OR PARTS THEREOF

     The Virginia Endangered Plant and Insect Species Act authorizes the possession
     of endangered or threatened plant or insect species or parts thereof only under
     very limited circumstances.  The Commissioner of the Department of Agriculture
     and Consumer Services or the Commissioner's designee may enter on property to
     "make inspections or develop other biological data for the proper management of
     any endangered or threatened species."  If an owner or custodian denies entry, Va.
     Code § 3.2-1001 authorizes only a circuit court judge to issue an administrative
     inspection warrant to allow the Commissioner to enter and inspect.  The
     magistrate should note that Va. Code § 3.2-1011 makes any violation of the
     provisions of the Act a Class 1 misdemeanor.  The question then becomes
     whether a magistrate is able to issue a criminal search warrant when the
     underlying crime is a violation of the provisions of the Act.  Arguably, the
     magistrate does have the authority to issue the criminal search warrant for
     criminal violations of the Act.

     Subsection B of Va. Code § 29.1-567 specifically authorizes any judicial officer,
     including a magistrate, to issue a search warrant for goods, business records,
     merchandise, fish, or wildlife in connection with a violation of Article 6 of
     Chapter 5 of Title 29.1 (beginning at Va. Code § 29.1-563).  This Article concerns
     endangered or threatened fish or wildlife.  On the other hand, Chapter 10 of Title
     3.2 (beginning at Va. Code § 3.2-1000) deals only with endangered or threatened
     plants or insects.

Virginia Code § 29.1-576 states,  "To carry out the purposes of this article [Nonindigenous Aquatic Nuisance Species Act, §§ 29.1-571 — 29.1-577], the Director [of the Department of Game and Inland Fisheries] may obtain a warrant pursuant to § 19.2-52, or with the consent of the owner enter upon and conduct reasonable inspections of any property in the Commonwealth to determine if a nonindigenous aquatic nuisance species is present and to seize or eradicate any nonindigenous aquatic nuisance species found on such property.  Virginia Code § 19.2-52 authorizes magistrates to issue search warrants.

6.   HOTELS, RESTAURANTS, SUMMER CAMPS, CAMPGROUNDS

Pursuant to Va. Code § 35.1-5, the State Health Commissioner or Commissioner's designee may inspect hotels, restaurants, summer camps, and campgrounds.  Once the Commissioner has been denied entry, the Commissioner may apply to the appropriate circuit court for an inspection warrant to determine whether any provision of Title 35.1, any regulation of the Board, any order of the State Board Health or Commissioner, or any condition in a license issued by the Board or Commissioner pursuant to Title 35.1 is being violated.

7.   UNLICENSED CHILDCARE OPERATIONS

Virginia Code § 63.2-1718 grants the Commissioner of Social Services or the Commissioner's designee the right to enter and inspect an unlicensed childcare operation.  If the owner or person in charge of an unlicensed childcare operation denies the Commissioner or designee entry to the operation, the Commissioner or designee may seek an administrative search warrant from any judge having the authority to issue criminal warrants pursuant to Va. Code § 63.2-1718.

8.   SMALL RENEWABLE ENERGY PROJECTS

Virginia Code § 10.1-1197.10 authorizes the Director of the Department of Environmental Quality to enter a small renewable energy project to inspect, investigate, evaluate, conduct tests and take samples for testing.  If denied entry, the Director may apply to a circuit court for an inspection warrant.

9.   NON-ENUMERATED CIRCUMSTANCES

A 1999 opinion of the Attorney General discussed the issuance of administrative search warrants when no statute specifically authorizes issuance of an administrative search warrant under the circumstances.  The Attorney General stated:

A 1979 opinion of the Attorney General notes that §§ 19.2-393 through 19.2-397 of the Code of Virginia "at least to some degree reflect the legislature's general approach as to obtaining administrative search warrants, and that the procedure they set forth may legitimately be regarded as the functional

equivalent of a warrant."  That opinion concludes that **"until such time as the legislature sees fit to enact legislation allowing administrative searches in situations other than that found in § 19.2-393, officials seeking to undertake investigatory . . . searches should seek court-approved inspection warrants under the mechanism established by [§§ 19.2-393 through 19.2-397]."**

Chapter 24 of Title 19.2, §§ 19.2-393 through 19.2-397, governs inspection warrants.  Section 19.2-393 defines an "inspection warrant" as "an order in writing, made in the name of the Commonwealth, signed by any judge of the circuit court whose territorial jurisdiction encompasses the property or premises to be inspected or entered."  Section 19.2-394 authorizes the issuance of an inspection warrant for "any administrative search authorized by state or local law or regulation."  The General Assembly has not amended § 19.2-393 in any manner to indicate that it disagrees with the construction placed on the statute by the Attorney General.  The General Assembly is presumed to have knowledge of the Attorney General's published interpretations of a statute, and its failure to make corrective amendments evinces legislative acquiescence in the interpretation.  I must conclude, therefore, in accord with the prior opinions, that for administrative warrants for searches in situations other than those mentioned in § 19.2-393, officials undertaking investigatory searches should seek court-approved inspection warrants under the mechanism established in Chapter 24.

Virginia Code § 19.2-393 states, in relevant part, "An 'inspection warrant' is an order in writing, made in the name of the Commonwealth, signed by any *judge of the circuit court* whose territorial jurisdiction encompasses the property or premises to be inspected or entered, and directed to a state or local official, commanding him to enter and to conduct any inspection …."  (Emphasis added.)  Magistrates should not issue administrative search warrants under circumstances where the General Assembly has not provided magistrates with the specific authority to issue such search warrants.  *See* Va. Code § 19.2-45 (magistrates have authority to issue search warrants in accord with the provisions of Va. Code §§ 19.2-52 to 19.2-60 or to perform such other acts or functions specifically authorized by law.)  Circuit court judges may determine whether they have such authority.

K.   **Administrative Subpoenas**

Virginia Code § 19.2-10.2 allows the attorney for the Commonwealth to issue an administrative subpoena for purposes of investigating violations of Va. Code §§ 18.2-374.1, 18.2-374.1:1, former 18.2-374.1:2, and 18.2-374.3 relating to child pornography/child solicitation.  This subpoena requires electronic communication services or remote computing services that transact or have transacted business in the Commonwealth to provide the attorney for the Commonwealth records or other information pertaining to a subscriber or to a customer of such service.  The statute prohibits the electronic service provider from releasing the contents of electronic

communications pursuant to this administrative subpoena.  Magistrates have no role in issuing or approving administrative subpoenas.