IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Richmond Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 3:19-CR-130-MHL |
| | ) | |
| OKELLO T. CHATRIE, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S SUPPLEMENTAL
MEMORANDUM REGARDING MAGISTRATE**

The United States of America, by its undersigned attorneys, hereby responds to the

defendant's Supplemental Memorandum regarding the Magistrate. *See* ECF No. 135.

The fundamental question for this Court to decide remains whether "the magistrate had a

substantial basis for concluding that probable cause existed." *United States v. Hodge*, 354 F.3d

305, 309 (4th Cir. 2004) (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983)). "[T]he Fourth

Amendment requires no more." *Gates*, 462 U.S. at 236.

The United States is attaching as exhibits to this brief the Magistrate's appointment

documents, including his initial appointment by the Executive Secretary of the Supreme Court of

Virginia. These documents show that the magistrate was duly appointed pursuant to Virginia

Code Section 19.2-37. Even if this Court agrees with the defendant that the magistrate in this

case lacked authority to issue the warrant, the good faith exception applies. The defendant cites

to *United States v. Scott* for the proposition that the good faith exception will not save a search

warrant issued by a magistrate who lacks authority to issue the warrant. 260 F.3d 512, 515 (6th

Cir. 2001). The Sixth Circuit has moved on from *Scott* and the Fourth Circuit has rejected

*Scott*'s holding as well. This Court should follow suit.

**A.** ***The Defendant Concedes that the Magistrate Satisfies the Virginia Legislature's Decision that a Bachelor's Degree from an Accredited College Suffices to Qualify a Magistrate to Determine Probable Cause***

The defendant makes several points that are ultimately fatal to even his "qualification" arguments. *See* Def.'s Br. at 6-10. First, he admits that Virginia law "maintains that a bachelor's degree from an 'accredited institution of higher education' is necessary to ensure that magistrates are capable of doing things like determining probable cause for a search warrant." *Id.* at 3. And he concedes that the magistrate in this case "appears to have graduated Pensacola Christian College in May 2016 with a Bachelor of Science degree in Criminal Justice." *Id.* at 6. Finally, he offers that Pensacola Christian College is accredited by the "Transnational Association of Cristian [sic] Colleges and Schools (TRACS), a national agency recognized by the Department of Education." *Id.*

That should be the end of the discussion as it relates to the magistrate in this case—he is duly appointed pursuant to a Virginia law that considered the qualifications necessary to determine probable cause for, among other things, search warrants. But Virginia's considered judgment—whether in setting forth the qualifications for hiring or when hiring this magistrate in light of these qualifications—is not sufficient for this defendant. He takes Virginia to task for hiring someone from a purportedly "unlicensed religious college." *See* Def.'s Br. at 8. Stated simply, the defendant has set forth a "prestige" test. *Id.* at 7 ("By contrast, the conventional wisdom is that national accrediting agencies are significantly less prestigious."). Indeed, the defendant opines that Virginia's magistrate reforms intended "to indicate that degrees from unlicensed religious colleges are not to be confused with secular degrees from licensed schools." *Id.* at 8. Of course, Pensacola Christian College is accredited by his own admission, just not by the organization of his choosing.

2

The defendant creates confusion by asserting that the magistrate, duly appointed pursuant Virginia law by those entrusted to implement the law, may lack the minimum education requirement.  The magistrate received a bachelor's degree from an accredited institution; his credentials were assessed by the Office of Magistrate Services; and ultimately he was appointed by the Executive Secretary of the Supreme Court of Virginia.  He meets the necessary requirements.  The Court should not engage in the defendant's suggested nitpicking and, by extension, run afoul of *Master*'s admonition that a federal court's challenge to a state's reasoned judgment about whom may issue warrants and what type of warrants they may approve "would allow federal courts to completely undermine state determinations of who is an authorized magistrate, and it is beyond question that we determine who is a qualified magistrate by consulting state law." 614 F.3d 236, 241 (6th Cir. 2010) (collecting cases).

### B. The Probable Cause Affidavit in Support of the GeoFence Search Warrant Set Forth All Salient Facts

Seeking to justify the attacks on the magistrate in this case, the defendant contends that errors and omissions in the affidavit demonstrate why a bachelor's degree from Pensacola Christian College will not suffice.  These purported omissions include the "scope of the number of people to be searched and the true boundaries of the 'geofence," searching the "private daily journals of numerous tens of millions of people," and the inclusion of other publically accessible locations in the geographic radius.  *See* Def.'s Br. at 5.

First, the affidavit not including the analytical gloss placed upon Google's process for responding to the GeoFence search warrant is not a reckless omission.  That assertion—of searching across millions of users—is news to all involved, including the defendant's own expert.  More importantly, as discussed in the United States' supplemental brief, it has no bearing on suppression in this case.  *See* United States' Resp. to Google Am. Br. at 5 n.1.

Next, the geographic area and locations included in that area were not omitted. Rather, that area is set forth in the warrant. The first step of the GeoFence search warrant allows for the geographical radius to be searched. The search warrant similarly made clear that, at the second step, location information for anonymized Google users would be ascertained irrespective of the geographical radius.

There were no reckless omissions in the probable cause affidavit in this case.

## C. The Magistrate's Experience Comports with Virginia's Requirements for Experience Required Prior to Issuing Search Warrants

Recognizing the futility of the minimum education requirement argument, the defendant turns his ire to the experience of the magistrate. Of course, in doing so, he fails to acknowledge that the Task Force Officer in this case obtained three prior GeoFence search warrants—two from state circuit court judges and one from a federal judge. Presumably, as far as the defendant is concerned, this analysis will require a real-time assessment of the magistrate's handle on cutting edge technology befitting of the parties' respective experts. Saying nothing of the magistrate's ability to grasp these technical concepts, it is difficult to conceive that even learned state and federal court judges who sign off on such GeoFence warrants will withstand such scrutiny.

Magistrate Bishop was qualified to do the job Virginia hired him to do and, accordingly, was capable of signing off on the GeoFence warrant in this case. Magistrate Bishop, like all other magistrates, completes a 4-week certification course and must pass an examination before being released. The certification classes are taught by attorneys and cover, on a class-by-class basis, the main chapters set forth in the Magistrate Manual, including search warrants. New magistrates also take classes covering the elements of commonly addressed crimes. After these courses, they must take and pass a written examination covering these issues before they can be

released for on the job training.

Magistrate Bishop took all of these steps prior to his appointment.  Then, Magistrate Bishop, like other new magistrates, shadowed and received mentoring from a highly thought of veteran magistrate in his region observing that magistrate deal with various legal process.  Only after this process will the Chief Magistrate and Magistrate Regional Supervisor then observe and assess the new magistrate.  If the new magistrate is deemed suitable for independent service, the Chief Magistrate and Magistrate Regional Supervisor make a recommendation to the Director of Magistrate Services to release the magistrate for independent service.

Magistrate Bishop complied with all requirements set forth for Virginia magistrates to be released for independent service and to issue legal process, including the GeoFence search warrant in this case.

### D.  *Contrary to the Defendant's Assertion, the Good Faith Exception Applies*

Yet, even if the Court agrees with the defendant's argument that the magistrate's college is not good enough to qualify him to assess the GeoFence warrant in this case, the good faith exception still applies.  The most notable error in the defendant's brief is its reliance on the now-defunct holding in *United States v. Scott*, that the good faith exception will not save a warrant issued by a magistrate who lacks authority to do so.  260 F.3d 512, 515 (6th Cir. 2001).  The Sixth Circuit has moved on from *Scott* and so should this Court.

First, in *Master*, the Sixth Circuit, rejected a defendant's argument that *Scott* foreclosed applicability of the good faith exception where the issuing magistrate lacked authority to issue the warrant.  Such a reading was no longer tenable, *Master* concluded, when considering the Supreme Court's decisions in *Herring v. United States*, 555 U.S. 135 (2009) and *Hudson v. Michigan*, 547 U.S. 586 (2006).

5

In *Master*, the Sixth Circuit remanded the issue of suppression back to the district court, but made clear that suppression did "not appear to be the appropriate remedy" because there was no indication that law enforcement "had any improper motivation to seek out" the magistrate subsequently determined to lack authority.  614 F.3d at 243.  The Sixth Circuit said the same in *United States v. Moorehead*, when addressing whether NIT warrants signed by a judge lacking authority pursuant to Rule 41 should be suppressed.  912 F.3d 963, 969 (6th Cir. 2019) ("For the same reasons articulated in *Master*, we conclude that the good-faith exception is not categorically inapplicable to warrants found to be void ab initio.  The difference between a state court judge acting without authority and a federal magistrate judge acting without authority is of little significance—in both instances, the individual who signed the warrant (arguably) had no power to do so.").

The Fourth Circuit has also rejected *Scott*'s holding.  In *United States v. McLamb*, the defendant cited *Scott* and argued that the good faith exception did not apply to a warrant that was void *ab initio*.  The Fourth Circuit disagreed:

> Appellant also claims that the good faith exception to the exclusionary rule is categorically inapplicable for warrants exceeding a magistrate judge's jurisdiction.  Because such warrants are void from inception, Appellant contends, their execution is the equivalent of a warrantless search. However, as noted, the Supreme Court has held that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon*, 468 U.S. at 916. Suppressing evidence merely because it was obtained pursuant to a warrant that reached beyond the boundaries of a magistrate judge's jurisdiction would not, under the facts of this case, produce an "appreciable deterrence" on law enforcement.

880 F.3d 685, 691 (4th Cir. 2018).

And the Seventh Circuit, relying in part upon *McLamb*, recently explained that any constitutional concerns about a magistrate judge should lead this Court back to application of the good faith doctrine.  *See United States v. Kienast*, 907 F.3d 522, 527–28 (7th Cir. 2018) ("The

deterrence rationale for the exclusionary rule aims at the conduct of the police, not the conduct of the magistrate judge.  Thus, whether the magistrate judge lacked authority has no impact on the rule.").  Accordingly, if the Court determined that the magistrate's educational level mattered to the constitutionality of the search warrant in this case, application of the good faith doctrine remains appropriate.

It would seem impractical and inappropriate under Fourth Amendment precedent to call on officers to effectively check a Magistrate's CV before seeking a search warrant.  TFO Hylton obtained two previous GeoFence warrants in the state signed by Circuit Court judges.  Because of burdens placed upon circuit court judges and other related concerns, TFO Hylton received counsel from Chesterfield County Police Department leadership to seek out magistrates rather than Circuit Court judges for search warrant approval.  That decision should have no bearing on the Court's decision about whether there was a substantial basis for the magistrate to find probable cause to believe that Google possessed evidence related to the armed robbery in this case.

## CONCLUSION

Because the Magistrate is duly appointed pursuant to Virginia law, he was qualified to and capable of issuing the GeoFence search warrant in this case.  Should the Court determine that individualized assessment of a magistrate's qualifications is appropriate and conclude that Magistrate Bishop's qualifications are insufficient, Task Force Officer Hylton relied on the search warrant in good faith.

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By:      _____/s/_____

Kenneth R. Simon, Jr.
Peter S. Duffey
Assistant United States Attorneys
Eastern District of Virginia
United States Attorney's Office
919 E. Main Street, Suite 1900
Richmond, VA 23219
(804) 819-5400
Fax: (804) 771-2316
Email: Kenneth.Simon2@usdoj.gov

Nathan Judish
Senior Counsel, Computer Crime and
Intellectual Property Section
Criminal Division
United States Department of Justice