IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| ) | Case No. 3:19cr130 |
| ) | |
| **OKELLO T. CHATRIE,** ) | |
| **Defendant** ) | |

### DEFENDANT OKELLO CHATRIE'S SUPPLEMENTAL RESPONSE REGARDING STANDING

Okello Chatrie, through counsel, submits this statement in response to ECF No. 129, pursuant to the Court's Order entered on July 17, 2020. *See* ECF No. 132.

### INTRODUCTION

In a footnote responding to Mr. Chatrie's request for a second subpoena *duces tecum* to Google, the government raised a new argument suggesting that Mr. Chatrie does not have "standing" to challenge the search of his Google account data, including his Location History data. The government then avers that "in order to establish standing in the location information obtained from Google, [Mr. Chatrie] should address not only his possession of the Samsung phone and his Google account, but also when he created the Google account, how he did so, and when he linked it to his phone." ECF No. 129 at 2 fn.1. Mr. Chatrie reiterates his ownership of and reasonable expectation of privacy in his phone and his Google data, and for the following reasons, contends that nothing more is necessary to establish "standing" for Fourth Amendment purposes.

### ARGUMENT

The government raises the question of Mr. Chatrie's "standing to challenge the information obtained from Google." ECF No. 129 at 2 fn.1. But since *Rakas v. Illinois*, the Supreme Court has been clear that standing is not a distinct question from the substantive Fourth Amendment inquiry

1

that the parties have been briefing all along. *See* 439 U.S. 128, 139 (1978); *see also Rawlings v. Kentucky*, 448 U.S. 98, 106 (1980) ("After *Rakas*, the two inquiries merge into one: whether government officials violated any legitimate expectation of privacy held by [the defendant].").

Mr. Chatrie has extensively briefed the Court on Mr. Chatrie's expectation of privacy in his Location History data, and it is unclear why the government now seeks to recast the inquiry in terms of standing. *See*, e.g., ECF Nos. 29 & 104. This is not a case where ownership of the devices or data searched is in question. Rather, Mr. Chatrie has repeatedly and forcefully asserted that he has a legitimate expectation of privacy in his Google Location History data, obtained from a search of his Google account[1], alongside "numerous tens of millions" of other users. *See* ECF No. 96-1 at 4.

It is manifest that Mr. Chatrie's Location History data belongs to Mr. Chatrie. To the extent the government disputes Mr. Chatrie's ownership of his Location History data or his Google account, it is worth reiterating that all of their evidence against Mr. Chatrie derives from linking him to this account. For example, during its investigation, law enforcement officers learned that Mr. Okello used his @gmail.com account as contact information for a previous employer. The phone, the Samsung 9+ that was linked to this Google account, was found in the home in which Mr. Chatrie lived and was arrested in. The lessee of the home identified the Samsung 9+ as Mr. Chatrie's phone. Furthermore, as is plainly described in discovery, Mr. Chatrie already told investigators that his email address is the @gmail.com address on his Google account and that the Samsung S9+ belongs to him. Should the government decide to pursue a fruitless standing challenge, Mr. Chatrie will call Detective Joshua Hylton and Task Force Officer Philip Johnakin,

---

[1] Mr. Chatrie's Google account is an @gmail.com address that includes his complete first and last name.

2

who personally interviewed Mr. Chatrie on these points, to the stand at the suppression hearing to testify to this information.[2]

The government states that it "might not press this point if the only question here was whether the location information came from the defendant's phone." ECF No. 129 at 2 n.1. But there does not appear to be another relevant question. The government implies that there is some significance in the fact that Mr. Chatrie initially set up his Google account in 2017 on a device other than his Samsung S9+. But the government does not explain how this fact would affect Mr. Chatrie's "standing" to challenge a search of his account data. Counsel for Mr. Chatrie also fail to see any relationship between standing and the circumstances under which Mr. Chatrie set up his Google account or linked his phone to that account. Mr. Chatrie's privacy interest in his account, including his Location History data, simply does not depend on how or when he set up his Google

---

[2] The government cites an unpublished district court opinion, *United States v. Bondars*, 2018 WL 9755072 (E.D. Va. 2018), for the proposition that to establish standing, Mr. Chatrie must establish through an affidavit or sworn testimony that he has standing. ECF No. 129 at n.1. In *Bondars*, however, the defendant would not stipulate that the computers in question actually belonged to him or were used by him, further refusing "proposed stipulates" stating that the computers and data belonged to him. *See* Government's Consolidated Response to Defendant's Motion to Suppress at 7, *United States v. Bondars*, 2018 WL 9755072 (E.D. Va. 2018). That is plainly not the case here. Furthermore, as the Supreme Court has made clear, the Court has "already recognized that individuals have a reasonable expectation of privacy in the whole of their physical movements." *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018). Additionally, a person's privacy interest in her digital data, such as that stored on or created by a cell phone, is strong enough to overcome the generally diminished expectation of privacy for items found in the possession of an arrestee. *See Riley v. California*, 573 U.S. 373, 391-401 (2014). If, as indicated above, the government wants to pursue a standing challenge here, the defense will simply call government witnesses at a hearing to testify about facts that are not in dispute.

account.[3] The question is whether he had a reasonable expectation of privacy in that Location History data when the government searched it.[4]

Of course, the creation of a Google account is not the same thing as enabling Google Location History on that account. *See* ECF No. 59-1 at 7-8; ECF No. 96-1 at 2-3 (describing the steps required to enable Location History, which presuppose the existence of a functioning Google account). And as Mr. Chatrie acknowledges, *see* ECF No. 123 at 2, a key issue in addressing the merits of Mr. Chatrie's Fourth Amendment argument is whether he knowingly and voluntarily consented to Google's collection of his Location History data. That is why Mr. Chatrie asked this Court to subpoena records from Google indicating when and how Mr. Chatrie supposedly "opted-in" to the Location History feature. *See* ECF No. No. 123 at 5-6. That information will demonstrate what Mr. Chatrie, or a user like him, would have encountered when enabling Location History for a Samsung S9+. It is certainly relevant to the substantive Fourth Amendment inquiry and Mr. Chatrie will present it to the Court accordingly.

In the meantime, there is ample information in the record already that Mr. Chatrie owned the Google account at the time of the search. This includes Mr. Chatrie's own statement to investigators. And while the defense does not believe that more is necessary to show that the

---

[3] The government claims that Mr. Chatrie should address "when he created the Google account," but in the preceding sentence, the government emphatically states that "Google produced records establishing that the defendant's Google account was created on August 20, 2017." ECF No. 129 at 2 n.1. It is unclear what additional information the government seeks, *see id.* ("how he did so"), but the Google subscriber information indicates that he created it using the name "jamaican media" from IP address 71.115.30.129 at 18:04 UTC (2:04 pm Eastern).

[4] In case there is any doubt, Mr. Chatrie also had a reasonable expectation of privacy in his Samsung S9+, which was seized during the Willis St. search. *See Riley v. California*, 573 U.S. 373, 401 (2014). First, it was seized from a bedroom in a residence where Mr. Chatrie had a reasonable expectation of privacy. *See Jones v. United States*, 362 U.S. 257, 266-67 (1960); *Rakas*, 439 U.S. at 149 (noting that even under the new rule in *Rakas*, the defendant in *Jones* "could legitimately expect privacy in the areas which were the subject of search and seizure," *i.e.* a friend's apartment that the defendant had permission to use). Second, Mr. Chatrie told investigators that the phone belonged to him. And third, the lessee of the Willis St. residence told investigators that the Samsung S9+ was Mr. Chatrie's phone.

Google data was Mr. Chatrie's, if the Court disagrees, defense counsel will call the witnesses identified above at the hearing to testify about these facts.

## **CONCLUSION**

Mr. Chatrie recognizes that factual questions remain regarding the nature of the "opt-in" process, which are relevant to the substantive Fourth Amendment inquiry and the subject of an outstanding subpoena to Google. But for the foregoing reasons, Mr. Chatrie believes that he has established sufficient personal interests in the privacy of his Google account data, and therefore established "standing" to challenge the astoundingly broad and unconstitutional search the government used to get it.

Respectfully submitted,
OKELLO T. CHATRIE

By: _____/s/_____
Michael W. Price
NY Bar No. 4771697 (*pro hac vice*)
Counsel for Defendant
National Association of Criminal Defense Lawyers
Fourth Amendment Center
1660 L St. NW, 12th Floor
Washington, D.C. 20036
Ph. (202) 465-7615
Fax (202) 872-8690
mprice@nacdl.org

_____/s/_____
Laura Koenig
Va. Bar No. 86840
Counsel for Defendant
Office of the Federal Public Defender
701 E Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0881
Fax (804) 648-5033
laura_koenig@fd.org