**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| | )     **Case No. 3:19cr130** |
| | ) |
| **OKELLO T. CHATRIE,** | ) |
|         **Defendant** | ) |

**DEFENDANT OKELLO CHATRIE'S RESPONSE IN OPPOSITION TO GOOGLE'S
MOTION TO PRESENT REMOTE TESTIMONY**

Okello Chatrie, through counsel, responds as follows in opposition to Google's motion to present remote testimony filed on November 9, 2020:

**I.  In person testimony from the Google employees is critical to the Court's resolution of Mr. Chatrie's geofence warrant.**

    *a. Communications with Google leading up to their November 9, 2020, motion to testify remotely acknowledge that in-person testimony is required.*

The Court issued an order on October 5, 2020, directing the parties to "appear, in person" for a hearing on the pending geofence motion to suppress on November 17, 2020.  *See* ECF No. 153.  On October 7, 2020, undersigned counsel communicated with counsel for Google about the date and time of the hearing.  Undersigned counsel further notified counsel for Google that the defense intended to subpoena both Mr. McGriff and Ms. Rodriguez and inquired as to whether either Google employee had any prior commitment for November 17, 2020, that could not be rearranged.  On October 9, 2020, counsel for Google responded that both Mr. McGriff and Ms. Rodriguez were available to testify on November 17, 2020.  Counsel for Google further indicated that she understood that both Google employees would be needed to testify in person, which would require them to travel to Richmond, Virginia.

1

On October 19, 2020, counsel for Google contacted undersigned counsel regarding the possibility of the Google employees testifying remotely. Undersigned counsel reaffirmed that the defense would need the Google witnesses to appear in person at the November 17, 2020, hearing. On October 21, 2020, the defense filed a motion to obtain the subpoenas for the two Google employees. The Court issues those subpoenas, which required Mr. McGriff and Ms. Rodriguez to appear in person on November 17, 2020, on October 26, 2020. On October 26, 2020, counsel for Google asked the defense to "revisit the subject of remote testimony" for the Google employees at the November 17, 2020, hearing.

The defense served the subpoenas on Google's counsel, who had agreed to accept service of those subpoenas, on October 28, 2020, and explained again that the two Google employees would need to be present in person to testify at the November 17, 2020, hearing. Undersigned counsel also informed counsel for Google, however, that because of New York's travel restrictions in place at that time, it was possible that Mr. Price would not be able to travel to Virginia without having to be subjected to a mandatory two-week quarantine. Undersigned counsel informed Google that if that mandatory quarantine requirement remained in place, the defense might be in a position of needing to move the Court to continue the hearing to a later date.

On November 1, 2020, the state of New York modified the previous mandatory quarantine requirements for those traveling from Virginia, requiring Mr. Price to have to have to quarantine for a much shorter period of time if he stayed in Virginia for more than 24 hours. On November 4, 2020, undersigned counsel notified Google that because of the modifications New York had made to its mandatory quarantine restrictions, the defense no longer anticipated asking the Court to continue the November 17, 2020, hearing. On Monday, November 9, 2020, eight days before the November 17, 2020, hearing, counsel for Google contacted undersigned counsel to inform her

that Google would be filing a motion seeking leave for the Google employees to testify remotely. Undersigned counsel responded that the defense opposed such a motion and would be filing a written response in opposition.

While counsel is undoubtably sympathetic to the concerns about travel during this time, it is crucial to Mr. Chatrie's constitutional rights to effective assistance of counsel, due process, and confrontation that the Google employees also appear in person to testify in this case. Indeed, one lawyer from the defense—Michael Price—and one lawyer from the government—Nathan Judish— plan to travel to Richmond, Virginia for the in-person hearing. The defense's expert lives in North Carolina, and will also be traveling to Richmond, Virginia for the November 17, 2020, in-person hearing. This case is one that needs to be fully in person.

> b. *In person testimony from Google employees is critical to the Court's evaluation of Google's previously filed declarations.*

The defense has a good faith basis to believe that Google has been less than forthcoming in some of the statements and assertions included in Mr. McGriff's and Ms. Rodriguez's prior declarations.[1] The defense will confront Mr. McGriff and Ms. Rodriguez on these statements and assertions using numerous materials in the record and in the hearing exhibits. In a courtroom, the Court can clearly see the witness's demeanor on the stand and assess her credibility.

In a courtroom it can also enforce a sequestration order, which the defense will ask the Court to issue, excepting the parties' advisory witnesses only. In a remote proceeding, it would be exceedingly difficult to control the witnesses' access to communication with others who are not

---

[1] As just one example, earlier in this litigation, Google disagreed with an assertion that the defense made regarding enabling location history based on evidence the defense presented at the January 2020 hearing on the defense's geofence discovery motion. *See* ECF No. 110. The defense objected to Google filing a supplemental affidavit from Mr. McGriff on that point, *see* ECF No. 111, and prepared a second location history opt-in video to illustrate that its evidence directly conflicts with Google's assertion in Mr. McGriff's supplemental affidavit. *See* Ex. 2 for 11/17/2020 Hearing.

3

testifying or to their access to outside digital or print material when answering questions posed to them. In a courtroom, the Court can be well assured that the witness is testifying from her own knowledge and recollection and not that of someone else. The Court can see what materials the witness is reviewing to answer the question or refresh a recollection. With remote testimony, the Court cannot be sure—without extensive precautionary measures—what materials an experienced technology professional is reviewing.

There is also a significant risk of technological disruptions during remote testimony. During remote hearings with this Court during the COVID-19 pandemic, undersigned counsel has experienced technical difficulties with sound quality, internet connectivity, and exhibit presentation. There is a large volume of evidence in this case and this kind of evidence-based confrontation cannot be done effectively in a remote setting. Therefore, the defense does not reasonably anticipate being able to effectively represent Mr. Chatrie at the hearing if Google witnesses testify remotely.

While courts have certainly expanded remote testimony due to the COVID-19 pandemic, there is no substitute for in person testimony in a crucial proceeding. *See, e.g.*, *In re: Court Operations under the Exigent Circumstances Created by the Outbreak of Coronavirus Disease 2019*, 2:20mc7, General Order No. 2020-21, at 6-8 (E.D. Va. Sept. 24, 2020) (emphasizing the need for felony plea and sentencings to move forward remotely, while fully recognizing that some criminal proceedings will need to occur in person). The November 17, 2020, hearing in this case is a such a crucial proceeding.[2] Indeed, the government has conceded that the Court's decision relating to this hearing is case dispositive.

---

[2] That is not to say that these issues cannot be overcome in a more ordinary case. But, the November 17, 2020, hearing on the geofence motion to suppress is of a different type and magnitude than an initial appearance in a criminal case or even a contested hearing in a supervised release violation hearing. The parties and the Court are well aware that

While the defense certainly agrees that remote hearings should be accommodated in suitable cases during the COVID-19 pandemic and is sympathetic to the difficulties in travel currently, this hearing is one that must be in person.  As the Court well knows, the Eastern District of Virginia has taken significant measures to protect litigants and the public who appear for in-person hearings.  These measures include, among other things, temperature screening at all entrances to the courthouse, symptom and exposure screening for every entrant into the courthouse, mandatory masking and social distancing for all public places in the courthouse, and enhanced cleaning and improved central air filtration in the courthouse.  There are hotels within walking distance of the courthouse that also provide enhanced safety and cleaning measures to protect guests.[3]  And unlike the situation the defense faced earlier this month when New York would have mandated Mr. Price's isolation for two weeks, California—where both Mr. McGriff and Ms. Rodriguez reside and work—has no travel restrictions for individuals traveling to and from the state of Virginia.  *See Stay home Q&A*, https://covid19.ca.gov/stay-home-except-for-essential-needs/ (last visited Nov. 10, 2020) (reporting no travel restrictions "for entering California if you are coming from another state in the U.S.").

Legally, the parties and the Court are clear that the resolution in this case is expected to have an impact far beyond the Eastern District of Virginia.  The resolution of this motion is also case-dispositive.  If Mr. Chatrie wins, he will be set free.  If he loses, he continues to face a mandatory minimum of 17 years in prison if convicted.  Preservation of the record, including the Court's assessment of witnesses' credibility and the ability of defense counsel to effectively

---

this Court's resolution of this motion will almost certainly have national impacts on the government's ability to secure geofence warrants.  Additionally, the November 17, 2020, hearing in this case is not the type of docket-clearing hearing that Chief Judge Davis's September 24, 2020, Order urges courts to consider conducting remotely.

[3] *See, e.g.*, Hilton Richmond Downtown, https://www.hilton.com/en/hotels/ricrdhh-hilton-richmond-downtown/ (providing link at top of that page to Hilton's "CleanStay" policies in place during the COVID-19 pandemic).

confront the Google witnesses in this case, is paramount, particularly as there will likely be appellate review from the losing side.

Thus, Mr. Chatrie opposes remote testimony from Mr. McGriff and Ms. Rodriguez pursuant to his constitutional rights to effective assistance of counsel, service of process, due process, and confrontation. Alternatively, if the Court overrules Mr. Chatrie's objection to Google's motion for leave to appear remotely, Mr. Chatrie requests a continuance of the November 17, 2020, hearing to a time when Google will appear in person.[4] Since receiving the Court's October 5, 2020, Order, both parties have worked diligently to be prepared for the November 17, 2020, hearing.  Neither party at this juncture needs a continuance of the hearing but for Google's reluctance to appear in person under compulsory process.

## II. Google's continued intrusion into this case warrants a finding from this Court that the Google witnesses are hostile/adverse witnesses.

Google has attempted in this case and elsewhere to paint its participation in—and, in this case, insertion into—privacy litigation as "useful," *see* ECF No. 59 at 1, and it says it is "look[ing] forward to assisting the Court in [deciding the important issues presented in this case]," *see* ECF No. 161 at 3.  That presentation belies the defense's good faith belief that Google has been less than forthcoming with this Court on matters relevant to the pending motion to suppress.

Throughout the litigation, Google has acted in its own interest and over defense objection. Throughout its involvement in this case, as noted above, Google has attempted to portray itself as

---

[4] Should the Court determine that a continuance of the hearing is unnecessary for those reasons but allows for the Google employees to testify remotely, Mr. Chatrie asks the Court to issue a ruling allowing Google's employee's to testify remotely only in a setting that: 1) prohibits any communication with any other individual, 2) prohibits the use of any devices to access information not presented in the form of a party's exhibit, and 3) requires strict compliance with a sequestration order.  As the defense has set forth above, in person testimony in this case is critical to the resolution of Mr. Chatrie's geofence motion to suppress. Should, however, the Court overrule that objection and allow Google to testify remotely on the defense's subpoena, Mr. Chatrie insists that any remote testimony comply with the three conditions set forth above.

6

a helpmate to the Court in this case, while all the while seeking to assert a vision of its image as consumer friendly and respective of its users' privacy. Google's vision is necessary to avoid alienating its (hundreds of) millions of users.

That projection of a sought after image, however, is simply not true. Google's business is based on maximizing advertising revenue. Google's advertising revenue is directly linked to acquiring and mining its users' data at a micro level. To that end, Google has not been transparent with this Court or its users as to how it collects data on its users, including location history. The defense has been working for months to better understand how Google ensnares its users into enabling location history. And, as defense investigation has shown, enabling location history is not in the antiseptic way that Google portrays it to be in Mr. McGriff's and Ms. Rodriguez's declarations. Thus, there is a more than ample basis—in addition to Google's continued efforts to avoid appearing in person on November 17, 2020—for the Court to find that Google's employees should be treated as hostile witnesses. *See* Fed. R. Evid. 611(c), Advisory Committee Note to Subdivision (c) (delineating exception to the rule against leading questions on direct examination for a "witness who is hostile, unwilling, or biased").

A federal district court in New Mexico has described in identifying hostile witnesses:

> Leading questions should not be used on direct examination except as necessary to develop the witness's testimony. Ordinarily, the court should allow leading questions: (1) on cross-examination; and (2) when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party. Fed. R. Evid. 611(c). The rule reflects the more general principle that 'leading questions are usually permissible on cross-examination and impermissible on direct examination.' Victor J. Gold, 28 Fed. Prac. & Proc. Evid. § 6168 (2d ed.). This limitation was 'designed to guard against the risk of improper suggestion inherent in examining friendly witnesses through the use of leading questions.' *Ellis v. City of Chicago*, 667 F.2d 606, 612 (7th Cir.1981). *See* 1 McCormick On Evid. § 6 (7th ed.) ("One danger of the latter method is that the witness may acquiesce in a false suggestion by the questioner."). The exception in rule 611(c)(2) recognizes that 'the risks of suggestion are reduced where the witness has an interest in promoting a version of the facts contrary to that suggested.' Gold, *supra*, at § 6168. *See* 1 McCormick On

7

> Evid. § 6 (7th ed.)("[I]f the witness on direct is legally identified with the opponent, appears hostile to the examiner, or is reluctant or uncooperative, the danger of suggestion disappears."). The trial court has 'virtually unlimited discretion' in making determinations under rule 611(c). 4-611 Weinstein, *supra*, at § 611.06.

*Securities and Exchange Commission v. Goldstone*, 317 F.R.D. 147, 163–64 (D.N.M. 2016); *see also Alexander v. States*, 610 So. 2d 320, 331–32 (Miss. 1992) (defining hostile/adverse witness as "(1) If the witness' acts or omissions are the predicate for a party's claim or defense, . . ., then that witness is ordinarily sufficiently identified with an adverse party and may be called as an adverse witness and interrogated by leading questions; (2) If the conduct of the witness plays such an integral part in the transaction or occurrence which is the subject of the action and which gives rise to . . . potential liability, . . ., then again the witness is said to be sufficiently identified with the adverse party so that the witness may be called as an adverse witness and cross examined."); *Commonwealth v. Lambert*, 765 A.2d 306, 360–61 (Pa. Super. 2000) ("As the term is understood in this context, a witness is adverse to the calling party if the witness has an interest in the issue being tried, and his interest would be increased or promoted if the calling party's adversary prevails.").

Google is a party with a vested interest in the Court's determination of how user consent is implicated in this case. Google is party to a lawsuit brought by the state of Arizona alleging that the company has invaded users' privacy even when users seek, as Mr. Chatrie did in this case, to avoid location tracking. *See Arizona v. Google*, CV2020-006219 (Ariz. Sup. Ct. 2020). Google's efforts to obfuscate users' ability to control their privacy was highlighted in an Australian inquiry into digital platforms. *See, e.g.*, Rohan Pearce, *Oracle attacks Google over data collection, online ad dominance*, COMPUTERWORLD (Mar. 4, 2019), https://www2.computerworld.com.au/article/658407/oracle-attacks-google-over-data-collection-online-ad-dominance/. Google is, without a doubt, interested in promoting a version of the facts

contrary to what defense investigation has shown to be true. Thus, Google's actions and interest in this case warrant a finding from this Court that the Google employees subject to defense subpoenas are hostile, or adverse, witnesses.

## **CONCLUSION**

As set forth above, Mr. Chatrie opposes Google's motion for leave for its employees, who are subject to the Court's compulsory process at Mr. Chatrie's request, to testify remotely. He further asks the Court to find that Google's employees will be hostile/adverse witnesses under Federal Rule of Evidence 611(c). Should the Court overrule Mr. Chatrie's position that the Google employees must testify in person, Mr. Chatrie asks the Court to require strict parameters on their remote testimony as set forth above.

Respectfully submitted,
OKELLO T. CHATRIE

By: _____/s/_____
   Michael W. Price
   NY Bar No. 4771697 (*pro hac vice*)
   NACDL, Fourth Amendment Center
   1660 L St. NW, 12th Floor
   Washington, D.C. 20036
   Ph. (202) 465-7615
   Fax (202) 872-8690
   mprice@nacdl.org

_____/s/_____
Laura Koenig
Va. Bar No. 86840
Office of the Federal Public Defender
701 E Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0881
Fax (804) 648-5033
laura_koenig@fd.org