IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Richmond Division*

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )  CRIMINAL NO. 3:19-CR-130-MHL |
| | ) |
| OKELLO T. CHATRIE, | ) |
| | ) |
| Defendant. | ) |

## NOTICE OF SUPPLEMENTAL AUTHORITY

COMES NOW the United States of America, by and through its counsel, Raj Parekh, Acting United States Attorney for the Eastern District of Virginia and undersigned counsel, and advises the Court of new authority from the United States Court of Appeals for the Fourth Circuit that the United States believes will aid the Court in its analysis of the issues before the Court.

In *Leaders of a Beautiful Struggle v. Baltimore Police Department*, ___ F.3d ___, 2021 WL 2584408 (4th Cir. June 24, 2021) (*en banc*) (hereinafter "*Leaders*"), the Fourth Circuit held that a Baltimore aerial surveillance program, under which the city retained for at least 45 days a "record of where everyone came and went within the city during daylight hours," was a search under *Carpenter v. United States*, 138 S. Ct. 2206 (2018). *Leaders*, 2021 WL 2584408 at *8. As explained below, the reasoning of *Leaders* is significant here for two reasons. First, *Leaders* confirms that the Fourth Circuit interprets *Carpenter* to distinguish between long-term location tracking, which is a search, and short-term location tracking, which is not. *See id*. Second, *Leaders* confirms that whether the government has conducted a search under *Carpenter* is based on the information accessed by the government from the provider. *See id.* at *10. Thus, a provider's internal filtering process does not transform a limited disclosure of information to the government into a search.

First, the Fourth Circuit held that "*Carpenter* solidified the line between short-term tracking of public movements—akin to what law enforcement could do '[p]rior to the digital age'—and prolonged tracking that can reveal intimate details through habits and patterns." *Leaders*, 2021 WL 2584408 at *8. Under *Carpenter*, "[t]he latter form of surveillance invades the reasonable expectation of privacy that individuals have in the whole of their movements and therefore requires a warrant." *Id.* The court applied this test to the Baltimore surveillance program and determined that it was a search under *Carpenter*:

> [T]he AIR program's surveillance is not "short-term" and transcends mere augmentation of ordinary police capabilities. People understand that they may be filmed by security cameras on city streets, or a police officer could stake out their house and tail them for a time. *See Maynard*, 615 F.3d at 560 ("It is one thing for a passerby to observe or even to follow someone during a single journey as he goes to the market or returns home from work."). But capturing everyone's movements outside during the daytime for 45 days goes beyond that ordinary capacity.

*Leaders*, 2021 WL 2584408 at *11.

In contrast, in this case, investigators obtained only two-hours of location information pursuant to the geofence warrant, including the defendant's presence at the bank and as he moved along public roads. That quantity of location information is entirely consistent with the ordinary police capabilities identified by *Leaders*: security cameras, being tailed, and being staked out for a period. The government did not conduct a search under *Carpenter* or *Leaders* when it obtained two hours of location information.

Second, *Leaders* held that in assessing whether the government conducts a search under *Carpenter*, courts consider the information "accessed" by the government "from" the service provider. *Leaders*, 2021 WL 2584408 at *10. In particular, *Leaders* states: "Plaintiffs never identified 'the total investigatory effort' as the 'search' here. *Carpenter* was clear on that issue:

2

a search took place 'when the Government accessed CSLI from the wireless carriers.' 138 S. Ct. at 2219–20 ('The Government's *acquisition of the cell-site records* was a search within the meaning of the Fourth Amendment.') (emphases added)." *Id*. Here, that holding from *Leaders* demonstrates that Google's internal filtering processes lack Fourth Amendment significance. Google filtered across its Sensorvault database to identify information responsive to the geofence warrant, but investigators obtained from Google only information about 19 users whose devices fell within the scope of the geofence. Under *Carpenter* and *Leaders*, the government does not search information it did not obtain.

Respectfully submitted,

RAJ PAREKH
Acting United States Attorney

By:         /s/
Nathan Judish
Senior Counsel, Computer Crime and
Intellectual Property Section
Criminal Division
United States Department of Justice

Kenneth R. Simon, Jr.
Peter S. Duffey
Assistant United States Attorneys
Eastern District of Virginia
919 E. Main Street, Suite 1900
Richmond, VA 23219
(804) 819-5400
Fax: (804) 771-2316
Email: Kenneth.Simon2@usdoj.gov

3