IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

*Richmond Division*

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )   CRIMINAL NO. 3:19-cr-130-MHL |
| | ) |
| OKELLO T. CHATRIE, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## UNITED STATES' POSITION ON SENTENCING

The United States of America, by and through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, Kenneth R. Simon, Jr. and Peter S. Duffey, Assistant United States Attorneys, hereby submits its position with respect to the sentencing of defendant Okello T. Chatrie ("Chatrie").

On April 29, 2019, the defendant purchased a silver and black 9mm G2C Taurus semiautomatic pistol at Bob Moates Sports Shop. Three weeks later, he used that same semiautomatic pistol to commit an armed robbery. The defendant strolled into the Call Federal Credit Union approximately 10 minutes before the credit union was set to close. Using that pistol and a note threatening an employee and her family, the defendant gathered five bank employees and a customer at gun point, directed them to a room behind the counter, knelt them all to the floor, including an employee who had difficulty bending down, and demanded money. *See* Attachment 1, Still Images from Credit Union Surveillance and Threatening Note. The defendant left with approximately $195,000 of money belonging to the credit union. His time in the bank accounted

for all of 5 minutes. But the repercussions of his actions went far beyond the time he entered and exited the credit union. Each of those employees and the customer were forever changed by that minutes-long encounter. The defendant's actions—borne of selfish greed—warrant significant punishment from this Court. Many Virginians are employed by financial institutions that dole out large amounts of currency. That daily work puts them into contact with individuals from all walks of life. A natural concern is whether someone like the defendant will enter the store and commit an armed robbery. The communal vulnerability that results from actions like those undertaken by the defendant provide a particular need to deter the defendant and those who are inclined to terrorize individuals for the sake of money.

The United States concurs with the Probation Officer's determination that the defendant has a total offense level of 25, a criminal history category of I, and an applicable guideline range of 141-155 months' imprisonment. For reasons more fully explained below, the United States respectfully asks this Court to impose a sentence of 155 months' imprisonment. Such a sentence properly reflects the factors referenced in 18 U.S.C. § 3553(a).

## I. BACKGROUND

At approximately 4:50 p.m. eastern standard time, on May 20, 2019, Chatrie entered the Call Federal Credit Union in Midlothian, Virginia, with a firearm. While Chatrie stood in line, victim-teller J.B. asked another teller, J.W., to assist Chatrie when he reached the counter. Presentence Investigation Report ("PSR"), ECF No. 233, ¶ 16. When Chatrie reached J.W.'s station, he presented a handwritten note. That note read, in part, 'I got your family as hostage and I know where you live, If you or your coworker alert the cops or anyone your family and you are going to be hurt ... I need at least 100k.' *Id.* After J.W. told him that she did not have access to that amount of money, Chatrie pulled out a silver and black handgun. *Id.* Waving the firearm around, he then directed J.W., other Call Federal Credit Union employees, and customers to move

to the center of the lobby and get on the floor. *Id.* Once there, Chatrie led victims behind the teller counter and into a back room where the Credit Union's safe was located. Once in the back room, Chatrie ordered everyone to their knees at gunpoint and demanded that the bank manager open the safe. *Id.* The Credit Union manager, fearing for his life, obliged by opening the safe and handing over $195,000 in United States currency. *Id.*

Additional investigation by law enforcement revealed that Chatrie purchased a silver and black 9mm G2C Taurus semiautomatic pistol, bearing serial number TLW87541, on April 29, 2019, at Bob Moates Sports Shop, Inc., 10418 Hull Street Rd, Midlothian, VA 23112. *Id.*

Upon assessing location information associated with Chatrie's Google account obtained pursuant to a GeoFence warrant, law enforcement determined that Chatrie's travel on May 20, 2019, showed that Chatrie: (l) was near the church prior to the robbery at the same time that the church witness recalled seeing the suspicious individual; (2) inside the credit union during the robbery; and (3) immediately left the area following the robbery via the area near the church. *Id.*

On August 12, 2019, law enforcement sought and obtained a federal search warrant for the residences located on Mason Dale Drive and Willis Street. *Id.* When executing these search warrants in the early morning of August 13, 2019, law enforcement recovered evidence of value related to the Call Federal Credit Union robbery from both residences. *Id.* At the Mason Dale Drive residence, law enforcement recovered two robbery-style demand notes from the bedroom belonging to the defendant. *Id.* At the Willis Street address, law enforcement recovered nearly $100,000 in United States Currency (including bills wrapped in bands signed by the victim-bank teller) a silver and black Taurus G2C, 9mm semi-automatic pistol, bearing serial number TLW87541, a money counter, and a safe. *Id.*

After being placed under arrest and advised of his Miranda rights, Chatrie admitted to the armed robbery of the Call Federal Credit Union on May 20, 2019, and admitted to using the Taurus G2C, 9mm semi-automatic pistol, bearing serial number TLW87541 during the May 20, 2019 armed robbery. *Id.*

On May 6, 2022, the defendant was charged in a two-count Criminal Information with Credit Union Robbery, in violation of 18 U.S.C. §§ 2113(a) and (d) (Count One) and Use, Carry, and Brandish a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (ii) (Count Two). PSR ¶ 3. The defendant pleaded guilty before this Court on May 9, 2022. PSR ¶ 4.

## II.    POSITION ON SENTENCING

Federal courts imposing sentence are called upon to engage in a multi-step process, analyzing both the procedural and substantive contours of sentencing. The first step in the process—the procedural concerns—requires that a district court correctly "calculate[] the defendant's advisory Guidelines range, consider[] the 18 U.S.C. § 3553(a) factors, analyze[] the arguments presented by the parties, and sufficiently explain[] the selected sentence." *See United States v. Hames*, 757 F. App'x 244, 245 (4th Cir. 2018) (citing United *States v. Lynn*, 592 F.3d 572, 575–76 (4th Cir. 2010)).

"Next, the court must 'determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *United States v. Diosdado-Star*, 630 F.3d 359, 363 (4th Cir. 2011) (*quoting United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006)). Specifically, Section 3553(a)(1) directs sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" that section. These include: (1) the nature and circumstances of the offense, as well as the history and characteristics of the defendant; (2) the need for the sentence

4

imposed to reflect the seriousness of the offense, to promote respect for law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §§ 3553(a)(1), (a)(2)(A)-(D). In weighing these factors, the court is directed to consider the kinds of sentences available, pertinent policy statements, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(3)-(6).

A consideration of each of these factors warrants a sentence of 155 months.

### A. *Nature, Circumstances, and Seriousness of Offense*

The nature, circumstances, and seriousness of the offense warrant a sentence at the high-end of the guideline range. When the defendant entered the Call Federal Credit Union with a semiautomatic pistol in tow, he did so with the intent to terrorize the men and women in the credit union for the sake of making quick money. Facing financial hardship, as defendant maintains he did, is a reality facing many Virginians. To use that difficulty as a rationale to enter a store, kneel down employees at gunpoint, and induce real fear should be rejected by this Court. While the United States has not yet received any victim-impact statements in this case, undoubtedly these victims have suffered and will continue to suffer the psychological effects of the defendant's crimes. Each day they report to employment that requires interaction with random members of

the public.  Because of the defendant's actions, these victims likely will not ever approach their work in the same manner.

The Court should impose a sentence of 155 months to account for the nature, circumstances, and seriousness of the offense.

  B. <u>*History and Characteristics of the Defendant*</u>

The defendant is a 27-year-old man from Spanish Town, Jamaica who, to his credit, has only incurred a reckless driving conviction prior to this case. PSR, Part B.  The only other incident involving the defendant, albeit disturbing, did not result in a conviction.  PSR ¶ 56, 21.  His only other sibling in the United States is 23 years old and has no criminal history. PSR ¶ 60.  Similarly, his father has never been convicted of a crime.  PSR ¶ 62.

The defendant's psychological evaluation reveals a relatively tumultuous childhood in Jamaica prior to arriving in the United States.  It is important to note, however, that the defendant's commission of the offense in this case would not warrant a downward departure on the basis of diminished capacity.  Moreover, there is support in the record that the defendant's actions in this case were calculated.  The armed robbery in this case occurred only three weeks after his purchase of the semiautomatic pistol from Bob Moates Sport Shop.

  C. <u>*A Sentence of 155 Months Serves the Factors of § 3553*</u>

   1. <u>Seriousness of the Offense; Provide Adequate Punishment</u>

There are very few crimes that strike closer to the heart of public safety than armed robbery of everyday employers like the Call Federal Credit Union.  The defendant stated to law enforcement that the firearm was unloaded.  Having apprehended the defendant three months after his offense, the United States cannot speak to the veracity of that statement.  It is clear, however, that the defendant entered that Credit Union with a firearm for a reason. He was

singularly focused on getting money and he made clear to the employees that he intended to get it by any means necessary. The defendant forced each individual in that bank, at gun point, to their knees and made clear that a lack of compliance could cost them their lives. He brought them all behind the counter to a small back room under the threat of using his firearm.

When considering the defendant's offense range in this case, the Court should give full force to his abduction. The defendant walked at least three different individuals to the back of the credit union and held them at gunpoint until he got the money.

A sentence at the high-end of the guideline range reflects the seriousness of the defendant's offense and need to deter future criminal conduct.

2.   Need to Deter Future Criminal Conduct

Deterrence, both specific and general, is served by a sentence of 155 months in this case. The defendant's behavior in this case demonstrates a violent streak that cannot go unnoticed. Although this case represents his first conviction, there is some reason to believe that the defendant undertook this crime, in part, to facilitate drug trafficking. PSR § 25 ("He stated he also used the money to purchase and sell marijuana, but was not successful in making a profit."). Beyond deterring this defendant, however, the Court's sentence must also send a clear message to others in the community who, for whatever reason, are inclined to commit an armed robbery to

7

get money. That is particularly important where, as here, the public is on notice of the defendant's crime and the nature of that crime.

By imposing a sentence of 155 months, the defendant and others will be on notice that committing an armed robbery where you kneel six individuals at gunpoint and threaten their lives will be met with a harsh punishment.

3. Need to Protect Public from Defendant's Future Criminal Conduct

The defendant is still a young man who will have opportunities after serving any term of imprisonment to reenter society. Although the defendant likely faces removal from the United States, that removal is not a certainty. The Court's sentence in this case should ensure that that the defendant does not return to violent criminal activity in the future.

4. Need to Avoid Unwarranted Disparities

A high-end of the guideline range sentence will not result in an unwarranted disparity between the defendant and other defendants who steal nearly $200,000 from a financial institution as a result of abducting and kneeling down six different individuals at gunpoint.

### III. CONCLUSION

For the reasons stated above, the United States submits that a sentence of 155 months is reasonable and accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____/s/_____
Kenneth R. Simon, Jr.
Virginia State Bar No. 87998
Peter S. Duffey
Assistant United States Attorney
United States Attorney's Office

8

Eastern District of Virginia
919 E. Main Street, Suite 1900
Richmond, VA 23219
(804) 819-5400
Fax: (804) 771-2316
Email: Kenneth.Simon2@usdoj.gov