1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION


_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

UNITED STATES OF AMERICA )
)
v. ) Criminal No.
) 3:19CR130
OKELLO T. CHATRIE )
) May 9, 2022
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _


COMPLETE TRANSCRIPT OF GUILTY PLEA
BEFORE THE HONORABLE M. HANNAH LAUCK
UNITED STATES DISTRICT JUDGE


APPEARANCES:

Kenneth R. Simon, Jr., Assistant U.S. Attorney
Office of the U.S. Attorney
SunTrust Building
919 East Main Street, Suite 1900
Richmond, Virginia   23219

        Counsel for the United States

Laura J. Koenig, Assistant Federal Public Defender
Office of the Federal Public Defender
701 E. Broad Street, Suite 3600
Richmond, Virginia   23219

        Counsel for the Defendant

DIANE J. DAFFRON, RPR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT

1           (The proceedings in this matter commenced at

2    2:36 p.m.)

3           THE CLERK:  Case No. 3:19CR130, *United States*

4    *of America versus Okello T. Chatrie.*

5           Mr. Kenneth R. Simon, Jr. and Mr. Peter S.

6    Duffey represent the United States.  Ms. Laura J.

7    Koenig represents the defendant.

8           Are counsel ready to proceed?

9           MR. SIMON:  The United States is ready, Your

10   Honor.

11          MS. KOENIG:  Defense is ready, Your Honor.

12          Good afternoon.

13          THE COURT:  Can you announce the case,

14   please.

15          MR. SIMON:  Good afternoon, Judge.

16          THE COURT:  Good afternoon.

17          MR. SIMON:  We are here for the plea

18   agreement and plea hearing of the defendant in

19   relation to a two-count criminal information charging

20   the defendant in Count One with armed credit union

21   robbery in violation of Title 18, United States Code,

22   Sections 2113(a) and (d).  And in Count Two, he's

23   charged with carrying and brandishing a firearm during

24   and in relation to that crime of violence in Count

25   One.

1    There is a waiver of indictment in this case,

2  a signed plea agreement, a statement of facts, as well

3  as a consent order of forfeiture.

4    THE COURT:  Can you please just put the

5  maximum possible penalties on the record?

6    MR. SIMON:  Yes, Judge.  And with respect to

7  Count One, the maximum penalty for that offense is 25

8  years' imprisonment, a $250,000 fine, a $100 special

9  assessment, and a supervised release term of three

10  years' imprisonment.

11    For Count Two, a mandatory minimum of seven

12  years' imprisonment, a maximum term of life, a

13  $250,000 fine, a supervised release term of five

14  years, and a $100 special assessment.

15    THE COURT:  All right.  Are you prepared to

16  proceed?

17    MS. KOENIG:  We are, Your Honor.

18    THE COURT:  All right.  Why don't you both

19  approach.

20    All right.  Mr. Chatrie, I'm going to ask you

21  a series of questions to make sure you understand the

22  nature and the consequences of this plea.  I'm going

23  to ask you these questions under oath.  If you were to

24  be untruthful in response to anything I ask, you could

25  be subject to different or additional penalties,

1    including perjury.  Do you understand?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  All right.  So we're going to

4    place you under oath.

5              (Sworn by the Clerk.)

6              THE COURT:  All right.  So, Mr. Chatrie, the

7    first thing I want to go over with you is the fact

8    that you have a right to go forward by way of

9    indictment, not the criminal information that's in

10   front of the Court.  That would require a separate

11   finding of probable cause by a grand jury.

12             I understand you know that right, and you're

13   waiving it, and have signed a document to that effect

14   today.  Is that true?

15             THE DEFENDANT:  Yes, ma'am.

16             THE COURT:  And did you have plenty of time

17   to speak to your counsel with respect to that issue?

18             THE WITNESS:  Yes, ma'am.

19             THE COURT:  And, Ms. Koenig, you had

20   sufficient time to advise as to that?

21             MS. KOENIG:  I did, Your Honor.

22             THE COURT:  All right.  Now, sir, I want to

23   be sure you understand that at any time during this

24   plea hearing, you can speak with your attorney.  If

25   you don't understand the question that I'm asking,

5

1    interrupt me and speak to her before you give me any

2    kind of answer.

3         I also want you to know that you may choose

4    to withdraw your guilty pleas at any time before I

5    accept them today.  Once I accept your guilty plea you

6    cannot withdraw them except for what's called a just

7    and fair reason.  And that's a very high and difficult

8    standard to meet under the law.  Do you understand

9    that?

10        THE DEFENDANT:  Yes, ma'am.

11        THE COURT:  All right.  Now, I need to start

12   by asking, are you the person named in the

13   information?  Are you correctly named?  Are you Okello

14   T.  Chatrie?

15        THE DEFENDANT:  Yes, Your Honor.

16        THE COURT:  Have you drunk any alcohol or

17   taken any drugs, prescription or otherwise, in the

18   past 24 hours?

19        THE DEFENDANT:  No, ma'am.

20        THE COURT:  Have you ever been treated for

21   any mental or emotional disorder or addiction of any

22   kind?

23        THE DEFENDANT:  No, ma'am.

24        MS. KOENIG:  Your Honor, Mr. Chatrie is going

25   through counseling right now for PTSD, and there may

1    be a diagnosis of complex trauma.  I can't remember

2    off the top of my head right now, but he is undergoing

3    counseling for that.  But that does not, in my

4    experience with Mr. Chatrie, impact his competency or

5    his ability to understand the plea or being able to

6    proceed today.

7             THE COURT:  All right.  So, Mr. Chatrie, one

8    thing I'm going to ask is for you please to speak into

9    the microphone.  It's the only way my court reporter

10   can hear you.

11            But I understand you are receiving some

12   counseling; is that true?

13            THE DEFENDANT:  Yes, ma'am.

14            THE COURT:  Is there anything about the

15   counseling or your need for counseling that would

16   affect your ability to understand what we're doing

17   today?

18            THE DEFENDANT:  No, ma'am.

19            THE COURT:  Is there anything that would make

20   you not be able to make a clear choice today?

21            THE DEFENDANT:  No, ma'am.

22            THE COURT:  I don't see that as I look at

23   you, and your lawyer has just said so, but I need to

24   follow-up.

25            All right, sir.  This is so thorough, I have

1    to ask you.  I know you can speak English because

2    we're doing it, but can you read and write the English

3    language?  These are all written documents.

4              THE DEFENDANT:  Yes, ma'am.

5              THE COURT:  All right.  How old are you, sir?

6              THE DEFENDANT:  Twenty-seven, Your Honor.

7              THE COURT:  Pardon me?

8              THE DEFENDANT:  I'm 27, Your Honor.

9              THE COURT:  Okay.  And how far have you gone

10   in school?

11             THE DEFENDANT:  Grade 11.

12             THE COURT:  All right.  I want to confirm

13   that you know the charges and the maximum possible

14   penalties.  The AUSA announced them in the criminal

15   information and the maximum possible penalties.

16             First, let me ask you, Ms. Koenig are, you in

17   agreement with what he put on the record?

18             MS. KOENIG:  Yes, Your Honor, maximum

19   sentence of 25 years on the armed robbery charge, and

20   a minimum sentence of seven years to a maximum of life

21   on the 924(c).

22             THE COURT:  All right.  The 924(c), does it

23   have to be consecutive?

24             MS. KOENIG:  It does, Your Honor.

25             THE COURT:  All right.  So, Mr. Chatrie, do

1  you understand what the AUSA said and what the maximum

2  possible penalties are?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  All right.  And you understand

5  that Count Two would have to be consecutive to

6  anything imposed as to Count One?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Okay.  Now, I want to be sure

9  that you understand that these are felony pleas, and

10 that by pleading guilty to them you're giving up

11 valuable civil rights, and those include the right to

12 vote, or hold public office, or possess any kind of

13 firearm.  Do you understand that?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  And if there are any immigration

16 issues, it could involve removal or deportation and

17 affect your ability to come back into the United

18 States on a legal basis.  Do you understand that?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  All right.  Now, have you had a

21 sufficient opportunity to discuss the charges and the

22 sentencing possibilities with your attorney before you

23 came into this the courtroom today?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Did you ask Ms. Koenig everything

1  about your case, including about the decision of
2  whether or not to plead guilty and any defenses that
3  you might have?
4          THE DEFENDANT:  I think I did, Your Honor.
5          THE COURT:  You think you did?
6          THE DEFENDANT:  Yeah.
7          THE COURT:  Well, I'm going to -- this is a
8  big day, so if you have any other questions, this is
9  the time to ask her, and I'll leave.  You don't have
10 to do it right here in front of me.
11         THE DEFENDANT:  I think I asked her enough,
12 you know, pertaining to --
13         THE COURT:  All right.
14         All right.  Ms. Koenig, are you comfortable
15 with the representation of him so far?
16         MS. KOENIG:  Yes, Your Honor.
17         THE COURT:  Do you think there's anything
18 else that Mr. Chatrie has to know before we go through
19 this process?
20         MS. KOENIG:  No, Your Honor.
21         THE COURT:  All right.
22         Have you discussed with your attorney,
23 Mr. Chatrie, how any sentence will be determined?
24 Have you talked about the sentencing guidelines?
25         THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  And are you entirely satisfied

2  with what your attorney has done for you?  Do you

3  believe Ms. Koenig has done all she can so that you

4  can make an informed decision in this matter?

5          THE DEFENDANT:  I know she did, Your Honor.

6          THE COURT:  Good.  I'm not surprised.

7          Do you understand, though, that the decision

8  of whether or not to plead guilty can only be yours?

9  It can't be that of your attorney or of anybody else

10 that you know.

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  All right.  Now, I need to go

13 through with you in great detail all the rights you're

14 waiving if I take your guilty plea.  And the most

15 obvious one is your absolute right to plead not guilty

16 and to demand the government prove its case.  And you

17 have a right to make the government prove its case

18 whether or not you think you're guilty.  Do you

19 understand that?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  And do you know that when you

22 plead guilty, you are admitting every element of the

23 offense and that you're admitting that the government

24 can prove them?  Do you understand that?

25         THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  So the trial rights you'd be

2    waiving are these:

3          The right to see and hear all the evidence

4    against you; the right to confront and cross-examine

5    any witness; the right to the effective assistance of

6    counsel at all stages, so that would include a trial;

7    the right to use subpoenas to gather and present

8    evidence, and you'd have the right not to present

9    evidence.  You'd have the right to a speedy public

10   trial, during which you could testify or you could

11   decide not to testify, and if you decided not to

12   testify, the Judge would instruct the jury that

13   nothing could be concluded from your remaining silent

14   because you have a right to remain silent.

15         The Judge would also be sure that the jury

16   knew that the verdict would have to be unanimous, and

17   that the government has to prove every element of the

18   offense.

19         Do you understand also that by pleading

20   guilty, you're admitting all the essential elements of

21   the offense, and you're waiving all these trial rights

22   I just explained to you, and you're saying, in affect,

23   you did this, and you can never say again you did not?

24   Do you understand that?

25         THE DEFENDANT:  Yes, Your Honor.

1            THE COURT:  Are you intending to plead guilty

2     to this charge because, in fact, you are guilty of it?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  Do you understand that if I take

5     your plea, the only issue remaining in this court will

6     be what sentence is to be imposed, and that will be

7     made in this court by me at a later date?  Do you

8     understand that?

9            THE DEFENDANT:  Yes, Your Honor, fully.

10            THE COURT:  Pardon me?

11            THE DEFENDANT:  I fully understand it.

12            THE COURT:  Okay.  Good.

13            Now, I do want to review the plea agreement

14     with you.  What I have is a 15-paged numbered

15     document, and there was a place for you to have signed

16     on page 15, Mr. Chatrie.  Did you sign there?

17            THE DEFENDANT:  Yes, Your Honor.

18            THE COURT:  And Ms. Koenig on 15?

19            MS. KOENIG:  Yes, Your Honor.

20            THE COURT:  And the government on page 14?

21            MR. SIMON:  Yes, Judge.

22            THE COURT:  Now, I want to go over with you,

23     Mr. Chatrie, what I think are the essential terms of

24     the plea to make sure it agrees with what you think

25     the deal is here.

1          THE DEFENDANT:  Okay.

2          THE COURT:  As I understand it, you're

3   agreeing to waive indictment and plead guilty to the

4   two counts that we have been talking about.

5          You're agreeing to plead guilty because you

6   are guilty, and you're admitting the facts in the

7   statement of facts and that they establish guilt.

8          You understand that your lawyer has rendered

9   effective assistance of counsel.  You're satisfied of

10  that.  And you know you're waiving all the trial

11  rights that I just went over in great detail.

12         You're agreeing that you are pleading

13  conditionally, and that you waive your right to

14  challenge the conviction on direct appeal except that

15  you are preserving the right to appeal the District

16  Court's March 3, 2022, memorandum opinion and order

17  denying the motion to suppress evidence obtained under

18  the geofence warrant, ECF Nos. 220 and 221.

19         You understand and agree that you will pay

20  the monetary penalties that are imposed by the Court,

21  including restitution, which will be due immediately

22  and subject to immediate enforcement.

23         You understand that you're agreeing to pay a

24  mandatory special assessment of $100 per felony count,

25  which is a total of $200.

1          You're agreeing that restitution is

2    mandatory, and you're agreeing to the entry of a

3    restitution order for the full amount of the victims'

4    losses as determined by the Court.

5          And in paragraph 11, the victim is named as

6    the Call Federal Credit Union, and the amount is

7    $196,932.01.

8          You're agreeing that you understand that

9    forfeiture is part of the process and you're agreeing

10   to forfeit all interest in any robbery or

11   firearms-related asset that you own or have had direct

12   or indirect control over.

13         In paragraph 12, what is listed is a Taurus

14   9mm semiautomatic pistol and also $102,293 in U.S.

15   currency seized in Richmond on August 13th of 2019.

16         You're agreeing to waive any interest in any

17   administrative or judicial forfeiture proceeding,

18   civil or criminal.  You're also agreeing to waive

19   constitutional and statutory challenges to forfeiture

20   in any manner.  And you're agreeing to fully

21   participate in the forfeiture process, including

22   making your financial information available.

23         It's understood that the failure to

24   participate in the financial investigation as

25   described in the plea agreement may constitute a

1    failure to accept responsibility under the guidelines

2    3E1.1.  And you're agreeing to identify assets valued

3    at more than $5,000 that have been transferred to

4    third parties.

5          It's noted that by pleading guilty there may

6    be consequences for any immigration status if you're

7    not a citizen of the United States or for citizenship

8    status if you are a naturalized citizen, and that

9    includes the issues that we talked about, including an

10   understanding that a guilty plea for a conviction of

11   robbery of a credit union by force and use in carrying

12   and brandishing a firearm during and in relation to a

13   crime of violence make it such that removal is

14   presumptively mandatory.

15         It is also the case if you are a naturalized

16   citizen you acknowledge that certain convictions,

17   which may include these convictions, may expose you to

18   a denaturalized station under federal law.

19         In exchange, pursuant to 11(c)(1)(B), Federal

20   Rule of Criminal Procedure, the United States and you

21   are stipulating, will recommend to the Court the

22   following provisions of the sentencing guidelines that

23   are listed in paragraph 5 of your plea agreement.

24   They're all under 2B3.1.  And there's an agreement

25   that the base offense level will be 20, that there

1   will be a two-level increase for taking property from

2   a financial institution.  There will be a four-level

3   increase for persons abducted to facilitate commission

4   of the offense, and a two-level increase for loss of

5   more than $95,000.

6          The United States and you are agreeing that

7   you have assisted the government in the investigation

8   and your own misconduct by timely notifying of an

9   intention to plead guilty.  And so if you qualify for

10  the two-level decrease in the offense level for

11  acceptance of responsibility under 3E1.1 and your

12  offense level is 16 or greater, the government agrees

13  to file a motion to ask for an additional point off

14  for acceptance of responsibility.

15         The United States and you are stipulating and

16  will recommend that the Court impose no other specific

17  offense characteristics, and will say they do not

18  apply, and no other chapter 3 adjustments apply.

19         The resulting adjusted offense level for

20  Count One is 25, criminal history category I,

21  resulting in a guideline range of 57 to 71 months.

22  Taken together with a consecutive of 80 months of

23  imprisonment on Count Two, the parties agree that the

24  appropriate advisory guideline range is 141 to 155

25  months' imprisonment.

1          The United States is agreeing that it will

2     not argue for a sentence above 155 months'

3     imprisonment, and you are agreeing to argue for no

4     less than 130 months' imprisonment, which would

5     include a motion for a downward variance.  The United

6     States is making clear it does not believe that a

7     downward variance is appropriate.

8          Now, the thing you have to remember is all of

9     that is a recommendation.  It's not binding on me for

10    purposes of sentencing.

11         So except for with respect to the motion to

12    suppress, you know that you have a right to appeal the

13    sentence.  You are waiving the conviction and the

14    sentence.  You are waiving your right to appeal the

15    conviction except as to the motion to suppress and any

16    sentence within the statutory maximum that we have

17    described during the process of this hearing.

18         The United States is agreeing that it will

19    not further criminally prosecute you in the Eastern

20    District of Virginia for the specific conduct in the

21    information, the indictment, or the statement of

22    facts, except if there is a crime of violence or

23    conspiracy to commit or aid and abet a crime of

24    violence not charged in the information as an offense.

25         The United States is agreeing that at the

1  appropriate time they will move to dismiss the

2  indictment against you.  They are agreeing, with

3  respect to the paragraph about forfeiture, that they

4  will not use any truthful and complete information

5  provided by you for additional offenses except for any

6  crime of violence and that, pursuant to the

7  guidelines, no truthful information that you provide

8  will be used in determining your applicable guideline

9  range.

10      What would constitute a breach is also

11  discussed and, that includes if you were to withdraw

12  from the agreement or commit or attempt to commit any

13  federal, state, or local crime, any additional one, or

14  intentionally give materially false information, in

15  which case the United States will be released from the

16  obligations under the agreement, but you could not

17  withdraw these guilty please.

18      Is that your understanding of the agreement

19  here?

20      THE DEFENDANT:  Yes, ma'am.

21      THE COURT:  Other than that, have there been

22  any other promises or even any threats to get you to

23  plead guilty?

24      THE DEFENDANT:  No, ma'am.

25      THE COURT:  Do you understand that the

1   recommendations, as detailed as they are with respect
2   to your sentencing, they aren't binding on me?  Do you
3   know that?
4           THE DEFENDANT:  Yes, Your Honor.
5           THE COURT:  And do you understand that even
6   though you've waived your right to appeal the sentence
7   except as provided in your agreement, the United
8   States has not waived its right to appeal?  Do you
9   understand that?
10           THE DEFENDANT:  Yes, Your Honor.
11           THE COURT:  So do you understand it's the
12   Eastern District of Virginia that has agreed not to
13   prosecute you for any non-violent offenses related to
14   the charges that you're intending to plead guilty to,
15   and it doesn't apply to another jurisdiction?  Do you
16   understand that?
17           THE DEFENDANT:  Can you repeat that for me,
18   please?
19           THE COURT:  Ms. Koenig, do you want to talk
20   to him?
21           MS. KOENIG:  I do, Your Honor.
22           (Ms. Koenig and the defendant are
23   conferring.)
24           THE DEFENDANT:  Yes, I understand, Your
25   Honor.

1          THE COURT:  You understand it?  Okay.

2          And do you understand with respect to

3     forfeiture you have to provide truthful information,

4     which can affect your acceptance of responsibility if

5     you do not?  Do you understand that?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Now, I do want to go over the

8     consent order of forfeiture with you.  That's a

9     three-page document.  And there was a place for you to

10    have signed on page 3.  Did you sign there,

11    Mr. Chatrie?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  And Ms. Koenig?

14         MS. KOENIG:  Yes, Your Honor.

15         THE COURT:  And the government on page 3?

16         MR. SIMON:  That's correct, Judge.

17         THE COURT:  All right.  It lists in paragraph

18    1 a sum of money in the amount of $195,000, and in the

19    subparagraph B, it specifically lists $102,293.00 of

20    currency that was seized in Richmond, as we just went

21    over, and the Taurus 9mm automatic pistol.

22         Now, Ms. Koenig, did you have sufficient

23    information to review this issue with your client,

24    forfeiture, before you came into the courtroom?

25         MS. KOENIG:  I did, Your Honor.

1          THE COURT:  And, Mr. Chatrie did you have a

2     sufficient time to ask all the questions you had about

3     that before you signed the document?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  All right.  Now, I do want to

6     talk about the sentencing guideline process.  We're

7     going to go through a presentence report and that will

8     determine your recommended sentence pursuant to the

9     Sentence Guideline Act, which involves considering all

10    of your criminal activity even if it's not listed in

11    the information.  Do you understand that?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  And do you know that the Court

14    has a series of factors that it must consider under

15    the guidelines?  It includes information about whether

16    you accept responsibility, but includes other factors

17    that can affect the recommended range up or down.  Do

18    you understand that?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  All right.  And do you know that

21    the Court must examine your prior criminal history, if

22    there is any, and that has an affect on the

23    recommended range of punishment?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  And do you know that the

1   guidelines are not mandatory and a judge can impose a

2   sentence above or below the recommended range within

3   reason?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  All right.  So what happens is if

6   I accept your guilty pleas, I'll refer your case to

7   the probation office for preparation of what's called

8   "the presentence report," and it's through that

9   reporting process that the guidelines would be

10  calculated.  A probation officer would speak to you,

11  and your attorney, and the government, and would look

12  at the guidelines, and look at your background, and

13  these events, and then print out a report that has a

14  recommended sentencing range within it.

15         I mention that because I would be very

16  surprised if Ms. Koenig had not given you an estimate

17  of what the guidelines might be, but even her estimate

18  is only a prediction and no promise because that

19  report hasn't even been started yet.  Do you

20  understand that?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  All right.  Do you understand

23  that there are circumstances where a court can depart

24  or vary upward from the recommended range?

25         THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  A process for that to happen must

2     occur.  And do you also understand that a court can

3     vary downward or depart downward based on any motion?

4     And I understand that has been preserved for you to

5     file that motion.  Do you understand that?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  And do you know, though, that

8     even if it's filed, it does not have to be accepted?

9     The Court has to review it independently and make a

10     finding it's for a good cause.

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  All right.  Now, Ms. Koenig, are

13     you satisfied that it's in your client's best interest

14     to accept the terms of the plea agreement rather than

15     to proceed to trial?

16          MS. KOENIG:  Yes, Your Honor.

17          THE COURT:  Are you satisfied that

18     Mr. Chatrie fully understands the charges against him?

19          MS. KOENIG:  I am.

20          THE COURT:  Are you satisfied that

21     Mr. Chatrie has been competent and fully able to

22     cooperate with you throughout the course of this

23     matter?

24          MS. KOENIG:  Yes, Your Honor.

25          THE COURT:  Are you satisfied there are no

1  meritorious defenses that can be raised, or if there

2  are, that it is in his best interest to enter into the

3  plea agreement and preserve certainly the right to

4  appeal the motion to suppress?

5        MS. KOENIG:  Yes, Your Honor.

6        THE COURT:  Are you satisfied that all of

7  your client's rights have been preserved throughout

8  these proceedings?

9        MS. KOENIG:  Yes, Your Honor.

10       THE COURT:  Do you know of any reason why I

11  should not accept a plea?

12       MS. KOENIG:  I do not.

13       THE COURT:  All right.

14       So, Mr. Chatrie, this is where I ask you how

15  do you plead to Count One, which charges you with

16  robbery of a credit union, in violation of 18 U.S.C.

17  2113(a) and (d); guilty or not guilty?

18       THE DEFENDANT:  Guilty as charged, Your

19  Honor.

20       THE COURT:  All right.  And how do you plead

21  to Count Two, which charges you with using, carrying,

22  and brandishing a firearm during and in relation to a

23  crime of violence in violation of Title 18 U.S.C.

24  Section 924(c)(1)(A), guilty or not guilty?

25       THE DEFENDANT:  Guilty as charged.

1          THE COURT:  All right.  Now, sir, to make a

2    finding as to guilt, I need to review the statement of

3    facts with you that have been offered as part of the

4    plea.  That is a four-page document?

5          MS. KOENIG:  Five pages, Your Honor.

6          THE COURT:  Five-page document.

7          MS. KOENIG:  I think there's some extra

8    spacing on page 4.

9          THE COURT:  Right.  And there was a place for

10   you to have signed, Mr. Chatrie, on page 5?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  You signed.  And Ms. Koenig also?

13         MS. KOENIG:  Yes, Your Honor.

14         THE COURT:  And then the government on page

15   3?

16         MR. SIMON:  That's correct, Judge.

17         THE COURT:  All right.  Now, I have reviewed

18   the information in the statement of facts, and it is

19   sufficient to support a finding of guilt, but before I

20   do that, I want to ask you, Ms. Koenig, is there

21   anything in these facts that you think is wrong, that

22   should be changed, or added in, or taken out?

23         MS. KOENIG:  No, Your Honor.  We've already

24   made any edits that needed to be made.

25         THE COURT:  Okay.  How about you,

1    Mr. Chatrie?  Anything in these facts that you think

2    is wrong, that should be changed, or added in, or

3    taken out?

4              THE DEFENDANT:  No, Your Honor.

5              THE COURT:  Did you sign the document because

6    the information in it is true?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  All right.  So, sir, this is

9    where I could make my finding of guilt, and it's your

10   last opportunity to withdraw your guilty pleas.  Are

11   you prepared for me to go ahead and make my finding?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  All right.  So it is the finding

14   of the Court in the case of the *United States versus*

15   *Okello T. Chatrie* that Mr. Chatrie is fully competent

16   and capable of entering an informed plea, that he is

17   aware of the nature of the charges and the

18   consequences of the pleas, and that the pleas of

19   guilty to Counts One and Two in the information are

20   knowing and voluntary and supported by an independent

21   basis in fact containing each of the essential

22   elements of the offense.  The pleas are therefore

23   accepted, and Mr. Chatrie is now adjudged guilty of

24   those offenses.

25             So, sir, this is where I order the probation

1   office to prepare your presentence report, as I

2   indicated.  And I want to be sure that you understand

3   the scheduling order that I will enter, but Ms. Koenig

4   is going to go over that in detail about when things

5   are due and when events happen.

6           I always mention, though, a couple parts of

7   the process because I think they're important.  One is

8   that, as I said, you'll be interviewed by a probation

9   officer as that person prepares your presentence

10  report.  And what I want you to know is that you may

11  have your lawyer with you during any conversation with

12  your probation officer.  Do you understand that?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  And I also want you to know that

15  there's a period of time before the final presentence

16  report is issued where you can lodge objections or try

17  to change information in the report.  And if you don't

18  do it by the deadline, you waive it.  You can't do it

19  afterward.  But the process includes a requirement

20  that both sides speak to each other and see if they

21  can agree to any changes.  And it's only if they

22  cannot agree that a formal motion is put in front of

23  me, and then we have a separate hearing on that

24  dispute.  Do you understand that?

25          THE DEFENDANT:  Understood.

1          THE COURT:  All right.  Okay.  So we need to

2     set a date.  I'm going to allow you all to sit down

3     while we do that.

4          MS. KOENIG:  Your Honor, I wanted to ask the

5     Court to strongly consider a sentencing date that is

6     as soon as possible under the guideline procedure.

7          Mr. Chatrie has been in local custody since

8     September of 2019 because it took a long time to

9     litigate the important issues in the case.  The

10    defense has already prepared the mitigation that we

11    would anticipate presenting.  I have a psychological

12    forensic evaluation that I have already provided to

13    the government as a part of the negotiations process.

14          Certainly local custody is not where one

15    wants to be for almost three years.  Mr. Chatrie's --

16    I think his mental health issues have been

17    dramatically exacerbated by the lengthy amount of time

18    that the lawyers have needed in the case to present

19    the case.

20          And so we all are very familiar with the

21    facts of the case.  And while the probation office

22    does accurately need to calculate the guidelines,

23    Mr. Chatrie doesn't have any prior criminal

24    convictions.  So it's not a matter of having to track

25    down old records or things like that.  So I am asking

1  the Court to strongly consider setting the sentencing

2  as soon as we can.

3          THE COURT:  Does the United States object to

4  that?  Have you all discussed this?

5          MR. SIMON:  Judge, we've heard the request.

6  We have not discussed in detail sort of recognizing

7  that it's up to the Court and to the probation office,

8  the probation office's resources, how close in time we

9  can have the sentencing.

10          I'd only request that we consider also the

11  need to make sure that the victims in this case can

12  appear if they'd like to but also provide statements.

13  So I think, you know, at least 45, 60 days would be

14  ideal.  I think regularly it's a 90-day period, but

15  it's really going to be up to the probation office,

16  and we'd want to make sure that they have enough time

17  to get it done.

18          THE COURT:  All right.  All right.  Well, we

19  do have a representative from the probation office

20  here.  Mr. Zychowski, do you have any sense of a

21  relatively quicker process that we could go through,

22  how long it might take?  So I want everybody to know

23  that because of COVID, the probation office is

24  stretched.  And so we've actually been going out 120

25  days.  I don't think we need that.  But,

1   Mr. Zychowski, do you have a sense of when you might

2   be able to do it, meaning the office, not you

3   personally?

4          THE PROBATION OFFICER:  Well, I will be

5   assigned this investigation.  Does the attorney have a

6   suggested time frame?

7          MS. KOENIG:  Your Honor, I wasn't necessarily

8   meaning to suggest that we need to go shorter than the

9   75 days that's provided for the scheduling order.  I

10  definitely do not want to go past the 90 days of the

11  scheduling order, but I think that 75 days, which

12  includes the 35 days, for the process in terms of the

13  presentation and objections, if there are any.  But I

14  do think that 40 days, given the fact that this Court

15  has authored very extensive factual opinions in this

16  case about the facts that aid Mr. Zychowski, I think,

17  greatly in not having to go through voluminous

18  discovery, as well as not having a criminal history,

19  and I can give Mr. Zychowski the forensic

20  psychological evaluation.  That would hopefully aid us

21  to be able to get to about 75 days.

22         THE COURT:  All right.  Does that sound

23  possible to you, Mr. Zychowski?  There is an extensive

24  record here that ultimately has resulted in findings

25  of fact, and an opinion, too, really, so it is the

1  case that you would have more of a start maybe than in

2  most cases.

3          THE PROBATION OFFICER:  A head start, yes.

4  The only delay that I would anticipate is verifying

5  personal information because we don't get a lot of

6  that information until we interview the defendant

7  because of the jail's schedule to do an interview.

8  But I think she had already foreseen that.

9          MS. KOENIG:  Yes.  And I'm laughing a little

10  bit because Mr. Zychowski has to track me down

11  sometimes to pin down some availability where I can

12  block out a couple of hours of time.  But I will

13  promise Mr. Zychowski, I will promise to the Court, I

14  will promise to Mr. Chatrie and the government that I

15  will make myself available to do those interviews in a

16  speedy manner.

17          THE COURT:  And you'll help him make sure

18  that the facility makes Mr. Chatrie available; is that

19  correct?

20          MS. KOENIG:  I'll do my very best, Your

21  Honor, yes.

22          THE COURT:  All right.  So I'll tell you both

23  that if you're having problems with the facility, I am

24  happy to do whatever it is I can within my power to

25  make them make Mr. Chatrie available.  All right?

1    THE PROBATION OFFICER:  Thank you, Judge.  I
2  just want to point out, it's not -- it's never her
3  delay.  It is the jail's limited schedule given the
4  video technology equipment that they have.  So it's
5  more of a delay getting that scheduled than her
6  personally.
7    THE COURT:  Right.  It was good of her to
8  fall on her sword, but I know that it's been
9  difficult, in any event.
10    So, does somebody know when 75 days is?  I
11  may.
12    MS. KOENIG:  Your Honor, that would put us
13  about July 23, which is a Saturday.  So that won't
14  work.  So maybe the following week.
15    Mr. Simon is indicating that he is not
16  available that week but perhaps the week of
17  August 1st.
18    THE COURT:  How about the August 2nd?
19    MR. SIMON:  That works for us, Judge.
20    MS. KOENIG:  That works for the defense, Your
21  Honor.
22    THE COURT:  All right.  Are we going to have
23  witnesses, do you think?
24    MR. SIMON:  We don't intend at this time to
25  have witnesses but would leave time open possibly.

1   We're going to talk to folks, and we may need to put

2   on some evidence.

3         THE COURT:  All right.  Well, how about I set

4   it for 11 o'clock so we have time to have evidence or

5   argument?

6         MS. KOENIG:  Thank you, Your Honor.

7         THE COURT:  All right.  I am going to find

8   that the waiver of indictment and the consent order of

9   forfeiture are knowingly and voluntarily signed and,

10  as to indictment, waived.  So we'll enter those on the

11  record.

12        All right.  Is there anything else that we

13  need to cover?

14        MR. SIMON:  Nothing further from the United

15  States, Judge.

16        MS. KOENIG:  No, Your Honor.  Thank you.

17        THE COURT:  And, Mr. Zychowski, I appreciate

18  your making yourself available.  And certainly we will

19  all -- this group I know will work together to make

20  sure we can get things done as quickly as possible.

21        THE PROBATION OFFICER:  Thank you, Your

22  Honor.

23        THE COURT:  So, Mr. Chatrie, I will see you

24  on August 2nd at 11 o'clock.  In the meantime, you

25  will be held under the same conditions under which you

34

1    have been held.  And I encourage you to stay in close

2    contact with Ms. Koenig so the presentence report

3    process can be as accurate and as quick as possible.

4    All right?

5              THE DEFENDANT:  Thank you, Your Honor.

6              THE COURT:  Thank you.  All right.  We can

7    call court.

8              (The proceedings were adjourned at 3:15 p.m.)

9

10       I, Diane J. Daffron, certify that the foregoing is

11    a correct transcript from the record of proceedings

12    in the above-entitled matter.

13

14                        /s/
        _____   _____
15         DIANE J. DAFFRON, RPR, CCR       DATE

16

17

18

19

20

21

22

23

24

25